IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GONIDAKIS, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**OHIO REDISTRICTING COMMISSION, et al.,**<br><br>Defendants, and<br><br>**LEAGUE OF WOMEN VOTERS OF OHIO and A. PHILIP RANDOLPH INSTITUTE OF OHIO,**<br><br>Intervenor-Defendants. | Case No. 2:22-cv-773 |

**INTERVENOR-DEFENDANTS' OPPOSITION TO PLAINTIFFS' REQUEST FOR APPOINTMENT OF THREE-JUDGE PANEL[1]**

**I.     INTRODUCTION**

Plaintiffs' request for a three-judge panel is fatally premature. The plain text of 28 U.S.C. § 2284 states that a three-judge panel is convened "when an action is filed challenging the constitutionality of . . . the *apportionment* of any statewide legislative body." 28 U.S.C. § 2284(a) (emphasis added). The simple fact, however, is that no such "apportionment" currently exists. On February 17, 2022, a majority of the Ohio Redistricting Commission (the "Commission") temporarily claimed an "impasse."

---

[1] Intervenor-Defendants submit this Opposition understanding that the Court has not yet granted their motion to intervene. Given that time is of the essence in this matter, however, this Opposition is respectfully submitted so that the Court can rule on it promptly should intervention be granted.

But as of this writing, the Commission is *not* at impasse, and its redistricting process is in full swing. Indeed, the Commission met today (February 22, 2022), re-committed to the redistricting process, and scheduled hearings on district plans to take place over the next two days. And the Ohio Supreme Court remains vigorously engaged in the process as well. Thus, the core premise of Plaintiffs' request is manifestly mistaken.

Plaintiffs also attempt to salvage their non-existing apportionment claim by constructing an alternative argument that the *2011* legislative plan somehow constitutes a reviewable "apportionment" under § 2284. That notion, however, completely ignores everything going on in Ohio—the Commission's continuing work to enact a plan as well as the *ongoing* state-court litigation, which remains squarely before the Ohio Supreme Court. Ohio voters will not be voting under the 2011 plan—and Plaintiffs know it.

This Court should not interpose itself into the redistricting process in Ohio while the process is ongoing, and the Ohio Supreme Court continues to exercise its "exclusive, original jurisdiction" under Article XI of the Ohio Constitution to ensure a legally valid apportionment. Ohio Const. art. XI, § 9. Until a plan that withstands the Ohio Supreme Court's scrutiny is passed, there is no "apportionment" for a three-judge panel to review. Given that no such apportionment yet exists, Plaintiffs' request for three-judge panel review is premature and should be denied.

## II.     FACTUAL BACKGROUND

### A.     Ohio's ongoing redistricting process

In 2011, the Ohio General Assembly enacted a heavily gerrymandered plan that allowed Republicans to control far more seats than their statewide vote. *See League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, No. 2022-Ohio-65, slip op. ¶¶ 112–113 (Ohio Jan. 12, 2022). Later in 2011, a group of Ohio voters challenged Ohio's legislative plan on the basis of

2

partisan unfairness, but the Ohio Supreme Court held that it lacked the power to act because the Ohio Constitution, in 2011, did not explicitly require political neutrality. *Wilson v. Kasich*, 981 N.E.2d 814, 820 (Ohio 2012).

In response, on November 3, 2015, Ohio voters, by an overwhelming margin of 71.5% to 28.5%, *see* Ohio Sec'y of State, 2015 Official Elections Results, https://bit.ly/3v6ggFZ, amended the Ohio constitution by adding express constitutional commands that districts not be drawn "to favor or disfavor a political party," and that the distribution of seats "shall correspond closely to the statewide preferences of the voters of Ohio," Ohio Const. art. XI, §§ 6(A)–(B). The express purpose of the amendment was to "[e]nd the partisan process for drawing Ohio House and Senate districts, and replace it with a bipartisan process with the goal of having district boundaries that are more compact and politically competitive." Ohio Sec'y of State, Issue 1 Ballot Language (Nov. 2015), https://bit.ly/3ElgrPY.

