## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Michael Gonidakis, *et al.*, | : | |
| | : | Case No. 2:22-cv-773 |
| Plaintiffs, | : | |
| | : | |
| v. | : | Chief Judge Algenon Marbley |
| | : | |
| Frank LaRose, | : | Magistrate Judge Elizabeth Deavers |
| | : | |
| Defendant. | : | |
| | : | Three-Judge Panel Requested |

## PLAINTIFFS' AMENDED MOTION FOR A PRELIMINARY INJUNCTION AND DECLARATORY RELIEF

Now come Plaintiffs Michael Gonidakis, Mary Parker, Margaret Conditt, Beth Ann Vanderkooi, Linda Smith, Delbert Duduit, Thomas W. Kidd Jr., and Ducia Hamm ("Plaintiffs"), by and through undersigned counsel, and move this Court for a preliminary injunction pursuant to Fed. R. Civ. P. 65(a) and request that this Court enjoin Ohio Secretary of State Frank LaRose, in his official capacity, and all persons acting on his behalf or in concert with him from implementing, enforcing, or conducting any elections for state legislative office because Ohio's state legislative districts violate the U.S. Constitution. Plaintiffs further request that this Court adopt the attached plan that complies with the U.S. Constitution, attached to the First Amended Complaint as Exhibit B. A Memorandum in Support of this Motion is attached.

Respectfully submitted,

**Isaac Wiles & Burkholder LLC**

*/s/ Donald C. Brey*
Donald C. Brey (0021965)
Brian M. Zets (0066544)
Matthew R. Aumann (0093612)

Ryan C. Spitzer (0093515)
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Tel: 614-221-2121; Fax: 614-365-9516
dbrey@isaacwiles.com
bzets@isaacwiles.com
maumann@isaacwiles.com
rspitzer@isaacwiles.com

*Attorneys for Plaintiffs Michael Gonidakis, Mary Parker, Margaret Conditt, Beth Ann Vanderkooi, Linda Smith, Delbert Duduit, Thomas W. Kidd, Jr., and Ducia Hamm*

**MEMORANDUM IN SUPPORT**

The Ohio Redistricting Commission has adopted two plans for drawing state legislative districts. These plans are compliant with the U.S. Constitution. Yet twice, the Ohio Supreme Court has invalidated those plans. With no path forward, the Redistricting Commission declared impasse. There will not be a third try.

Without new maps, Plaintiffs' constitutional right to vote has been violated. Ohio's population has shifted significantly in the last ten years, so if Plaintiffs are forced to vote for candidates using 2010 state legislative districts, then their votes will be impermissibly diluted. Alternatively, if the 2010 state legislative districts have expired, then Plaintiffs cannot vote because Ohio has no legislative district maps. Either way, Plaintiffs' most fundamental right has been denied. Additionally, Plaintiffs cannot freely associate with those in their improper or unknown state legislative districts.

To secure Plaintiffs' constitutional rights, this Court should issue an order adopting the Second Plan approved by the Ohio Redistricting Commission, attached as Exhibit B to the First Amended Complaint.

**I.     BACKGROUND**

The Redistricting Commission adopted two plans that comply with the U.S. Constitution. With those plans thrown out, and no path forward for maps that reflect the 2020 census, Plaintiffs' right to vote has been denied.

**A.     Ohio's 2010 legislative district maps and the 2015 constitutional amendment.**

The State of Ohio has a bicameral legislature, with a House of Representatives and a Senate. Historically, the Ohio Constitution has provided for 99 Representatives and 33 Senators,

with the districts determined by using the federal decennial census to divide the total population of the state by 99 and 33. *See* Ohio Constitution, Article XI, Section 2.

Ohio's 2010 legislative district maps were created after receipt of the 2010 U.S. Census data showing that Ohio had a population of 11,536,504 people. The 2010 legislative district maps were created in accordance with the U.S. Constitution and the Ohio Constitution. *See, Wilson v. Kasich*, 134 Ohio St.3d 221, 2012-Ohio-5367, 981 N.E.2d 814, ¶ 48.

