IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GONIDAKIS, et al.,** | |
| Plaintiffs, | |
| v. | Chief Judge Algenon L. Marbley |
| **FRANK LAROSE,** | Case No. 2:22-cv-773 |
| Defendant, and | |
| **LEAGUE OF WOMEN VOTERS OF OHIO and A. PHILIP RANDOLPH INSTITUTE OF OHIO,** | |
| Intervenor-Defendants. | |

**INTERVENOR-DEFENDANTS' MOTION FOR STAY PENDING THE OUTCOME OF THE STATE REDISTRICTING PROCESS[1]**

Intervenor-Defendants respectfully move for a stay of this action, on federal deferral grounds, until such time when Ohio's redistricting proceedings have concluded. It would be inappropriate for *this* Court to hear this case at the present time, given the *ongoing* state redistricting and corresponding litigation pending before the Ohio Supreme Court. Based on principles of federalism, comity, and judicial efficiency, Intervenor-Defendants urge this Court to defer its adjudication of Plaintiffs' premature claims. A memorandum in support of this motion is filed herewith.

---

[1] Intervenor-Defendants submit this motion understanding that the Court has not yet granted their motion to intervene. Given that time is of the essence in this matter, however, this motion is respectfully submitted so that the Court can rule on it promptly should intervention be granted.

1

WHEREFORE, Intervenor-Defendants respectfully request that this Court grant their motion to stay the proceedings.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | /s/ Freda J. Levenson |
| Robert D. Fram | Freda J. Levenson (0045916) |
| COVINGTON & BURLING, LLP | *Counsel of Record* |
| Salesforce Tower | ACLU OF OHIO FOUNDATION, INC. |
| 415 Mission Street, Suite 5400 | 4506 Chester Avenue |
| San Francisco, CA 94105-2533 | Cleveland, OH 44103 |
| (415) 591-6000 | (614) 586-1972 x125 |
| rfram@cov.com | flevenson@acluohio.org |
|  |  |
| Sarah Suwanda | David J. Carey (0088787) |
| COVINGTON & BURLING, LLP | ACLU OF OHIO FOUNDATION, INC. |
| One CityCenter | 1108 City Park Avenue, Suite 203 |
| 850 Tenth Street, NW | Columbus, OH 43206 |
| Washington, DC 20001-4956 | (614) 586-1972 x2004 |
| (202) 662-6000 | dcarey@acluohio.org |
| ssuwanda@cov.com |  |
|  | Alora Thomas* |
| * *Pro hac vice* application forthcoming | Julie A. Ebenstein* |
|  | AMERICAN CIVIL LIBERTIES UNION |
|  | 125 Broad Street |
|  | New York, NY 10004 |
|  | (212) 519-7866 |
|  | athomas@aclu.org |
|  | jebenstein@aclu.org |
|  |  |
|  | *Counsel for Intervenor-Defendants* |

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GONIDAKIS, et al.,** | |
| Plaintiffs, | |
| v. | Chief Judge Algenon L. Marbley |
| **FRANK LAROSE,** | Case No. 2:22-cv-773 |
| Defendant, and | |
| **LEAGUE OF WOMEN VOTERS OF OHIO and A. PHILIP RANDOLPH INSTITUTE OF OHIO,** | |
| Intervenor-Defendants. | |

**INTERVENOR-DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR STAY PENDING THE OUTCOME OF THE STATE REDISTRICTING PROCESS**

I.     INTRODUCTION

Through this lawsuit, Plaintiffs ask a federal court to interrupt an ongoing redistricting process that is being carried out by the Ohio Redistricting Commission (the "Commission") under the supervision of the Ohio Supreme Court.  They do so notwithstanding a longstanding practice for federal courts to decline to act under these very circumstances.  Worse, they ask this Court to enact a General Assembly district plan that the Ohio Supreme Court invalidated under Article XI of the Ohio Constitution.  This Court should decline Plaintiffs' improper invitation and stay these proceedings.

