UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GONIDAKIS**, *et al.*, : | |
| : | |
| Plaintiffs, : | Case No. 2:22-cv-0773 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| **OHIO REDISTRICTING** : | Magistrate Judge Elizabeth P. Deavers |
| **COMMISSION**, *et al.*, : | |
| : | |
| Defendants. : | |

## ORDER ON MOTIONS TO INTERVENE

This matter is before the Court on five Motions to Intervene (ECF Nos. 3, 6, 7, 12, 34) filed by a variety of Ohio voters, legislators, and advocacy groups. For the reasons that follow, the Motions to Intervene are **GRANTED**. The Simon Parties' Motion to Object *Instanter* (ECF No. 51) is **DENIED**.

### I. BACKGROUND

Plaintiffs allege that Ohio's state legislative map is unconstitutionally malapportioned, in violation of the Fourteenth Amendment to the United States Constitution, because it has not been updated to reflect population changes in the 2020 Census; and that the resultant delay and uncertainty in the state's redistricting process has deprived Plaintiffs of First Amendment associational freedoms. (ECF No. 8). The Amended Complaint asks the Court to declare the current legislative districts unconstitutional; permanently enjoin the Ohio Secretary of State from conducting elections and related activity under the current legislative districts; implement the second proposed map of the Ohio Redistricting Commission (hereinafter, the "Commission") that the Ohio Supreme Court recently rejected; stay any election-related deadlines; and retain jurisdiction while such plans are enacted. (*Id.* at 15).

Five groups have moted to intervene, summarized as follows:

1. The League of Women Voters of Ohio and the A. Philip Randolph Institute of Ohio (the "LWVO Parties") moved to intervene as Defendants on February 20. (ECF No. 3). These organizations challenged the Commission's maps in state court, and their lawsuit is one the consolidated cases now before the Ohio Supreme Court.

2. Vernon Sykes and Allison Russo moved to intervene as Defendants, also on February 20. (ECF No. 6). Sykes and Russo are Democratic state legislators and members of the Commission, and they have opposed the Commission's maps in litigation before the Ohio Supreme Court.

3. Kenneth Simon, Lewis Macklin, and Helen Youngblood (the "Simon Parties") moved to intervene as Plaintiffs on February 21. (ECF No. 7). These individuals filed an older, separate case in the Northern District of Ohio (Case No. 4:21-cv-2267), challenging the Commission's redistricting plans on grounds of racial gerrymandering.

4. Bria Bennett, Regina Adams, Kathleen M. Brinkman, Martha Clark, Susanne Dyke, Meryl Neiman, Holly Oyster, Constance Rubin, and Everett Totty (the "Bennett Parties") moved to intervene as Plaintiffs on February 22. (ECF No. 12). These individuals challenged the Commission's maps in state court, and their lawsuit is one the consolidated cases now before the Ohio Supreme Court.

5. The Ohio Organizing Collaborative; the Council on American-Islamic Relations, Ohio; the Ohio Environmental Council; Samuel Gresham, Jr.; Ahmad Aboukar; Mikayla Lee; Prentiss Haney; Pierrette Talley; and Crystal Bryant (the "OOC Parties") moved to intervene as Plaintiffs on February 24. (ECF No. 34). These individuals challenged the

2

Commission's maps in state court, and their lawsuit is one the consolidated cases now before the Ohio Supreme Court.

Plaintiffs have opposed intervention by the Simon Parties (ECF No. 20) and by Sykes and Russo (ECF No. 50). The remaining intervenors are unopposed. The Court will consider these Motions together.

## II. LAW AND ANALYSIS

The Motions seek either intervention as of right under Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, permissive intervention under Rule 24(b). Intervention as of right requires a timely motion by a movant who:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing Parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). Movants must establish all elements of the four-part test: "1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing Parties will not adequately represent the applicant's interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999)). "Each of these elements is mandatory, and therefore failure to satisfy any one of the elements will defeat intervention under the Rule." *Id.* (citing *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005)).

