IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL GONIDAKIS, MARY PARKER, MARGARET CONDITT, BETH VANDERKOOI, LINDA SMITH, DELBERT DUDUIT, THOMAS W. KIDD JR., DUCIA HAMM, <br><br> Plaintiffs, <br><br> BRIA BENNETT, REGINA C. ADAMS, KATHLEEN M. BRINKMAN, MARTHA CLARK, SUSANNE L. DYKE, MERYL NEIMAN, HOLLY OYSTER, CONSTANCE RUBIN, EVERETT TOTTY, <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> FRANK LAROSE, in his capacity as Ohio Secretary of State <br><br> Defendant. | Case No. 2:22-cv-00773 <br><br> Judge Algenon L. Marbley <br><br> Magistrate Judge Elizabeth Preston Deavers |

**INTERVENOR-PLAINTIFFS BENNETT PETITIONERS'
MOTION TO ABSTAIN AND STAY**

Intervenor-Plaintiffs Bria Bennett, Regina C. Adams, Kathleen M. Brinkman, Martha Clark, Susanne L. Dyke, Meryl Neiman, Holly Oyster, Constance Rubin, and Everett Totty ("Bennett Petitioners") hereby move, pursuant to *Growe v. Emison*, 507 U.S. 25, 33 (1993), for the Court to abstain from and stay this lawsuit, to allow the Bennett Petitioners' pending Ohio Supreme Court proceedings regarding the drawing of Ohio General Assembly districts to proceed,

while retaining jurisdiction in case those proceedings, unexpectedly, do not ultimately lead to the creation of a constitutionally valid General Assembly district plan.[1]

      This Motion is supported by the attached Memorandum in Support.

---

[1] The Plaintiffs in this case have requested the convening of a three-judge district court. Compl. ¶ 85. Convening such a court would be premature, however, because the Bennett Petitioners fully expect the Ohio Supreme Court to oversee the successful completion of the redistricting process set out in Article XI of the Ohio Constitution. A single judge has authority to address the justiciability of Plaintiffs' claims, and thus to determine whether they are presently appropriate for a federal court to address. *See Shapiro v. McManus*, 577 U.S. 39, 44–45 (2015) ("[A] three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts."); *S.C. State Conf. of NAACP v. McMaster*, No. 3:21-cv-03302, 2021 WL 5853172, at *5 (D.S.C. Dec. 9, 2021) (holding that claims based on alleged harms "arising from the risk that redistricting will not be timely completed" "are not yet ripe for adjudication because the injury alleged remains speculative before the Legislature has a chance to act"). As *McMaster* explained, a single-judge court may therefore stay impasse claims that are not yet ripe under *Growe*, and "retain jurisdiction over [them] through the duration of the stay." *Id.* at *2, *5.

DATED:  March 7, 2022  Respectfully submitted,

/s/ Donald J. McTigue
Donald J. McTigue* (OH 0022849)
*Trial Attorney*
Derek S. Clinger (OH 0092075)
MCTIGUE COLOMBO & CLINGER LLC
545 East Town Street
Columbus, OH 43215
T: (614) 263-7000
F: (614) 368-6961
dmctigue@electionlawgroup.com
dclinger@electionlawgroup.com

Abha Khanna (*admitted pro hac vice*)
Ben Stafford (*admitted pro hac vice*)
ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
T: (206) 656-0176
F: (206) 656-0180
akhanna@elias.law
bstafford@elias.law

David Fox (*admitted pro hac vice*)
Jyoti Jasrasaria (*admitted pro hac vice*)
Spencer W. Klein (*admitted pro hac vice*)
Harleen Gambhir**
Raisa Cramer**
ELIAS LAW GROUP LLP
10 G St NE, Suite 600
Washington, DC 20002
T: (202) 968-4490
F: (202) 968-4498
dfox@elias.law
jjasrasaria@elias.law
sklein@elias.law
hgambhir@elias.law
rcramer@elias.law

**Motions for admission pro hac vice forthcoming

*Counsel for Bennett Petitioners*

**MEMORANDUM IN SUPPORT**

The Court should stay this case to allow the Bennett Petitioners' pending Ohio Supreme Court proceedings involving the apportionment of the General Assembly to continue. "In the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." *Growe v. Emison*, 507 U.S. 25, 33 (1993). Federal court involvement in state legislative apportionment is a last resort. Its time has not yet come here.

