# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GONIDAKIS**,<br>6586 Baronscourt Loop<br>Dublin, OH 43016 | |
| **MARY PARKER**,<br>8925 Cupstone Drive<br>Galena, OH 43021 | Case No. 2:22-cv-773 |
| **MARGARET CONDITT**,<br>6959 Rock Springs Drive<br>Liberty Twp., OH 45011 | **Chief Judge Algernon L. Marbley**<br><br>**Magistrate Judge Elizabeth P. Deavers** |
| **BETH VANDERKOOI**,<br>541 East Moler Street<br>Columbus, OH 43207 | **Three-Judge Panel Requested** |
| **LINDA SMITH**,<br>4998 Blendon Pond Drive<br>Westerville, OH 43081 | |
| **DELBERT DUDUIT**,<br>32 Greenbriar Road<br>Lucasville, OH 45648 | |
| **THOMAS W. KIDD JR.**,<br>10114 Brooks Carroll Road<br>Waynesville, OH 45068 | |
| **DUCIA HAMM**,<br>53 North Main Street<br>Ashland, OH 44805 | |
|           Plaintiffs,<br>  v. | |
| **FRANK LAROSE**, *in his official capacity*,<br>22 N. Fourth St.<br>16th Floor<br>Columbus, OH 43215 | |
|           Defendant. | |

**PLAINTIFFS' FIRST SUPPLEMENTAL COMPLAINT
FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Ohio's state legislative districts, under the United States Constitution and as confirmed by voters through amendments to the Ohio Constitution, must be substantially similar in population. Ohioans also deserve the right to vote.

2. To do so, Secretary of State Frank LaRose began in earnest carrying out the Third Plan adopted by the Ohio Redistricting Commission. But then, the Ohio Supreme Court invalidated the Third Plan.

3. Therefore, this Court should declare that the tentatively adopted state legislative districts (or lack thereof) violate the U.S. Constitution, and this Court order that the Secretary of State maintain the status quo by continuing with the Third Plan adopted by the Redistricting Commission, attached as Exhibit C, for the 2022 election cycle.

## THE PARTIES

4. Plaintiffs are Ohio voters that live in House and Senate Districts that were drawn in 2010:

   a. Plaintiff Michael Gonidakis resides in Dublin, Ohio at 6586 Baronscourt Loop in House District 21 and Senate District 16.

   b. Plaintiff Mary Parker resides in Galena, Ohio at 8925 Cupstone Drive in House District 68 and Senate District 19.

   c. Plaintiff Margaret Conditt resides in Liberty Township, Ohio at 6959 Rock Springs Drive in House District 52 and Senate District 4.

2

    d. Plaintiff Beth Vanderkooi resides in Columbus, Ohio at 541 East Moler Street in House District 18 and Senate District 15.

    e. Plaintiff Linda Smith resides in Westerville, Ohio at 4998 Blendon Pond Drive in House District 19 and Senate District 3.

    f. Plaintiff Delbert Duduit resides in Lucasville, Ohio at 32 Greenbriar Road in House District 90 and Senate District 14.

    g. Plaintiff Thomas W. Kidd Jr. resides in Waynesville, Ohio 45068 at 10114 Brooks Carroll Road in House District 62 and Senate District 7.

    h. Plaintiff Ducia Hamm resides in Savanah, Ohio at 53 North Main Street in House District 70 and Senate District 22.

5. Plaintiffs live in either malapportioned state legislative districts or non-existent state legislative districts, thus harming Plaintiffs.

6. Plaintiffs are also harmed right now because, until valid redistricting occurs, Ohioans, including Plaintiffs, cannot decide which candidates to support, cannot decide to run or to encourage candidates to run, cannot educate themselves or others on the positions of candidates in their districts and prepare to hold those candidates responsible, and cannot associate with others in their district.

7. Defendant is Secretary of State Frank LaRose in his official capacity. Secretary of State LaRose is the Chief Elections Officer of Ohio, with such powers and duties relating to the registration of voters and the conduct of elections. *See, e.g.*, O.R.C. § 3501.04.

## JURISDICTION AND VENUE

8. Plaintiffs bring this action under 42 U.S.C. § 1983 to address the deprivation, under the color of state law, of rights secured by the United States Constitution. This Court has original

3

jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the United States Constitution and the laws of the United States and involve the assertion of a deprivation, under color of state law, of rights under the Constitution of the United States. This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and order injunctive relief under Federal Rule of Civil Procedure 65.

