# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GONIDAKIS, et al.,** | |
| Plaintiffs, | |
| v. | Circuit Judge Amul R. Thapar |
| **FRANK LAROSE,** | Chief Judge Algenon L. Marbley |
| Defendant, and | Judge Benjamin J. Beaton |
| **LEAGUE OF WOMEN VOTERS OF OHIO and A. PHILIP RANDOLPH INSTITUTE OF OHIO,** | |
| Intervenor-Defendants. | Case No. 2:22-cv-773 |

## INTERVENOR-DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER TO MAINTAIN THE THIRD PLAN

i

**Table of Contents**

I. Introduction .................................................................................................................... 1

II. Factual Background ....................................................................................................... 3

    A. The Supreme Court of Ohio is Actively Supervising the Redistricting Process. ..................................................................................................... 3

        1. The Ohio Constitution expressly vests exclusive and original jurisdiction over partisan gerrymandering claims in the Supreme Court of Ohio. ................................................................................................. 3

        2. The Supreme Court of Ohio Carefully Reviewed Three Enacted Plans and Invalidated Them Under Ohio Law. ............................................. 4

        3. The Supreme Court of Ohio Set Forth a Detailed Procedure Regarding the Enactment of a Fourth Plan. ................................................ 5

    B. The Ohio Redistricting Process is Moving Forward Expeditiously. ...................... 5

    C. At Present, Ohio Is Not Proceeding with General Assembly Elections as part of the May 3, 2022 Primary. ................................................................................. 6

    D. There Is a Reasonable Prospect that the May 3, 2022 Primary Date May Move. ...................................................................................................................... 7

III. Standard of Review ........................................................................................................ 8

IV. Argument ....................................................................................................................... 9

    A. Plaintiffs Are Improperly Seeking an Order to Change the Status Quo. ............... 9

    B. Plaintiffs are Unlikely to Succeed on the Merits. ................................................ 10

        1. Plaintiffs' Claims Fail Under *Growe:* The State Process Has Not Run Out of Time. ........................................................................................ 10

        2. Plaintiffs' Claims Fail Under *Bush v. Gore:* Imposing a Plan that the State Supreme Court Invalidated Would Be Improper. ....................... 10

    C. Plaintiffs are Not at Risk of Suffering Irreparable Injury. ................................... 12

    D. It is Not in the Public Interest for this Court to Impose a Map Struck Down by the Supreme Court of Ohio as an Unconstitutional Partisan Gerrymander. ......................................................................................................... 12

V. Conclusion .................................................................................................................... 13

**I.      Introduction**

This Court should deny Plaintiffs' Motion for a Temporary Restraining Order (TRO) to change the status quo and impose an Ohio General Assembly district plan that has already been invalidated by the Supreme Court of Ohio. This is true for four reasons.

First, Plaintiffs' motion improperly seeks to change the status quo – while purporting to be premised on doing nothing more than maintaining the status quo until the motion for preliminary injunction is decided. In particular, Plaintiffs seek an order to require Secretary LaRose to implement the Third (Redistricting) Plan. But that Plan is not presently being implemented, and Plaintiffs should not be able to force that result.

Second, Plaintiffs are not likely to win on the merits that federal imposition of a constitutionally defective map is warranted, given the need for federal courts to defer when "the State, through its legislative *or* judicial branch, has begun to address" redistricting. *Growe v. Emison*, 507 U.S. 25, 33 (1993). As long as there is a reasonable prospect that the state process will be completed in time to meet an election schedule, the federal court must defer to that process. Here, the Ohio Redistricting Commission ("the Commission") has been working continuously throughout this week – with more meetings scheduled daily through Monday – to enact a revised Plan by the March 28, 2022 deadline set by the Supreme Court of Ohio. And various state actors are determining what needs to be done as regards the May 3, 2022 primary election given the work of the Commission. The process is far from broken. The state process is working – expeditiously.

And this Court should not impose a map that the Supreme Court of Ohio has held to be invalid under the Ohio Constitution. State Courts are given particular deference when interpreting law governing state elections. *See Democratic Nat'l Comm. v. Wisconsin State*

1

*Legislature*, 141 S. Ct. 28, 208 L. Ed. 2d 247 (2020) (noting the difference in in "the authority of state courts to apply their own constitutions to election regulations" and cases involving federal elections) (Roberts, CJ, concurring); *see also Democratic Nat'l Comm.,* 141 S. Ct. at 34 n.1 (noting the particular deference given to state court interpretation of state constitutions for state elections) (Kavanaugh, J, concurring).

