# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DISTRICT

| | | |
|---|---|---|
| MICHAEL GONIDAKIS, ET AL. | : | |
| | : | |
|    PLAINTIFFS | : | |
| | : | |
| AND | : | CASE NO. 2:22-CV-773 |
| | : | |
| THE HONORABLE REVEREND | : | CHIEF JUDGE ALGENON L. |
| KENNETH L. SIMON | : | MARBLEY |
| 1507 HILLMAN AVENUE | : | JUDGE AMUL R. THAPAR |
| YOUNGSTOWN, OHIO 44507 | : | JUDGE BENJAMIN J. BEATON |
| | : | |
|    INTERVENOR- PLAINTIFF | : | MAGISTRATE JUDGE ELIZABETH |
| | : | P. DEAVERS |
| AND | : | |
| | : | |
| THE HONORABLE REVEREND | : | |
| LEWIS W. MACKLIN, II | : | |
| 505 PARKCLIFFE AVENUE | : | "CLASS-ACTION ALLEGATIONS" |
| YOUNGSTOWN, OHIO 44571 | : | |
| | : | "CLAIM OF |
|    INTERVENOR- PLAINTIFF | : | UNCONSTITUTIONALITY" |
| | : | |
| AND | : | |
| | : | |
| HELEN YOUNGBLOOD | : | |
| 749 COITSVILLE ROAD | : | |
| YOUNGSTOWN, OHIO 44405 | : | |
| INDIVIDUALLY AND AS | : | |
| SUCCESSOR REPRESENTATIVES | : | |
| OF THE CLASS OF AFRICAN | : | |
| AMERICAN VOTERS CERTIFIED IN | : | |
| EZELL ARMOUR, ET AL. V. THE | : | |
| STATE OF OHIO, ET AL, N.D. OHIO | : | |
| CASE NO. 775 F. SUPP 1044 (N.D. | : | |
| OHIO, 1991) | : | |
| | : | |
|    INTERVENORS- PLAINTIFFS | : | |
| | : | |
| | : | |
| VS. | : | |
| | : | |
| GOVERNOR MIKE DEWINE, | : | |
| GOVERNOR AND MEMBER OF THE | : | |
| OHIO REDISTRICTING | : | |
| COMMISSION | : | |

RIFFE CTR. 30TH FLOOR : 
77 SOUTH HIGH ST. : 
COLUMBUS, OH 43215 : 
  : 
AND : 
  : 
SECRETARY OF STATE FRANK : 
LAROSE, AS SECRETARY OF : 
STATE AND MEMBER OF : 
THE OHIO REDISTRICTING : 
COMMISSION : 
22 NORTH FOURTH ST. 16TH : 
FLOOR : 
COLUMBUS, OH 43215 : 
  : 
AND : 
  : 
HOUSE SPEAKER ROBERT R. CUPP, : 
SPEAKER OF THE OHIO HOUSE OF : 
REPRESENTATIVES AND CO- : 
CHAIR OF THE OHIO : 
REDISTRICTING COMMISSION : 
77 SOUTH HIGH ST. 14TH FLOOR : 
COLUMBUS, OH 43215 : 
  : 
AND : 
  : 
SENATE PRESIDENT MATT : 
HUFFMAN : 
PRESIDENT OF THE OHIO SENATE : 
AND MEMBER OF THE OHIO : 
REDISTRICTING COMMISSION : 
1 CAPITOL SQ. 2ND FLOOR : 
COLUMBUS, OH 43215 : 
  : 
AND : 
  : 
AUDITOR KEITH FABER, : 
MEMBER OF THE OHIO : 
REDISTRICTING COMMISSION : 
88 EAST BROAD STREET, 5TH : 
FLOOR : 
COLUMBUS, OHIO 43215 : 
  : 
AND : 
  : 

2

OHIO REDISTRICTING        :
COMMISSION                    :
1 CAPITAL SQUARE          :
COLUMBUS, OHIO 43215      :
                                :
AND                            :
                                :
THE HONORABLE DAVID YOST   :
OHIO ATTORNEY GENERAL    :
30 E. BROAD STREET        :
COLUMBUS, OHIO 43215      :
                                :
                  DEFENDANTS.    :

## **INTERVENOR COMPLAINT**

### **I.     INTRODUCTION**

1.  On August 23, 2021, the Ohio Redistricting Commission (hereinafter "Commission") began a series of regional hearings to accept testimony from Ohio citizens in relation to the reconfiguration of Ohio's Congressional districts and the Ohio General Assembly legislative districts under procedures set forth in comprehensive amendments to the Ohio Constitution approved by Ohio voters in 2015. See, Ohio Constitution, Article XI.

