# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL GONIDAKIS et al., | Case No. 2:22-cv-00773 |
| Plaintiffs, | Circuit Judge Amul R. Thapar |
| THE OHIO ORGANIZING COLLABORATIVE, COUNCIL ON AMERICAN-ISLAMIC RELATIONS, OHIO, OHIO ENVIRONMENTAL COUNCIL, SAMUEL GRESHAM JR., AHMAD ABOUKAR, MIKAYLA LEE, PRENTISS HANEY, PIERRETTE TALLEY, and CRYSTAL BRYANT, | Chief Judge Algenon L. Marbley |
| | Judge Benjamin J. Beaton |
| | Magistrate Judge Elizabeth Preston Deavers |
| Intervenor-Plaintiffs, | |
| v. | |
| FRANK LAROSE, in his official capacity, | |
| Defendant. | |

**INTERVENOR-PLAINTIFFS
THE OHIO ORGANIZING COLLABORATIVE ET AL.'S
RESPONSE TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING
ORDER TO MAINTAIN THE UNCONSTITUTIONAL FEBRUARY 24 PLAN**

## INTRODUCTION

The Gonidakis Plaintiffs state that they "seek a temporary restraining order to maintain the status quo, an election under the Third Plan, until this Court can rule on Plaintiffs' pending motion for a preliminary injunction." (Gonidakis Pls' Mot. for a TRO, ECF No. 84, PageID #1156) But they are not asking this Court to maintain the status quo because the "Third Plan," *i.e.*, the plan that the Commission enacted on February 24, is unconstitutional and there will be no election under that plan. The relevant "status quo" is that the Commission is working to enact a new plan to comply with the Ohio Supreme Court's rulings. The Gonidakis Plaintiffs ask this Court to *disrupt* that status quo.

The Secretary of State's recent filings confirm that he has directed the eighty-eight county boards of elections in Ohio not to proceed with the February 24 Plan at this time, because the Ohio Supreme Court held that it is unconstitutional. The Gonidakis Plaintiffs seek the extraordinary remedy of a temporary restraining order from a federal court, directing a state official to resume implementing the unconstitutional February 24 Plan, days before a full preliminary injunction hearing, while the state redistricting process is ongoing. There simply is no precedent or basis for a federal court interfering in this manner. To grant this motion would throw well established principles of federalism to the wind and create a constitutional crisis in Ohio.

This motion is also unnecessary. The Gonidakis Plaintiffs have not met their burden to show that they will imminently suffer irreparable injury because the Ohio Redistricting Commission's process is still open, and progress is being made. The Commission faces a March 28 deadline to submit a new map to the Ohio Supreme Court; and meetings are scheduled every day to accomplish this. By contrast, granting the relief the Gonidakis Plaintiffs seek of forcing an *unconstitutional* district plan on Ohioans would *cause* harm and is *not* in the public interest. This

Court should deny the Gonidakis Plaintiffs' motion for a temporary restraining order, and instead honor established rules of federal deference to state legislative redistricting processes and state supreme court precedent on questions of state constitutional law.

## BACKGROUND

In 2015, the people of Ohio approved with more than 71 percent, across party lines, a constitutional amendment to end partisan gerrymandering and encourage bipartisanship in the redistricting process.[1] In doing so, the people directed what is now the Ohio Redistricting Commission to attempt to adopt a General Assembly district plan under which the number of districts favoring each party corresponds closely to the statewide preference of voters, and to refrain from drawing districts to primarily favor or disfavor a particular political party. Ohio Const. Article XI, Section 6. After two attempts to submit maps that failed to meet these mandatory criteria, the Gandaki's Plaintiffs claimed that legislative redistricting in the State of Ohio had reached an "impasse" warranting federal intervention. Specifically, they asked this Court to order the State to adopt a plan that the Supreme Court of Ohio had already rejected. (Am. Compl., ECF 8, PageID #447 at ¶ 4). This claimed impasse, however, was overcome.

Six days after the Gonidakis Plaintiffs filed their Complaint, the Ohio Redistricting Commission adopted new state House and Senate maps by a 4-3 vote. The OOC Petitioners and other intervenors here filed objections to the February 24 plan, arguing that it was unconstitutional under Ohio law. *See League of Women Voters of Ohio v. Ohio Redistricting Comm.*, --N.E.--, 2022-Ohio-789, 2022 WL 803033, ¶¶ 13-22 (Mar. 16, 2022). This Court first stayed this matter while the Supreme Court of Ohio reviewed the constitutionality of the February 24 Plan enacted by the Ohio Redistricting Commission. (Minute Entry, ECF No. 68).

