**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

MICHAEL GONIDAKIS, et al.,
    *Plaintiffs*,

v.

FRANK LAROSE, in his official capacity,
    *Defendant,*

and

SENATOR VERNON SYKES and HOUSE MINORITY LEADER ALLISON RUSSO, in their capacities as members of the Ohio Redistricting Commission,
    *Intervenors-Defendants.*

Case No. 2:22-cv-773

Chief Judge Algenon L. Marbley

Circuit Judge Amul R. Thapar

Judge Benjamin J. Beaton

(Three-Judge District Court)

**Opposition of Intervenors-Defendants Senator Vernon Sykes and
House Minority Leader Allison Russo to
Plaintiffs' Motion for a Temporary Restraining Order**

    The plaintiffs pitch their motion as a modest proposal to temporarily maintain the status quo. But their proposal is modest only in the Swiftian sense. The "current status quo," as Secretary LaRose has admitted, ECF No. 88 at 2, is not "implementing the Third Plan adopted by the Ohio Redistricting Commission," ECF No. 84 at 1. To the contrary, that plan is not being implemented because the Ohio Supreme Court has squarely held that it violates the Ohio Constitution.

    So what the plaintiffs are asking this Court to do, then, is not to *preserve* the status quo, but to *change* it by directing the Secretary of State to violate state constitutional law—and the orders of the Ohio Supreme Court—while the state-court litigation and map-drawing process it oversees are ongoing. They cite no precedent authorizing this extraordinary step, and it is hard to imagine an action by a federal court that would be more disruptive and disrespectful to a sovereign State.

1

The plaintiffs' theory for why this is necessary depends on a prediction that, absent relief, there will be a primary election on May 3 with no map at all, which in turn will injure them by denying their right to vote. But this prospect of future injury, far from being the kind of "certainly impending" injury that a federal court may redress, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013), is wildly speculative. For one thing, "it depends on how legislators respond" to the Ohio Supreme Court's decision, "speculating that elected officials" will sit on their hands and refuse to reschedule the primary to allow the map-making process to continue. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (holding that speculation of this kind will not support standing). For another, it depends on the Ohio Supreme Court denying a motion filed on Monday by Senator Sykes and Leader Russo to move the primary date to late June, a motion that is now fully briefed and ripe for decision. Only if *both* events were to occur—that is, only if two different branches of Ohio's government permit a map-less primary—could there be any injury. But the plaintiffs cite no example of that happening. And there is no basis for concluding that it is "certainly impending."

Just the opposite: It is certain *not* to happen. Indeed, the plaintiffs admit that, were this Court to deny the requested relief, the state primary will not occur on May 3—thereby avoiding the very injury that the motion seeks to redress. *See* ECF No. 84 at 3 ("Without statewide legislative districts, there cannot be a May 3, 2022, primary election."). And Secretary LaRose, for his part, does the same. *See* ECF No. 88 at 3. He has admitted that "the May 3, 2022 primary election is no longer looming for the state legislative races," because it "will have to be held at a later date." ECF No. 76 at 2. In other words: *No injury* will come to pass—much less an irreparable one warranting the kind of "extraordinary and drastic remedy" sought here, for which "the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam).

The same problem can be seen through the lens of redressability. Even assuming that the risk of future injury here were sufficient to support federal jurisdiction, the question would then be:

What is the best way to redress that potential injury? Is it through the State's process, where two independent branches are able to reschedule the primary to avoid the injury—and, in doing so, to allow the state-court proceedings to continue making progress toward a map that complies with both state and federal constitutional law? Or is it through this newly-empaneled federal court, via an unprecedented order directing a state official to violate state law—an order that, according to Secretary LaRose, must be issued by the close of business *today* to have any hope of redressing *any* potential injury? *See* ECF No. 88 at 3. Those questions practically answer themselves.

And even if they didn't, Justice Scalia's unanimous opinion in *Growe v. Emison* would settle the matter. Under that precedent, the general rule is that "federal judges [must] defer consideration of disputes involving redistricting where the State, through its legislative or judicial branch, has begun to address that highly political task itself." 507 U.S. 25, 33 (1993). This rule reflects our constitutional scheme, under which "reapportionment is primarily the duty and responsibility of the State"—not "of a federal court." *Id.* at 34. The plaintiffs' motion turns *Growe*'s rule on its head, asking this Court to "race to beat the [Ohio Supreme Court] to the finish line." *Id.* at 37.

The sole exception to *Growe*'s rule is a narrow one: where the record shows that "the state court [is] either unwilling or unable to adopt a congressional plan in time for the elections." *Id.* at 34. Here, this exception could be satisfied only if (1) the May 3 primary date were an immovable object on the horizon, or (2) the state-court process were at its end. Neither is remotely true.

**1.** Again, either the Ohio legislature or the Ohio Supreme Court may move the election. The Ohio Supreme Court has the authority to suspend or modify election-related deadlines to protect the constitutional rights of Ohioans and to ensure that they may vote under constitutional maps, and other state high courts have recently done just that. *See, e.g.*, *Carter v. Chapman*, No. 7 MM 2022, 2022 WL 549106 (Pa. Feb. 23, 2022) (modifying congressional and statewide election calendar due to impasse and noting the suspension of state legislative election deadlines until resolution of

3

litigation); *In re 2022 Legis. Districting of the State*, Misc. Nos. 21, 23, 25, 26, 27, Sept. Term 2021, (Md. Mar. 15, 2022) (modifying primary election calendar), *at* https://perma.cc/LLX6-LZET. There is no basis for concluding that the Ohio Supreme Court is "unwilling" or "unable" to do the same, *Growe*, 507 U.S. at 37—particularly given that it is poised to rule on a motion to move the primary date any day now. Were the Court to grant the motion, it would definitively prove that a suit in federal court is not "the only avenue" to achieve compliance with the law, as the plaintiffs contend. ECF No. 73 at 1. Quite the contrary: Given that the only relief currently sought by the plaintiffs is an order authorizing implementation of a map that violates state law, the "only avenue" to produce a map that complies with *both* state and federal law would be the *state-court* process, not this case.

