IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MICHAEL GONIDAKIS, et al.,<br>    *Plaintiffs*,<br><br>v.<br><br>FRANK LAROSE, in his official capacity,<br>    *Defendant*,<br><br>and<br><br>SENATOR VERNON SYKES and HOUSE MINORITY LEADER ALLISON RUSSO, in their capacities as members of the Ohio Redistricting Commission,<br>    *Intervenors-Defendants*. | Case No. 2:22-cv-773<br><br>Chief Judge Algenon L. Marbley<br><br>Circuit Judge Amul R. Thapar<br><br>Judge Benjamin J. Beaton<br><br>(Three-Judge District Court) |

**Opposition of Intervenors-Defendants Senator Vernon Sykes and House Minority Leader Allison Russo to Plaintiffs' Motion for a Preliminary Injunction**

A preliminary injunction of any kind "is an extraordinary and drastic remedy" that "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). But the injunction sought here is especially extraordinary—an order from a federal court directing state officials to halt a state process to implement a ballot for an upcoming election, and to adopt a different ballot with additional races using a map that the state Supreme Court has invalidated under a state constitutional provision adopted by over 70% of voters. Worse, even assuming that this could be done in time for the election, it would be ordered at the very last moment—contrary to the general rule that federal courts may not "alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020); *see Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam). Because the plaintiffs have failed to carry their burden as to each of the preliminary-injunction factors, their motion should be denied.

1

***1. Likelihood of success on the merits.*** The plaintiffs first "bear[] the burden" of making "a strong showing that [they are] likely to succeed on the merits." *Nken v. Holder*, 556 U.S. 418, 434 (2009). They cannot make this showing here, and they have barely even tried to do so.

The plaintiffs claim (at 8) that they have made the necessary strong showing because their "right to vote will be violated" if the Third Plan is not implemented. But that will happen only if the primary for state legislative races is not rescheduled. And the fundamental problem for the plaintiffs is that Ohio law *requires* that a primary be held. *See, e.g.*, Ohio Const., art. V, § 7.

To satisfy the first factor, then, the plaintiffs have to make a strong showing that two things are likely to occur. *First*, they must show that the state legislature will decide to violate both state and federal constitutional law by refusing to reschedule the state-legislative primary election (even though, as today's hearing revealed, the state legislature has moved primary elections in the past). *Second*, the plaintiffs must show that the Ohio Supreme Court, were it faced with such a clear violation of state and federal constitutional law, will refuse to cure it.

The plaintiffs make no attempt to demonstrate the likelihood of these events. "Absent clear evidence to the contrary," this Court "must presume that public officials [will] properly discharge[] their official duties" in compliance with state and federal law. *See EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 442 (6th Cir. 2020) (cleaned up) (citing cases and applying presumption to state officials); *Alden v. Maine*, 527 U.S. 706, 755 (1999) ("We are unwilling to assume the States will refuse to honor the Constitution."). Far from identifying "clear evidence to the contrary," *EMW*, 978 F.3d at 442, the plaintiffs cite no evidence whatsoever that a violation of the state's primary requirement is likely to happen. Indeed, they cite no evidence showing that the requirement has ever been violated in Ohio. These failures doom their bid for a preliminary injunction.

Moreover, the plaintiffs lack standing to seek the relief requested because they have not shown that it will likely redress their asserted injury. The record evidence shows that the last day

to change the ballot for a May 3 primary has "already come and gone." *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018). Sworn testimony submitted on Tuesday, March 22, states this expressly. *See* ECF No. 84-1 at ¶¶ 23–25; ECF No. 84 at 3. And the directive issued by Secretary LaRose the next day says the same. ECF No. 97 at 1. It informs county election boards that candidates for state legislative races "will not appear on the ballot." *Id.* And because the "[r]eprogramming of the election management systems and ballots will take at least a week and a half," ECF No. 84-1 at ¶ 24, the directive instructs boards to "reprogram their election databases and prepare ballots to be ready by April 5, 2022, without [those state legislative races]." ECF No. 97 at 2. This has required them to "take prompt action to revise their ballots to meet the April 5, 2022 deadline." *Id.* Simply put, there is currently no record evidence that there would be sufficient time to reprogram the voting machines once again—which is the only relief that the plaintiffs have requested in their motion.

  ***2. The remaining preliminary-injunction factors.*** Even if the plaintiffs could show a likelihood of success on the merits, "a preliminary injunction does not follow as a matter of course from [that] showing." *Benisek*, 138 S. Ct. at 1943–44. To the contrary, the Court "must also consider whether the movant[s] ha[ve] shown" that they are "likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Id.* at 1944. The plaintiffs have made "no such showing" here. *Id.*

  *a. Likelihood of irreparable harm.* "[P]laintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "Issuing a preliminary injunction based only on a *possibility* of irreparable harm is inconsistent with [the Supreme Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (emphasis added). The plaintiffs can't satisfy this requirement either.

3

For starters, because the plaintiffs can't show that a federal constitutional violation is likely, they also can't show that they're likely to be injured by that violation, much less irreparably so. But even setting that aside, the plaintiffs have failed to demonstrate that they would be irreparably harmed absent their requested relief. That is because their injury, if it came to pass, could also be remedied at a later date by this Court. As the plaintiffs conceded at today's hearing: In the event that neither the Ohio legislature nor the Ohio Supreme Court rescheduled the primary to comply with state and federal constitutional law, this Court could then itself order such relief. *See, e.g., Sixty-Seventh Minn. State Senate v. Beens*, 406 U.S. 187, 201 n.11 (1972). Indeed, the plaintiffs stated that this relief would be preferable but for the potential cost of having two primary elections. That potential cost, however, is exactly the kind of policy judgment that is more properly directed to the Ohio legislature. It should not have any bearing on the irreparable-harm inquiry.