Just after midnight on September 16, 2021, the Commission voted along party lines to enact a General Assembly district plan to be in effect for the next four years. One week later, on September 23, 2021, Intervenor-Defendants filed a complaint (as relator-petitioners) in the Ohio Supreme Court, alleging that the Commission enacted a General Assembly district plan that (i) primarily favored the Republican Party, and (ii) failed to correspond closely to the statewide preferences of the voters of Ohio—in clear violation of Article XI, Sections 6(A) and 6(B) of the Ohio Constitution. *See* Compl. ¶ 91, *League of Women Voters of Ohio*, No. 2021-1193.

Following expedited discovery, full merits briefing, and oral argument, the Ohio Supreme Court, on January 12, 2022, invalidated the plan enacted by the Commission and ordered the Commission to reconvene to adopt a new plan within ten days of judgment. *See League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, No. 2022-Ohio-65, slip op. ¶ 137 (Ohio

3

Jan. 12, 2022). In doing so, the Ohio Supreme Court explicitly retained jurisdiction to review the Commission's new plan to ensure compliance with the Ohio Constitution. *See id.* On January 22, 2022, the Commission adopted a revised plan, to which Intervenor-Defendants, three days later, lodged objections explaining that the revised plan again violated Article XI, Sections 6(A) and 6(B). *See* Petitioners' Objections to the Commission's Revised Map, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Jan. 25, 2022).

On February 7, 2022, the Ohio Supreme Court sustained Intervenor-Defendants' objections and once again invalidated the plan enacted by the Commission pursuant to Article XI, Sections 6(A) and 6(B) of the Ohio Constitution. *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, No. 2022-Ohio-342, slip op. ¶ 3 (Ohio Feb. 7, 2022). The Ohio Supreme Court then ordered the Commission to adopt a new plan "no later than February 17, 2022," and to "file a copy of that plan with this court by 9:00 a.m. on February 18, 2022." *Id.* ¶ 68. The Ohio Supreme Court, once again, retained jurisdiction for the purpose of reviewing the forthcoming plan. *Id.*

In the ten days following that February 7 order, the Commission convened only once, on the afternoon of the Ohio Supreme Court's mandated deadline for enacting a constitutionally compliant district plan. At that February 17 meeting, the majority Commission members did not introduce any plan. Nor did they consider or comment on the plan submitted to the Commission by Intervenor-Defendants. *See* Bennett & League of Women Voters Petitioners (Feb. 15, 2022), The Ohio Redistricting Comm'n, https://redistricting.ohio.gov/maps ("General Assembly District Plans – General Public Sponsors"). Instead, they devoted that single, eleventh-hour meeting to heaping criticism on a plan previously introduced by the minority Commission members, before

4

voting it down along party lines. *See* Feb. 17, 2022 Ohio Redistricting Comm'n Hrg., https://ohiochannel.org/video/ohio-redistricting-commission-2-17-2022.

Accordingly, the Commission did not enact any plan on February 17, 2022—the deadline mandated by the Ohio Supreme Court. It did so in spite of Governor DeWine's statement, at the February 17 hearing, that "we have an obligation to follow the Ohio Constitution. We have an obligation to follow the Court order, whether we like it or not, whether we agree with it or not. And . . . we have an obligation to produce a map." Feb. 17, 2022 Ohio Redistricting Comm'n Hrg., at 21:22, https://ohiochannel.org/video/ohio-redistricting-commission-2-17-2022-part-2 (emphasis added). Nor did the Commission provide any explanation as to why it defied the Court's order to draw a new, constitutionally compliant plan. Instead, on February 18, 2022, the majority Commission members filed a conclusory "Notice of Impasse." *See* Notice of Impasse of Respondent The Ohio Redistricting Commission, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Feb. 18, 2022). This was a particularly audacious maneuver, given that the majority Commission members were wholly responsible for the alleged gridlock in the map-drawing process.

Following the Commission's filing of its notice of impasse in the Ohio Supreme Court, Intervenor-Defendants filed a motion to require the Commission to explain why it failed to enact a plan as mandated by the Ohio Supreme Court. Hours later, the Ohio Supreme Court, *sua sponte*, ordered the Commission to show cause why its members should not be held in contempt. *See League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, 2022-Ohio-498 (Ohio Feb. 18, 2022).

On February 22, 2022 (today), the Commission convened and reaffirmed its obligation to produce a constitutionally compliant legislative map. *See generally* Feb. 22, 2022 Ohio

Redistricting Comm'n Hrg., https://ohiochannel.org/video/ohio-redistricting-commission-2-22-2022. The co-chairs of the Commission then scheduled hearings on plans over the next two days, February 23 and February 24, 2022.

### B. Plaintiffs' premature filing

Within 15 hours of the Commission's non-compliance with the February 7 order of the Ohio Supreme Court, Plaintiffs filed the instant action before this Court on February 18, 2022. They then amended their complaint four days later on February 22, 2022. Specifically, Plaintiffs allege that the "current state legislative districts (or lack thereof) violate the U.S. Constitution." Pls.' Am. Compl. ¶ 6. In support, they allege two factual (and inconsistent) alternatives. First, they prematurely declare that there is a "lack" of current districts, despite the fact that the redistricting process remains ongoing and subject to the Ohio Supreme Court's supervision. *Id.* Alternatively, Plaintiffs assert that the state legislative plan that was drawn in 2011—which is set to be replaced by the ongoing redistricting process—remains the "current" plan. *Id.* They have attempted to resuscitate the 2011 plan to salvage their non-existent apportionment claim while conveniently ignoring the Ohio voters' rejection of that heavily gerrymandered plan via Article XI, which now serves as the basis for Intervenor-Defendants' claims before the Ohio Supreme Court.

Critically, Plaintiffs allege that "this Court should adopt the Second Plan previously adopted by the Redistricting Commission." *Id.* Put simply, through this action, Plaintiffs seek an end run in federal court around the ongoing state redistricting process by asking this Court to reinstate the very plan that the Ohio Supreme Court invalidated as unconstitutional on February 7, 2022, even as the Commission is currently working to enact a new one. They then seek to compound this premature interference with the work of the Commission and the Ohio Supreme Court by requesting a three-judge panel under § 2284.

## III. ARGUMENT

Under 28 U.S.C. § 2284(a), "a district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." The district judge to whom the request is presented is required to notify the chief judge of the circuit "unless he determines that three judges are not required." 28 U.S.C. § 2284(b)(1). A district judge "need not unthinkingly initiate the procedures to convene a three-judge court without first examining the allegations in the complaint" and determining "whether the 'request for three judges' is made in a case covered by § 2284(a)." *Shapiro v. McManus*, 577 U.S. 39, 44 (2015). Because Plaintiffs filed their complaint *before* the Ohio Redistricting Commission enacted a valid "apportionment" whose constitutionality could be challenged, this case is not "covered by § 2284(a)." *Id.* Thus, this Court should exercise its authority under § 2284(b)(1) to determine that a three-judge panel is not currently required and deny Plaintiffs' premature request.

### A. Plaintiffs' action fails to challenge the constitutionality of a final "apportionment."

In order to secure the review of a three-judge panel under § 2284(a), Plaintiffs must challenge the constitutionality of an actual "apportionment." Courts agree that "the challenge must be to an existing apportionment," *i.e.*, the "final product" of the redistricting process. *City of Philadelphia v. Klutznick*, 503 F. Supp. 657, 658 (E.D. Pa. 1980). By contrast, apportionment does not include "practices or actions that may lead to or affect a future apportionment." *Alabama v. U.S. Dep't of Commerce*, 493 F. Supp. 3d 1123, 1128 (N.D. Ala. 2020); *see also Commonwealth of Mass. v. Mosbacher*, 785 F. Supp. 230, 236 (D. Mass. 1992) (noting that a challenge to "precursors to the ultimate apportionment decision" does not constitute "a direct

7

challenge to the apportionment itself"), *overruled on unrelated grounds by Franklin v. Massachusetts*, 505 U.S. 788 (1992).

Here, there is no "existing apportionment" or "final product" for Plaintiffs to challenge. The Commission has yet to enact a plan for the current redistricting cycle that has been upheld by the Ohio Supreme Court. Moreover, as noted above, the Commission and the Ohio Supreme Court remain fully engaged in this process. Until *both* bodies indicate that they have completed their work, the process has not concluded. In light of the ongoing activity by the Commission and the ongoing dispute in *state* court, it is premature to suggest that the 2011 legislative plan constitutes the current plan.

> **B. The 2011 legislative plan does not constitute an existing apportionment that is reviewable under § 2284.**

The prospect of the voters of Ohio voting under the 2011 plan is utterly speculative (at best). Most fundamentally, unless and until the Commission and the Ohio Supreme Court end that process, there is no basis to conclude that the 2011 legislative plan will constitute the plan under which the citizens of Ohio will cast their votes in 2022.

The speculative nature of this assertion is of central relevance to this objection to the invocation of a three-judge panel under § 2284. Put simply, the far-fetched *possibility* that the 2011 plan would be used by default for primary elections in May is inadequate to trigger § 2284. As this Circuit has held, "the sufficiency of the complaint for three-judge jurisdictional purposes must be determined by the claims stated in the complaint and *not by the way the facts turn out*." *Armour v. State of Ohio*, 925 F.2d 987, 989 (6th Cir. 1991) (emphasis added). But that is exactly what Plaintiffs have done here.

8

In short, Plaintiffs cannot manufacture a premature apportionment request for a three-judge panel of federal judges when Ohio's apportionment process has not yet been completed and also remains under the active oversight of the Ohio Supreme Court.

### C. This Circuit requires the existence of an actual apportionment before appointing a three-judge panel.

Finally, this case is factually distinct from other cases in this Circuit in which a three-judge panel was appointed to review the constitutionality of an apportionment. In those cases, plaintiffs challenged an apportionment that had actually been enacted and was actively in effect. *See Armour v. State of Ohio*, 925 F.2d 987, 989 (6th Cir. 1991) (challenging the constitutionality of Ohio's enacted state legislative maps); *League of Women Voters of Michigan v. Johnson*, 2017 WL 6610622 at *2 (E.D. Mich. Dec. 27, 2017) (challenging the constitutionality of Michigan's enacted state legislative maps). Here, because the redistricting process in Ohio remains ongoing, there is no currently effective apportionment for Plaintiffs to challenge under § 2284(a). Thus, Plaintiffs have failed to bring a claim that is "covered by § 2284(a)." *Shapiro*, 577 U.S. at 44.

### IV. CONCLUSION

For the foregoing reasons, Intervenor-Defendants League of Women Voters of Ohio and A. Philip Randolph Institute of Ohio respectfully ask that this Court deny Plaintiffs' request for a three-judge panel under 28 U.S.C. § 2284.

9

|  |  |
|---|---|
| | Respectfully submitted, |
| | */s/ Freda J. Levenson* |
| Robert D. Fram* | Freda J. Levenson (0045916) |
| COVINGTON & BURLING, LLP | *Counsel of Record* |
| Salesforce Tower | ACLU OF OHIO FOUNDATION, INC. |
| 415 Mission Street, Suite 5400 | 4506 Chester Avenue |
| San Francisco, CA 94105-2533 | Cleveland, OH 44103 |
| (415) 591-6000 | (614) 586-1972 x125 |
| rfram@cov.com | flevenson@acluohio.org |
| | |
| Sarah Suwanda* | David J. Carey (0088787) |
| COVINGTON & BURLING, LLP | ACLU OF OHIO FOUNDATION, INC. |
| One CityCenter | 1108 City Park Avenue, Suite 203 |
| 850 Tenth Street, NW | Columbus, OH 43206 |
| Washington, DC 20001-4956 | (614) 586-1972 x2004 |
| (202) 662-6000 | dcarey@acluohio.org |
| ssuwanda@cov.com | |
| | Alora Thomas* |
| * *Pro hac vice* application forthcoming | Julie A. Ebenstein* |
| | AMERICAN CIVIL LIBERTIES UNION |
| | 125 Broad Street |
| | New York, NY 10004 |
| | (212) 519-7866 |
| | athomas@aclu.org |
| | jebenstein@aclu.org |

**CERTIFICATE OF SERVICE**

    I, Freda J. Levenson, hereby certify that on this 22nd day of February, 2022, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Southern District of Ohio, Eastern Division via the ECF system, which will send notification of such filing to all counsel of record.

                                                   */s/ Freda J. Levenson*
                                                   Freda J. Levenson (0045916)
                                                   *Counsel for Intervenor-Defendants*