In 2015, voters amended the Ohio Constitution with "Issue 1," which created a bipartisan process for drawing new state legislative districts relying on federal decennial census data. As before the amendment, state legislative districts were to be based on the population of the state as determined by the federal decennial census. *See* Ohio Constitution, Article XI, Section 3.

Issue 1 also created the seven-member bipartisan Ohio Redistricting Commission. State legislative district plans approved by a bipartisan majority of the Redistricting Commission would be valid for ten years, while a district plan approved by a simple majority for would be valid for four years. *See* Ohio Constitution, Article XI, Sections 8(B) and 8(C)(1)(a).

Finally, the amendment also recognized the limited role of the Ohio Supreme Court. Unlike federal courts, the Ohio Supreme Court cannot order that a particular plan for state legislative districts be adopted. *See* Ohio Constitution, Article XI, Section 9(D). Instead, the Ohio Supreme Court is limited to repeatedly returning the issue to the Redistricting Commission. *Id*.

**B.     The 2020 Census shows that Ohio's population significantly changed.**

The Redistricting Commission's job was to draw state legislative districts based on the population of the state as determined by the 2020 U.S. Census data. Procuring the 2020 U.S. Census data was no easy task. Ohio had to sue the Census Bureau to receive delivery of the 2020 U.S. Census data. Even then, the data was delayed.

The 2020 U.S. Census data showed that much has changed in Ohio over the last ten years, including a net gain of more than 250,000 people and double-digit growth in several regions. (ECF No. 8, First Amended Complaint, ¶ 1).[1] Many political subdivisions such as Franklin, Delaware, Warren, and Union Counties grew by double-digits. (*Id.*, ¶ 33). Franklin, Cuyahoga, and Hamilton Counties, Ohio's most populous counties, saw a total shift of more than 200,000 people. (*Id.*, ¶ 34).

### C. The First Plan is adopted by the Redistricting Commission in September 2021 using 2020 census data.

After finally receiving the 2020 decennial census, the Redistricting Commission held public meetings throughout Ohio on September 12, 13, and 14. Soon after, the Redistricting Commission adopted the First Plan. (ECF No. 8-1, Fist Amend. Compl., Exhibit A).

The First Plan used the 2020 federal census data. (*Id.*, p. 3). The 2020 census found that Ohio's population on April 1, 2020, was 11,799,448. (*Id.*). This means that the target population for Ohio's 99 house districts is 119,186 people per district (*Id.*), and the target population of Ohio's 33 senate districts is 357,558 people per district. (*See id.*). The First Plan, using the 2020 census data, ensured that the most and least populated districts did not vary in total population by more than 10%.

But soon after the First Plan was adopted, at least three organizations filed complaints in the Ohio Supreme Court challenging the Redistricting Commission's First Plan.

### D. Three months after adoption, the First Plan is rejected.

Ohio's key election deadlines start in February and end with the May primary. But while the First Plan was adopted in September 2021, the Ohio Supreme Court invalidated the First Plan

---

[1] Plaintiffs filed their First Amended Complaint on February 22, 2022, as a matter of course under Fed. R. Civ. P. 15(a)(1). The primary change is dropping the Ohio Redistricting Commission as a party.

5

more than three months later, in January 2022. *See, League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 2022-Ohio-65, ¶ 138. This first ruling came right in front of election season.

The Ohio Supreme Court sent the Redistricting Commission back to the drawing board. It was ordered reconstituted under Article XI, Section 1, to "convene, and to ascertain and adopt a General Assembly – district plan in conformity with the Ohio Constitution" and directed the Redistricting Commission to adopt a new plan within ten days. *Id*. at ¶ 139.

### E. The Second Plan is adopted using 2020 census as key election deadlines approach and then pass.

Soon after the Court's order to reconvene, the Redistricting Commission met and adopted the Second Plan for state legislative districts on January 22, 2022. The Second Plan also used the 2020 federal census data. (ECF No. 8-2, First Amend. Compl., Exhibit B). Again, the Second Plan noted the 2020 federal census found that Ohio's population was 11,799,448, as of April 1, 2020. (*Id.*, p. 3). This meant Ohio's target house district would have 119,186 people per district and Ohio's senate district would have 357,558 people per district. (*See id.*). The Second Plan also made sure there was less than a 10% difference in population between house and senate districts. (*Id.*).

But while still following these standards, the Second Plan was slightly different from the First Plan. The Second Plan changed five House districts from the Redistricting Commission's First Plan from Republican-leaning to Democratic-leaving and changed three Senate districts from Republican-leaning to Democratic-leaning representing a greater than 6% total increase in the number of Democratic-leaving districts.

The Second Plan was also challenged. And as this latest challenge was considered, Ohio's key election deadlines began to pass. On February 2, 2022, for example, the deadline for partisan candidates to declare their candidacy passed. Yet there was no decision on the Second Plan.

6

### F. The Second Plan is rejected as more election deadlines pass.

After the deadline for partisan candidates to declare their candidacy for state legislative office passed, the Ohio Supreme Court issued another opinion. Despite the changes made by the Redistricting Commission, the Ohio Supreme Court sustained objections relating to the Redistricting Commission's Second Plan. *See, League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 2022-Ohio-342, ¶ 67.

The Ohio Supreme Court ordered the creation of a Third Plan. The Ohio Supreme Court's decision was issued on February 7, 2022, with an order to file an updated plan with the Ohio Secretary of State's office on February 17, 2022, and to file a copy of the Third Plan with the Court by 9:00 am on February 18, 2022.

But in the interim, another election deadline slipped away. The deadline for local Boards of Elections to certify the validity and sufficiency of partisan candidates' petitions passed on February 14, 2022.

### G. The Redistricting Commission declares impasse and cannot pass Third Plan.

The Redistricting Commission complied with the Ohio Supreme Court's order. (First Amend. Compl., ¶ 54). It met to consider a Third Plan. But the Redistricting Commission could not agree. (*Id.*, ¶ 55). It concluded during the meeting that an agreement could not be reached. Therefore, the Redistricting Commission declared "impasse," and determined a Third Plan would not be issued. (*Id.*, ¶¶ 56–57; ECF No. 8-3, Notice of Impasse, Exhibit C).

### H. The 2022 election is in jeopardy.

The 2022 election schedule is out the window. Multiple deadlines have been missed since the First Plan was adopted in September and then rejected. The deadline for partisan candidates to declare passed. The deadline for local election boards to certify partisan petitions passed. Looming ahead are the deadlines for write-in candidates (February 22), voter registration (April 4), and the

7

primary election (May 3), among others. And, because the Ohio Supreme Court cannot order the adoption of a plan, additional 2022 election deadlines will pass without this Court's involvement.

### I. Plaintiffs are either in outdated 2010 state legislative districts or no districts at all.

Plaintiffs are Ohio voters with either diluted votes or no votes at all. Much has changed in Ohio since 2010. Ohio's population grew by more than 250,000 people, with major changes across the state. But districts created in 2010 cannot capture these population changes. (First Amend. Compl., ¶ 61).

Mr. Gonidakis, Ms. Vanderkooi, and Ms. Smith live in Franklin County, which has gained more than 150,000 people since the 2010 census, and their respective cities have experienced more than 10% in population gains, diluting their votes within their voting districts. (*Id.*). The same is true for Ms. Parker, Mr. Kidd, and Ms. Conditt, whose areas (and therefore districts) have also grown exponentially in population. (*Id.*). On the other hand, areas in Ohio that have lost population, such as Scioto County, will have concentrated voting power, and create a greater disparity between the most populous and least populous legislative districts. (*Id.*).

As a result, Plaintiffs' districts (utilizing the 2010 legislative district maps), including House Districts 18, 19, 21, 52, 62, 68, 70, and 90 and Senate Districts 3, 4, 7, 14, 15, 16, 19, and 22, are malapportioned. (*Id.*, ¶ 62). And to adjust these districts, the remaining districts in Ohio must be adjusted too.

Alternatively, the 2010 state legislative districts have expired. (*Id.*, ¶ 64). The state legislative districts last a ten-year cycle. That cycle started in 2010 and has concluded. This leaves Plaintiffs without state legislative districts, and no way to participate in the upcoming election.

No matter if the districts are malapportioned or nonexistent, the ongoing uncertainty for the 2022 election cycle prevents voters, including Plaintiffs, from knowing their voting district,

8

engaging with candidates, holding representatives accountable, and associating or organizing with their favored candidates.

## II. STANDARD OF REVIEW

In determining whether to grant a preliminary injunction, a district court considers four factors: In deciding whether to grant a preliminary injunction, a court weighs four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction. *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2020); *see, Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). These factors "are not prerequisites, but rather are factors which the Court should balance." *Golden v. Kelsey-Hayes Co.,* 73 F.3d 648, 653 (6th Cir. 1996). These four factors are met here because Plaintiffs' fundamental rights are being denied, and there is no harm in securing the right to vote or associate.

## III. LAW AND ARGUMENT

Because Plaintiffs' constitutional right to vote has been violated and the four preliminary injunction factors favor Plaintiffs, this Court should issue an injunction and other appropriate relief that adopts the Second Plan, attached to the First Amended Complaint as Exhibit B.

### A. Plaintiffs are likely to succeed on the merits because their right to vote and right to associate has been denied.

Because Plaintiffs' votes are either diluted using the 2010 state legislative district maps or there are no maps at all, Plaintiffs' right to vote has been denied. Additionally, the uncertainty and lack of definitive maps have denied Plaintiffs' freedom to associate. For these reasons, Plaintiffs are likely to succeed on the merits, and this Court should grant a preliminary injunction.

1. **The state legislative districts are based on the 2010 census, so they are now malapportioned in violation of the U.S. Constitution.**

Because of the "one-person, one-vote" rule, using the 2010 census data for the 2022 election violates the Equal Protection Clause. *See, Evenwel v. Abbott*, 578 U.S. 54, 59, 136 S. Ct. 1120, 1124 (2016). As the U.S. Supreme Court recently explained, when drawing state legislative districts, the maximum population deviation between the largest and smallest districts is 10%. *Id.* (citing *Brown v. Thomson*, 462 U.S. 835, 842-843, 103 S. Ct. 2690, 77 L. Ed. 2d 214 (1983)). In fact, "[m]aximum deviations above 10% are presumptively impermissible." *Id.* Such deviations violate the Equal Protection Clause of the U.S. Constitution. *Id.* (citing *Reynolds v. Sims*, 377 U.S. 533, 568, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964)); *see also, Kopald v. Carr*, 343 F. Supp. 51, 52 (M.D. Tenn. 1972).

Here, the population in Plaintiffs' state legislative districts are more than 10% above the least populous state legislative districts, in violation of the Equal Protection Clause, so this Court should adopt the Second Plan. Plaintiffs' house and senate districts are based on based on 2010 decennial census. (First Amend. Compl., ¶ 61). Mr. Gonidakis, Ms. Vanderkooi, and Ms. Smith live in Franklin County, which has gained more than 150,000 people since the last census, and their respective cities have experienced more than 10% in population gains. (*Id.*). The same is true for Ms. Parker, Mr. Kidd, Ms. Conditt, whose areas have also experienced exponential population growth. (*Id.*). Conversely, other areas throughout the state have lost population. (*Id.*).

Because Ohio's population has changed, so too has the population in the state legislative districts. Double-digit growth in some areas and population losses in others means that the state legislative districts cannot be within 5% of the target population for a state legislative district. (*Id.*, ¶ 62). As a result, Plaintiffs' districts, including House Districts 18, 19, 21, 52, 62, 68, 70, and 90

and Senate Districts 3, 4, 7, 14, 15, 16, 19, and 22, dilute their vote in violation of the "one-person, one-vote" requirement.

This is not a surprise. Adhering to the one-person, one-vote requirement does not happen by accident. Instead, the First Plan and Second Plan consider the acceptable variance with mathematical precision. (First Amend. Comp., Exhibits A and B). Both plans use the same target number for the district size using the 2020 decennial census. (*Id.*). And both plans made sure that the population variance did not go 5% above or below that threshold. (*Id.*).

The problem is also not limited just to Plaintiffs. To fix Plaintiffs' state legislative districts, people across the state must be moved from one district to another. (*See id.*). These districts cannot be adjusted in vacuum. Instead, individuals must be moved in or out of these districts from districts across Ohio. A state-wide solution was recognized by the Redistricting Commission in the First Plan and the Second Plan. (*Id.*).

For these reasons, Plaintiffs' state legislative districts and Ohio's legislative districts generally violate the "one-person, one-vote" rule provided by the U.S. Constitution.

>        **2.      Alternatively, no state legislative districts exist so Plaintiffs cannot vote in violation of the U.S. Constitution.**

Alternatively, the lack of state legislative districts violate the U.S. Constitution because Plaintiffs cannot vote for their state representatives. The right to vote is a fundamental right, and the Equal Protection Clause and the Substantive Due Process Clause prohibit blanket disenfranchisement. *George v. Hargett*, 879 F.3d 711, 727 (6th Cir. 2018) (citing *Warf v. Bd. of Elections of Green Cty.*, 619 F.3d 553, 559 (6th Cir. 2010)); *see also, League of Women Voters v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008). In these instances, "federal court intervention may be appropriate" to avoid an unfair election. *Brunner*, 548 F.3d at 478 (citing *Griffin v. Burns*, 570 F.2d 1065, 1078-79 (1st Cir. 1971)).

Here, Plaintiffs have been disenfranchised by the lack of state legislative districts so this Court should adopt the Second Plan. (First Amend. Compl., ¶ 64). The state legislative districts expired in 2020. And the Redistricting Commission reached an impasse for the new state legislative districts. Without legislative districts, there is no election. Plaintiffs cannot vote in election that does not exist. It is a blanket disenfranchisement that violates the Equal Protection Clause and the Due Process Clause, and is such a fundamental violation that this Court should intervene.

### 3. Plaintiffs cannot freely associate with others in their district in violation of the U.S. Constitution.

Because Plaintiffs cannot associate with members of their state legislative districts, their constitutional rights are being violated. "The rights of political association and free speech occupy a similarly hallowed place in the constitutional pantheon." *Graveline v. Benson*, 992 F.3d 524, 535 (6th Cir. 2021) (citation omitted). Though the right to politically associate is not absolute, a severe restriction must be narrowly drawn to advance a state interest of compelling importance. *Kishore v. Whitmer*, 972 F.3d 745, 749 (6th Cir. 2020) (citation omitted).

Here, Plaintiffs cannot associate with members of their state legislative districts in violation of the U.S. Constitution. Plaintiffs' state legislative districts are either constitutionally malapportioned (and thus soon to changed) or do not exist at all. Either way, Plaintiffs cannot run for office, interact with other officeholders, learn about candidates, or interact with others in their state legislative districts about common issues. Moreover, this severe restriction has no compelling interest of state importance. Indeed, Plaintiffs' fundamental rights appear to be burdened for no reason at all. Accordingly, Plaintiffs' right to associate and engage in political discourse has been violated, and this Court should intervene.

### B. Because fundamental rights are being denied, the remaining preliminary injunction factors favor the adoption of the Second Plan.

As Plaintiffs' fundamental rights are being denied, the remaining preliminary injunction factors favor this Court adopting the Second Plan. No American right is more fundamental than the right to vote. The United States Supreme Court has repeatedly held that the U.S. Constitution *undeniably* protects the "right of all qualified citizens to vote, in state and federal elections" and, furthermore:

> A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, *Ex parte Yarbrough*, 110 U.S. 651, and to have their votes counted, *United States v. Mosley*, 238 U.S. 383. In *Mosley* the Court stated that it is 'as equally unquestionable that the right to have one's vote counted is as open to protection . . . as the right to put a ballot in a box.' 238 U.S., at 386.

*Reynolds v. Sims*, 377 U.S. 533, 554-555, 84 S. Ct. 1362, 1377-1378, 12 L. Ed. 2d 506, 523-524, (1964). This includes the right to not have votes diluted or discarded. *Id.* at 555 ("the right of suffrage can be denied by a debasement or dilution of the weight of a citizens vote just as effectively as by wholly prohibiting the free exercise of the franchise."); *see, Baker v. Carr*, 369 U.S. 186, 206 (1962) (finding voters who allege facts showing disadvantage to themselves have standing to sue.).

Because the right to vote is so fundamental, district courts may adopt a map to fix a constitutional violation. *See, Rucho v. Common Cause*, 139 S. Ct. 2484, 2495 (2019). Indeed, "there is a role for the courts" to resolve one-person, one-vote and other violations. *Id.* (citations committed); *see, e.g.*, *Kopald v. Carr*, 343 F. Supp. 51, 52 (M.D. Tenn. 1972). In *Kopald*, multiple plans were proposed by the legislative authority, including one with a population variance of 21%. *Id.* In response, the court adopted a modified plan that reduced the variance to 4% and maintained jurisdiction for one election cycle. *Id.* at 54 (citing *Ely v. Klahr*, 403 U.S. 108, 91 S. Ct. 1803, 29

13

L. Ed. 2d 352 (1971)); *see also, McConchie v. Scholz*, No. 21-cv-3091, 2021 U.S. Dist. LEXIS 201160, at *67 (N.D. Ill. Oct. 19, 2021) (ordering submission of proposed map to be considered by the court following Equal Protection Clause violation). Therefore, a court may modify state legislative cycles so that it complies with one-person, one-vote for at least one election cycle.

Here, this Court should adopt the Second Plan so that Plaintiffs' constitutional rights are no longer violated. Unlike this Court, the Ohio Supreme Court cannot intervene. It is prohibited by the Ohio Constitution from adopting a plan. *See* Ohio Constitution, Article XI, Section 9(D). Because the Redistricting Commission declared an impasse, without this Court's intervention, Plaintiffs' vote will be diluted by using the 2010 state legislative districts or otherwise denied.

Given Plaintiffs' constitutional right to vote (and an equal right to have their votes not diluted or discarded), Plaintiffs suffer irreparable harm if the 2010 legislative district maps are used because they live in districts where the population increased, which, in turn, dilutes their voting power. Alternatively, if Ohio has no maps at all, Plaintiffs have no ability to vote, and no election occurs. Adopting the Second Plan eliminates Plaintiffs' irreparable harm.

Adopting the Second Plan would not harm third parties. And unless this Court adopts the Second Plan, the 2022 election cycle deadlines will continue to pass without the state legislative district maps. Each missed deadline creeps closer to upending the May 3, 2022, primary election process.

Lastly, the public interest favors granting the adoption of the Second Plan because the public has interest in voting—either in undiluted districts or at all. Moreover, the validity of statewide elections strikes at the heart of America's representative democracy.

Thus, in addition to Plaintiffs establishing that they have a strong likelihood of success on the merits, the remaining injunctive factors favor Plaintiffs, and this Court should order the adoption of the Second Plan.

### C. This Court should provide notice to Chief Judge Jeffrey S. Sutton as required by 28 U.S.C. § 2284.

Because Plaintiffs challenge the constitutionality of the apportionment of a statewide legislative body, this Court should immediately notify Chief Judge Jeffrey S. Sutton of the Sixth Circuit Court of Appeals of this lawsuit. *See, Shapiro v. McManus*, 577 U.S. 39, 43, 136 S. Ct. 450, 454 (2015). Under 28 U.S.C. § 2284(a), when an action challenges the apportionment of any statewide legislative body, a "district court of three judges shall be convened . . . ." *Id.* Upon the filing of a "a request for three judges, the judge to whom the request is presented shall, unless he determines that three judges are not required, immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge." *Id.* at (b)(1). As the U.S. Supreme Court recently explained, "all the district judge must determine is whether the request for three judges is made in a case covered by §2284(a)—no more, no less." *Shapiro*, 577 U.S. at 44 (quotations of 28 U.S.C. § 2284(a)) omitted).

Here, this Court should send a letter to Chief Judge Jeffrey S. Sutton of the Sixth Circuit Court of Appeals indicating that a three-judge panel has been requested. This lawsuit challenges the constitutionality of the apportionment of a statewide legislative body under three theories: (1) the old statewide districts are malapportioned if used today; (2) in the alternative, no statewide legislative districts exist; and (3) freedom of association. (ECF No. 8, First Amend. Compl., ¶¶ 67–82). Given these allegations, Plaintiffs' case is covered by 28 U.S.C. § 2284(a). Additionally, Plaintiffs have requested a three-judge panel, so (b)(1) is also met. (*Id.*, ¶¶ 14, 87).

Therefore, this Court should notify Chief Judge Jeffrey S. Sutton of this request by letter, and file a copy of that letter on the docket. Furthermore, this request should happen "immediately" because the write-in candidate deadline expires today, and other election deadlines loom on the horizon. *See* 28 U.S.C. § 2284(b)(1) ("immediately notify the chief judge of the circuit").

### IV.    CONCLUSION

For all these reasons, Plaintiffs respectfully request that this Court:

i.   Declare that the current configurations of Ohio's state legislative districts (or lack thereof) violate the First and Fourteenth Amendments to the U.S. Constitution;

ii.  Permanently enjoin Defendant and all persons acting on his behalf or in concert with them from implementing, enforcing, or conducting any elections under Ohio's current state legislative districts;

iii. Establish a schedule that will enable the Court to adopt a timely enacted and lawful plan and implement the new plan for Ohio's state legislative districts, specifically the Second Plan;

iv.  Issue an order, as needed, staying the necessary election-related deadlines as they pertain to the state legislative districts pending this Court's implementation of interim redistricting plans; and

v.   Retain jurisdiction while Defendant enacts plans by this Court's deadline;

Respectfully submitted,

**Isaac Wiles & Burkholder LLC**

*/s/ Donald C. Brey*
Donald C. Brey (0021965)
Brian M. Zets (0066544)
Matthew R. Aumann (0093612)
Ryan C. Spitzer (0093515)

16

Two Miranova Place, Suite 700
Columbus, Ohio 43215
Tel: 614-221-2121; Fax: 614-365-9516
dbrey@isaacwiles.com
bzets@isaacwiles.com
maumann@isaacwiles.com
rspitzer@isaacwiles.com

*Attorneys for Plaintiffs Michael Gonidakis, Mary Parker, Margaret Conditt, Beth Ann Vanderkooi, Linda Smith, Delbert Duduit, Thomas W. Kidd, Jr., and Ducia Hamm*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that a copy of this motion and all other filings in this action have been served upon the adverse party's attorneys, Bridget Coontz, Ohio Attorney General's Office, bridget.coontz@ohioattorneygeneral.gov.

        */s/Donald C. Brey*
        Donald C. Brey (0021965)