The simple fact is that despite claiming "impasse" on February 17, 2022, within days the Commission reversed course.  On February 22, 2022, members of the Commission,[2] including Governor DeWine, affirmed that the Commission has "an obligation to follow the Constitution," "an obligation to follow the court orders," and "an obligation to produce a map."[3]  The next day, on February 23, 2022, the Commission confirmed its about-face in writing.  It did so in its response to the Ohio Supreme Court's order to show cause as to why the Commission's members should not be held in contempt due to its alleged "impasse" on February 17, 2022.  In that submission, the Commission reiterated its position from the day before, stating that "the Commission is *presently continuing its efforts to pass a compliant map*."  *See* The Ohio Redistricting Comm'ns Resp. to Order to Show Cause Pursuant to Ct.'s 2/18/22 Order, at 1, *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, No. 2021-1193 (Ohio Feb. 23, 2022) (emphasis added).

---

[2] Currently, the Commission is comprised of the following members:  Speaker of the House Robert R. Cupp (Co-Chair), Senator Vernon Sykes (Co-Chair), Senate President Matt Huffman, House Minority Leader C. Allison Russo, Governor Mike DeWine, Auditor Keith Faber, and Secretary of State Frank LaRose.

[3] Ex. A (Tr. of Feb. 22, 2022 Ohio Redistricting Comm'n Hr'g), at 00:05:08.

To this day, the Ohio Supreme Court remains actively engaged. On February 24, following the Commission and individual Commissioners' responses to the Ohio Supreme Court's order to show cause, it directed the individual members of the Commission to appear in person at a hearing on March 1, 2022, at 10:00 am.

Plaintiffs' premature malapportionment claims—predicated on a not-yet-complete state-redistricting process—do not justify federal intrusion upon Ohio's ongoing redistricting deliberations. To the contrary, the U.S. Supreme Court has ruled that federal intervention is improper when reapportionment (also known as redistricting) is before a state court, as it is here. *Growe v. Emison*, 507 U.S. 25, 33 (1993) ("In the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself."). In accordance with *Growe*, this Court should stay this lawsuit until the redistricting process and corresponding state-court litigation has been resolved.

## II.     FACTUAL BACKGROUND

### A.     The Ohio Constitution expressly vests exclusive and original jurisdiction over partisan gerrymandering claims in the Ohio Supreme Court.

In 2011, the Ohio General Assembly enacted a heavily gerrymandered plan that allowed Republicans to control far more seats than their statewide vote share. *See League of Women Voters of Ohio v. Ohio Redistricting Comm'n,* --- N.E.3d ----, 2022-Ohio-65, 2022 WL 110261, ¶ 179 (Ohio Jan. 12, 2022) (Brunner, J., concurring). Following that enactment, a group of Ohio voters challenged Ohio's legislative plan on the basis of partisan unfairness, to which the Ohio Supreme Court held that it lacked the power to act because the Ohio Constitution, in 2011, did not explicitly require political neutrality. *Wilson v. Kasich*, 981 N.E.2d 814, 820 (Ohio 2012).

In response, on November 3, 2015, Ohio voters, by an overwhelming margin of 71.5% to 28.5%, amended the Ohio Constitution by adding express constitutional commands that legislative plans not be drawn "to favor or disfavor a political party," and that the distribution of seats "shall correspond closely to the statewide preferences of the voters of Ohio." Ohio Const. art. XI, §§ 6(A)–(B). The express purpose of the constitutional amendment was to "[e]nd the partisan process for drawing Ohio House and Senate districts, and replace it with a bipartisan process with the goal of having district boundaries that are more compact and politically competitive." Ohio Sec'y of State, Issue 1 Ballot Language (Nov. 2015), https://bit.ly/3ElgrPY.

Notably, Article XI of the Ohio Constitution, as amended, gives the Ohio Supreme Court a central role in supervising the enactment of any legislative plan. It provides the Ohio Supreme Court with exclusive and original jurisdiction over all actions arising under Article XI, and grants it the authority to invalidate "any general assembly district plan made by the Ohio redistricting commission." Ohio Const. art. XI, §§ 9(A)–(B); *League of Women Voters of Ohio*, 2022 WL 110261, ¶ 69. Moreover, in the event that the Ohio Supreme Court finds a plan to be constitutionally defective, it has the express authority to order the Commission to "convene, and ascertain and determine a general assembly district plan in conformity with such provisions of this constitution as are then valid." Ohio Const. art. XI, § 9(B).

**B.  Ohio's redistricting process—and the corresponding state-court litigation—remains ongoing.**

**1.  The Ohio Supreme Court invalidated two district plans enacted by the Commission.**

Shortly after midnight on September 16, 2021, the Commission voted along strict party lines to enact a General Assembly district plan to be in effect for the next four years. A week later, on September 23, 2021, Intervenor-Defendants filed a complaint (as petitioners) in the Ohio Supreme Court, alleging that the Commission's district plan violated Article XI of the Ohio

4

Constitution. Specifically, Intervenor-Defendants alleged that the Commission violated Sections 6(A) and 6(B) of Article XI by enacting a plan that (i) primarily favored the Republican Party, and (ii) failed to correspond closely to the statewide preferences of the voters of Ohio. *See* Compl. ¶ 91, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Sept. 23, 2021).[4]

Following expedited discovery, full merits briefing, and oral argument, the Ohio Supreme Court, on January 12, 2022, struck down the Commission's plan. In so doing, it carefully examined (and affirmed) its authority to remedy a partisan gerrymander, *League of Women Voters of Ohio,* 2022 WL 110261, ¶¶ 64–75, ordered the Commission to reconvene to adopt a new plan within ten days of the Court's decision, and expressly retained jurisdiction to review the constitutionally compliant plan once adopted by the Commission, *id.* ¶ 137.

On January 22, 2022, the Commission adopted a revised plan, to which Intervenor-Defendants, three days later, lodged objections, explaining that the revised plan violated Article XI, Sections 6(A) and 6(B). *See* Pet'rs' Obj. to Ohio Redistricting Comm'n's Revised Map, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Jan. 25, 2022).[5]

Roughly two weeks later, on February 7, 2022, the Ohio Supreme Court sustained Intervenor-Defendants' objections and once again struck down the Commission's plan for "violat[ing] Article XI, Sections 6(A) and 6(B) of the Ohio Constitution." *League of Women Voters of Ohio v. Ohio Redistricting Comm'n.*, --- N.E.3d ----, 2022-Ohio-342, 2022 WL 354619, ¶ 3 (Ohio Feb. 7, 2022). The Ohio Supreme Court then ordered the Commission to adopt a new plan "no later than February 17, 2022," to be filed "by 9:00 a.m. on February 18,

---

[4] The *League of Women Voters* Petitioners' complaint is publicly available on the Ohio Supreme Court's docket, https://www.supremecourt.ohio.gov/pdf_viewer/pdf_viewer.aspx?pdf=910299.pdf.

[5] Petitioners' filing of objections is publicly available on the Ohio Supreme Court's docket, https://www.supremecourt.ohio.gov/pdf_viewer/pdf_viewer.aspx?pdf=918621.pdf.

5

2022." *Id.* ¶ 68. Once again, the Ohio Supreme Court, expressly retained jurisdiction for the purpose of reviewing the forthcoming plan. *Id.*

### 2. The Commission failed to enact a plan by the court-ordered February 17, 2022 deadline.

It was not until the eve of the Ohio Supreme Court's February 17 deadline that the Commission finally convened for the first time. And it did not enact any plan. It failed to do so in spite of Governor DeWine's statement, at the February 17 hearing, that "[w]e have an obligation to follow the Ohio Constitution. We have an obligation to follow the Court order. Whether we like it or not, whether we agree with it or not. And . . . *we have an obligation to produce a map*."[6] Following that meeting, the majority Commission members filed a conclusory "Notice of Impasse" with the Ohio Supreme Court on February 18, 2022. *See* Notice of Impasse of Ohio Redistricting Comm'n, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Feb. 18, 2022).

In response, that same day, the Ohio Supreme Court, *sua sponte*, ordered the Commission to show cause why its members should not be held in contempt. *See 02/18/2022 Case Announcements #2*, *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, 2022-Ohio-498 (Ohio Feb. 18, 2022).

### 3. The Commission reversed course and publicly committed to continue the redistricting process.

Four days after the Court's order to show cause, the Commission, on February 22, 2022, convened. In that meeting, Governor DeWine repeated his prior statements from the February 17 hearing, exhorting the Commission to follow "the Constitution," "court orders," and "the rule

---

[6] Ex. B (Part 2 of Tr. of Feb. 17, 2022 Ohio Redistricting Comm'n Hr'g), at 00:21:02 (emphasis added).

of law," and explaining that "produc[ing] a map . . . is what we have an obligation to do."[7] Senate President Huffman echoed Governor DeWine's statement, and Auditor Faber subsequently moved to reconvene the Commission on February 23 or 24, 2022 to discuss proposed General Assembly plans—including the Rodden III Plan submitted by Intervenor-Defendants as petitioners in the state action.[8] The Commission then scheduled hearings on proposed plans for February 23 and 24 of this week.[9]

On February 23, 2022, the Commission confirmed in writing that it was working towards passing a plan. In its response to the Ohio Supreme Court's order to show cause, it declared that "the Commission is presently continuing its efforts to pass a compliant map." *See* Ohio Redistricting Comm'ns Resp. to Order to Show Cause Pursuant to Ct.'s 2/18/22 Order, at 1, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Feb. 23, 2022). It highlighted that the Commission was acting urgently to continue its work, stating that it "is meeting today [February 23, 2022] and again tomorrow [February 24, 2022], and a new plan could be approved in the coming days." *Id.* at 1. The Commission emphasized that it had "not stopped attempting to adopt a new compliant plan," and stated "that the best approach is to allow this work to continue in the coming days." *Id.* at 15.

The position of the Commissioners could not have been clearer. The responses filed by Commissioners in their individual capacities only emphasized the ongoing nature of the Commission's work.

---

[7] Ex. A (Tr. of Feb. 22, 2022 Ohio Redistricting Comm'n Hr'g), at 00:05:08.
[8] *Id.* at 00:06:10, 00:06:18.
[9] *Id*. at 00:06:18, 00:07:43.

- Both the Speaker and President stated that they "anticipate that the Commission will be in a position to vote on a new plan *this week*."[10]

- Auditor Faber and Secretary LaRose confirmed that they "do not believe that the Ohio Redistricting is at an impasse," noting that "Auditor Faber pushed for, and the co-chairs agreed, that while the Commission is reconstituted to work on passing a Congressional redistricting plan it will also continue to work toward passing a General Assembly redistricting plan."[11]

- Governor DeWine reiterated his strong view that the Commission must produce a plan.[12]

### C. Plaintiffs' case is based upon demonstrably inaccurate premises and seeks the enactment of an invalidated plan.

Plaintiffs jumped the gun. On February 18, 2022 they sought a federal interruption of the ongoing redistricting efforts of the Commission and the Ohio Supreme Court. They allege that the "current state legislative districts (or lack thereof) violate the U.S. Constitution." Pls.' Am. Compl. ¶ 6. But their complaint is based on two inaccurate premises.

First, they prematurely declare that there is a "lack" of current districts—wholly ignoring the *reality* that the redistricting process remains ongoing and subject to the Ohio Supreme Court's active supervision. *Id.* ¶ 5. Alternatively, Plaintiffs assert that the state legislative plan that was drawn in 2011 remains the "current" plan, *id.*—even as the Commission endeavors to pass a new plan as early as this week.

---

[10] Resp. to Feb. 18, 2022 Show Cause Order of Ohio Senate Pres. Matt Huffman and Ohio House Speaker Robert R. Cupp, at 1, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Feb. 23, 2022) (emphasis added).

[11] Sec'y of State Frank LaRose and Auditor Keith Faber's Resp. to Order to Show Cause Pursuant to Ct.'s 2/18/22 Order, at 8–9, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Feb. 23, 2022).

[12] Gov. Mike DeWine's Resp. to Order to Show Cause Pursuant to Ct.'s 2/18/22 Order, at 1, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Feb. 23, 2022).

8

Under these inaccurate premises, Plaintiffs brazenly ask this Court to "adopt the Second Plan previously adopted by the Redistricting Commission." *Id.* ¶ 6. Put simply, Plaintiffs seek an end run in federal court around the ongoing state-redistricting process by asking this Court to reinstate the very plan that the Ohio Supreme Court invalidated as unconstitutional on February 7, 2022, even as the Commission currently works to enact a new one.

### III.    ARGUMENT

The Supreme Court expressly requires "federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." *Growe*, 507 U.S. at 33. That holding is dispositive here, where the Commission continues to take up its state-constitutional task of enacting a valid district plan *and* the Ohio Supreme Court continues to oversee that redistricting process.

And even if the Commission were to reach an actual impasse—which it assuredly has not at this point—deferral would still be appropriate. The Ohio Constitution expressly vests the power to oversee redistricting in the Ohio Supreme Court, *see* Ohio Const. art. XI, § 9, and deferral by the federal court is required in the face of a state *judiciary's* supervision of redistricting, *see Growe*, 507 U.S. at 33; *see also Scott v. Germano*, 381 US. 407, 409 (1965) ("The power of the *judiciary of a State* to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the States in such cases has been specifically encouraged.") (emphasis added). Accordingly, Intervenor-Defendants respectfully submit that a stay of these proceedings is warranted.

      **A.    The Commission has not reached an impasse, and therefore must be allowed to complete its redistricting.**

"[T]he Constitution leaves with the States primary responsibility for apportionment of their . . . state legislative districts." *Growe*, 507 U.S. at 34; *see also Chapman v. Meier*, 420 U.S.

9

1, 27 (1975) ("We say once again what has been said on many occasions: reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court."). "Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Growe*, 507 U.S. at 34.

There is no evidence that the State is failing to perform its duty. Days after the Commission failed to enact a plan on February 17, 2022, the Commission, on February 22, 2022, convened and appeared to walk back its claims of "impasse." Notably, Governor DeWine made the following remarks:

> I want to return, if we could, to the issue of legislative district lines and want to repeat what I said at our last session. And that is that *we have an obligation to follow the Constitution. We have an obligation to follow the court orders, the two court orders. And finally, we have an obligation to produce a map*. This is, I think, a question of following the law, the rule of law, respect for law and I again would want to state that that's where we should head. It's my understanding that we have some progress being made on that, but . . . I just want to state again publicly, this is what we have an obligation to do. *We have an obligation to produce a map and we need to do that forthwith*.

Ex. A (Tr. of Feb. 22, 2022 Ohio Redistricting Comm'n Hr'g), at 00:05:08 (emphases added).

As set forth above, the other Commissioners and the Commission as a whole heeded Governor DeWine's admonition. The Commission reversed course, and has committed to seeing the redistricting process through. The Commission's February 23, 2022 response to the Ohio Supreme Court's order to show cause made this point in unequivocal terms. In its filing, the Commission emphasized that it has "not stopped attempting to adopt a new compliant plan," and "that the best approach is to allow this work to continue in the coming days." *See* Ohio Redistricting Comm'ns Resp. to Order to Show Cause Pursuant to Ct.'s 2/18/22 Order, at 15, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Feb. 23, 2022).

There is no doubt that the Commission is continuing its work as mandated by the Ohio Constitution. The plain text of Article XI, which governs Ohio's redistricting, defines the role that the Commission must play. And under Ohio law, members of the Commission "are charged with drawing a plan that inures to the benefit of not just one political party, not just one constituency, but of Ohio as a whole." *League of Women Voters of Ohio*, 2022 WL 354619, ¶ 48.

Recent events make clear that the Commission is not yet done. To the contrary, the Commissioners have agreed to go back to the drawing board. Given the Commission's ongoing efforts to enact a new plan, *Growe* and its progeny require deferral by this Court. Indeed, the iterative process in which the Commission is engaging is precisely the sort of state-driven redistricting that the Supreme Court instructed federal courts neither to obstruct nor impede. *See Growe*, 507 U.S. at 34; *see also Rice v. Smith*, 988 F. Supp. 1437, 1439 (M.D. Ala. 1997) ("[I]n the reapportionment context, when parallel State proceedings exist, the decision to refrain from hearing the litigant's claims should be the routine course."). Accordingly, the Court should stay this case until the Commission completes its redistricting process.

**B.       Even if the Commission fails to enact a district plan, *Growe* requires this Court to defer to the Ohio Supreme Court's active adjudication over the redistricting process.**

Should the Commission fail to enact a district plan, the Ohio Supreme Court's active oversight of the Commission's efforts would still warrant deferral by this Court. Not only does the Ohio Constitution vest original jurisdiction in the Ohio Supreme Court, *see* Ohio Const. art. XI, § 9, but the U.S. Supreme Court has expressly held that respect for state redistricting processes extends to state courts, not just state legislatures. Specifically, the Court recognized that federal judges must "defer consideration of disputes involving redistricting where the State, through its legislative *or judicial branch*, has begun to address that highly political task itself."

11

*Growe*, 507 U.S. at 33 (emphasis added). In reiterating the federal courts' need to defer, the Supreme Court made clear that "state courts have a significant role in redistricting." *Id.*; *see also Germano*, 381 U.S. at 409 ("The power of the *judiciary of a State* to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the States in such cases has been specifically encouraged.") (emphasis added).

These principles apply with particular force here, where (i) Section 9 of the Ohio Constitution gives the Ohio Supreme Court a robust role in supervising the work of the Commission in the redistricting process; (ii) Section 6 the Ohio Constitution provides the Ohio Supreme Court with specific standards under which it is to review unconstitutional partisan gerrymander; and (iii) Ohio's current redistricting process remains under the active supervision of the Ohio Supreme Court.

The Ohio Supreme Court's exercise of authority under the Ohio Constitution is very much in evidence here. It has repeatedly demonstrated that it is committed to resolving the pending redistricting conflict and securing a new, constitutionally compliant plan. In the first instance, the Ohio Supreme Court allowed the parties in the state-court proceeding to engage in expedited discovery and entertained full merits briefing, evidence submission, and oral argument, before issuing a 56-page opinion on January 12, 2022, striking down the Commission's first-enacted plan. *See League of Women Voters of Ohio*, 2022 WL 110261.

Following the enactment of a revised plan on January 22, 2022, the Supreme Court then waded through the parties' expedited briefing on the revised plan for a second time. It then (on February 7, 2022) invalidated the second plan enacted by the Commission—issuing a carefully crafted opinion that ordered the Commission to enact a plan within ten days. When the

Commission failed to comply with the Court's February 7 order and temporarily declared an "impasse," the Ohio Supreme Court immediately issued an order to show cause why the Commission should not be held in contempt. And following receipt of the responses of the Commission and individual Commissioners to the order to show cause, the Ohio Supreme Court directed all of the individual members of the Commission to appear in person at a court hearing on March 1, 2022. *2/24/2022 Case Announcements #3*, *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, 2022-Ohio-518 (Ohio Feb. 24, 2022).

The Ohio Supreme Court's supervision clearly has had a material effect. Just five days after initially declaring an "impasse," the Commission stated that it is indeed working on a new plan, emphasizing the importance of allowing that work to continue, and began holding hearings.

Under these circumstances, Plaintiffs cannot plausibly deny that the enactment of a constitutional plan is ongoing, and also that it is squarely before the Ohio Supreme Court. Accordingly, *Growe*'s holding that "federal judges" must "defer consideration of disputes involving redistricting where the State, through its . . . *judicial branch* . . . has begun to address that highly political task itself," 507 U.S. at 33, is dispositive here.

### IV. CONCLUSION

For the aforementioned reasons, Intervenor-Defendants respectfully request that this Court stay these proceedings, until such time as is appropriate based on the resolution of the state-court proceedings presently before the Ohio Supreme Court.

13

<div style="display: flex;">

<div>
Robert D. Fram
COVINGTON & BURLING, LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-6000
rfram@cov.com

Sarah Suwanda
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
ssuwanda@cov.com

\* *Pro hac vice* application forthcoming
</div>

<div>
Respectfully submitted,

*/s/ Freda J. Levenson*
Freda J. Levenson (0045916)
  *Counsel of Record*
ACLU OF OHIO FOUNDATION, INC.
4506 Chester Avenue
Cleveland, OH 44103
(614) 586-1972 x125
flevenson@acluohio.org

David J. Carey (0088787)
ACLU OF OHIO FOUNDATION, INC.
1108 City Park Avenue, Suite 203
Columbus, OH 43206
(614) 586-1972 x2004
dcarey@acluohio.org

Alora Thomas\*
Julie A. Ebenstein\*
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street
New York, NY 10004
(212) 519-7866
athomas@aclu.org
jebenstein@aclu.org

*Counsel for Intervenor-Defendants*
</div>

</div>

14

## CERTIFICATE OF SERVICE

  I , Freda J. Levenson, hereby certify that on this 24th day of February, 2022, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Southern District of Ohio, Eastern Division via the ECF system, which will send notification of such filing to all counsel of record.

                   */s/ Freda J. Levenson*
                    Freda J. Levenson (0045916)
                   *Counsel for Intervenor-Defendants*