Permissive intervention under Rule 24(b)(1) enables a court, in its discretion, to allow intervention on a timely motion by a movant who "has a claim or defense that shares with the main action a common question of law or fact." If the motion is timely and there is at least one common question of law or fact, the Court considers whether intervention would cause undue delay or

3

prejudice to the original Parties, and any other relevant factors. Fed. R. Civ. P. 24(b)(3); *J4 Promotions, Inc. v. Splash Dogs, LLC*, 2010 WL 1839036, at *1 (S.D. Ohio May 3, 2010) (citing *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997)).

A second variety of permissive intervention under Rule 24(b)(2) applies to "a federal or state governmental officer or agency," where their "claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order." Again, the Court must consider delay or prejudice before granting this type of intervention. Fed. R. Civ. P. 24(b)(3).[1]

### A. Motions by State-Court Plaintiffs

Of the five sets of proposed intervenors, Plaintiffs oppose only two. The other three sets—the LWVO Parties, Bennett Parties, and OOC Parties—include non-profits groups and individual Ohio voters, all of whom are Parties in the state redistricting cases currently before the Ohio Supreme Court. (ECF Nos. 3, 12, 34). *See also League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, 2022 WL 110261 (Ohio Jan. 12, 2022); *League of Women Voters of Ohio v. Ohio Redistricting Comm'n.*, 2022 WL 354619 (Ohio Feb. 7, 2022). While these Motions are unopposed, the Court nonetheless will evaluate their merits.

Each intervenor alleges it is entitled to intervention as of right under Federal Rule of Civil Procedure 24(a), or, in the alternative, permissive intervention under Rule 24(b). The grounds presented, however, plainly favor permissive intervention. In light of this conclusion, the Court need not consider the alternative motion for intervention as of right. *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, *4 (S.D. Ohio Aug. 26, 2005) ("When a party has moved for intervention as of right, but the facts more appropriately suggest that permissive intervention might

---

[1] Only Sykes and Russo move to intervene under this rule, as an alternative ground to Rules 24(a)(2) or (b)(1). (ECF No. 6 at 3).

be granted . . . the Court is free to consider [] permissive intervention[.]"); *see also Buck v. Gordon*, 959 F.3d 219, 222–23 (6th Cir. 2020).

### 1. Timeliness

The unopposed intervenors assert their motions are timely, particularly given the minimal time elapsed between their filings and Plaintiffs' Complaint—four business days at the longest. (*See* ECF No. 3 at 8; No. 12 at 8; No. 34 at 6). Moreover, they emphasize that, at the time of filing, no responsive pleadings had been filed. (*Id.*).

Courts in this Circuit look to the "totality of the circumstances" in determining timeliness. *Davis v. Lifetime Cap., Inc.*, 560 F. App'x 477, 490 (6th Cir. 2014). While there is no absolute amount of time that makes a motion untimely, permissive intervention is inappropriate where the circumstances show the proposed intervenor should have filed earlier. *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018). No such concern exists here. As detailed above, these intervenors filed their respective motions within one week of Plaintiffs initiating this action. Courts in this District have viewed similar motions as timely. *See, e.g.*, *Blankenship v. Blackwell*, 341 F. Supp. 2d 911, 918 (S.D. Ohio 2004) (motion filed one day after action began was timely). Moreover, as detailed below, there is little risk of undue delay or prejudice.

### 2. Common Question of Law or Fact

Pursuant to Rule 24(b), permissive intervention is appropriate if the motion is timely and the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." The unopposed intervenors propose to raise claims they contend will squarely address the factual and legal premise of this case, namely the constitutionality of Ohio's existing legislative map and those proposed by the Commission. (*See* ECF No. 3 at 11; No. 12 at 11–12; No. 34 at 8). Furthermore, these intervenors argue they share a common question of law

with the existing Plaintiffs as to the appropriate remedy in this case and the necessity of a three-judge panel. (*Id*.). In support of this position, the unopposed intervenors highlight the Wisconsin case, *Hunter v. Bostelmann*, where Parties in the state-court redistricting cases were granted permissive intervention in the accompanying federal action. 2021 WL 4206654, at *1 (W.D. Wis. Sept. 16, 2021).

Upon review of the unopposed intervenors' proposed Complaints (ECF Nos. 3-1, 12-1, 34-1), the Court finds sufficiently common questions of both law and fact to merit permissive intervention. Plaintiffs ask this Court to declare Ohio's current legislative maps unconstitutional and to adopt the Commission's second plan. (ECF No. 8 ¶ 6). A common question of law surrounds the constitutionality of this second plan, as the unopposed intervenors argued in the ongoing state-court action. Further, a common question of fact exists as to whether the state-court proceedings have reached an impasse, with Plaintiffs and the unopposed intervenors taking opposite positions. Accordingly, as the unopposed intervenors are not seeking to litigate an issue "entirely tangential to the relevant question in the original lawsuit," common questions of both law and fact exist, and permissive intervention is appropriate. *Kirsch v. Dean*, 733 F. App'x 268, 279 (6th Cir. 2018).

### 3. Undue Delay or Prejudice

While the decision to allow intervention is committed to the Court's discretion, it must consider "whether the intervention will unduly delay or prejudice the adjudication of the original Parties' rights." Fed. R. Civ. P. 24(b)(3). The unopposed intervenors argue there is no such risk, given the nascent stage of this litigation as well as their involvement in the ongoing state-court litigation. (*See* ECF No. 3 at 12; No. 12 at 12; No. 34 at 8). To the latter point, these intervenors argue it is *they* who will suffer prejudice absent intervention, as they will be denied the opportunity to vindicate interests which are common to both sets of cases. (*Id*.).

The Court concurs there is no risk of undue delay or prejudice. The unopposed intervenors are "not attempting to inject wholly [] unnecessary, or irrelevant issues into this litigation[,]" nor are they raising unseen or unanticipated defenses. *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 765 (E.D. Mich. 2020); *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018). Further, these intervenors filed their respective motions at the earliest possible stage of litigation—no more than four business days after the Complaint was filed. Ultimately, the Court finds the unopposed intervenors are "in a strong position to participate in all stages of this litigation, virtually from inception." *Id*.

Given the foregoing analysis, this Court finds the LWVO Parties, Bennet Parties, and OCC Parties all are entitled to permissive intervention under Rule 24(b)(1). Accordingly, their unopposed Motions (ECF Nos. 3, 12, 34) are **GRANTED**.

### B. Motion by Racial Gerrymandering Plaintiffs

The Simon Parties move to intervene as of right under Rule 24(a)(2), or permissively under Rule 24(b)(1). (ECF No. 7 at 4, 6). The Court analyzes this Motion under intervention as of right. Given its ruling, as will be discussed, "the Court need not consider the alternative motion for permissive intervention under Rule 24(b)." *Blankenship*, 341 F. Supp. 2d at 918.

The Simon Parties argue that their Motion is timely; that they have a significant interest in the litigation; that their interest might be impaired by this Court's disposition of the case; and that their interest is inadequately represented by existing parties. (ECF No. 7 at 5–6). As to the latter three factors, the Simon Parties assert that they alone have raised the issue of "the racially discriminatory impact of the proposed plans." (*Id.*).

Plaintiffs respond by attacking just one of the required factors for intervention as of right: that the Simon Parties do not "have a substantial legal interest in the subject matter of the case."

7

(ECF No. 20 at 6). Specifically, because the Simon Parties' claims concern the *first* map approved by the Ohio Redistricting Commission, Plaintiffs maintain there is no overlap with their own grievances of having *no* approved map. (*Id.*). This is true, according to Plaintiffs, even though Senate District 33 (the subject of the Simon Parties' Northern District case) is the same under the Commission's first and second plans. (*Id.*). Plaintiffs argue that the Simon Parties challenged the procedures for adopting Senate District 33 under the first map, but not the second—which Plaintiffs seek to have this Court institute. (*Id.*). Therefore, Plaintiffs state, the legal claims of the Simon Parties are necessarily distinct from theirs. (*Id.*).

It should be noted that "[i]n the Sixth Circuit, the standard for intervention as a matter of right is lenient. An intervenor does not need the same standing to intervene as is required to initiate a lawsuit." *Zeeb Holdings, LLC v. Johnson*, 338 F.R.D. 373, 376 (N.D. Ohio 2021) (citing *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991)). Additionally, an intervenor "need not have a 'specific legal or equitable interest' to qualify for intervention under Rule 24(a)(2)," which is "'broadly construed in favor of potential intervenors.'" *Id.* (quoting *Purnell*, 925 F.2d at 948, 950). With this standard in mind, the Court will consider the four factors for intervention as of right.

### 1. Timeliness

The Sixth Circuit has held that "[t]imeliness is to be determined from all the circumstances," including:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his or her interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*United States v. City of Detroit*, 712 F.3d 925, 930–31 (6th Cir. 2013) (citing *Grubbs v. Norris*, 870 F.2d 343, 345–46 (6th Cir.1989)).

8

The Simon Parties argue this point unopposed, asserting they meet all five timeliness considerations. (ECF No. 7 at 5). The Simon Parties focus on just two considerations: the point to which the suit has progressed, and the prejudice inquiry. First, they note that they filed their Motion to Intervene a mere three days after Plaintiffs initiated this case. (*Id.*). Second, they argue that the original parties will not be prejudiced because the case is in such an early stage. (*Id.*).

The Court finds that the timeliness requirement is satisfied. First, as the Simon Parties note, this case was filed only a few days before their Motion. While "[t]he mere passage of time . . . is not particularly important to the progress-in-suit factor," here, the amount of time passed speaks to the heart of the inquiry: "the stage of the proceedings." *City of Detroit*, 712 F.3d at 931. Generally, "an examination of the timing of the intervenor's motion in light of the point to which the suit has progressed is most relevant when the motion arrives at a point in time that would require reopening discovery, delaying trial, or some other prejudicial delay to the Parties." *Shy v. Navistar Int'l Corp.*, 291 F.R.D. 128, 133 (S.D. Ohio 2013) (internal quotation marks omitted). Allowing the Simon Parties to intervene at this stage—within days of filing of the complaint and before a preliminary injunction is heard or decided—would not result in the prejudicial delay described in *Shy*. This consideration—as well as the third, dealing with how long intervenors knew about the case before filing their motion—weighs heavily in favor of timeliness.

The remaining considerations likewise favor intervention. The Simon Parties have a legitimate purpose for intervention: namely, they object to Plaintiffs' requested remedy, Court-ordered implementation of the Commission's second map. The fourth consideration—prejudice to the original parties—is not opposed. Finally, no unusual circumstances are present to militate against intervention. Taken together, all considerations are that the Court should not block the Simon Parties' Motion on grounds of timeliness.

*2. Substantial Legal Interest*

The Simon Parties also assert they have a substantial legal interest that may be affected by the outcome of this litigation, as they are the only litigants to raise the issue of racial gerrymandering. (ECF No. 7 at 6). Notably, this is the only factor opposed by Plaintiffs. (*See* ECF No. 20 at 6).

The Sixth Circuit requires that "intervenor(s) . . . have a 'direct, substantial interest in the litigation, which must be significantly protectable.'" *Zeeb Holdings*, 338 F.R.D. at 378 (quoting *Purnell*, 925 F.2d at 947). Accordingly, "[a] generalized interest or concern will not suffice." *Id.* (citing *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007)). That said, this Circuit has adopted "'a rather expansive notion of the interest sufficient to invoke intervention of right.'" *Id.* (quoting *Miller*, 103 F.3d at 1245); *see also Oakland Cty. v. Fed. Nat'l Mortg. Ass'n*, 276 F.R.D. 491, 498 (E.D. Mich. 2011). For example, an intervenor need not meet the requirements of Article III standing required to "initiate a lawsuit." *Miller*, 103 F.3d at 1245 (citing *Purnell*, 925 F.2d at 948). Finally, "close cases should be decided in favor of recognizing an interest under Rule 24(a)." *Zeeb Holdings*, 338 F.R.D. at 378 (citing *Miller*, 103 F.3d at 947).

While the Plaintiffs say otherwise, it is difficult to argue that the Simon Parties do not have substantial interests at stake. Particularly, they oppose the very remedy Plaintiffs ask this court to order. Put differently, if this Court grants what Plaintiffs seek—implementation of the second map—the Simon Parties argue that their statutory and constitutional rights will be violated. And although Plaintiffs urge this Court to focus solely on whether malapportionment exists in light of the 2020 census, the Court cannot set aside their requested remedy. At a higher level of generality, each contingent is asking this Court to remedy Ohio's electoral map. But there can be only one map. In alleging that the remedy Plaintiffs seek is constitutionally infirm, the Simon Parties clearly

are attempting to protect a "direct, substantial interest in the litigation, which [is] significantly protectable." *Zeeb Holdings*, 338 F.R.D. at 378. Thus, the Court finds that this element is satisfied.

### 3. Impairment

A proposed intervenor has "a minimal burden [of] show[ing] that the ability to protect its interest may be impaired without intervention." *Oakland Cty.*, 276 F.R.D. at 498 (citing *Pride v. Allstate Ins. Co.*, 2011 WL 692299, at *3 (E.D. Mich. Feb. 18, 2011)). Indeed, "[c]ourts generally allow intervention if a party *might* be practically disadvantaged by the disposition of the action." *Zeeb Holdings*, 338 F.R.D. at 379 (emphasis in original). Moreover, "[p]roposed intervenors 'need not show that substantial impairment of their interest will result, nor from the language of Rule 24(a), that impairment will inevitably ensue from an unfavorable disposition.'" *Ark Encounter, LLC v. Stewart*, 311 F.R.D. 414, 423 (E.D. Ky. 2015) (quoting *Purnell*, 925 F.2d at 948).

The Simon Parties are challenging the very map that Plaintiffs ask this court to instate. Although they need not show impairment in any definite terms, the Simon Parties' ability to protect that interest almost certainly would be impaired by an unfavorable disposition of this case. The Simon Parties have met and exceeded this prong.

### 4. Inadequate Representation

In this Circuit, adequate representation is presumed "[w]hen a proposed intervenor and an existing party to the suit share the same ultimate objective in the litigation." *Ohio v. United States Envtl. Prot. Agency*, 313 F.R.D. 65, 69 (S.D. Ohio 2016). Assuming this presumption attaches, the intervenor must show more than "a mere disagreement over litigation strategy." *Ark Encounter*, 311 F.R.D. at 425 (internal quotation marks omitted). When a movant seeks to overcome the presumption of adequate representation, several considerations are reviewed: "(1) whether there is collusion between the representative and an opposing party; (2) whether the representative fails in the fulfillment of its duty; and (3) whether the representative has an interest adverse to the proposed

11

intervenor." *Ohio v. United States Envtl. Prot. Agency*, 313 F.R.D. at 68–69 (citing *Purnell*, 925 F.2d at 949–50). "'[W]hile the respective interests do not need to be wholly adverse in order to support intervention, they must at least be different.'" *Ark Encounter*, 311 F.R.D. at 425 (alteration in original) (quoting *Reliastar Life Ins. Co. v. MKP Invs.*, 565 F. App'x. 369, 374 (6th Cir. 2014)).

As a threshold matter, it does not appear that the presumption of adequacy would attach here. Generally, the presumption applies when an intervenor and the relevant existing party (*i.e.*, Plaintiffs) seek the same outcome. Although the Simon Parties and the Plaintiffs each purport to seek a constitutional map, they are deeply at odds about what that means. In short, this is not a situation where the proposed intervenor and the relevant litigant share the same objective but quibble about litigation strategy. Rather, this is the extreme scenario alluded to in *Ark Encounter*, where the parties are almost wholly adverse. 311 F.R.D. at 425. As such, the Simon Parties' interest is not adequately represented. This prong is satisfied.

In conclusion, the Court finds that the Simon Parties are entitled to intervene as of right under Rule 24(a)(2). Because the Simon Parties expressly seek limited intervention, the Court next must address the propriety of this specific request.

### 5. *Limited Intervention*

Importantly, the Simon Parties only request intervention to the extent "the Court is inclined to deny the pending motions to stay or dismiss." (ECF No. 7 at 2). Further, the Simon Parties communicate their intent to protect their interests "under the first-to-file rule and to vindicate their federal right [to] be free from racially-based vote dilution in redistricting." (*Id.*).

The concept of limited intervention saves courts from facing the prospect of "an all-or-nothing choice between grant or denial." *City of Detroit*, 712 F.3d at 931. *See also* Fed. R. Civ. P. 24 Advisory Committee Note, 1966 Amendments ("Intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of

efficient conduct of the proceedings."). In line with these principles, the district court "retains broad discretion in setting the precise scope of intervention." *City of Detroit*, 712 F.3d at 933.

Here, the Court will exercise its discretion by granting the Simon Parties' request and permitting them to intervene "in the event this Honorable Court does not stay or dismiss this action." (ECF No. 7 at 2). This necessarily will limit the role of the Simon Parties in the early stages of litigation.[2] If this Court denies any motions to stay or dismiss, the Simon Parties should seek leave to file supplemental briefing, whether on the first-to-file rule or any other issues they wish to raise at that time. The Simon Parties' Motion (ECF No. 7) is **GRANTED**, consistent with the foregoing.

### C. Motion by Sykes and Russo

The final Motion to Intervene is brought by Senator Vernon Sykes and House Minority Leader Allison Russo, who are Democratic state legislators and members of the Commission. (ECF No. 6). Sykes and Russo move to intervene as Defendants, both as of right (Rule 24(a)(2)) and permissively (Rules 24(b)(1) and (2)). (*Id.*). Plaintiffs oppose on four grounds (ECF No. 50), and Sykes and Russo filed a reply brief addressing each. (ECF No. 52).[3] As with the other state-court litigants, the Court determines that the facts most readily support permissive intervention under Rule 24(b)(1). The Court relies chiefly on *League of Women Voters of Michigan v. Johnson*, which held that the denial of permissive intervention to legislators in a redistricting case was an abuse of discretion. 902 F.3d 572 (6th Cir. 2018). Therefore, the Court will consider the permissive

---

[2] Nevertheless, the Court determines that the Simon Parties may participate in the scheduled Local Rule 65.1 conference, consistent with its "informal" and "preliminary" nature. *See* S.D. Ohio Loc. R. 65.1(a).
[3] The Simon Parties also moved to object *instanter* to a portion of Plaintiffs' opposition brief regarding appointment of a three-judge panel. (ECF No. 51). The Simon Parties' Motion is **DENIED**. The Court will hear their arguments at the appropriate time, but the Motion underlying this briefing only concerns Plaintiffs, Sykes, and Russo.

intervention elements in turn and will not reach Sykes and Russo's arguments for intervention under Rules 24(a)(2) or (b)(2).

### 1. Timeliness

Plaintiffs do not challenge Sykes and Russo's Motion as untimely. Similar to other proposed intervenors, Sykes and Russo filed their Motion within two days of the Complaint and before any responsive pleadings. *Cf. Blankenship*, 341 F. Supp. 2d at 918. Moreover, the case has not yet progressed beyond its early stages. For substantially the same reasons discussed for the other proposed intervenors, the Court views Sykes and Russo's Motion as timely.

### 2. Common Question of Law or Fact

Plaintiffs also do not challenge that Sykes and Russo raise common questions of law or fact. As stated in their Motion, Sykes and Russo propose to contest issues of standing and ripeness relevant to the appointment of a three-judge panel (ECF No. 6 at 2–3), a matter on which Plaintiffs are urging prompt consideration. In *League of Women Voters of Michigan*, the Sixth Circuit viewed a similar standing challenge as a "clear" indicator that the legislators "intended to raise common questions of law and fact." 902 F.3d at 577. So too here.

### 3. Undue Delay or Prejudice

Plaintiffs directly contest delay and prejudice, arguing that "[p]ermitting the Sykes and Russo intervention would unnecessarily delay resolution of this time-sensitive case and waste taxpayer money advancing redundant interests." (ECF No. 50 at 1). Tellingly, the former argument was addressed head-on in *League of Women Voters of Michigan*, with the court finding "there was little risk that allowing the Congressmen to intervene would have interfered with the court's ability to reach an expeditious resolution," and that the district court abused discretion in holding otherwise. 902 F.3d at 578. The issues Sykes and Russo intend to raise, including justiciability,

are certain to come before the Court in some form. While Sykes and Russo's presence may require Plaintiffs to address distinct arguments and perspectives on those issues, it will not cause the sort of redundant motions practice that would lead to actual delay.

Plaintiffs' subsidiary argument, regarding waste of taxpayer resources, fares no better. Plaintiffs cannot claim that the spending of tax revenues prejudices *them* in any manner that is distinct from the taxpaying public at large. Those sorts of generalized grievances are not judicially cognizable. *See, e.g.*, *Massachusetts v. Mellon*, 262 U.S. 447 (1923) (rejecting taxpayer standing). Additionally, this use of tax dollars may well prove to be efficient. A correct resolution of this case in the first instance could obviate further litigation that quickly would eclipse the cost of Sykes and Russo's counsel. And correct resolution is most probable when the Court is apprised of all pertinent interests.

### 4. Other Arguments

Plaintiffs raise three other arguments against intervention. First, Plaintiffs contend that "[a] single judge lacks authority to grant or deny a motion to intervene before complying with 28 U.S.C. § 2284." (ECF No. 50 at 1). Section 2284 provides that "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). Citing that statute, Plaintiffs formally have requested a three-judge panel. (ECF No. 8 at 1). The requirement of a three-judge panel is a matter the Court intends to take up more fully at the Local Rule 65.1 conference. For present purposes, however, the Court will note that "[a] three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts." *Gonzalez v. Automatic Emps. Credit Union*, 419 U.S. 90, 100 (1974) (quoted with approval by *Shapiro v. McManus*, 577 U.S. 39, 44–45 (2015)).

15

Sykes and Russo note in their Motion that they intend to raise issues of jurisdiction and justiciability, arguing that the Court should "defer consideration of the case by entering a stay, as required by *Growe v. Emison*, 507 U.S. 25 (1993), to allow proceedings before the Ohio Supreme Court to continue." (ECF No. 6 at 1–2).

Plaintiffs' opposition to the Motion to Intervene relates to the language in Section 2284(b)(3), which states that "[a] single judge may conduct all proceedings except the trial, and enter all orders permitted by the rules of civil procedure except as [enumerated]";[4] provided, however, that "[a]ny action of a single judge may be reviewed by the full court at any time before final judgment." Plaintiffs reason that if the Court were to rule on the Motions to Intervene before a panel is designated, "the right of any party to have that action reviewed by the full three-judge court would be denied." (ECF No. 50 at 3). Yet if the case is deemed nonjusticiable, then there can be no right to panel review because no panel is required. On the other hand, if the case is deemed justiciable, then a panel will be appointed promptly; and Plaintiffs cite no authority that would preclude the panel from reviewing actions taken prior to its formation. The plain language of the statute provides that the single judge's action "may be reviewed by the full court *at any time* before final judgment." 28 U.S.C. § 2284(b)(3) (emphasis added). Accordingly, the Court determines that it may rule on the Motions to Intervene, subject to a panel's possible revisiting of that ruling if and when one should be convened. It would be illogical for the Court to reserve its ruling until a panel is named, given that the proposed intervenors intend to be heard on that threshold question of whether a panel is proper as the case stands today.

Second, Plaintiffs argue that "[t]he Sykes and Russo Motion to Intervene fails to attach a proper pleading as required by Civil Rule 24." (ECF No. 50 at 1). This argument is at odds with

---

[4] Specifically, a single judge cannot "appoint a master, or order a reference, or hear and determine any application for a preliminary or permanent injunction or motion to vacate such an injunction, or enter judgment on the merits." *Id.*

16

the Sixth Circuit's "'lenient approach to the requirements of Rule 24(c).'" *League of Women Voters of Mich.*, 902 F.3d at 580 (quoting *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 314 (6th Cir. 2005); and finding the district court abused discretion in denying intervention even where intervenors failed to attach a pleading). Plaintiffs argue they have been prejudiced, as they "have not yet had the opportunity to consider and formulate a response to any fully developed arguments from Senator Sykes and Leader Russo, despite the time-sensitive nature of this case." (ECF No. 50 at 3). In that respect, however, Sykes and Russo are no different from *the named Defendant*, Ohio Secretary of State LaRose, who has yet to answer. Sykes and Russo's Motion discusses their justiciability argument (ECF No. 6 at 1–2), which is enough to "set[] out the claim or defense for which intervention is sought," Fed. R. Civ. P. 24(c), and to permit Plaintiffs to formulate their response.

Third, Plaintiffs state that Sykes and Russo's "official capacity interests are already adequately represented by existing parties." (ECF No. 50 at 1). This element is properly analyzed for intervention of right; but in any event, the Court recognizes that Sykes and Russo's interests diverge significantly from both Plaintiffs and Defendant LaRose. Plaintiffs urge the Court to adopt a map that Sykes and Russo opposed, and which LaRose supported. As Sykes and Russo note in their Motion, "[t]he Ohio Supreme Court has recognized their divergent interests not only by allowing them to file their own briefs, but by allotting them argument time to be shared with the petitioners—not the Commission." (ECF No. 6 at 2). Though Plaintiffs observe that Sykes and Russo's interests have been aligned momentarily with LaRose's, regarding scheduling matters (ECF No. 50 at 4), it cannot be said that LaRose will continue to protect Sykes and Russo's interests adequately if and when this case reaches its remedies stage. Relatedly, in *League of Women Voters of Michigan*, the Sixth Circuit recognized several divergent interests between

17

intervenor legislators and the Secretary of State, including the "direct[] and substantial[]" ways in which the "contours of the map affect the [legislators]," and the "representative interest" in serving constituents and advancing legislation. 902 F.3d at 579.

In summary, the Court concludes that Sykes and Russo are entitled to intervene permissively under Rule 24(b)(1). Sykes and Russo's Motion to Intervene (ECF No. 6) is **GRANTED**.

### III. CONCLUSION

For the reasons thus stated, the several Motions to Intervene (ECF Nos. 3, 6, 7, 12, 34) are **GRANTED**. The Simon Parties' Motion to Object *Instanter* (ECF No. 51), regarding the Sykes and Russo briefing, is **DENIED**. The LWVO Parties, Sykes and Russo, the Simon Parties, the Bennett Parties, and the OOC Parties may join this case.

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATED: March 4, 2022**