## BACKGROUND

### I. The Ohio Redistricting Process

As a result of a 2015 constitutional amendment approved by Ohio voters, the Ohio Constitution provides a detailed process to govern General Assembly redistricting, under which the Ohio Redistricting Commission (the "Commission") must adopt a redistricting plan that complies with detailed constitutional criteria, subject to review by the Ohio Supreme Court. *See* Ohio Const. art. XI. Among other requirements, the Commission "shall attempt" to draw a General Assembly plan (a) that is not "drawn primarily to favor or disfavor a political party," and (b) in which "[t]he statewide proportion of districts whose voters, based on statewide state and federal partisan general election results during the last ten years, favor each political party shall correspond closely to the statewide preferences of the voters of Ohio." Ohio Const. art. XI, § 6. The Ohio Constitution further provides that "[t]he supreme court of Ohio shall have exclusive, original jurisdiction in all cases arising under" Article XI, and that if "any general assembly district plan made by the Ohio redistricting commission, or any district is determined to be invalid by an unappealed final order of a court of competent jurisdiction," then the Commission "shall be reconstituted" to "determine a general assembly district plan in conformity" with the Ohio Constitution. *Id.* art. XI, § 9(A), (B).

1

## II. Procedural History

Following the release of 2020 census data last year, the Commission was tasked with drawing new General Assembly districts for the first time. That process is still ongoing. In September 2021, the Commission passed a redistricting plan by a 5-2 party line vote. The Bennett Petitioners, among others, sued the Commission and its members in the Ohio Supreme Court, alleging that the plan approved by the Commission violated the Ohio Constitution. *See League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, __ Ohio St.3d __, 2022-Ohio-65, 2022 WL 110261 (Ohio Jan. 12, 2022) ("*LWV I*"). After discovery and briefing on a highly expedited schedule, on January 12, 2022, the Ohio Supreme Court issued a 56-page opinion, with another 90 pages of concurrences and dissents, finding that the plan "significantly discriminates against Democratic voters to the advantage of Republican voters," *id.,* 2022 WL 110261 at *25, in violation of the Ohio Constitution. The Court ordered the Commission to draw a new General Assembly district plan within ten days, and retained jurisdiction to consider objections to those maps. *Id.* at *28-29.

In response to the Ohio Supreme Court's order, the Commission adopted a new General Assembly plan on January 22. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, __ Ohio St.3d __, 2022-Ohio-342, 2022 WL 354619, at *1 (Ohio Feb. 7, 2022) ("*LWV II*"). That plan, however, made only minor changes, and the Bennett Petitioners and others promptly objected to the new maps in the Ohio Supreme Court. *Id.* at *6-8. Less than two weeks later, on February 7, the Ohio Supreme Court struck down the new plan as well, again ordering the Commission to draw a plan that complies with the Ohio Constitution and the court's orders within ten days. *Id.* at *14. This time, the Commission responded by sitting on its hands. While the Democratic members of the Commission brought forth a new proposal, the Republican Commissioners proposed nothing

at all: they simply voted the Democratic plan down and—despite the Ohio Supreme Court's order—adjourned on February 17 without adopting a new plan. *See* Am. Compl. ¶¶ 54-56.

In response to this open defiance of its order, the Ohio Supreme Court on February 18 ordered the Commission and its members to show cause why they should not be held in contempt for violating the court's order to propose a new, constitutionally valid plan. *See Bennett v. Ohio Redistricting Commission*, Ohio Supreme Court Case No. 2021-1198, *02/18/2022 Case Announcements #2*, 2022-Ohio-498. The Commissioners' response is due at noon tomorrow, February 23. *See id*. There is no reason to believe that the Ohio Supreme Court will be unable to secure compliance with its orders, which are expressly contemplated by the Ohio Constitution. *See* Ohio Const. art XI, § 9(B) (providing that if "any general assembly district plan made by the Ohio redistricting commission, or any district is determined to be invalid by an unappealed final order of a court of competent jurisdiction then, notwithstanding any other provisions of this constitution, the commission shall be reconstituted . . . , convene, and ascertain and determine a general assembly district plan . . . ."). Indeed, in an apparent response to the Ohio Supreme Court's show cause order, during a Commission meeting held today, February 22, the Commission discussed scheduling an additional meeting, as soon as tomorrow, February 23, to discuss further work on the General Assembly plan.

Plaintiffs in this action (the "Gonidakis Plaintiffs") nevertheless instituted this suit on February 18, alleging that the Ohio state legislative redistricting process had reached "impasse," and arguing that the use of either the state legislative plan approved in 2011 or no plan at all would violate their rights. Compl. ¶¶ 4, 6. The Gonidakis Plaintiffs ask this Court to inject itself into Ohio's redistricting process, pushing aside and taking over for the Ohio Supreme Court and

3

ordering the adoption of a plan that the Ohio Supreme Court already rejected as a violation of the Ohio Constitution. *See id.*

## ARGUMENT

The Bennett Petitioners' practical interests in this litigation are diametrically opposed to those of the Gonidakis Plaintiffs, who are seeking to undo the Bennett Petitioners' victory before the Ohio Supreme Court. The Bennett Petitioners agree with the Gonidakis Plaintiffs only to the following, extremely limited extent: given changes in the distribution of Ohio's population since 2011, the continued use of the 2011 General Assembly plan would involve malapportioned districts in violation of the United States Constitution, and a failure to hold elections at all would likewise violate Ohio voters' constitutional rights. But there is not yet any reason to conclude that either eventuality will occur, or is even remotely likely to occur. The Ohio Constitution provides a process for the drawing of General Assembly districts, substantial work has occurred under that process under the close supervision of the Ohio Supreme Court, and that process is still ongoing. This Court must defer to the Ohio Supreme Court and the ongoing process set out in the Ohio Constitution for the apportionment of state legislative districts.

"In the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." *Growe*, 507 U.S. at 33 (emphasis original). That is because "the Constitution leaves with the States primary responsibility for apportionment of their federal congressional and state legislative districts," such that "'reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court.'" *Id.* at 34 (quoting *Chapman v. Meier*, 420 U.S. 1, 27 (1975)). Federal courts may intervene in the process only if there is "evidence that these state branches will fail timely to perform that duty." *Id.*; *see also, e.g.*, *Thompson v. Smith*, 52 F. Supp.

4

2d 1364, 1367-68 (M.D. Ala. 1999) (explaining that the federal court had "stayed our hand until the state court system had fully addressed the claims being pursued" by state-court plaintiffs, and resuming proceedings only once "the Alabama Supreme Court has held that their claims are moot, and, as a result, the Alabama courts are now essentially closed to them"); *Rice v. Smith*, 988 F. Supp. 1437, 1439 (M.D. Ala. 1997) ("[I]n the reapportionment context, when parallel State proceedings exist, the decision to refrain from hearing the litigant's claims should be the routine course."). "[T]he reasoning in *Growe* was based upon the principle of deference to state legislative and judicial bodies in the redistricting process," and a requirement "that the federal courts must defer to the state judiciary unless the record contains evidence that the state court cannot or will not act in a timely manner." *Archuleta v. City of Albuquerque, N.M.*, No. 11-cv-510, 2011 WL 13285433, at *2 (D.N.M. June 21, 2011).

There is no evidence that Ohio will be unable to carry out its constitutional duty to enact a new, constitutionally valid General Assembly plan. Active, highly expedited litigation is ongoing in front of the Ohio Supreme Court. That litigation has already resulted in the review of two proposed General Assembly plans. *See LWV I; LWV II.* And while the Commission has, for the moment, refused to do its constitutional duty to draw a new General Assembly plan that complies with the Ohio Constitution, the Ohio Supreme Court is actively addressing that refusal, with an order that the members of the Commission show cause by noon on Wednesday, February 23, why they should not be held in contempt, *see Bennett v. Ohio Redistricting Commission*, Ohio Supreme Court Case No. 2021-1198, *02/18/2022 Case Announcements #2*, 2022-Ohio-498, and the Commission has just today discussed scheduling further meetings regarding a General Assembly plan. It would be premature, speculative, and a severe violation of comity and basic principles of federalism to assume that the Ohio Supreme Court will be unable to secure compliance with its

5

lawful orders. This Court should not countenance its use as an organ for the Commission, and voters aligned with it, to violate the Ohio Supreme Court's orders. That is what the Gonidakis Plaintiffs ask: for this Court to endorse a Commission plan that the Ohio Supreme Court would not.

Moreover, the Ohio Constitution's detailed redistricting provisions, and the existence of the Commission, make a true impasse requiring federal intervention far less likely than in many other states. In states where impasse has historically been reached, such as Wisconsin, redistricting is a purely legislative matter: after each census, "the legislature shall apportion and district anew the members of the senate and assembly." Wis. Const. art. 4, § 3. Because apportionment legislation in Wisconsin must pass both the senate and the assembly and is subject to veto by the governor, the Wisconsin government has repeatedly been unable to engage in apportionment where one party does not control the entire government, requiring judicial intervention. *See, e.g.*, *Jensen v. Wisc. Elections Bd.*, 249 Wis. 2d 706, 711 (2002). The same has occurred in Minnesota. *See Hippert v. Ritchie*, No. A11-152 (Minn. Feb. 14, 2011). This legislative process makes impasse more likely, as legislators do not have an enforceable duty to enact particular redistricting maps, and governors do not have an enforceable duty not to veto them.

Ohio is now different. As the Ohio Supreme Court has emphasized, "the people of Ohio, by their overwhelming approval in 2015 of amendments to Article XI of the Ohio Constitution, entrusted" redistricting of the General Assembly "to a special body of limited duration and singular purpose: the Ohio Redistricting Commission." *LWV II,* 2022 WL 354619 at *10. Under Ohio law, members of the Commission "are charged with drawing a plan that inures to the benefit of not just one political party, not just one constituency, but of Ohio as a whole," and they "must be, in good faith, *commission members* first, setting aside their usual partisan modes." *Id.* Critically, this is *a*

6

*legally enforceable duty*: the Constitution *requires* the Commission to adopt a constitutional plan and provides that if a prior plan is ruled unconstitutional, "the commission *shall* be reconstituted as provided in Section 1 of this article, convene, and ascertain and determine a general assembly district plan in conformity with such provisions of this constitution as are then valid . . . ." Ohio Const. art. XI, § 9(B) (emphasis added). And the Ohio Supreme Court, by ordering members of the Commission to show cause why they should not be held in contempt for failing to adopt a lawful plan, has shown that it stands ready to enforce that duty. *See Bennett v. Ohio Redistricting Commission*, Ohio Supreme Court Case No. 2021-1198, *02/18/2022 Case Announcements #2*, 2022-Ohio-498. Indeed, in an apparent response to the Ohio Supreme Court's show cause order, during a Commission meeting held today, February 22, the Commission discussed scheduling an additional meeting, as soon as tomorrow, February 23, to discuss further work on the General Assembly plan.

This Court should not lightly assume that the Commission members will successfully defy the Ohio Supreme Court's lawful orders, nor that that court will be unable to devise an effective remedy should defiance continue. Rather, this Court must allow the state process to play out. *Growe*, 507 U.S. at 33. There are still many months to go until Election Day,[2] and there is not yet any reason to believe that the Ohio state government cannot complete its task.

## CONCLUSION

For the reasons set forth above, the Bennett Petitioners respectfully request that this Court enter an order granting its Motion to Abstain and Stay and staying this action pending the outcome of proceedings in the Ohio Supreme Court.

---

[2] Although the Ohio General Assembly has the authority to move the primary election date, and has contemplated doing so, it has thus far refused to do so.

7

DATED:  March 7, 2022                                   Respectfully submitted,


/s/ Donald J. McTigue
Donald J. McTigue* (OH 0022849)
*Trial Attorney*
Derek S. Clinger (OH 0092075)
MCTIGUE COLOMBO & CLINGER LLC
545 East Town Street
Columbus, OH 43215
T: (614) 263-7000
F: (614) 368-6961
dmctigue@electionlawgroup.com
dclinger@electionlawgroup.com

Abha Khanna (*admitted pro hac vice*)
Ben Stafford (*admitted pro hac vice*)
ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
T: (206) 656-0176
F: (206) 656-0180
akhanna@elias.law
bstafford@elias.law

David Fox (*admitted pro hac vice*)
Jyoti Jasrasaria (*admitted pro hac vice*)
Spencer W. Klein (*admitted pro hac vice*)
Harleen Gambhir**
Raisa Cramer**
ELIAS LAW GROUP LLP
10 G St NE, Suite 600
Washington, DC 20002
T: (202) 968-4490
F: (202) 968-4498
dfox@elias.law
jjasrasaria@elias.law
sklein@elias.law
hgambhir@elias.law
rcramer@elias.law

**Motions for admission pro hac vice forthcoming

*Counsel for Bennett Petitioners*

8

## CERTIFICATE OF SERVICE

This is to certify a copy of the foregoing was served upon all counsel of record by means of the Court's electronic filing system on this 7th Day of March, 2022.

/s/ Donald J. McTigue
Donald J. McTigue (OH 0022849)