9. This Court has personal jurisdiction over Defendant, Secretary of State Frank LaRose in his official capacity.

10. Venue is proper in the Southern District of Ohio, Eastern Division, because a substantial part of the events that give rise to Plaintiffs' claims have occurred and will occur in this District and Defendant's office is in this District.

11. A three-judge panel of this Court has jurisdiction to adjudicate this lawsuit because Plaintiffs are challenging the constitutionality of the apportionment of Ohio's statewide legislative body. *See* 28 U.S.C. § 2284(a).

## STATEMENT OF FACTS

**A. Ohio voters elect bicameral legislature.**

12. The State of Ohio has a bicameral legislature, with a House of Representatives and a Senate.

13. Representatives are elected biennially by the electors of their respective house of representatives districts, with terms beginning of the first day of January and continuing for two years. *See* Ohio Constitution, Article II, Section 2.

14. Senators are elected by the electors of their respective senate districts. Their terms begin on the first day of January and continue for four years. *See* Ohio Constitution, Article II, Section 2.

15. The Ohio Constitution has historically provided for 99 Representatives and 33 Senators. *See* Ohio Constitution, Article XI, Section 2 (2010). The districts have been determined by using the federal decennial census to divide the total population of the state by 99 and 33, respectively. *Id.* Districts must be substantially equal in population. *See* Ohio Constitution, Article XI, Section 3 (2010).

**B. New districts using federal census data in 2010 and approved by Ohio Supreme Court.**

16. The 2010 decennial census found that Ohio had a population of 11,536,504 people. Two counties: Cuyahoga County and Franklin County had populations exceeding 1,000,000. Many others had populations of more than 300,000, including Hamilton, Montgomery, Summit, and Lorain, to name a few.

17. Following receipt of the 2010 census data, districts were created in accordance with the Ohio Constitution.

18. The Ohio Supreme Court subsequently confirmed the districts were apportioned consistent with the Ohio Constitution. *See Wilson v. Kasich*, 134 Ohio St.3d 221, 2012-Ohio-5367, 981 N.E.2d 814, ¶ 48.

**C. Ohioans create new process for 2020 that still relies on federal census data.**

19. In 2015, voters amended the Ohio Constitution with "Issue 1," which created a bipartisan process for drawing new legislative districts that relied on the decennial census data.

5

20. Ohio voters were clear that, as before the amendment, the legislative districts were to be based on the population of the state as determined by the federal decennial census. *See* Ohio Constitution, Article XI, Section 3.[1]

21. There were other changes as well, including the creation of the bipartisan Ohio Redistricting Commission. The Redistricting Commission was to be comprised of the governor, the auditor of state, the secretary of state, one person appointed by the speaker of the house of representatives, one person appointed by the legislative leader of the largest political party in the house of representatives of which the speaker of the house of representatives is not a member, one person appointed by the president of the senate, and one person appointed by the legislative leader of the largest political party in the senate of which the president of the senate is not a member. *See* Ohio Constitution, Article XI, Section 1.

22. Under this revised Ohio Constitution, the Redistricting Commission would be asked to draw new state legislative districts[2] tied to various factors, such as federal partisan election results. *See* Ohio Constitution, Article XI, Section 6.

23. A district plan approved by a bipartisan majority of the Redistricting Commission would be valid for ten years, while a district plan approved by a simple majority for would be valid for four years. *See* Ohio Constitution, Article XI, Sections 8(B) and 8(C)(1)(a).

**D. The COVID-19 pandemic interrupts the 2020 decennial census.**

24. The COVID-19 pandemic, which halted much of ordinary life during March 2020, also impacted the 2020 decennial census.

---

[1] The Ohio Constitution, before and after 2015, also allows for use of alternative census information in the unlikely event the federal decennial census is unavailable.

[2] The Redistricting Commission also draws congressional districts, which are not at issue in this Complaint.

6

25. The Census Bureau usually relies on an army of door-knockers and phone bank employees to supplement the households that fill out forms.

26. The Census Bureau's tactic of utilizing door-knockers and phone bank employees was made impractical because of the pandemic.

27. This led to delay by the Census Bureau and litigation ensued because of the delay.

28. Ohio eventually sued the Census Bureau and secured a settlement that ensured a still delayed, yet more timely, delivery of the information needed by the Redistricting Commission.

29. The 2020 U.S. Census data shows that Ohio's population increased to 11,799,448 people, an addition of hundreds of thousands of people over ten years.

30. Many political subdivisions grew by double-digits, including Franklin County, Delaware County, Warren County, and Union County, to name a few.

31. For Ohio's most populous counties, Franklin, Cuyahoga, and Hamilton, there was a total shift of more than 200,000 people.

### E. The Redistricting Commission adopts its first plan using the most recent census data in September 2021 ("First Plan").

32. With 2020 decennial census data finally in hand, the Redistricting Commission adopted an initial proposed state legislative district plan on September 9, 2021.

33. After the adoption of the September 9, 2021, proposed state legislative district plan, the Redistricting Commission held public meetings throughout Ohio on September 12, 13, and 14, 2021.

34. Shortly after midnight on September 16, 2021, the Redistricting Commission voted five to two to adopt an amended version of the initial plan, or the First Plan.

35. A copy of the First Plan is attached as Exhibit A to the Complaint.

36. Shortly thereafter, at least three organizations filed complaints in the Ohio Supreme Court challenging the Redistricting Commission's First Plan.

37. The cases were brought pursuant to Article XI, Section 9 of the Ohio Constitution, and challenged the constitutionality of the Redistricting Commission's First Plan.

**F. Three months later, in January 2022, the Ohio Supreme Court rejects the First Plan.**

38. On January 12, 2022, nearly three and a half months after the organizations initially challenged the Redistricting Commission's First Plan, the Ohio Supreme Court invalidated the First Plan. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 2022-Ohio-65, ¶ 138.

39. The Ohio Supreme Court ordered the Redistricting Commission to be reconstituted under Article XI, Section 1, to "convene, and to ascertain and adopt a General Assembly – district plan in conformity with the Ohio Constitution" and directed the Redistricting Commission to adopt a new plan within ten days. *Id*. at ¶ 139.

**G. The Redistricting Commission adopts a Second Plan, again using the most recent census data.**

40. The Redistricting Commission adopted a second state legislative district plan on January 22, 2022, the Second Plan, by a five to two vote.

41. A copy of the Second Plan is attached as Exhibit B to the Complaint.

42. Because the Redistricting Commission's Second Plan did not have the bipartisan support required under Article XI, Section 8(B) of the Ohio Constitution, the Second Plan could remain in effect for no more than four years.

43. The Redistricting Commission's Second Plan changed five House districts from the Redistricting Commission's First Plan from Republican-leaning to Democratic-leaning and changed three Senate districts from Republican-leaning to Democratic-leaning.

44. This represents a greater than 6% increase in the number of Democratic-leaning districts from the Redistricting Commission's First Plan.

45. Nevertheless, the same organizations who challenged the Redistricting Commission's First Plan again filed objections.

### H. Primary deadline passes in February 2022 for candidates while the Redistricting Commission's Second Plan is considered.

46. While the Redistricting Commission's Second Plan sat before the Ohio Supreme Court, the deadline for partisan candidates came and went.

47. On February 2, 2022, the deadline for partisan candidates to declare their candidacy passed.

48. On February 14, 2022, the deadline for local Boards of Elections to certify the validity and sufficiency of partisan candidates' petitions also passed.

### I. Ohio Supreme Court rejects Second Plan and orders Third Plan.

49. On February 7, 2022, the Ohio Supreme Court sustained objections relating to the Redistricting Commission's Second Plan and invalidated the revised plan in its entirety. *See, League of Women Voters of Ohio v. Ohio Redistricting Comm.*, 2022-Ohio-342, ¶ 67.

50. After invalidating the Redistricting Commission's Second Plan, the Ohio Supreme Court ordered the Redistricting Commission to adopt a Third Plan, and to file a copy of the Third Plan with the secretary of state no later than February 17, 2022, and with the Court by 9:00 am on February 18, 2022.

### J. Redistricting Commission declares impasse and cannot issue Third Plan.

51. Consistent with the Ohio Supreme Court's order, the Redistricting Commission met a third time.

52. However, the Redistricting Commission could not reach an agreement that followed the U.S. Constitution, Ohio Constitution, the Ohio Supreme Court, and the applicable federal data.

53. Accordingly, on February 17, 2022, the Redistricting Commission declared an "impasse" and determined it could not issue a Third Plan.

54. The Ohio Supreme Court received notice of this impasse the next day, on February 18, 2022.

### I. Redistricting Commission breaks impasse and adopts Third Plan.

55. However, shortly thereafter, the impasse was broken.

56. On February 24, 2022, by a 4-3 vote, the Redistricting Commission adopted another revised plan, the Third Plan.

57. The Third Plan was filed with the Ohio Supreme Court on February 25, 2022.

58. A true and accurate copy of the Third Plan is attached hereto as Exhibit C.

59. Objections were filed with the Ohio Supreme Court on February 28, 2022.

### K. Secretary of State LaRose goes forward with Third Plan without Ohio Supreme Court's blessing.

60. Shortly after the Third Plan was adopted by the Redistricting Commission, Secretary of State LaRose, the state's Chief Election Officer, determined that the state's boards of elections would move forward with the Third Plan.

61. This decision was memorialized in Directive 2022-26, attached hereto as Exhibit D.

62. Directive 2022-26 was an exercise of the Secretary LaRose's authority to move some but not all election deadlines under House Bill 93.

63. Directive 2022-26, which assumes the adoption of the Third Plan, set deadlines for determining candidates, such as local boards of elections certifying petitions on March 14, 2022.

64. Under Directive 2022-26, protests must be filed against partisan candidates by March 17, 2022.

65. Because of Directive 2022-26, the primary election is speeding forward.

66. The Ohio Supreme Court, on March 16, 2022, invalidated the Third Plan.

67. As a result, Secretary LaRose may need to restart many of the election processes that he initiated assuming the Third Plan applied.

68. Secretary LaRose has indicated that it is too late to move away from the Third Plan to still have the primary on May 3, 2022.

**L. Plaintiffs are now stuck in malapportioned districts (or no district at all).**

69. Because the Ohio Supreme Court invalidated the Third Plan, it is possible that the Secretary of State may stop implementing the Third Plan.

70. Without clearly adopted legislative districts, Plaintiffs cannot decide which candidates to support, cannot decide to run for elected office or to encourage candidates to run, cannot educate themselves or others on the positions of candidates in their districts and prepare to hold those candidates responsible, and cannot associate with others in their district.

71. Plaintiffs are in districts based on census data that is more than ten years old instead of districts based on the 2020 decennial census. As a result, Plaintiffs live in malapportioned districts, with variance greater than 10%. For example, Mr. Gonidakis, Ms. Vanderkooi, and Ms. Smith live in Franklin County, which has gained more than 150,000 people since the last census, and their respective cities have experienced more than 10% in population gains, diluting their votes within their voting districts. The same is true for Ms. Parker, Mr. Kidd, and Ms. Conditt, whose

11

areas (and therefore districts) have also grown exponentially in population. Conversely, individuals in areas of Ohio that lost population, such as Scioto County, have seen their voting power increase because their population decreased.

72. As a result, Plaintiffs' districts (using the 2010 legislative district maps), including House Districts 18, 19, 21, 52, 62, 68, 70, and 90 and Senate Districts 3, 4, 7, 14, 15, 16, 19, and 22, are malapportioned, as they now are outside the permissible 5% variance of the target population.

73. Because Plaintiffs' districts are malapportioned and require adjustment, and the adjustment can only come from other state legislative districts, all of Ohio's districts are malapportioned or otherwise impacted by malapportionment and requirement adjustment.

74. Alternatively, the 2010 state legislative districts have expired, and Plaintiffs' rights have been violated because they have no state legislative districts at all because the Third Plan has been invalidated.

75. The plans adopted by the Redistricting Commission and rejected by the Ohio Supreme Court, attached as Exhibits A and B, properly distribute voting power and are based on 2020 census data.

76. The Third Plan also properly adopts voting power based on the 2020 census data.

77. Additionally, because litigation regarding the Redistricting Commission's approved legislative district plans has been pending before the Ohio Supreme Court since September 2021, no resolution will be achieved regarding Ohio's state legislative district maps before applicable voting deadlines, including the May 3, 2022, primary election.

## COUNT I

78. The Fourteenth Amendment of the U.S. Constitution requires that no state shall deny any person within its jurisdiction the equal protection of its laws. This requires that both houses of a bicameral legislature be apportioned on a population basis. In other words, an individual's right to vote for state legislatures is unconditionally impaired when the weight of the individual's vote is substantially diluted when compared with citizens that in other parts of the state.

79. The 2020 U.S. Census revealed significant changes to Ohio's population.

80. But Ohio does not currently have districts modified to fit these most recent changes.

81. As a result, if elections are allowed to take place before the legal sufficiency of districts are resolved, votes in overpopulated districts, such as Plaintiffs, will suffer from vote dilution. This means a deprivation of political power and resources.

82. Additionally, the ongoing uncertainty for the 2022 election cycle prevents voters, including Plaintiffs, from knowing their voting district, engaging with candidates, holding representatives accountable, and associating and organizing with their favored candidates.

83. Plaintiffs are suffering this harm on an ongoing basis.

## COUNT II (ALTERNATIVE)

84. The Fourteenth Amendment of the U.S. Constitution requires that no state shall deny any person within its jurisdiction the equal protection of its laws without due process. This requires allowing an elector the opportunity to vote for a candidate for a state legislative district.

85. To protect these rights, Secretary of State LaRose started the election processes with the Third Plan. This ensures that the May 3 primary takes place.

86. But the Ohio Supreme Court has just invalidated the Third Plan, which threatens to stop the work of the Secretary of State carrying out the Third Plan, and could disrupt the status quo.

87. If the status quo is disrupted, then there will be no state legislative districts, and Plaintiffs cannot exercise their right to vote for a candidate for a state legislative district in violation of the Equal Protection Clause and the Due Process Clause.

88. Additionally, the ongoing uncertainty for the 2022 election cycle prevents voters, including Plaintiffs, from knowing their voting district, engaging with candidates, holding representatives accountable, and associating and organizing with their favored candidates.

89. Plaintiffs are suffering this harm on an ongoing basis.

## COUNT III

90. The First Amendment of the U.S. Constitution protects the freedom of association and applies to the states via the Fourteenth Amendment.

91. Unnecessary uncertainty about the 2022 election impedes candidates' abilities to run for office, and restricts Plaintiffs' First Amendment right to association because it restricts an individual's ability to assess candidate positions and qualifications, advocate for candidates, and associate with like-minded voters.

92. Because of the malapportioned districts or the tentative districts, there is imminent risk of confusion and ongoing denial of Plaintiffs' freedom of association.

93. There is no compelling reason to deny Plaintiffs' freedom of association.

94. Plaintiffs are suffering these harms on an ongoing basis.

**PRELIMINARY INJUNCTION**

95. Because should the Secretary of Stop implementing the Third Plan, then Plaintiffs will effectively no state legislative districts or their state legislative districts are outdated, so they are very likely to succeed on the merits of their claim.

96. Because the Plaintiffs are at risk of being denied the right to vote in violation of the U.S. Constitution, so they are suffering an irreparable injury.

97. Because voting is a fundamental right, the public interest favors restoring the voting rights of Plaintiffs and other Ohioans.

98. There is no harm in the Redistricting Commission following the U.S. Constitution and Plaintiffs receiving the right to vote.

**REQUEST FOR THREE-JUDGE PANEL**

99. Plaintiffs request a three-judge panel to adjudicate this lawsuit because Plaintiffs are challenging the constitutionality of the apportionment of Ohio's statewide legislative body. *See* 28 U.S.C. § 2284(a).

**WHEREFORE**, Plaintiffs respectfully request that this Court:

    i.    Declare that the removing the current configurations of Ohio's state legislative districts, the Third Plan, violates the First and Fourteenth Amendments to the U.S. Constitution;

    ii.    Permanently enjoin Defendant and all persons acting on his behalf or in concert with him from implementing, enforcing, or conducting any elections under Ohio's current state legislative districts other than the Third Plan;

iii. Establish a schedule that will enable the Court to adopt a timely enacted and lawful plan and implement the new plan for Ohio's state legislative districts, specifically the Third Plan, attached as Exhibit C, which is already in motion;

iv. Retain jurisdiction while Defendant enacts plans by this Court's deadline;

v. Award Plaintiffs' attorneys' fees and costs in this action; and

vi. Grant such other and further relief as this Court deems just and proper in the circumstances.

Respectfully submitted,

**Isaac Wiles & Burkholder LLC**

*/s/ Donald C. Brey*
Donald C. Brey (0021965)
Brian M. Zets (0066544)
Matthew R. Aumann (0093612)
Ryan C. Spitzer (0093515)
Trista Turley (0093939)
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Tel: 614-221-2121; Fax: 614-365-9516
dbrey@isaacwiles.com
bzets@isaacwiles.com
maumann@isaacwiles.com
rspitzer@isaacwiles.com
tturley@isaacwiles.com
*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2022, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

*/s/Donald C. Brey*
Donald C. Brey (0021965)