Third, contrary to Plaintiffs' assertions, they face neither immediate nor irreparable harm. The Commission is working to enact a plan by the March 28, 2022 deadline set by the Court, five days from now. Given this, nothing will impinge on the rights of the Plaintiffs between now and March 30, the date already set for a preliminary injunction hearing.

Fourth, Plaintiffs' attempt to impose a map on the voters of Ohio that has been found to be constitutionally defective both injures third parties (the voters of Ohio) and is against the public interest. To impose this map would constitute an invitation to gerrymander and then stonewall so as to obtain federal relief to overturn a lawful state process.

When the Supreme Court of Ohio issued an order invalidating the Third Map on March 16, 2022, it set an intense, expedited schedule for the public drafting of maps, requiring "frequent" public drafting sessions involving the entire Commission, with the goal of a map being completed by March 28, 2022. The Commission is dutifully complying with this order, as evidenced by its *daily* meetings and its decision to hire two independent mapmakers and a mediation team to assist with the map-drawing process. These invigorated redistricting efforts marks major steps forward in Ohio's redistricting process. This Court should not interfere, and should permit it to unfold.

## II. Factual Background

### A. The Supreme Court of Ohio is Actively Supervising the Redistricting Process.

#### 1. The Ohio Constitution expressly vests exclusive and original jurisdiction over partisan gerrymandering claims in the Supreme Court of Ohio.

In 2015, Ohio voters, by an overwhelming margin of 71.5% to 28.5%, amended the Ohio Constitution by adding express constitutional commands that legislative plans not be drawn "to favor or disfavor a political party," and that the distribution of seats "shall correspond closely to the statewide preferences of the voters of Ohio." Ohio Const. art. XI, §§ 6(A)–(B). The express purpose of the constitutional amendment was to "[e]nd the partisan process for drawing Ohio House and Senate districts and replace it with a bipartisan process with the goal of having district boundaries that are more compact and politically competitive." Ohio Sec'y of State, Issue 1 Ballot Language (Nov. 2015), https://bit.ly/3ElgrPY.

Article XI of the Ohio Constitution, as amended, gives the Supreme Court of Ohio a central role in supervising the enactment of any legislative plan. It provides the Supreme Court of Ohio with exclusive and original jurisdiction over all actions arising under Article XI, and grants it the authority to invalidate "any general assembly district plan made by the Ohio redistricting commission." Ohio Const. art. XI, §§ 9(A)–(B); *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, --- N.E.3d ----, 2022-Ohio-65, 2022 WL 110261, ¶ 69 (Ohio Jan. 12, 2022). Moreover, in the event that the Supreme Court of Ohio finds a plan to be constitutionally defective, it has the express authority to order the Commission to "convene, and ascertain and determine a general assembly district plan in conformity with such provisions of this constitution as are then valid." Ohio Const. art. XI, § 9(B).

3

### 2. The Supreme Court of Ohio Carefully Reviewed Three Enacted Plans and Invalidated Them Under Ohio Law.

On September 16, 2021, the Commission voted along strict party lines to enact a General Assembly district plan to be in effect for the next four years. A week later, on September 23, 2021, Intervenor-Defendants League of Women Voters filed a complaint in the Supreme Court of Ohio, alleging that the Commission's district plan violated Article XI of the Ohio Constitution. Specifically, Intervenor-Defendants alleged that the Commission violated Sections 6(A) and 6(B) of Article XI by enacting a plan that (i) primarily favored the Republican Party, and (ii) failed to correspond closely to the statewide preferences of the voters of Ohio. *See* Compl. ¶ 91, *League of Women Voters of Ohio, et al. v. Ohio Redistricting Comm'n, et al.*, No. 2021-1193 (Ohio Sept. 23, 2021).

Following expedited discovery, full merits briefing, and oral argument, the Supreme Court of Ohio, on January 12, 2022, struck down the Commission's plan. In so doing, it carefully examined (and affirmed) its authority to remedy a partisan gerrymander, *League of Women Voters of Ohio*, 2022 WL 110261, ¶¶ 64–75, ordered the Commission to reconvene to adopt a new plan within ten days of the Court's decision, and expressly retained jurisdiction to review the constitutionally compliant plan once adopted by the Commission, *id.* ¶ 137. On January 22, 2022, the Commission adopted a revised plan, to which Intervenor-Defendants, three days later, lodged objections, explaining that the revised plan violated Article XI, Sections 6(A) and 6(B). *See* Pet'rs' Obj. to Ohio Redistricting Comm'n's Revised Map, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Jan. 25, 2022).

Roughly two weeks later, on February 7, 2022, the Supreme Court of Ohio sustained Intervenor-Defendants' objections and struck down the Commission's Revised Plan plan for "violat[ing] Article XI, Sections 6(A) and 6(B) of the Ohio Constitution." *League of Women*

*Voters of Ohio v. Ohio Redistricting Comm'n.,* --- N.E.3d ----, 2022-Ohio-342, 2022 WL 354619, ¶ 3 (Ohio Feb. 7, 2022). On February 24, 2022, the Commission passed a second revised plan (the "Third Plan"), to which Intervenor-Defendants again filed objections. *See* Obj. to Ohio Redistricting Comm'n's Feb. 24, 2022 Revised Plan, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Feb. 28, 2022).

On March 16, the Supreme Court of Ohio issued its Opinion and Order, sustaining Petitioners' objections to the Third Plan on the basis of violations of Article XI, Sections 6(A) and 6(B) of the Ohio Constitution. *03/16/2022 Case Announcements #2*, *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, 2022-Ohio-790 (Ohio Mar. 16, 2022).

### 3. The Supreme Court of Ohio Set Forth a Detailed Procedure Regarding the Enactment of a Fourth Plan.

The Ohio Court spelled out just how the Third Plan's constitutional defects should be remedied:

- The Supreme Court of Ohio ordered that the Commission be reconstituted and convene in order to draft and adopt a new Ohio General Assembly district plan that conforms with the Ohio Constitution. *Id*

- "To promote transparency and increase public trust," the order requires the Commission to conduct its drafting "in public[.]" *Id.*

- To make sure that the work of the Commission is done effectively, the Court ordered the Commission to "convene frequent meetings to demonstrate their bipartisan efforts to reach a constitutional plan within the time set by th[e] court." *Id.* (emphasis added);

- And to make sure that the work is done expeditiously, the new plan must be filed with the Secretary of State no later than March 28, 2022. *Id.*

- In addition, the Ohio Court set forth an aggressive (72 hour) schedule for the filing of objections, if any, and responses (again, 72 hours), if any, to any revised plan. *Id.*

### B. The Ohio Redistricting Process is Moving Forward Expeditiously.

The Commission immediately began complying with the Ohio Court's Order. It first met on Saturday, March 19, at which time the Commission agreed to hire two independent

5

mapmakers and a mediator to assist in the map-drawing process. *See* Ex. A (Tr. of 3-19-2022 Ohio Redistricting Comm'n Meeting) at 01:25:30. The Commission has now scheduled meetings *every day* through Monday, March 28. *See* Commission Meetings, OHIO REDISTRICTING COMM'N, https://redistricting.ohio.gov/meetings (last visited Mar. 23, 2022). The independent map drawers are being flown in from out of state to work with the Commission in person. *See* Ex. B (Tr. of 3-21-2022 Ohio Redistricting Comm'n Meeting) at 00:27:47. The Commission is taking seriously its obligations to be directly involved in the process of drawing the maps; it is not merely delegating the task to staff. *See generally*, Exs. A–B. And it is also taking seriously the admonition that the map drawing take place in public. *Id.*

    **C.    At Present, Ohio Is Not Proceeding with General Assembly Elections as part of the May 3, 2022 Primary.**

As a result of the rulings of the Supreme Court of Ohio, the Third Plan is presently not operative. Thus, when the Secretary responded to the Motion for a TRO, he stated that while work had been undertaken under the Third Plan, that in fact that work is not presently being undertaken in light of the rulings of the Supreme Court of Ohio. In the words of the Secretary:

> Plaintiffs' characterization of the current status of the May 3, 2022, Ohio primary election is not completely accurate. They write that Secretary LaRose "has started implementing the Ohio Redistricting Commission's Third Plan though he may stop at any time. . . ."
>
> They are partially correct about the Third Plan in one regard – that Secretary LaRose was implementing it and was readying the eighty-eight county boards of election to hold the May 3 primary election with the districts in the Third Plan. **But once the Supreme Court invalidated it, he had no choice but to pause those preparations.** So, on March 17, 2022 Secretary LaRose issued Directive 2022-30 informing the county boards of election that the Supreme Court had invalidated the Third Plan and ordered the Ohio Redistricting Commission to adopt a new one by March 28, 2022. *See*, Exhibit A, Directive 2022-30. As a result of the Court's Order, he instructed boards that **they are prohibited** from **altering or sending ballots and that they must pause**

>> **reprogramming of voter registration tabulating systems until his Office provides additional instruction**."

Ohio Sec'y of State LaRose's Resp. to Pls.' Mot. for a TRO to Maintain the Third Plan, ECF No. 88 at PageID # 1310-1311 (emphasis added).

The Secretary then succinctly summarizes the situation, stating: "[s]o, to be completely accurate, it is not that the Secretary may stop implementing the Third Plan at any time, **he already has paused implementing it**." *Id.* at PageID # 1311 (emphasis added).

### D. There Is a Reasonable Prospect that the May 3, 2022 Primary Date May Move.

Not only is the Third Plan inoperative as to the May 3 primary, but it also appears that the primary date itself may now move. Secretary LaRose has informed the legislature that the May 3 primary will not include state House and state Senate contests. *See* Letter from Sec'y LaRose, ECF No. 79-2. In a filing made on March 18, 2022, Secretary Larose underscored this point:

> At present, the primary election for those districts will have to be held at a later date. . . . **And although the May 3, 2022 primary election is no longer looming for the state legislative races**, the need for final state legislative districts to be used in this year's elections remains.

LaRose Opp'n to Pls.' Mot. for Prelim. Inj., ECF No. 76 at PageID # 1108 (emphasis added).

The Secretary is not alone. In reaction to the Supreme Court of Ohio's most recent decision, Ohio Senate President Huffman suggested moving the primary date for state legislative elections.[1] According to President Huffman, if all primaries were to be kept on one date, the

---

[1] *See* Jessie Balmert & Laura A. Bischoff, Ohio Supreme Court rejects statehouse maps, ending hopes of full May primary, ENQUIRER, (Mar. 17, 2022 7:59 AM).

*earliest* primary date would be in July. *Id.* Governor DeWine has also indicated a primary date move may be imminent, stating that "it's looking unlikely" that the May 3 date would remain.[2] And consistent with this theme, and perhaps as a "belt and suspenders" measure to avoid any doubt on the issue, on March 21, 2022, Senator Sykes and House Minority Leader Russo filed a motion with the Supreme Court of Ohio to move the May 3, 2022 primary date for the General Assembly elections. *See* Mot. of Senator Sykes and House Minority Leader Russo to Move Primary Election Date, *League of Women Voters of Ohio*, No. 2021-1193 (Ohio Mar. 21, 2022).

### III.    Standard of Review

As a threshold matter, motions for a TRO are only proper to preserve the status quo. *See, e.g.*, *Ison v. Madison Loc. Sch. Bd.*, 395 F. Supp. 3d 923, 930 (S.D. Ohio 2019); *Fort Washington Inv. Advisors, Inc. v. Adkins,* No. 1:19-CV-685, 2019 WL 4220902, at *3 n.5 (S.D. Ohio Sept. 5, 2019).

Where appropriate relief is sought, then in evaluating such a motion the governing factors are well established: "In adjudicating a motion for a TRO, the Court must balance whether: (1) plaintiff is likely to succeed on the merits; (2) the chance that plaintiff would suffer irreparable injury without immediate injunctive relief; (3) the possibility of harm to others; and (4) the public interest." *Women's Med. Pro. Corp. v. Baird*, No. 03-CV-162, 2008 WL 545015, at *1 (S.D. Ohio Feb. 27, 2008) (Marbley, J.) (citing *Chabad of S. Oh. & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004)).

---

[2] Jeremy Pelzer, Gov. Mike DeWine's suggestion to break Ohio's redistricting impasse: have mapmakers collaborate on bipartisan plan, MSN, (Mar. 17, 2022).

8

IV.     **Argument**

    A.     **Plaintiffs Are Improperly Seeking an Order to Change the Status Quo.**

Plaintiffs' Motion is defective because it seeks a TRO in order to *change* the status quo. It is fundamental to a proper Motion for a TRO that the relief sought be to "**preserve the status quo**." *See, e.g.*, *Ison*, 395 F. Supp. at 930 (emphasis added); *see also Fort Washington Investment Advisors* at *3 n.5 (striking part of the relief requested by a TRO on the grounds that a "temporary restraining order maintains the status quo; it does not provide affirmative relief."). Plaintiffs are clearly aware of this requirement, as they claim to be seeking to "maintain the status quo," Pls.' Mot For a TRO to Maintain the Third Plan, ECF No. 84 at PageID # 1156, but this wording is at odds with the reality of their relief sought. The relief sought by the instant motion is plainly stated:

> [Plaintiffs] "move this Court for a temporary restraining order pursuant to Fed. R. Civ. P. 65(b) to enjoin the Ohio Secretary of State Frank LaRose, in his official capacity, and all persons acting on his behalf or in concert with him, from deviating from **the status quo: implementing the Third Plan adopted by the Ohio Redistricting Commission.**

*Id.* at Page ID# 1154 (emphasis added). Plaintiffs purport to seek this relief so that the status quo is intact until the motion for preliminary injunction is decided. *Id.* at PageID # 1156.

Thus Plaintiffs assert that the "status quo" amounts to the implementation of the Third Plan (and indeed they caption their motion as seeking to "maintain" the Third Plan). Plaintiffs have misstated the facts.

As set forth above, the Secretary has clearly stated that the implementation of the Third Plan *is not* the status quo. It was paused nearly a week ago. Thus, an affirmative order to implement the Third Plan would improperly require a *change* in the status quo.

9

### B. Plaintiffs are Unlikely to Succeed on the Merits.

#### 1. Plaintiffs' Claims Fail Under *Growe:* The State Process Has Not Run Out of Time.

So long as time remains for the state process to resolve itself, federal intervention in the redistricting process is improper. *See Growe*, 507 U.S. at 33 ("In the reapportionment context, the Court has required federal judges to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself."). In its ruling from the bench, the District Court distinguished this case from the federal intervention in *Branch v. Smith*, 538 U.S. 254 (2003), by accurately noting that in *Branch* there was "no prospect" of resolution before the election. Tr. of Status Conf., ECF No. 69 at PageID # 1003; *Branch*, 538 U.S. at 265 ("we affirm the injunction on the basis . . . that the state-court plan had not been precleared and had no prospect of being precleared in time for the 2002 election").

Because a very real, and imminent, prospect for resolution remains in this case, deferral continues to be warranted. Accordingly, Plaintiffs are unlikely to succeed on the merits of their claim that federal imposition of an invalidated map is justified.

The Commission is moving with dispatch towards enacting a new map. The Commission is working long days – including weekend days to meet its March 28 deadline.

Clearly, if Ohio is on the precipice of enacting a new plan and also moving back the state primary date by several months, it can hardly be said that time has run out for letting the state redistricting process run its course.

#### 2. Plaintiffs' Claims Fail Under *Bush v. Gore:* Imposing a Plan that the State Supreme Court Invalidated Would Be Improper.

This Court cannot order Ohio officials to go forward with a plan invalidated by the Supreme Court of Ohio. A federal court cannot compel state officials to violate state law. *See,*

10

*e.g.*, *Bush v. Gore*, 531 U.S. 98, 111 (2000) (per curiam) (rejecting a proposed remedy on the grounds that it would require remanding to the Florida Supreme Court to issue an order in violation of the Florida Election Code). Nor can a federal court choose to ignore rights created by the Ohio Constitution and enforced by the Supreme Court of Ohio. *See, e.g.*, *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945) ("Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights created by State law . . . ."); *Peters v. Gilchrist*, 222 U.S. 483, 492 (1912) ("The question as to whether a particular law has been passed in such manner as to become a valid law under the Constitution of the state is a state, and not a Federal, question. Courts of the United States are therefore under obligation to follow the adjudications of the courts of the state whose law is in question.").

Plaintiffs make no argument that the Ohio constitutional provisions underlying the Ohio Court's decisions are somehow preempted by federal law. The Supreme Court of Ohio's decision that the Third Plan violates the Ohio Constitution is controlling on this Court. *Rucho v. Common Cause*, 139 S. Ct. 2484, 2506–07, (2019) ("We conclude that partisan gerrymandering claims present political questions beyond the reach of the federal courts."). This precludes federal imposition of the invalidated Third Plan. Indeed, Ohio's Attorney General has acknowledged as much. *See* Ex. C (Feb. 22, 2022 Letter from Attorney General Yost to Ohio General Assembly) at 2 ("The federal court may not order the use of a map that was rejected by the Ohio Supreme Court, where the underlying provision of the state constitution has not been found to violate the federal constitution."). Therefore, the federal imposition of the invalidated Third Plan is not a viable remedy.

### C. Plaintiffs are Not at Risk of Suffering Irreparable Injury.

Plaintiffs' fundamental rights are not at irreparable risk. The Commission is working to enact a plan five days from now, by March 28, 2022. And the preliminary injunction hearing is set for three days later.

Plaintiffs allege they are currently living under the 2010 legislative district maps, and thus are suffering malapportionment harms. But as has been made clear above, there is no evidence of any intention for the election to held under the 2010 district lines. *If* the exceedingly unlikely were to come about, and Ohio moved to hold an election under these lines, then federal intervention may be warranted. But such a harm is not remotely imminent. The same can be said for the notion that there will be no districts at all. It is very clear that Ohio is swiftly moving towards a new district plan.

Most important, harm to the Plaintiffs, if any, would not be irreparable. *Even* if (1) the Commission were to fail to produce a new plan, and (2) the General Assembly fails to move the primary date *and* (3) the Supreme Court of Ohio fails to move the primary date - only then would relief be needed, and at that point there would be nothing to stop *this* Court from issuing injunctive relief that delays the primary.

### D. It is Not in the Public Interest for this Court to Impose a Map Struck Down by the Supreme Court of Ohio as an Unconstitutional Partisan Gerrymander.

Finally, a TRO would not be in the public interest. Granting a TRO would effectively nullify Article XI of the Ohio Constitution, which was passed with overwhelming public support. For 71.5% of voters to agree on a political issue is a rare thing, but such was the case when it came to Article XI of the Ohio Constitution. That vote makes clear that Ohio views partisan fairness in its elections as an essential component of the public interest. By stepping in unnecessarily, this Court would be effectively providing a work-around to the redistricting

process approved by the Ohio citizenry. This Court would be sending the message to those in the political majority on future Ohio Redistricting Commissions that they can gerrymander to their hearts' content because, in the event they are found to have not complied with Article XI, they can simply have their invalidated maps upheld in federal court. This is not the system Ohio voters approved. Article XI grants the Supreme Court of Ohio expansive authority to oversee the redistricting process, and that is authority this Court should respect to the greatest extent possible. A TRO at this time is therefore inconsistent with the public interest, and should be denied.

## V. Conclusion

For the aforementioned reasons, Intervenor-Defendants respectfully request that Plaintiffs Motion for a Temporary Restraining Order be denied.

Respectfully submitted,

Robert D. Fram
COVINGTON & BURLING, LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
(415) 591-6000
rfram@cov.com

James Hovard*
COVINGTON & BURLING, LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4700
jhovard@cov.com

* *Pro hac vice* application forthcoming
** *Pro hac vice* application pending

*/s/ Freda J. Levenson*
Freda J. Levenson (0045916)
*Counsel of Record*
ACLU OF OHIO FOUNDATION, INC.
4506 Chester Avenue
Cleveland, OH 44103
(614) 586-1972 x125
flevenson@acluohio.org

David J. Carey (0088787)
ACLU OF OHIO FOUNDATION, INC.
1108 City Park Avenue, Suite 203
Columbus, OH 43206
(614) 586-1972 x2004
dcarey@acluohio.org

Alora Thomas*
Julie A. Ebenstein*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION, INC.
125 Broad Street
New York, NY 10004
(212) 519-7866
athomas@aclu.org
jebenstein@aclu.org

14

CERTIFICATE OF SERVICE

I , Freda J. Levenson, hereby certify that on this 23rd day of March, 2022, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Southern District of Ohio, Eastern Division via the ECF system, which will send notification of such filing to all counsel of record.

                                                      */s/ Freda J. Levenson*
                                                     Freda J. Levenson (0045916)
                                                     *Counsel for Intervenor-Defendants*