2.  On the very first day of hearings, Intervenor-Plaintiff, the Honorable Reverend Kennth L. Simon made the following statement to the Commission

> Co-Chair, Senator Vernon Sykes [01:32:14] Questions? Seeing none, thank you very much, Reverend Kenneth Simon.
>
> Simon [_____] Chairman Sykes, and to the legislators and to this wonderful audience, my apologies, I did not intend to speak today, but I was moved by the young man who spoke so passionately. Urn, I'm chairman of the Community Mobilization Coalition for the Greater Youngstown Area, a group of 18 minority organizations organized for the express purpose of voter registration, voter education and voter mobilization. We've been in existence for twenty-two years and affecting the political, hopefully, climate here in the city of Youngstown. I've been through this process before, along with many of us in this room, where we appear before our legislators. I've been down to Columbus appearing before a Senate

education committee and giving testimony, and others have traveled distances to go down and testify. They're concerned people in this room who've taken time out of their schedules to come here and give their passionate testimony. And the passion that the young man displayed hits at the heart of all of our pain is that the sad reality is that we're going to have these sessions and we're going to listen to all of this testimony. And we're going to go behind closed doors and do what we've been doing, voting along party lines. And that's the sad reality and that's the pain that that young man was trying to convey. We spend all of this time in a formality and then we go back behind closed doors and we, we're not going to do the right thing, we're going to do what we've been doing, voting along party lines because, and it's not because we don't care, it's because we care about the wrong thing. [applause] We don't care about the people. I hope that you all would prove us prove me wrong. I hope that you would prove me wrong. But the sad reality is that's how it has been. I have been through hearings and hearings and testifying, and we just keep doing the same thing because we don't hear the people. We're loyal to our parties. And that has got to stop in The State of Ohio. Please prove me wrong. Thank you. [applause]

See, Transcript August 23, 2021, Redistricting Hearing, Youngstown State University.

3.   Unfortunately, over six months have passed since Reverend Simmon's sincere and prescient remarks. As predicted by Reverend Simon,  the  Defendants have approved, along party lines, three racially discriminatory and partisan redistricting plans that the Ohio Supreme Court has fortunately rejected. Defendants have approved along party lines, an unlawful Congressional Plan that the Ohio Supreme Court has  rejected.  A second unlawful Congressional Plan is currently under review by the Ohio Supreme Court (referred to hereinafter as "The March 2 Plan").

4.  Intervenor-Plaintiffs in this action, Reverend Simon, Reverend Macklin and Ms. Youngblood (hereinafter "the Simon Parties") challenge the process followed by Defendants to devise both the March 2, 2022 Congressional Plan and the current process being followed by Defendants  to devise a Fourth General Assembly Plan, as well  as the Plans themselves. In other words, Intervenor Plaintiffs seek in this action  to enjoin the use of any and all redistricting   Plans, state or federal,  approved by Defendants because the

process utilized by Defendants to develop these Plans violates the Voting Rights Act and the permanent injunction in <u>Ezell Armour, et al. v. The State of Ohio</u>, Case No. 775 F. Supp 144 (N.D. Ohio 1991) by reason of Defendants' malfeasance, that is intentionally disregarding the mandate of the Voting Rights Act of 1965, as amended and Defendants' overt adoption of an explicit process policy to disregard racial demographics in connection with district configuration.

5. Defendants' serial malfeasance described above and foreseen by Reverend Simon, has resulted in the invalidation by the Ohio Supreme Court of multiple proposed state and federal maps. Ohio voters now face uncertainty and electoral chaos, with critical election deadlines having already passed, due to Defendants' malfeasance.

6. The time has come for a federal court to explain to Defendants that the Voting Rights Act of 1965, as amended, is still the law of the land. Instruction from this Court is required now more than ever aside from the dilution of voting strength caused by Defendants' racial gerrymandering, the enactment of voter suppression legislation by State legislative bodies is rampart throughout the United States including in Ohio. See, Current *"Ohio House Bills 294 and 387"*. Also see, *State Voting Bills Tracker, 2021. Brennan Center for Justice."*

7. The State is not entitled to multiple opportunities to remedy its unconstitutional districts. See, <u>Reynolds v. Sims</u>, 377 U.S. 533, 585-87 (1964).

8. Due to Defendants' repeated and intentional disregard of current federal law, the Ohio Constitution and the findings in <u>Armour v. Ohio</u>, concerning Ohio's history of intentional racial discrimination in redistricting, exceptional circumstances exist that warrant the immediate appointment by this Honorable Court of a Special Master under Fed. R. Civ. P. 53 to implement a legislative redistricting process that complies with the

requirements of ⁋2 of the VRA, the Ohio Constitution, Article XI and the findings in the <u>Armour</u> Opinion.

9. In the interim, Intervenor-Plaintiffs seek to enjoin implementation of any Congressional or Ohio Senate legislative district map that does not combine the cities of Youngstown and Warren, Ohio into a single district, or any Ohio House district encompassing the City of Youngstown, Ohio that does not include the cities of Campbell and Struthers, Ohio.

## II. BACKGROUND

10. Plaintiffs, the Honorable Reverend Kenneth L. Simon, the Honorable Lewis W. Macklin, II and Helen Youngblood, in their individual capacities as registered Black voters in Mahoning County, Ohio and as successor representatives of the class of Black voters certified in <u>Ezell Armour v. State of Ohio</u>, 775 F. Supp 1044 (6th Cir. 1991) allege as follows:

11. Plaintiffs bring this action under 28 U.S.C. §§ 1331, 1343, 1357 and Federal Rule of Civ. P. 53, for the reason the matters in controversy arise under the Constitution and laws of the United States, and exceptional circumstances exist. Plaintiffs also bring this action under Section 2 of the Voting Rights Act of 1965, 52 U.S.C. §10301(b). Separate and apart from the preceding jurisdictional bases, Plaintiffs also bring this as an equitable enforcement action as class representatives to enforce the decree previously issued by this Court in <u>Amour v. Ohio</u>, supra, mandating that the State of Ohio refrain from intentional racial discrimination in connection with drawing legislative districts in Mahoning County, Ohio.

12. Venue lies in this District under 28 U.S.C. §1391(b) for the reason a substantial part of the property that is the basis of this action is located in this district and all Defendants are Ohio citizens.

13. Section 2 of the Voting Rights Act, (hereinafter "VRA") prohibits enforcement of any voting qualification, prerequisite to voting, standard, practice, or procedure that results in the denial or abridgement of the right to vote on account of race, color, or language minority status.

14. Plaintiffs currently reside in what has been proposed by Defendants as the 6th U.S. Congressional District. The General Assembly districts are unknown, but Plaintiffs challenge the process Defendants are currently employing to create them. Based upon the testimony of the architects of these districts, the methodology employed to craft Congressional and General Assembly districts in Mahoning County specifically and throughout Ohio generally, results in Plaintiffs having less opportunity than other members of the electorate to participate in the political process and to elect representatives of choice.

15. The Voting Rights Act and Constitutional violations complained of herein, were not innocent mistakes. These acts were intentional. Defendants were fully aware of their duties under the VRA and 15th Amendment, but conspired with certain State officials described herein to intentionally violate these duties, the previous rulings in Armour, and the clear language of Section 2, in favor of partisan advantage. Defendants racial discrimination and failure to follow federal law, specifically harmed Plaintiffs' class in Mahoning County, but also diluted Black voting power across Ohio.

16. The specific intentional conduct of Defendants set forth herein should operate to invalidate the challenged plans because, despite having been advised of the findings of this Court in Armour concerning historical racial discrimination and the duty under the VRA

to engage in an intensely local appraisal of indigenous political reality in Ohio and Mahoning County and the totality of circumstances test set forth in the Senate Report enacting Section 2, Defendants gave specific instructions to their staff responsible for the drawing of district maps, to disregard race, racial bloc voting or any other racial consideration in connection with district configuration..

17. Support for this assertion is found in the following exchange that occurred during hearings before the Ohio Redistricting Commission on September 9, 2021.

> Ray DiRossi: Urn, [00:03:30] I am Ray DiRossi and as was mentioned, I'm from the caucus staff for the Senate Majority Caucus and my colleague Blake Springhetti, caucus staff for the Ohio House Majority Caucus. Urn, co-chairs and distinguished members of the Redistricting Commission, it's great to be with you today.
>
> Sykes: Uh, thank you to the co-chairs and to Mr. Springhetti and Mr. DiRossi. Thank you, uh, for the work that you put together, uh, put, so you could present to us to get, today. Excuse me. Uh, my question is specific to, urn, how this current map complies with, uh, any provisions of the Voting Rights Act and what provisions of the Voting Rights Act [00:22:30] d- did you consider in constructing this map that you presented, or these maps that you presented today?
>
> Ray DiRossi: Co-chairs, Leader Sykes, thank you for the question. We did not use demographic data or racial data in the production of our maps.
> Sykes: Any follow up.
>
> Vernon Sykes: Yes, please.
>
> Sykes: Thank you for answering the question. Uh, so are there any provisions of the Voting Rights Act in which you considered while you drew the, or while you drew these maps [00:23:00] before us today?
>
> Ray DiRossi: I guess I would ... Co-chairs I guess I would say it on my previous statement, we did not use racial data or demographic data for the map, but we feel that the map complies with all the provisions of the Ohio Constitution.
>
> Sykes: Thank you. Uh, I appreciate your answer, and I, I certainly appreciate the brevity of it. Uh, can you explain why you didn't consider any parts of the Voting Rights Act in your consideration of these maps [00:23:30] before us today?

Ray DiRossi: Well, I said we didn't consider racial data or demographic data in our maps, but we were directed not to use that data by the legislative leaders, and so we did not use it.

Audience:      (laughs)

Vernon Sykes: Yeah. [inaudible 00:23:46].

Sykes:          So I, I would count myself as a legislative leader and I don't think that I shared that information with you and I, this is not an ambush, this is simply a question. The Voting Rights Act is certainly, uh, a part of our, uh, [00:24:00] election and electoral fabric. Uh, and so really just trying to get a better idea of how we are, or not in compliance with that, with these maps. So, urn, hopefully we can have some deeper conversations about that, but, but again, thank you for your responses.

Ray DiRossi: Thank you.

This testimony is clear evidence that the legislative leadership in Ohio, intentionally disregarded whether proposed districts would dilute Black voting strength or the existence among other things, of racial block voting or any of the other Senate Report factors.

18. According to Mr. DiRossi, the lead representative for Defendants in the redistricting process, the State not only intentionally decided to ignore race and the Voting Rights Act, but also previous judicial  findings of  official racial discrimination in legislative redistricting in Ohio.

### III.   PARTIES

19. Plaintiffs, the Honorable Reverend Kenneth L. Simon The Honorable Lewis W. Macklin II and Helen Youngblood are Black registered voters who reside in Mahoning County, Ohio. Plaintiffs Simon , Macklin  and Youngblood are members of the class of African American voters certified in the case of Ezell Armor, et al. v. The State of Ohio, Case No. 775 F. Supp. 1044 (N.D. Ohio 1991). Plaintiffs are the successor Armour class representatives.  Plaintiff Simon is the senior pastor of New Bethel Baptist Church.  Rev.

Kenneth L. Simon was born and raised in Youngstown, Ohio. He accepted Christ at the age of eight and was baptized in the New Bethel Baptist Church. He was called to the ministry in 1990 and was ordained in 1993. He served as Assistant Pastor and Director of Christian Education. In 1995 he was elected and called to the pastorate of the church where he currently serves after succeeding his father who was pastor for 33 years. He is a graduate of East High School and received his Bachelor of Science Degree in Business Administration from Youngstown State University. He received his Biblical and Religious Training from the Evangelical Training Association, Wheaton, Illinois and the Christian Study Center, in Youngstown, Ohio. Rev. Simon is currently serving as the Chairman of the Community Mobilization Coalition, Immediate Past Moderator of the Northern Ohio Baptist District Association, Worship Leader for the Lott Carey Foreign Mission Convention, Worship Leader for Ohio Baptist General Convention Congress of Christian Education, Chairman of the Next Steps Coalition on Police Reform, a member of the Youngstown Warren Black Caucus, Co-Convener of the Youngstown/Warren Dr. Martin Luther King Planning Commission, School Board member of Southside Academy, a member and former President of the Interdenominational Ministerial Alliance, Treasurer for the Baptist Pastors' Council, Board Member of MYCAP (Mahoning Youngstown Community Action Partnership), Board Member of the Greater Youngstown Crime Stoppers, and serves as Facilitator of the Community Leadership Coalition on Education. He has served as Vice-President of the 100 Black Men Organization (Youngstown/Warren Chapter), President of the Board of Directors for the Mahoning Valley Association of Churches, former Chairman and board member of the Mayor's Human Relations Commission, a board member for the Western Reserve Port Authority, a past member of

10

the Academic Distress Commission for the Youngstown City School District and is a graduate of Leadership Mahoning Valley Class of 2002.

20. Plaintiff Helen Youngblood is a respected community activist. She is the former President of Local 2001 Council of 8 of the American Federation of State County and Municipal Employees ("AFSCME"). Ms. Youngblood is the chairperson of the Mahoning Valley 1619 Project and has served in a variety of leadership roles in the Mahoning County, area. She was the Plaintiff in Helen Youngblood v. Boad of Mahoning County Commissioner, Case no. 4:19-cv-0331, N.D. Ohio, an action challenging the responsiveness and hiring practices of the Mahoning County, Ohio Commissioners.

21. Rev. Macklin serves as the lead pastor of Holy Trinity Missionary Baptist Church. He was appointed to serve as a member of the Youngstown City School Board of Education. A returning member to the Children Services Board, he is former chairman of its board. He is the President Pro Tem of the Youngstown City Health District and past National Vice President of the One Church One Child, Inc. and local chairman of the Mahoning County's "One Church One Child" initiative to encourage foster and adoption. He is the past president of the Interdenominational Ministerial Alliance and the current president of the Baptist Pastors' Council, during which the endowed the Rev. Martin Luther & Mrs. Coretta Scott King Testament of Hope Scholarship Fund at YSU was established. He is the past president of the ACTION and Associated Neighborhood Centers.

He is the co-convener emeritus of the Rev. Martin Luther King Planning Committee and current chairman the annual African American Male Wellness Walk of the Mahoning Valley. Passionate about education, he serves on the boards of education for the Academy of Urban Scholars, Cardinal Mooney High School, Mahoning County High School, Southside Academy and committees for the Youngstown City School District. In 2014 he

was inducted into the Woodrow Wilson High School Hall of Fame. He was bestowed the Leadership Mahoning Valley Civic Leadership Award for community service. He has been recognized for community leadership with the Rev. Lonnie K.A. Simon Award by New Bethel Baptist Church and the YSU Office of Diversity for championing issues of diversity & inclusion. He has also been inducted into the prestigious Phi Kappa Phi Honor Society YSU Chapter.

He has been cited by the Vindicator as one of the "Persons Who Made a Difference," for supporting initiatives in the valley. He co-chaired, with now YSU President Jim Tressel, the three million dollar capital campaign for the renovated Rayen Football Stadium. He has served as a chaplain & life coach for the YSU Football Team and is the chairman of the Youngstown Police Department's Chaplaincy.

22. Separate and apart from the redistricting issues raised, Plaintiffs also sue to enjoin the use of at large elections in Mahoning County by reason of the historical findings of persistent racial bloc voting and intentional racial discrimination in Mahoning County and the historical findings regarding racial discrimination in the Armour case that Defendants deliberately chose to disregard in connection with redistricting.

23. Defendants include each Ohio elected official who voted for approving, implementing and remedying Ohio's Congressional and General Assembly redistricting plans, such that all necessary parties are before the Court.

24. Mike DeWine is the Governor of Ohio and a member of the Commission and is sued in his personal and official capacity. Governor DeWine approved the invalid Congressional Plan and rejected General Assembly plans.

25. Frank LaRose is the Ohio Secretary of State and a member of the Commission and is sued in his personal and official capacity. He is the chief election officer in Ohio

responsible for overseeing election administration pursuant to Ohio Rev. Code Ann §3501.04. Mr. LaRose approved the Senate Plan. Defendant Larose approved the acts challenged in this action.

26. Bob Cupp is the Speaker of the Ohio House of Representatives and a member of the Commission and is sued in his personal and official capacity. The General Assembly has primary authority for drawing Ohio's congressional districts. Defendants Cupp approved the acts challenged in this action.

27. Matt Huffman is the President of the Ohio State Senate and a member of the Commission and is sued in his personal and official capacity. Mr. Huffman approved the Congressional and General Assembly plans challenged in this action.

28. The Commission and its five members Co-Chair House Speaker Bob Cupp, Governor Mike DeWine, Secretary of State Frankl LaRose, Auditor Keith Faber, Senate President Matt Huffman, are each sued in their personal and official capacities. Defendants are sued in their personal capacity because their acts of racial discrimination were intentional.

29. Plaintiffs have not sued the members of the Redistricting Commission who endeavored to comply with the command of the 15th Amendment and VRA and voted against the challenged Congressional and Senate Plans. Plaintiff only sues those State officials that ignored their duties under the 15th Amendment and VRA and engaged in intentional racial discrimination in connection with the challenged redistricting.

30. Defendant Yost is sued for the reason Plaintiffs challenge the Constitutionality of any legislation enacted to approve any current or proposed redistricting plan

### IV.    ALLEGATIONS

31. Plaintiffs reallege that which has been asserted above as though fully asserted herein.

32. The gravamen of this Complaint is the wholesale disregard by the Defendants of their duty in connection with drawing legislative districts to consider whether the boundaries adopted deprive Black voters of an equal opportunity to participate in the political process and to elect representatives of choice. Here Defendants violated both the 15th Amendment are VRA by adopting a specific policy to totally disregard the impact of racial bloc voting, and the Senate Report factors underlying the VRA, on their proposed districts.

33. The right to vote is a "precious" right, <u>Harper v. State Bd. of Elections</u>, 383 U.S. 663, 670 (1966), "of the most fundamental significance under our constitutional structure," <u>Burdick v. Takushi</u>, 504 U.S. 428, 433 (1992) (internal quotation marks omitted).

Section 2 of the Voting Rights Act provides, in relevant part:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b)

(b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301(b).

34. Congress enacted the Voting Rights Act for the broad remedial purpose of

ridding the country of racial discrimination in voting.

35.     Ohio and Mahoning County have a documented history of imposing racially discriminatory voting requirements. See, e.g., Ezell Armour, et al. v. The State of Ohio, et al., 775 F. Supp. 1044 (N.D. Ohio 1991) (Black voting age residents who challenged constitutionality of apportionment of the Ohio House of Representative were entitled to relief because the challenged boundary intentionally minimized or cancelled out the voting strength of minority vote).

36.     A Black candidate has never been elected to a Mahoning County office. The Defendants should have taken notice of this. The Armour Opinion and redistricting hearing testimony of Plaintiff Simon concerning Mahoning Valley history was brought to Defendants' attention .Plaintiffs also submitted testimony to Defendants at multiple hearings as well as proposed maps, which Defendants ignored. Plaintiffs timely objected to Defendants 'action and commenced litigation in the Northern District of Ohio. The Northern District of Ohio case was dismissed due to the granting of the Simon parties' motion to intervene in this action

37.     As a result of the 2020 decennial census and resulting apportionment calculation Ohio will lose one Congressional district seat, requiring redistricting of Ohio's Congressional Districts prior to the 2022 midterm elections.

38.     Though the primary purpose of the census enumeration remains the apportionment of Congressional seats, the population count from the 2020 decennial census was also be used for the decennial redistricting of Ohio's state legislative and judicial districts.

39.     Under the Current proposed Congressional Redistricting Plan the Congressional District encompassing Youngstown, Ohio in Mahoning County has been joined with area south of Mahoning County where racial bloc voting abounds.  The new district will result in illegal and unconstitutional dilution of the Black vote by impairing the ability of the Black community to elect a United States Congressional representative of choice, due to the submersion  of Black voting power into the counties of  Columbiana, Caroll, Jefferson, Harrison, Belmont and Washington instead of the more racially diverse adjacent Stark, Summit or Cuyahoga Counties. Had the defendants considered racial block voting , this result would have been apparent based upon the 2020 Presidential election results alone.

40.     The Ohio Constitution creates two redistricting processes, one for the drawing of State legislative districts and another for drawing United States Congressional Districts. The process for drawing State legislative districts is set out in Article XI of Ohio's Constitution. That article creates a bipartisan, seven-member Ohio Redistricting Commission ("Commission"), which the Ohio Constitution vests with the power to draw state legislative maps. *Id*., §1(A). The Commission may approve a map only if the map receives the "affirmative vote of four members of the commission, including at least two members of the commission who represent each of the two largest political parties represented in the general assembly." *Id*., §1(B)(3). The group must reach agreement no later than "the first day of September of a year ending in the numeral one." *Id*., §1(C).

16

Before doing so, the Commission "shall conduct a minimum of three public hearings across the state to present the proposed plan and shall seek public input." *Id*.

41.     The Ohio Constitution prescribes a different method for the drawing of Congressional Districts. *See id*., art. XIX, §1. The General Assembly has until "the last day of September of a year ending in the numeral one" to adopt a Congressional map. *Id*., §1(A) (*i.e.*, September 30, 2021). Before that date, it must secure "the affirmative vote of three-fifths of the members of each house of the general assembly, including the affirmative vote of at least one-half of the members of each of the two largest political parties represented in that house." *Id*. If the General Assembly fails to meet that September 2021 deadline, then the Ohio Redistricting Commission "shall adopt a Congressional District plan not later than the last day of October of that year." *Id*., §1(B). It can do so only with "the affirmative vote of four members of the commission, including at least two members of the commission" representing the "two largest political parties represented in the general assembly." *Id*. If the Commission is unable to reach an agreement, then the General Assembly may adopt a plan by the end of November. This time, the plan must win the "affirmative vote of three-fifths of the members of each house, including the affirmative vote of at least one-third of the members of" the two largest parties. *Id*., §1(C)(2). Finally, and as a fourth option if all other options fail, the Ohio General Assembly may adopt a plan by the vote of a simple majority of the members of each chamber that lasts for four years. *Id.*, §1(C)(3).

42.     Republicans control both chambers of the Ohio General Assembly.  The State Senate has thirty-three members, of whom 25 are Republicans and only 8 are Democrats.  The State House of Representatives has ninety-nine members, of whom 64 are Republicans and only 35 are Democrats.  Accordingly, despite the purported bipartisan structure of Ohio's Congressional redistricting procedure, Republicans actually control this procedure to the   exclusion of Democrats. As a result of this process the  repeated admonitions  of the Democratic members of the Redistricting Commission to the remaining Commission members and the General Assembly  to comply with the VRA and 15th Amendment  were openly and deliberately ignored.

43.     The Black residents of Youngstown and Warren: (a) are a sufficiently large, and geographically compact population to constitute an influential vote in a Congressional District; (b) are politically cohesive and vote as a bloc; and (c) the White majority vote sufficiently as a  bloc to enable it to defeat the Blacks' preferred candidate.

44.     The Black residents of Youngstown and Warren are also a sufficiently large, and geographically compact population to constitute an influence vote in a single-member Senate District.

45.     Under the Current Redistricting Plans and in at-large elections in Mahoning County, the voting strength of the Black residents of Youngstown is illegally and unconstitutionally diluted and abridged by a white majority voting bloc, in violation of, *inter alia*, Section 2 of the Voting Rights Act.

46.     Under the totality of the circumstances, the Current Redistricting Plans and at large voting in Mahoning County, results in the denial and abridgment of the right to vote on account of race or color in violation of Section 2 of the  Voting Rights Act.

47.     The Current Redistricting Plans dilute Black voting strength and deprives Plaintiffs and other Black voters in Youngstown and elsewhere in Ohio of an equal opportunity to elect candidates of their choice.

48.     Under the totality of the circumstances, including the history of the area detailed in the <u>Armour</u> Opinion, which Defendants failed to consider which detailed a history of discrimination in Youngstown in the employment practices, in the city's school system, sentencing and other fundamental areas, the Current Redistricting Plan's configuration of the Ohio Congressional districts deprives Blacks  in Youngstown and Warren of the opportunity to elect a candidate of their choice in the proposed 6th Congressional District, the 33rd Senate District and in Mahoning County at large elections, with respect to Black Youngstown voters.

49.     The Current Redistricting Plans also minimize or cancel out the ability of Plaintiffs and other Black voters in Mahoning County to elect their preferred candidates.

50.     Accordingly, Plaintiffs allege, under the totality of the  circumstances, the challenged practices the proposed redistricting of the 6th Congressional and the Ohio General Assembly. and at large Mahoning County elections impair the ability of the Plaintiffs to  participate equally in the political process."

51.     The following is additional support:

a. The history set forth in <u>Armour</u> of official discrimination in Mahoning County that touched the right of Blacks to register, vote, or otherwise to participate in the democratic process should have been considered by Defendants;

b. Voting in Mahoning County and the counties in the newly proposed 6th District is racially polarized;

c. The use of at large elections in Mahoning County enhances the opportunity for discrimination against Blacks due to racially polarized voting, confirmed in the 2020 presidential election results.

d. Blacks in Youngstown bear the effects of discrimination in such areas as education, employment and health, which hinder their ability to participate effectively in the political process, as evidenced by the record setting murder rate in Youngstown;

e. Political campaigns have been characterized by overt and subtle racial appeals;

f. No Black has been elected to county-wide elections for County Commissioner or Common Pleas Judges in Mahoning County.; and

g. As outlined in the case of <u>Youngblood v. County Commissioner</u>, elected officials in Mahoning County have been unresponsive to the particularized needs of the Black community in Mahoning County.

## V. CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, *et seq*.**
**Against All Defendants**

52.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

53.     Section 2 of the Voting Rights Act, 52 U.S.C. § 10301(a), provides in pertinent part:

> No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . .

54.      In direct violation of Section 2 of the Voting Rights Act:  (a) the Third General Assembly  Redistricting Plan will split the district encompassing Youngstown, Ohio in Mahoning County from Warren, Ohio in Trumbull County, which is adjacent to Youngstown, causing the Black community in Warren and Youngstown to be placed into separate Senate districts; and (b) Submerge Youngstown and Warren Black voters into a Congressional District with extreme racially polarized voting.

55.     The Current use of  at-large elections of Mahoning County violates Section 2 of the Voting Rights Act because at large elections have resulted in denial of Black voters in Mahoning County full and equal  access to the political process.

56.     The electoral procedures discussed in the     Paragraphs above , violate Section 2 even in the absence of  discriminatory intent, because, by their discriminatory impact, they "result in a  denial or abridgement" of the right of Black voters to vote and to participate equally in the democratic process. Unfortunately the evidence here shows the

Defendants intentionally ignored the VRA and 15th Amendment duties which has resulted in this discriminatory outcome.

57. A voting qualification, prerequisite, practice, or procedure violates Section 2 "if, based on the totality of circumstances," election processes "are not equally open to participation" by protected classes of citizens, in that they "have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." 52 U.S.C. § 10301(b).

58. The Current Redistricting Plans and at-large elections of Mahoning County Commissioners and Common Pleas Judges violate Section 2 of the Voting Rights Act because, given the "totality of circumstances," including the long history of racial discrimination in Ohio, the challenged provisions, individually and cumulatively, will disproportionately deny Black voters in Mahoning County an equal opportunity to participate in the political process and to elect representatives of their choice.

59. By reason of the foregoing Plaintiffs are entitled to an order declaring Defendants' Redistricting Plans unconstitutional and enjoining their use and at-large elections in Mahoning County, Ohio.

**SECOND CLAIM FOR RELIEF**
**Fourteenth Amendment**
**U.S. Const. amend., XIV, § 2; 42 U.S.C. § 1983**
**(Intentional Racial Discrimination)**
**Against All Defendants**

60. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

61. Section 2 of the Fourteenth Amendment to the United States Constitution provides:

Section 2

Representatives shall be apportioned among the several States according to their respective numbers, <u>counting the whole number of persons in each State</u>, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number the male citizens twenty-one years of age in such State. (emphasis added)

62.     The Current Redistricting Plan flout the Fourteenth Amendment's plain language that "[r]epresentatives <u>shall be apportioned among the several states according to their respective numbers, counting the whole number</u> of persons in each state," excluding only "Indians not taxed." U.S. Const., amend. XIV, § 2 (emphasis added). It also flies in the face of the statutory scheme governing apportionment, which requires the State to include "the <u>whole number</u> of persons in each State" in the apportionment base—again, excluding only "Indians not taxed." 2 U.S.C. § 2a(a) (emphasis added).

63.     42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the  deprivation of any rights, privileges, or immunities secured by the Constitution and laws…."

64.     The Current Congressional Redistricting violates Section 2 of the Fourteenth Amendment to the United States Constitution because the Plan was purposefully proposed and results to deny, abridge, and suppress the right of Blacks in Mahoning County to vote on an equal basis.

65. The facts alleged herein reveal that race was a motivating factor with respect to the Current Redistricting Plan, which was proposed, adopted and enforced by Defendants with the racially discriminatory intent to raise obstacles to voting for Black residents of Mahoning County so that their votes would not count equally.

66. Ohio's history of racial discrimination in the context of voting, the known and reasonably foreseeable discriminatory impact of the Current Redistricting, the tenuous and pretextual nature of the stated justifications for this plan raise a strong inference that it was proposed and enacted with a discriminatory purpose in violation of §2 of the Fourteenth Amendment. As a result of the intentional violation of Section 2 of the 14th Amendment by defendants the number of representatives in Ohio should be reduced to the same extent that defendants caused Ohio Black voting power to be debased

.

### THIRD CLAIM FOR RELIEF
**Fifteenth Amendment**
**U.S. Const. amend., XV; 42 U.S.C. § 1983**
**(Intentional Racial Discrimination in Voting)**
**Against All Defendants**

67. Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

68. 42 U.S.C. § 1983 provides a cause of action, including for declaratory or injunctive relief, against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage… subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…."

69.     Section 1 of the Fifteenth Amendment to the United State Constitution prohibits states from denying or abridging the right of American citizens to vote on account of their race or color.

70.     The Current Redistricting Plan and at-large elections in Mahoning County violate the Fifteenth Amendment to the United States Constitution because Defendants intentionally proposed, enacted and intend to administer and enforce this plan and election procedures to deny and abridge the right to vote on account of race or color.

**FOURTH CLAIM FOR RELIEF**
**First and Fourteenth Amendments**
**U.S. Const. amends. I, XIV; 42 U.S.C. § 1983**
**(Undue Burden on the Right to Vote)**
**Against All Defendants**

71.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

72.     Since the imposition of a stay in the N.D. Ohio action, Plaintiffs instituted this action.

73.     Due to the N.D. Ohio stay Intervenor Plaintiffs did not file objections in the N.D. Ohio case to the Plans that Intervenor Plaintiffs (hereinafter "the Simon Parties") challenge here. The Simon Parties filed objections to all State and Congressional plans approved by Defendant because all of Defendants' Plans violate federal law.

74.     Defendants have had multiple opportunities to formulate lawful plans, but have instead adopted redistricting procedures that result in denial to the Simon Parties of opportunity to elect representatives of choice.

75.      The State is not entitled to multiple opportunities to remedy unlawful districts. See, Reynolds v. Sims, 377 U.S. 533, 585-87.

76.    The repeated intentional failures of Defendants to comply with the VRA and the Fourteenth and Fifteenth Amendments combined with the imminent risk of election chaos created by Defendants' malfeasance,  justify the immediate appointment of under Fed. R. Civ. P. 53 of the appointment of a special master to craft lawful districts

### PRAYER FOR RELIEF

Wherefore, Intervenor-Plaintiffs respectfully request that this Court:

a.  Declare that the Proposed Congressional Redistricting Plan, the March 2, Plan, violative of Section 2 of the Voting Rights Act, 52 U.S.C. §10301;

b.  Enjoin Defendants, their agents and successors in office, and all persons acting in concert with them from administering implementing, or conducting any future elections under the March 2 Plan or any General Assembly Plan not approved by this Honorable Court;

c.  Order Defendants to devise and adhere to  a redistricting process that complies with Section 2 of the Voting Rights Act ,the 14th  and  15th Amendments;

d.  Appoint a Special Master under Fed. R. Civ. P. 53;

e.  Require the Special Master to craft Congressional  and Ohio General Assembly districts through a process that complies with both the VRA and Ohio law; and

f.  Grant such other and further relief as may be just and equitable including attorneys fees,  and the proportionate reduction in  the number of the representatives  in Congress from Ohio to reflect the defendants' deliberate disregard of Black Ohio voters unless Defendants remedy their intentional dilution of Black voting strength.

Respectfully Submitted,


*s/Percy Squire, Esq.*
Percy Squire (0022010)
341 S. Third St., Suite 10
Columbus, Ohio 43215
(614) 224-6528 T
(614) 224 -6529 F
psquire@sp-lawfirm.com
Attorney for Intervenors-Plaintiffs