---

[1] *See* Ohio Redistricting Commission, https://redistricting.ohio.gov/.

38858604.5/066667.00811

On March 16, the Ohio Supreme Court declared that February 24 plan was invalid and ordered the Commission to reconvene and draft a new General Assembly district plan by March 28. Any objections are due within three days after the Commission files its new plan in the Supreme Court; responses, three days after that. *See League of Women Voters of Ohio*, 2022-Ohio-789, 2022 WL 803033, ¶¶ 44-46. Considering that decision, Secretary of State LaRose issued Directive 2022-30 directing all eighty-eight-county board of elections to pause implementation. (SOS Response to Gonidakis Pls' Mot. for a TRO, ECF No. 88-1). On March 21, 2022, the Gonidakis Plaintiffs sought a temporary restraining order "to maintain the third plan." (Gonidakis Pls' Mot. for a TRO, ECF No. 84).

As of this filing, the Commission's redistricting process continues and there is no indication that it will fail meet the March 28 deadline. The Commission has scheduled public meetings every day from March 23 through March 28.[2] Press reports indicate that the Commission has hired independent mapmakers to assist the Commission in drafting a fourth plan.[3] And two federal mediators on loan from the Sixth Circuit have been approved by the Commission to help manage the process.[4]

---

[2] Commission Meetings, Ohio Redistricting Commission, https://redistricting.ohio.gov/meetings.

[3] Andy Chow, Redistricting Commission agrees to consultants for latest effort to redraw maps, OHIO PUBLIC RADIO (Mar. 22, 2022), https://www.wcbe.org/wcbe-news/2022-03-22/redistricting-commission-agrees-to-consultants-for-latest-effort-to-redraw-maps; Susan Tebben, Ohio Redistricting Commission adds two new mapmakers, OHIO CAPITAL JOURNAL (Mar. 22, 2022), https://ohiocapitaljournal.com/2022/03/22/ohio-redistricting-commission-adds-two-new-mapmakers.

[4] Susan Tebben, Legal mediators added to the Ohio redistricting fold, NEWS5CLEVELAND (Mar. 23, 2022), https://www.news5cleveland.com/news/state/legal-mediators-added-to-the-ohio-redistricting-fold.

## ARGUMENT

### I. STANDARD OF REVIEW

Temporary restraining orders are "extraordinary remedies governed by the following considerations: (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent an injunction, (3) whether issuance of the injunction would cause substantial harm to others, and (4) whether the public interest would be served by granting the requested injunction." *Ohio Democratic Party v. LaRose*, 402 F. Supp. 3d 419, 422–23 (S.D. Ohio 2019) (citing *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008)). "A temporary restraining order is meant 'to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction.'" *Hartman v. Acton*, --F. Supp. 3d--, No. 2:20-CV-1952, 2020 WL 1932896, at *1 (S.D. Ohio Apr. 21, 2020) (quoting *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979)). "The party seeking preliminary relief 'bears the burden of justifying such relief, including showing irreparable harm and likelihood of success.'" *Ohio Democratic Party*, 402 F. Supp. 3d at 423 (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)).

### II. A TEMPORARY RESTRAINING ORDER IS UNWARRANTED

Granting the Gonidakis Plaintiffs' motion not only is unnecessary but will harm the people of Ohio. It would also violate the U.S. Supreme Court's mandate that federal courts defer to state redistricting processes. All indications are that the Commission is on track to meet their March 28 deadline with the Ohio Supreme Court, and there is still time for the General Assembly primary election to occur.

### A. Requiring implementation of the February 24 Plan would not be "temporary" relief and does not maintain the status quo.

The Gonidakis Plaintiffs seek neither temporary relief nor to maintain the status quo. A temporary restraining order "is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction"—no more, no less. WRIGHT & MILLER, 11A FED. PRAC. & PROC. CIV. § 2951 (3d ed.). The status quo here is that Ohio's redistricting proceedings are ongoing, and the Secretary of State has directed Ohio's 88 boards of election to pause implementation of the unconstitutional February 24 Plan. (SOS Response to Gonidakis Pls' Mot. for a TRO, ECF No. 88 at 1-2). The Gonidakis Plaintiffs seek to disrupt that status quo by interfering with (if not nullifying) the Commission's ongoing work to enact a new plan and ordering the Secretary of State to change course—and to do so mere days before a full preliminary injunction hearing. If this Court were to grant the Gonidakis Plaintiffs' motion today, but decide not to grant their requested preliminary injunction, the administrative and procedural whiplash would sow confusion and result in tremendous unnecessary cost. For this reason alone, the instant motion should be denied.

### B. There is no immediate injury that would require this Court to order the implementation of the unconstitutional February 24 Plan.

Implementing the unconstitutional February 24 Plan is not required to mitigate any harm. The Ohio Supreme Court, whose decisions are entitled to this Court's full faith and credit, has ordered the Commission to enact a new plan consistent with its opinions. *See League of Women Voters of Ohio,* 2022-Ohio-789, ¶¶ 44-46. The Commission appears to be taking its duty seriously. Not only has it scheduled numerous meetings, but recent reports state that it has added two new mapmakers and two federal court mediators to help ensure it can meet its March 28

38858604.5/066667.00811

deadline.[5] As this Court recognized (Order, ECF No. 55), the U.S. Supreme Court's decision in *Growe v. Emison* requires federal judges "to defer consideration of disputes involving redistricting where the State, through its legislative or judicial branch, has begun to address that highly political task itself." 507 U.S. 25, 33 (1993). This principle still controls. When the state's legislative and judicial branches are both actively engaged in the redistricting process, as a matter of law, Ohio's redistricting process has not concluded, and this Court may not interfere. *See Growe*, 507 U.S. at 34-36.

Deference to Ohio's ongoing redistricting proceedings is particularly warranted as there is no harm here that a temporary restraining order must address. Again, as the Secretary of State has recognized, he cannot conduct a primary election with a General Assembly district plan that the Ohio Supreme Court has declared to be unconstitutional. (SOS Response to Gonidakis Pls' Mot. for a TRO, ECF No. 88 at 1) (acknowledging the Ohio Supreme Court "invalidated" the Commission's unconstitutional February 24 Plan, leaving him no choice but to "pause" implementation of that plan). The consequence will simply be that "he will have to instruct the boards of election to proceed with the 2022 primary election without the state legislative races being part of that election." (*Id.* at 3). But this does not mean that the Gonidakis Plaintiffs (or any Ohioans) will be denied the right to vote or assemble. Ohio Redistricting Commission is currently preparing a new plan due to be filed on March 28, 2022. The General Assembly has the power to modify the date for the primary election and associated deadlines and to delegate authority to the Secretary to adjust them (*see* 134th General Assembly, H.B. 93, Section 4). And it is within the

---

[5] Susan Tebben, Legal mediators added to the Ohio redistricting fold, NEWS5CLEVELAND (Mar. 23, 2022), https://www.news5cleveland.com/news/state/legal-mediators-added-to-the-ohio-redistricting-fold.

Ohio Supreme Court's equitable authority to do so as well. There is still plenty of time for the dates to be moved, and a new primary date set in time meet all necessary deadlines.

"The absence of a showing of irreparable harm is, in itself, sufficient grounds upon which to deny a preliminary injunction." *Harris v. United States*, 745 F.2d 535, 536 (8th Cir. 1984). *See also Enable Healthcare, Inc. v. Cleveland Quality Healthnet, LLC*, No. 1:16 CV 2395, 2016 WL 6581813, at *4 (N.D. Ohio Nov. 7, 2016) (addressing only "the irreparable harm factor because plaintiff has failed to show that it will suffer any irreparable injury if the Court denies its motion"); *Northeast Ohio Coalition for Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) (the court considers the same factors considered in determining whether to issue a TRO or preliminary injunction). For this reason, too, the Court should defer to the state redistricting process and deny the Gonidakis Plaintiffs' extraordinary request.

### C. Implementation of the unconstitutional February 24 Plan will cause substantial harm to others.

Conversely, if this Court were to grant the Gonidakis Plaintiffs' motion for a temporary restraining order and order the Secretary to proceed with the unconstitutional February 24 Plan, it will cause substantial harm to others. Recall that the relevant amendment to the Ohio Constitution was endorsed by over 70 percent of the Ohio electorate. That amendment both establishes the methodology for determining whether a given district plan is constitutional *and* vests the Ohio Supreme Court with jurisdiction to review that constitutionality. Forcing implementation of the February 24 Plan through the federal court system, when that very district plan has already been determined unconstitutional and when the redistricting process is still ongoing, would cause substantial harm to the people of Ohio.

Moreover, rushing to implement temporary injunctive relief runs a serious risk of an insecure and disorderly election, particularly with the real possibility of an electoral whipsaw as the

- 8 -
38858604.5/066667.00811

Commission continues with its map drawing. The Secretary of State has already indicated that "[b]y no later than the close of business [today], Wednesday, March 23, the Secretary *must* issue instructions to the county boards of election on whether to retain or remove the General Assembly races from their primary election ballots[.]" (SOS Response to Gonidakis Pls' Mot. for a TRO, ECF No. 88, PageID #1312). This motion is scheduled to be heard two days later, on March 25, 2022. It simply is not possible for the Secretary of State to change course now.

### D. The Gonidakis Plaintiffs cannot succeed on the merits of their claims.

The Gonidakis Plaintiffs cannot succeed on the merits because it is impossible to grant their request to implement the unconstitutional February 24 Plan without violating longstanding principles of comity. A federal court cannot order state officials to conduct elections under a General Assembly plan that the Ohio Supreme Court has already held violates a valid provision of the Ohio Constitution.[6] And the Gonidakis Plaintiffs do not assert that federal law preempts the Ohio constitutional provisions underlying the Ohio Supreme Court's decisions. The Ohio Supreme Court's conclusion that the February 24 Plan violates the Ohio Constitution is therefore controlling and precludes an order requiring its use. Ohio's Attorney General has acknowledged as much. *See* Bennett Petitioners' Opposition to Emergency Motion to Lift Stay, ECF 78, PageID #1115; citing Feb. 22, 2022, Letter from Attorney General Yost to Governor DeWine et al., at 2 ("The federal court may not order the use of a map that was rejected by the Ohio

---

[6] *See Bush v. Gore*, 531 U.S. 98, 111 (2000) (per curiam) (rejecting a proposed remedy on the ground that it "contemplates action in violation of the Florida Election Code"); *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945) ("Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights created by State law . . . ."); *Peters v. Gilchrist*, 222 U.S. 483, 492 (1912) ("The question as to whether a particular law has been passed in such manner as to become a valid law under the Constitution of the state is a state, and not a Federal, question. Courts of the United States are therefore under obligation to follow the adjudications of the courts of the state whose law is in question.").

- 9 -

Supreme Court, where the underlying provision of the state constitution has not been found to violate the federal constitution.") (Ex. A).

The Gonidakis Plaintiffs try to side-step this argument by contending this Court should mandate use of the unconstitutional February 24 Plan because the Ohio Supreme Court's "evolving standards violate the U.S. Constitution."[7] (Gonidakis Pls' Mot. for a TRO, ECF No. 84, PageID #1164). This novel position is not supported by the Gonidakis Plaintiffs' cited case law. In *Reich v. Collins*, the petitioner, a taxpayer, had paid a tax in reliance on the existence of a post-deprivation remedy. 513 U.S. 106 (1994). "Specifically, in the mid–1980's, Georgia held out what plainly appeared to be a 'clear and certain' postdeprivation remedy, in the form of its tax refund statute, and then declared, only after Reich and others had paid the disputed taxes, that no such remedy exists." *Id*. at 111. In *Bouie v. District of Columbia*, petitioners were convicted of criminal trespass based on an unprecedented interpretation of the statute to include "remaining on the premises of another after receiving notice to leave." 378 U.S. 347, 350, 354-55 (1964). Unlike the petitioners in *Reich* and *Bouie*, the Gonidakis Plaintiffs allege no reliance on a state-law remedy that was subsequently eliminated. In *Saunders v. Shaw*, 244 U.S. 317 (1917), petitioner sought to offer evidence at trial that his land was not subject to the challenged tax. The Gonidakis Plaintiffs here made no attempt to offer evidence in the Ohio Redistricting Commission, because no such opportunity is provided by the Ohio Constitution.

---

[7] The Gonidakis Plaintiffs also claim they would succeed on the merits as their right to vote and associate would be denied. These arguments ignore the fact that the Commission continues its work to produce new maps by March 28, with meetings scheduled daily in public, with the assistance of new experts and court mediators, as discussed above. Even if this Court could implement an unconstitutional plan, there is no need to do so as the state redistricting process continues.

Their attempt to justify the extraordinary relief they seek by pointing to *Reynolds v. Sims* is similarly feeble. 377 U.S. 533 (1964). *Reynolds v. Sims* was a one-person-one-vote case; the Court held that state seats in the Alabama legislature apportioned by county, rather than by population, and which had not been reapportioned in over 60 years, violated the Equal Protection Clause. *Id.* at 586-71. But procedural posture matters. The U.S. Supreme Court did not effectively overrule the Alabama Supreme Court and force implementation of a plan that the Alabama Supreme Court had held unconstitutional, as the Gonidakis Plaintiffs seek here. Rather, the Alabama Supreme Court's *refusal* to step in, and its *allowance* of a plan that violated the U.S. Constitution, prompted federal court action. Indeed, *Reynolds v. Sims* is fully consistent with *Growe*: the district court initially declined to stay the primary so that *the legislature* would have a chance to remedy the discrepancies. *Id.* at 586. Here, resolving the district plan through the ongoing state redistricting process will avoid any risk of malapportionment under the U.S. Constitution. Not only does *Reynolds v. Sims* fail to support the relief that the Gonidakis Plaintiffs seek, but it actually stands in favor of *denying* the instant motion so that district plan can be adopted through the ongoing state redistricting process.

### E. It is in the public interest to deny the Gonidakis Plaintiffs' motion for a temporary restraining order.

Consistent with the U.S. Supreme Court's proclamation in *Growe*, the public interest favors permitting the ongoing state process to continue. Although the Gonidakis Plaintiffs are correct that "the public has interest in voting" (Gonidakis Pls' Mot. for a TRO, ECF No. 84, PageID #1169), that statement is incomplete: the public has an interest in voting *in accordance with the amendment to the Ohio Constitution that over 70 percent of them voted for*. Every indication is that Ohioans' votes *are not* in jeopardy: the Commission is actively working toward a new district plan, and the Ohio Supreme Court is actively engaged in the process. The public

interest favors letting that process come to completion so that the people of Ohio can vote under a constitutional district plan.

## CONCLUSION

For the reasons set forth above, the OOC Petitioners respectfully request that this Court deny the Gonidakis Plaintiffs' motion for a temporary restraining order.

Dated: March 23, 2022

Respectfully submitted,

Alicia L. Bannon\*
Yurij Rudensky\*
Michael Li\*
Harry Black\*
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
(212) 463-7308 (Facsimile)
alicia.bannon@nyu.edu

/s/Christina J. Marshall
Christina J. Marshall (Ohio Bar No. 0069963)
MILLER, CANFIELD, PADDOCK
    and STONE, P.L.C.
1100 Superior Avenue E, Suite 1750
Cleveland, OH 44114
(248) 267-3256
(248) 879-2001 (Facsimile)
marshall@millercanfield.com

*Attorneys for Intervenor-Plaintiffs*
*The Ohio Organizing*
*Collaborative, et al.*

*\*Pro Hac Vice Motion*
*Forthcoming*

- 12 -

        Peter M. Ellis (Ohio Bar No. 0070264)
          *Counsel of Record*
        Reed Smith LLP
        10 South Wacker Drive, 40th Floor
        Chicago, IL 60606
        (312) 207-1000
        (312) 207-6400 (Facsimile)
        pellis@reedsmith.com

        Brian A. Sutherland (*Pro Hac Vice*)
        Reed Smith LLP
        101 Second Street, Suite 1800
        San Francisco, CA 94105
        (415) 543-8700
        (415) 391-8269 (Facsimile)
        bsutherland@reedsmith.com

        Benjamin R. Fliegel (*Pro Hac Vice*)
        Reed Smith LLP
        355 South Grand Avenue, Suite 2900
        Los Angeles, CA 90071
        (213) 457-8000
        (213) 457-8080 (Facsimile)
        bfliegel@reedsmith.com

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing was served upon all counsel of record by means of the Court's electronic filing system on March 23, 2022.

        /s/Christina J. Marshall
        Christina J. Marshall (No. 0069963)
        MILLER, CANFIELD, PADDOCK
          and STONE, P.L.C.
        1100 Superior Avenue E, Suite 1750
        Cleveland, OH 44114
        (248) 267-3256
        (248) 879-2001 (Facsimile)
        marshall@millercanfield.com