In short, the motion's key premise—that the primary date cannot be moved—is incorrect. As Secretary LaRose has admitted, the primary "will have to be held at a later date." ECF No. 76 at 2. And, acknowledging this reality, the Ohio legislature could decide to move the primary itself.

**2.** Meanwhile, the state map-making process continues apace. Rather than suggest that it is "unwilling or unable," *Growe*, 507 U.S. at 37, the Ohio Supreme Court has shown itself fully capable of moving quickly, and its most recent opinion continues to advance the process by going further than its prior opinions. Recognizing that the previous maps were "drawn entirely by Republican legislators on the Commission," without input from Senator Sykes or Leader Russo, the Court ordered "that *the commission* draft and adopt an entirely new [map] that conforms with the Ohio Constitution," and that "the drafting should occur in public and the commissioners should convene frequent meetings to demonstrate their bipartisan efforts to reach a constitutional plan" by March 28. Slip. Op. 8, 19, *at* https://perma.cc/FP6E-TL97. The Court gave a clear roadmap for how this process should be conducted: "The commission should retain an independent map drawer—who answers to all commission members, not only to the Republican legislative leaders—to draft a plan through a transparent process." *Id.* at 12.

4

Since then, the Commission has acted promptly to comply with the Court's opinion. It has agreed to meet every day between now and March 28 (when the map is due to the Ohio Supreme Court), and those meetings are already scheduled and cannot be cancelled without Senator Sykes' consent. *See* Meetings, Ohio Redistricting Commission, *at* https://redistricting.ohio.gov/meetings; ECF No. 76 at 2 ("The Commission is going to convene and work to comply with the Court's Order."). The Commission has also agreed to contract with two expert mapmakers who will work on behalf of the Commission as a whole, and not any particular party or Commissioner, which has never happened before. Those experts have already been identified, the Commission unanimously agreed to retain them, the Co-Chairs have signed their engagement letters, and they will meet with the Commission during the scheduled meeting tonight to begin their work. In addition, the Commissioners have all agreed that these mapmakers will follow the Constitution and the decisions of the Ohio Supreme Court. And the Task Force on Redistricting, earlier this afternoon, allocated $200,000 to the Commission from the Task Force budget. Finally, the Commission has agreed to use the services of the Sixth Circuit's mediation office, including the head of the office, Cathy Geier, and other office mediators, to help them resolve any issues that may arise. The Sixth Circuit is not charging for use of these mediators, so they are not "retained" in a formal sense. But the Commission, after hearing from Ms. Geier, adopted a resolution to use their services.

Nothing in this ongoing process allows the plaintiffs to make their necessary showing under *Growe*. The Ohio Supreme Court is plainly "willing" to oversee the process to produce a new, constitutional map. And the Court is also "able" to do so, having the power to move the primary deadlines and grant further relief if necessary. In addition, the Court was asked by one of the parties to declare an impasse, and (despite the pendency of this case) it declined to do so in its most recent opinion. *See* Petitioners' Objections, *Ohio Organizing Collaborative v. Ohio Redistricting Comm'n*, No. 2021-1210, at 2–3 (filed Feb. 28, 2022) ("If the Court concludes that it cannot secure the Commission's

5

compliance with the Ohio Constitution, . . . then it should declare an impasse, after which a federal court would implement federal remedies, with due respect for state law."); Slip Op. 19 ("We deny petitioners' requests for additional relief at this time."). There is no reason for this Court to second-guess that determination here, especially given the request to move the primary deadlines.

By contrast, there is every reason to deny the relief requested and to defer to the state-court process under *Growe*. As already noted, our Constitution makes clear that "reapportionment is primarily the duty and responsibility of the State." *Growe*, 507 U.S. at 34. The Ohio Supreme Court is intensely engaged in "address[ing] that highly political task itself," and it can do so in "as timely a manner" as this Court, *id.* at 33–37—particularly if that Court extends the primary deadlines. For that reason, this Court must "stay its hands" and deny the requested relief. *Id.* at 32 (cleaned up).

<div style="margin-left: 3em;">
Respectfully submitted,

*/s/ Jonathan E. Taylor*
JONATHAN E. TAYLOR (*pro hac vice*)
MATTHEW W.H. WESSLER (*pro hac vice*)
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, DC 20006
Phone: (202) 888-1741 / Fax: (202) 888-7792
*jon@guptawessler.com*
*matt@guptawessler.com*

C. BENJAMIN COOPER
CHARLES H. COOPER, JR.
CHELSEA C. WEAVER
COOPER ELLIOTT
305 West Nationwide Boulevard
Columbus, OH 43215
Phone: (614) 481-6000 / Fax: (614) 481-6001
*benc@cooperelliott.com*
*chipc@cooperelliott.com*
*chelseaw@cooperelliott.com*
</div>

March 23, 2022                    *Attorneys for Intervenors-Defendants*

**CERTIFICATE OF SERVICE**

I certify that on March 23, 2022, I filed this opposition through this Court's CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

<div style="text-align: right">

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor

</div>