*b. Balance of the equities and the public interest.* The last two factors likewise cut decisively against the plaintiffs. Were this Court to grant their requested relief, it would require state officials to halt the State's process for reprogramming voting machines and to reprogram them once again to include candidates under a map that violates substantive state constitutional law. Assuming that this were theoretically feasible, it would require that it be done at the last possible date, with no time to reprogram them yet again. That would sow chaos and confusion, as counsel for Secretary LaRose admitted at today's hearing, and it would directly violate state law and state sovereignty. A "State clearly has a legitimate interest in the continued enforceability of its own [Constitution]," *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1011 (2022), and the voters of Ohio clearly have a legitimate interest in voting under an electoral map that comports with the constitutional amendments they recently adopted by an overwhelming majority. Those voters also have an interest in avoiding the confusion that would ensue were this Court to impose an eleventh-hour unconstitutional map on them. *See Benisek*, 138 S. Ct. 1945 (affirming the denial of a preliminary

injunction as "against the public interest" when it "might have worked a needlessly chaotic and disruptive effect upon the electoral process," and because the "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held").

On the other side of the ledger, according to the plaintiffs, are the potential costs to the State were it to hold two primaries. But those costs, should they occur, would be the result of *the legislature's* decision to have a bifurcated primary instead of a single primary on a later date. They would not be result of this Court's refusal to grant the plaintiffs extraordinary eleventh-hour relief.

***3. Other potential relief.*** A final point: At today's hearing, this Court inquired about the possibility of pushing back the April 5 deadline for early and absentee voting—thereby reducing the total number of days of early voting—to allow the Third Plan (or potentially a Fourth Plan) to be implemented for a May 3 primary. Although Senator Sykes and Leader Russo appreciate the Court's desire to give the Commission time to prepare a new map, changing Ohio's rules governing early voting so the May 3 primary may include state legislative races is not the right way to do so. The Supreme Court has "repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm.*, 140 S. Ct. at 1207. "By changing the election rules so close to the election date and by affording relief that the plaintiffs themselves [do] not ask for in their preliminary injunction motions," a court "contravene[s] [the Court's] precedents and err[s] by ordering such relief." *Id.*; *see also Memphis A. Philip Randolph Inst. v. Hargett*, 977 F.3d 566, 568–69 (6th Cir. 2020) ("[The] injury to potential voters, who have relied on communications from defendants and local election officials, is great," while "disrupting the new rules at this point poses significant risk of harm to the public interest in orderly elections.").

Here, moving the April 5 start date for early voting and ordering that the May 3 primary include state legislative races wouldn't just violate this principle, but would also risk violating state and federal law several times over. Specifically, it would violate or potentially violate federal

5

constitutional law, federal statutory law, state constitutional law, and state statutory law—all while creating the potential for even more confusion and uncertainty. *See, e.g.*, *Obama for Am. v. Husted*, 697 F.3d 423, 431 (6th Cir. 2012) (holding that Ohio's reduction of three days of early voting burdened individuals' federal constitutional right to vote); 52 U.S.C. §§ 20302(a)(8)(A), (b) (requiring that overseas servicemembers have their ballots sent no later than 45 days before the election absent a waiver—a waiver that was denied by DOD in this case, after which DOJ agreed not to sue only if the ballots were sent out by April 5); *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, 2022 WL 803033 (Ohio Mar. 16, 2022) (invalidating the Third Plan as unconstitutional); Ohio Rev. Code § 3509.01(B)(1) (deadlines for "overseas voters and absent uniformed services voter"); *id.* § 3509.01(B)(2) & (3) (providing that, for early voting, "ballots shall be printed and ready for use on the first day after the close of voter registration before the election"); *id.* § 3503.19(C)(1) & Ohio Const., art. V, § 1 (providing that voters must be registered 30 days before the election).

Given these concerns, this Court should not push back the April 5 deadlines for early voting and military ballots just to preserve the existing primary-election date. It is better for the State to move its primary for state legislative races to comply with its constitutional law—while keeping in place its statutory deadlines—than it is for a federal court to order that the primary be held under rules that violate state and federal law and a map that violates state constitutional law.

Respectfully submitted,

*/s/ Jonathan E. Taylor*
JONATHAN E. TAYLOR (*pro hac vice*)
MATTHEW W.H. WESSLER (*pro hac vice*)
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, DC 20006
Phone: (202) 888-1741 / Fax: (202) 888-7792
*jon@guptawessler.com*
*matt@guptawessler.com*

                        C. BENJAMIN COOPER
                        CHARLES H. COOPER, JR.
                        CHELSEA C. WEAVER
                        COOPER ELLIOTT
                        305 West Nationwide Boulevard
                        Columbus, OH 43215
                        Phone: (614) 481-6000 / Fax: (614) 481-6001
                        *benc@cooperelliott.com*
                        *chipc@cooperelliott.com*
                        *chelseaw@cooperelliott.com*

March 25, 2022                    *Attorneys for Intervenors-Defendants*

**CERTIFICATE OF SERVICE**

I certify that on March 25, 2022, I filed this opposition through this Court's CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor
