**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **MICHAEL GONIDAKIS, et al.,** | |
| Plaintiffs, | |
| v. | Circuit Judge Amul R. Thapar |
| **FRANK LAROSE,** | Chief Judge Algenon L. Marbley |
| Defendant, and | Judge Benjamin J. Beaton |
| **LEAGUE OF WOMEN VOTERS OF OHIO and A. PHILIP RANDOLPH INSTITUTE OF OHIO,** | |
| Intervenor-Defendants. | Case No. 2:22-cv-773 |

---

**INTERVENOR-DEFENDANTS' MOTION TO DISMISS**

---

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure,

Intervenor-Defendants hereby move to dismiss Plaintiffs' First Supplemental Complaint for

Declaratory and Injunctive Relief. A memorandum of law supporting this motion follows.

Respectfully submitted,

| | |
|---|---|
| | */s/ Freda J. Levenson* |
| Robert D. Fram | Freda J. Levenson (0045916) |
| David Denuyl* | *Counsel of Record* |
| COVINGTON & BURLING, LLP | ACLU OF OHIO FOUNDATION, INC. |
| Salesforce Tower | 4506 Chester Avenue |
| 415 Mission Street, Suite 5400 | Cleveland, OH 44103 |
| San Francisco, CA 94105-2533 | (614) 586-1972 x125 |
| (415) 591-6000 | flevenson@acluohio.org |
| rfram@cov.com | |

James Hovard*
COVINGTON & BURLING, LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
(650) 632-4700
jhovard@cov.com

* *Pro hac vice* application forthcoming

David J. Carey (0088787)
ACLU OF OHIO FOUNDATION, INC.
1108 City Park Avenue, Suite 203
Columbus, OH 43206
(614) 586-1972 x2004
dcarey@acluohio.org

Alora Thomas*
Julie A. Ebenstein*
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street
New York, NY 10004
(212) 519-7866
athomas@aclu.org
jebenstein@aclu.org

ii

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL GONIDAKIS, et al.,** | |
| Plaintiffs, | |
| v. | Circuit Judge Amul R. Thapar |
| **FRANK LAROSE,** | Chief Judge Algenon L. Marbley |
| Defendant, and | Judge Benjamin J. Beaton |
| **LEAGUE OF WOMEN VOTERS OF OHIO and A. PHILIP RANDOLPH INSTITUTE OF OHIO,** | Case No. 2:22-cv-773 |
| Intervenor-Defendants. | |

**MEMORANDUM IN SUPPORT OF INTERVENOR-DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

    A.    The Ohio Constitution Expressly Vests Jurisdiction Over Partisan
Gerrymandering Claims in the Supreme Court of Ohio. ........................................ 2

    B.    The Supreme Court of Ohio Carefully Reviewed The First Two Enacted
Plans and Invalidated Them Under Ohio Law ........................................................ 3

    C.    Plaintiffs Filed This Lawsuit During the Ohio Redistricting Commission's
Short-Lived "Impasse." .......................................................................................... 4

    D.    The Supreme Court of Ohio Invalidated the Third Plan and Provided
Detailed Guidance to the Commission. ................................................................... 5

    E.    The Fourth Plan: Progress Toward a Revised Map In Accord with the
Court's Directives ................................................................................................... 6

    F.    The Last Minute Change to the Map ....................................................................... 7

    G.    Secretary LaRose announces that the General Assembly primary will need
to be moved to a later date, and could be held as late as August 2. ........................ 9

    H.    What Happens Next ................................................................................................. 9

III.    LEGAL STANDARDS ........................................................................................ 9

IV.    ARGUMENT ...................................................................................................... 10

    A.    This Court Lacks Subject Matter Jurisdiction Under Fed. R. Civ. P.
12(b)(1). ............................................................................................................... 10

        1.    Plaintiffs' claims are not ripe for federal court adjudication. ............ 11

            a)    *Plaintiffs' claims are not fit for federal court adjudication
because the state process can be completed timely.* ...................... 11

            b)    *Plaintiffs' claims are not fit for adjudication because they
are contingent on future events that may not occur.* ..................... 12

            c)    *Intervention would only cause more hardship to the parties.* ....... 13

        2.    Plaintiffs lack standing to bring the claims alleged in their
complaint. .............................................................................................. 14

         *a)*      *Redressability: Plaintiffs' injuries cannot be redressed by the particular remedy that they seek from this Court.* .................. 14

    B.     Plaintiffs Fail to State a Claim Under Fed. R. Civ. P. 12(b)(6). ........................... 15

        **1.**     **Plaintiffs' claim that they have a right to vote under the invalid Third Plan is not plausible.** .................................................................. 16

**V.**     **CONCLUSION** ................................................................................................ 17

v

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)............................................................................................................15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................................................15

*Branch v. Smith,*
538 U.S. 254 (2003)............................................................................................................12

*Bush v. Gore,*
531 U.S. 98 (2000)....................................................................................................15, 16, 17

*Chapman v. Meier,*
420 U.S. 1 (1975)...........................................................................................................2, 12

*Gold v. Deloitte & Touche*
LLP, 622 F.3d 613 (6th Cir. 2010) ...................................................................................15, 16

*Growe v. Emison,*
507 U.S. 25 (1993)..........................................................................................................2, 11

*Guar. Tr. Co. of N.Y. v. York,*
326 U.S. 99 (1945)..........................................................................................................15, 16

*INS v. Pangilinan,*
486 U.S. 875 (1988)............................................................................................................14

*Larios v. Cox,*
305 F. Supp. 2d 1335 (N.D. Ga. 2004) ...................................................................................13

*League of Women Voters of Ohio, et al., v. Ohio Redistricting Comm'n., et al.,*
2022-Ohio-342 ...................................................................................................................4

*League of Women Voters of Ohio et al., v. Ohio Redistricting Comm'n, et al.,*
2022-Ohio-789....................................................................................................................5, 6, 14

*League of Women Voters of Ohio v. Ohio Redistricting Comm'n,*
2022-Ohio-498....................................................................................................................5

*League of Women Voters of Ohio v. Ohio Redistricting Comm'n,*
2022-Ohio-65....................................................................................................................3, 4

vi

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1993)............................................................................10, 14, 15

*Morgan v. Church's Fried Chicken,*
    829 F.2d 10 (6th Cir. 1987) ...............................................................................10

*National Park Hospitality Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003)......................................................................................10, 11

*Peters v. Gilchrist,*
    222 U.S. 483 (1912)......................................................................................15, 16

*Sixty-Seventh Minn. State Senate v. Beens,*
    406 U.S. 187 (1972)...........................................................................................13

*Texas v. United States,*
    523 U.S. 296 (1998)...........................................................................................12

*Upham v. Seamon,*
    456 U.S. 37 (1982).............................................................................................13

## Other Authorities

Fed. R. Civ. P. 12(b)(1)...............................................................................2, 10

Fed. R. Civ. P. 12(b)(6).............................................................................10, 15

Ohio Const. art. XI, §§ 6(A)–(B).........................................................................2

Ohio Const. art. XI, §§ 9(A)–(B).........................................................................3

U.S. Constitution Article III...............................................................................10

## I.     INTRODUCTION

Ohio law has been broken and the Ohio Court can address that transgression.  It has retained jurisdiction so it can do so.  Further, as the Secretary of State has conceded, this Court can adjust deadlines to permit the Ohio Court time to do so.  But this Court should resist the invitation to facilitate the imposition of a map that violates the Ohio Constitution.

The process of drawing a districting plan for the General Assembly had been proceeding on a transparent, bipartisan basis for ten days.  In the words of the Commission Co-Chair, it was "historic."  However, four of the majority members of the Redistricting Commission, late in the evening of March 28 when the process was on the verge of completion, decided to defy the Supreme Court of Ohio and enact a map in violation of that court's most recent order.

Contrary to the directives of the Supreme Court of Ohio, this bare majority of the Commission discarded the map that had been drawn by the independent (and bipartisan) map drawers and replaced it with a map that had been concocted by a single partisan legislative staff person.  They jettisoned the work that had been done in public view, per the express order of the Supreme Court of Ohio, and replaced it with a map drawn in secret.  They willfully ignored the Ohio Court's directive that the map be the joint product of the Commission and replaced it with a map that was first shown to the majority of the Commissioners after 9:00 pm and was then subject to a vote by 10:30 pm, while all requests for time to consider the map (or offer amendments, or ask questions of the legislative staffer who drew it) were denied.   Even an effort to reach the Supreme Court of Ohio to ask for a few additional hours was blocked.

On March 28, 2022, Secretary of State LaRose clearly represented to this Court that a primary can be held as late as August 2, 2022.  *See* Response to Questions Contained in Order Issued March 25, 2022, ECF No. 113, at PageID # 2919 (March 28, 2022).  Accordingly, there is

1

time for the Supreme Court of Ohio to right this wrong. There is time to put the state process

back on track. There is time for the state process to work towards an orderly conclusion. Put

simply, Plaintiffs' contention that this Court must now step in and impose a plan is premature.

And this lawsuit is a poorly designed vehicle. Plaintiffs lack standing. They have sought

the imposition of the Third Plan even though it has been ruled to be invalid—surely a request for

relief that cannot redress their alleged injury. This defect undermines Plaintiffs' suit on the

merits as well as on jurisdictional grounds.

For these reasons, Intervenor-Defendants respectfully request that the Court dismiss all of

Plaintiffs' claims under Rule 12(b)(1) or 12(b)(6) and permit the Ohio Redistricting Commission

to complete its redistricting work, which is "the duty and responsibility of the State…rather than

of a federal court." *Chapman v. Meier*, 420 U.S. 1, 27 (1975); *see also Growe v. Emison*, 507

U.S. 25, 33 (1993).

## II.     FACTUAL BACKGROUND

### A.     The Ohio Constitution Expressly Vests Jurisdiction Over Partisan Gerrymandering Claims in the Supreme Court of Ohio.

In 2015, Ohio voters, by an overwhelming margin of 71.5% to 28.5%, amended the Ohio

Constitution by adding express constitutional commands that legislative plans not be drawn "to

favor or disfavor a political party," and that the distribution of seats "shall correspond closely to

the statewide preferences of the voters of Ohio." Ohio Const. art. XI, §§ 6(A)–(B). The express

purpose of the constitutional amendment was to "[e]nd the partisan process for drawing Ohio

House and Senate districts, and replace it with a bipartisan process with the goal of having

district boundaries that are more compact and politically competitive." Ohio Sec'y of State,

Issue 1 Ballot Language (Nov. 2015), https://bit.ly/3ElgrPY.

2

Article XI of the Ohio Constitution, as amended, gives the Supreme Court of Ohio a central role in supervising the enactment of any legislative plan. It provides the Supreme Court of Ohio with original jurisdiction over all actions arising under Article XI, and grants it the authority to invalidate "any general assembly district plan made by the Ohio redistricting commission." Ohio Const. art. XI, §§ 9(A)–(B); *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, 2022-Ohio-65, ¶ 69. Moreover, in the event that the Supreme Court of Ohio finds a plan to be constitutionally defective, it has the express authority to order the Commission to "convene, and ascertain and determine a general assembly district plan in conformity with such provisions of this constitution as are then valid." Ohio Const. art. XI, § 9(B).

B.    **The Supreme Court of Ohio Carefully Reviewed The First Two Enacted Plans and Invalidated Them Under Ohio Law.**

On September 16, 2021, the Commission voted along strict party lines to enact a General Assembly district plan to be in effect for the next four years. A week later, on September 23, 2021, Intervenor-Defendants League of Women Voters of Ohio filed a complaint in the Supreme Court of Ohio, alleging that the Commission's district plan violated Article XI of the Ohio Constitution. Specifically, Intervenor-Defendants alleged that the Commission violated Sections 6(A) and 6(B) of Article XI by enacting a plan that (i) primarily favored the Republican Party, and (ii) failed to correspond closely to the statewide preferences of the voters of Ohio. *See* Compl. ¶ 91, *League of Women Voters of Ohio, et al. v. Ohio Redistricting Comm'n, et al*., No. 2021-1193.

Following expedited discovery, full merits briefing, and oral argument, the Supreme Court of Ohio, on January 12, 2022, struck down the Commission's plan. In so doing, it carefully examined (and affirmed) its authority to remedy a partisan gerrymander, *League of*

3

*Women Voters of Ohio*, 2022-Ohio-65, ¶¶ 64–75, ordered the Commission to reconvene to adopt a new plan within ten days of the Court's decision, and expressly retained jurisdiction to review the constitutionally compliant plan once adopted by the Commission, *id.* ¶ 137.

On January 22, 2022, the Commission adopted a revised plan, to which Intervenor-Defendants, three days later, lodged objections, explaining that the revised plan violated Article XI, §§ 6(A) and 6(B).  *See* Pet'rs' Obj. to Ohio Redistricting Comm'n's Revised Map, *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, No. 2021-1193.

Roughly two weeks later, on February 7, 2022, the Supreme Court of Ohio sustained Intervenor-Defendants' objections and struck down the Commission's Revised Plan for "violat[ing] [] Article XI, Sections 6(A) and 6(B) of the Ohio Constitution."  *League of Women Voters of Ohio, et al., v. Ohio Redistricting Comm'n., et al.*, 2022-Ohio-342, ¶ 3.  The Supreme Court of Ohio once again ordered the Commission to reconvene to adopt a new plan within ten days of the Ohio Court's decision.  *Id.* ¶ 68.

C.    **Plaintiffs Filed This Lawsuit During the Ohio Redistricting Commission's Short-Lived "Impasse."**

In the ten days following that February 7 order, the Commission convened only on the afternoon of the Ohio Court's mandated deadline for enacting a constitutionally compliant district plan.  At that February 17 meeting, the majority Commission members did not introduce any plan, nor consider any plan submitted to the Commission.  Instead, the majority Commission members only heaped criticism on a plan introduced by the minority Commission members.  Accordingly, the Commission did not enact any plan in accordance with the Supreme Court of Ohio's February 17, 2022 deadline, and instead declared an impasse.

On February 18, within 15 hours of the Commission's declaration of an impasse, Plaintiffs filed their first complaint in this case.  *See* Pls' Compl., ECF No. 1 (Feb. 18, 2022).

4

They did so despite the lack of any indication that the Supreme Court of Ohio would accept the Commission's failure to comply with its February 7 order.  Indeed, just four days after the Ohio Court ordered the Commission to show cause why it should not be held in contempt for failing to comply with the Ohio Court's order, *see* 02/18/2022 Case Announcements #2, *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, 2022-Ohio-498, the Commission broke its "impasse" and enacted its Second Revised Plan (the "Third Plan").  Intervenor-Defendants again filed objections.  *See* Obj. to Ohio Redistricting Comm'n's Feb. 24, 2022 Revised Plan*, League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, No. 2021-1193.

  D. **The Supreme Court of Ohio Invalidated the Third Plan and Provided Detailed Guidance to the Commission.**

   On March 16, 2022 the Supreme Court of Ohio sustained Petitioners' objections to the Third Plan on the basis of violations of Article XI, Sections 6(A) and 6(B) of the Ohio Constitution.  *League of Women Voters of Ohio et al., v. Ohio Redistricting Commission, et al.*, 2022-Ohio-789, ¶ 2.  In so doing, the Ohio Court criticized the Commission for once again failing to follow the requirement in Article XI of the Ohio Constitution that "*[t]he commission shall draft* the proposed plan." *Id.* ¶ 25 (citing Ohio Const. art. XI, § 1(C)).  As the Ohio Court put it, "The Commission has *adopted* three plans so far, but it still has not *drafted* one.  Staff members of Senate President Huffman and House Speaker Cupp have drafted all three of the plans adopted by the commission" and "controlled the map-drawing process to the exclusion of the minority-party and other commission members." *Id.* ¶ 25–26.

   The Supreme Court of Ohio ordered that the Commission be reconstituted and convene in order to draft and adopt a new Ohio General Assembly district plan that conforms with the Ohio Constitution. *Id.* ¶ 44.  It ordered the Commission to conduct its drafting "in public" in order "to promote transparency and increase public trust," and to "convene frequent meetings to

demonstrate their bipartisan efforts to reach a constitutional plan within the time set by this

court." *Id.* The Ohio Court directed that the new plan be the work of the entire Commission (as

distinct from a single partisan faction). *Id.* ("We further order…that *the commission* draft and

adopt an entirely new General Assembly-district plan."). And the Ohio Court ordered the

Commission to enact a new plan by March 28, 2022. *Id.* ¶ 45.

> **E.    The Fourth Plan**: **Progress Toward a Revised Map In Accord with the Court's Directives**

The Commission immediately began complying with the Ohio Court's Order. The

Commission first met on Saturday, March 19 and scheduled meetings *every day* through

Monday, March 28. *See* Commission Meetings, Ohio Redistricting Comm'n,

https://redistricting.ohio.gov/meetings (accessed Mar. 23, 2022). On March 21, the Commission

agreed, by a unanimous decision, to hire two independent map drawers and a mediator to assist

in the map-drawing process. *See* Tr. of 3-21-2022 Ohio Redistricting Comm'n Meeting, ECF

No. 91-3 at PageID # 1501.

Immediately following their appointment, the two map drawers flew in from out of state

for their first meeting with the Commission on Wednesday, March 23 and to receive instructions

for their work. *See* Tr. of 3-23-2022 Ohio Redistricting Comm'n Meeting, ECF No. 111-2 at

PageID # 2862. At the March 23 Commission meeting, after two-and-a-half hours of substantive

discussion, the commissioners unanimously agreed to adopt 24 detailed instructions to guide the

work of the map drawers. *See id.*; Ground Rules for Map Drawers (Mar. 23, 2022), Ohio

Redistricting Comm'n, bit.ly/3tDhqYs.

At the end of the meeting, Commission Co-Chair Vernon Sykes remarked that "this is

historic" due to the transparent nature of the proceedings and that "we are making progress."

*March 24, 2022 Ohio Redistricting Comm'n Hrg.*, at 49:32, bit.ly/3IJpomW. In a joint interview

with Co-chairs Speaker Cupp and Senator Sykes after the Commission meeting concluded,
Senator Sykes said that he was "still optimistic that they're going to make the deadline." Josh
Rultenberg (@JoshRultNews), Twitter (Mar. 24, 2022, 8:39 PM), bit.ly/3DhpbX5. Speaker
Cupp echoed this sentiment, saying "agreed, agreed." *Id.*

By March 28, after aligning on issues involving proportionality, symmetry, and county
configurations, the map drawers notified the Commission that they had successfully merged their
two maps and were methodically going through the state, with the help of the Commission
consultants, to fix any technical issues. The map drawers also noted that they were in a position
to incorporate changes to the map that reduced pairing incumbents within the same district and
ensured that incumbents still in the middle of their terms could serve out the rest of their terms.
*March 28, 2022 Ohio Redistricting Comm'n Hrg.*, at 02:39, https://bit.ly/3qJRbhc. The
Commission then recessed until 4:30 PM to allow the map drawers to finish drafting the unified
map.

F.    **The Last Minute Change to the Map**

Things were going well—until they weren't. At 4:30 PM on the afternoon of March 28,
map drawer Mr. Johnson informed the Commission that he and Dr. McDonald were just a
"couple hours away" from completing their map and presenting it to the Commission. *Id.* at
21:27. Republican members of the Commission asked the map drawers a number of specific
questions about the merged maps. Then, Senate President Huffman abruptly announced that the
Commission had to "pass a map by 10:30 PM" in order to comply with the Court's midnight
deadline. *Id.* at 01:04:09. He then motioned to have the Commission turn instead to the
invalidated February 24 map as a starting point, have his partisan map drawing consultants, Mr.

DiRossi and Mr. Springhetti, make changes to that map, and pass it by 10:30 PM that evening. *Id.* at 01:07:28.

Over the objections of the Democratic Commissioners, all five Republican Commissioners voted for Senate President Huffman's motion to resuscitate the invalidated Third Plan. *Id.* at 01:25:00.

At 9:30 PM that evening, Mr. Johnson informed the Commission he had completed his full House map and was "making progress as fast as humanly possible" to complete the Senate map and get a full map done that evening. *March 28, 2022 Ohio Redistricting Comm'n Hrg.*, at 01:26:58, https://bit.ly/3qJRbhc. He estimated it would take him only 45 minutes to one hour to complete his work, well in advance of the Court's deadline. *Id.* at 01:28:08. Despite Mr. Johnson's progress, Senate President Huffman and Speaker Cupp introduced the "3-28 Cupp Plan," which was crafted by Mr. Springhetti in the recess period. *Id.* at 01:40:22; Mar. 28, 2022 Cupp Plan, General Assembly District Plan – Adopted by Commission, Ohio Redistricting Comm'n, https://redistricting.ohio.gov/maps.

Speaker Cupp confirmed that Mr. Springhetti worked off of the previously invalidated Third Plan and made adjustments that changed the partisan balance in just three seats. *March 28, 2022 Ohio Redistricting Comm'n Hrg.*, at 01:59:57, https://bit.ly/3qJRbhc. He further confirmed that the only changes made from the Third Plan resulted in the 3-28 Cupp Plan having two fewer asymmetrical Democratic House Districts and one fewer asymmetrical Democratic Senate districts. *Id.* at 01:43:19. As a result, while the Third Plan had 19 House Democratic seats in the 50–52% range, the 3-28 Cupp Plan has 17 House Democratic seats in that range and no competitive Republican seats. And, while the Third Plan had seven Democratic Senate seats in the 50–52% range, the 3-28 Cupp Plan has six Democratic Senate seats in that range and no

8

competitive Republican seats.  *Id.* at 01:57:58; *see also* Minority Statement (Mar. 28, 2022) at 4, Ohio Redistricting Comm'n, https://bit.ly/38bOGO7.  President Huffman confessed that he supported the 3-28 Cupp Plan over the Independent Plan because the Cupp Plan made "only minor changes" to the invalidated Third Plan.  *Id.* at 02:28:22.

. The 3-28 Cupp Plan was adopted by a 4-3 vote, with both Democratic Commissioners voting against the Plan.  *Id.* at 02:20:09.

> **G.      Secretary LaRose announces that the General Assembly primary will need to be moved to a later date, and could be held as late as August 2.**

On March 28, 2022, Secretary LaRose issued a filing responding to questions in this Court's March 25, 2022 order.  In that filing, Secretary LaRose confirmed "a May 3, 2022 primary election that would include candidates for the General Assembly is no longer an option, no matter whether it would be conducted under the terms of the [Third Plan], a future fourth plan, or an alternative plan crafted by this court. There simply is not time."  *See* Response to Questions Contained in Order Issued March 25, 2022, ECF No. 113, at PageID # 2312–13. Secretary LaRose further clarified that the primary could take place "no *earlier* than May 24, 2022," *id.* at PageID # 2913, and could be held as late as August 2, 2022 for the November general election to proceed in regular order, *id.* at PageID # 2919.

> **H.      What Happens Next**

The lawless actions of the four Commissioners who disregarded the orders of the Supreme Court of Ohio will be challenged.  The Ohio Court has retained jurisdiction to consider those challenges.  And, with the movement of the primary, there is ample time to permit that process to   play out.

## III.    LEGAL STANDARDS

Under Fed. R. Civ. P. 12(b)(1), Plaintiffs' claims must be dismissed if the court lacks

subject matter jurisdiction over the claims.  In reviewing a motion to dismiss under Rule

12(b)(1), the court must evaluate whether Plaintiffs' allegations create a "case" or "controversy"

under Article III of the U.S. Constitution.

Under Fed. R. Civ. P. 12(b)(6), Plaintiffs' claims must be dismissed if they fail to state a

claim upon which relief can be granted.  In reviewing a motion to dismiss under Rule 12(b)(6),

the court should construe factual allegations in the complaint "in the light most favorable to

plaintiff," but the court "need not accept as true legal conclusions or unwarranted factual

inferences."  *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

## IV.    ARGUMENT

Plaintiffs' claims are not yet ripe for adjudication and should be dismissed under Rule

12(b)(1).  The state process is still underway and there is ample time for its completion in light of

the representation by the Secretary of State that the primary can be held as late as August 2.

Plaintiffs' claims should also be dismissed under Rule 12(b)(1) because Plaintiffs' injury cannot

be redressed by the unlawful remedy that they seek—namely, the enactment of the invalid Third

Plan.  Plaintiffs' claims should be dismissed under Rule 12(b)(6) because they fail to provide any

support for their claim that they have a right to vote under the invalid Third Plan.

### A.    This Court Lacks Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1).

"Ripeness is a justiciability doctrine" that is "drawn both from Article III limitations on

judicial power and from prudential reasons for refusing to exercise jurisdiction."  *National Park*

*Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (citing *Reno v. Catholic*

*Social Services, Inc.*, 509 U.S. 43, 57, n. 18 (1993)).  Similarly, "the core component of standing

is an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan*

10

*v. Defenders of Wildlife*, 504 U.S. 555, 560 (1993).  Because Plaintiffs allege claims that are not

ripe for adjudication and lack standing to bring those claims, their claims should be dismissed for

lack of subject matter jurisdiction.

### 1.    Plaintiffs' claims are not ripe for federal court adjudication.

To determine whether claims are ripe for federal adjudication, courts engage in a two-

factor inquiry, examining "(1) the fitness of the issues for judicial decision and (2) the hardship

to the parties of withholding court consideration."  *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808.

Plaintiffs' claims are unfit for federal adjudication because the state redistricting process remains

timely, and because these claims are based on contingent future events that may not even occur.

Moreover, federal intervention at this stage would only cause more hardship to the parties than it

would prevent.

> *a)    Plaintiffs' claims are not fit for federal court adjudication because the state process can be completed timely.*

Plaintiffs' claims that they will be forced to vote in malapportioned districts, First Suppl.

Compl., ECF No. 86 at PageID # 1269, or that they will not have districts in which to vote at all,

*id.* at PageID # 1271, are premature.  Federal courts should "defer consideration of disputes

involving redistricting where the state, through its legislative *or* judicial branch, has begun to

address that highly political task itself."  *Growe*, 507 U.S. at 33.  "Absent evidence that these

state branches will fail timely to perform that duty, a federal court must neither affirmatively

obstruct state reapportionment nor permit federal litigation to be used to impede it."  *Id.* at 34.

Given the fact that Secretary LaRose has (a) stated that that the primary can be held as

late as August 2, 2022, and (b) that this Court can move the primary date, *see* Response to

Questions Contained in Order Issued March 25, 2022, ECF No. 113 at PageID # 2913, 2919,

there is ample time for the state process to be timely completed.

Indeed, the Court has already recognized that this case is distinguishable from other cases in which federal intervention was found to be appropriate.  *See* Tr. of Status Conf., ECF No. 69 at PageID # 1003 (distinguishing the facts of this case from the federal intervention in *Branch v. Smith*, 538 U.S. 254 (2003) because there was "no prospect" of resolution in *Branch* before the election); *see also Branch*, 538 U.S. at 265 ("we affirm the injunction on the basis . . .  that the state-court plan had not been precleared and had no prospect of being precleared in time for the 2002 election").  Put simply, the Supreme Court of Ohio has been actively supervising this matter.  There is no reason to terminate its work.

Plaintiffs' claims of being forced to vote in malapportioned districts, or no districts at all, will not come to fruition, as the Supreme Court of Ohio has been actively working to ensure a map is enacted that is compliant with both the federal and Ohio constitutions.  For this Court to step in and enforce the previously invalidated Third Plan would fly in the face of the U.S. Supreme Court's admonition that redistricting is "the duty and responsibility of the State…rather than of a federal court."  *Chapman*, 420 U.S. at 27.

> b)     *Plaintiffs' claims are not fit for adjudication because they are contingent on future events that may not occur.*

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985)). Plaintiffs' claim that "no resolution [in the Supreme Court of Ohio] will be achieved regarding Ohio's state legislative district maps before applicable voting deadlines, including the May 3, 2022, primary election," First Suppl. Compl., ECF No. 86 at PageID # 1269, is not ripe because it is contingent on future events that are uncertain or even unlikely to occur.

12

To the extent that Plaintiffs' claims rest on the failure to meet a certain primary deadline, those claims are particularly uncertain given that the General Assembly will likely need to move that primary to an undetermined future date. Indeed, Secretary LaRose said just yesterday that it is not feasible to implement the Third Plan—the very plan that Plaintiffs seek—in time for the May 3 primary. *See* Response to Questions Contained in Order Issued March 25, 2022, ECF No. 113 at PageID # 2912–13.

This Court need not take the intrusive step of imposing the invalid Third Plan—which could not be implemented in time for the May 3 primary anyway. Consistent with the Secretary's pronouncement, this Court has the authority to move the primary date if necessary. *See, e.g.*, *Upham v. Seamon*, 456 U.S. 37, 44 (1982) ("[W]e leave it to [the District Court] in the first instance to determine whether to modify its judgment [as to the state's congressional apportionment plan] and reschedule the [congressional] primary elections for Dallas County or . . . to allow the election to go forward in accordance with the present schedule."); *Sixty-Seventh Minn. State Senate v. Beens*, 406 U.S. 187, 201 n.11 (1972) ("If time presses too seriously [to implement a remedial reapportionment plan], the District Court has the power appropriately to extend the [election deadline] time limitations imposed by state law."); *see also* *Larios v. Cox*, 305 F. Supp. 2d 1335, 1343 (N.D. Ga. 2004) (noting court's power to extend election deadlines and ordering new statewide maps be drawn in time for upcoming primary election). However, there is no reason for this Court to impose this, or any other, remedy at this time, while the state process is working toward a timely conclusion and the General Assembly has not yet had an opportunity to move the primary date in response to Secretary LaRose's assessment.

>            *c)*      *Intervention would only cause more hardship to the parties.*

All three claims in Plaintiffs' First Supplemental Complaint allege that uncertainty about the 2022 elections is causing them harm.  *See* First Suppl. Compl., ECF No. 86 at PageID # 1270–71.  If this Court were to grant Plaintiffs' requested relief and impose the previously invalidated Third Plan, it would only inject further confusion and uncertainty into this process.  There would inevitably be appeals challenging this Court's decision to impose a plan that had been declared invalid by the Supreme Court of Ohio.  This would only further delay Secretary LaRose's ability to prepare for this year's elections and cause Plaintiffs the very hardship that they seek to avoid.  Thus, the "prudential considerations" that undergird the ripeness doctrine, and particularly the hardship element of the ripeness doctrine, counsel against federal intervention at this stage.

**2. Plaintiffs lack standing to bring the claims alleged in their complaint.**

To establish standing, Plaintiffs must show (1) an "injury in-fact" that is both (a) "concrete and particularized" and (b) "actual or imminent, not conjectural or hypothetical"; (2) a "causal connection between the injury and the complained-of conduct," such that the injury is "fairly…trace[able] to the challenged action of the defendant"; and (3) that the injury is "likely" to be "redressed by a favorable decision."  *Lujan*, 504 U.S. 560–61.  "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Id.* at 561.  Plaintiffs fail to meet their burden of establishing redressability.

> *a) Redressability: Plaintiffs' injuries cannot be redressed by the particular remedy that they seek from this Court.*

Plaintiffs have specifically alleged that they will be injured if the Third Plan is not imposed by this Court.  *See, e.g.* First Suppl. Compl., ECF No. 86 at PageID # 1270–71.  However, this Court cannot "disregard statutory and constitutional requirements" and "create a remedy in violation of law."  *INS v. Pangilinan*, 486 U.S. 875, 883 (1988).  Yet that is precisely

14

what Plaintiffs ask this Court to do by reinstating the Third Plan, which the Supreme Court of Ohio declared unconstitutional under the Ohio Constitution's anti-gerrymandering provisions. *League of Women Voters of Ohio*, 2022-Ohio-789, ¶ 2.  A federal court cannot compel state officials to violate state law.  *See, e.g.*, *Bush v. Gore*, 531 U.S. 98, 111 (2000) (per curiam) (rejecting a proposed remedy on the grounds that it would require remanding to the Florida Supreme Court to issue an order in violation of the Florida Election Code).

Nor can a federal court choose to ignore rights created by the Ohio Constitution and enforced by the Supreme Court of Ohio.  *See, e.g.*, *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 105 (1945) ("Congress never gave, nor did the federal courts ever claim, the power to deny [sic] substantive rights created by State law . . . ."); *Peters v. Gilchrist*, 222 U.S. 483, 492 (1912) ("The question as to whether a particular law has been passed in such manner as to become a valid law under the Constitution of the state is a state, and not a Federal, question.  Courts of the United States are therefore under obligation to follow the adjudications of the courts of the state whose law is in question.").  Because this Court does not have authority to grant the remedy that Plaintiffs seek, Plaintiffs have failed to demonstrate that it is "likely" that their alleged injuries will be "redressed by a favorable decision."  *Lujan*, 504 U.S. at 561.

B.      **Plaintiffs Fail to State a Claim Under Fed. R. Civ. P. 12(b)(6).**

Plaintiffs' claims must be dismissed under Fed. R. Civ. P. 12(b)(6) if the complaint fails to include factual allegations that "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, the complaint "must show legal entitlement to relief."  *Gold v.*

*Deloitte & Touche* LLP, 622 F.3d 613, 618 (6th Cir. 2010). Plaintiffs have failed to plausibly allege that they have the right to vote under the invalid Third Plan.

>    1.    **Plaintiffs' claim that they have a right to vote under the invalid Third Plan is not plausible.**

Plaintiffs allege that "Secretary of State LaRose started the election processes with the Third Plan." First Suppl. Compl., ECF No. 86 at PageID # 1270. Plaintiffs then allege that the Supreme Court of Ohio's invalidation of the Third Plan "threatens to stop the work of the Secretary of State carrying out the Third Plan, and could disrupt the status quo," which would result in Plaintiffs being deprived of "their right to vote for a candidate for a state legislative district in violation of the Equal Protection Clause and the Due Process Clause." *Id.* at PageID # 1271. Plaintiffs then ask the Court to "[p]ermanently enjoin Defendant and all persons acting on his behalf or in concert with him from implementing, enforcing, or conducting any elections under Ohio's current state legislative districts other than the Third Plan." *Id.* at PageID # 1272. Thus, Plaintiffs essentially assert that they have a right to vote under a plan that the Supreme Court of Ohio has found to be unconstitutional by asking this Court to impose the Third Plan and force state elections to proceed under it.

Plaintiffs must demonstrate "legal entitlement to relief," *Gold*, 622 F.3d at 618, but they are not entitled to relief that would force state actors to violate state law. As discussed above, a federal court cannot compel state officials to violate state law, *see, e.g.*, *Bush*, 531 U.S. at 111, nor can a federal court ignore rights created by the Ohio Constitution and enforced by the Supreme Court of Ohio, *see, e.g.*, *York,* 326 U.S. at 105; *Peters*, 222 U.S. at 492.

The Third Plan was invalidated by the Ohio Court and is thus not a lawful plan. This precludes federal imposition of the Third Plan, and Ohio's Attorney General has acknowledged as much. *See* Feb. 22, 2022 Letter from Attorney General Yost to Ohio General Assembly, ECF

No. 91-4 at PageID # 1505 ("The federal court may not order the use of a map that was rejected by the Ohio Supreme Court, where the underlying provision of the state constitution has not been found to violate the federal constitution.").

Plaintiffs cannot ask this Court to enjoin Secretary LaRose from enforcing any plan other than the Third Plan, which the Supreme Court of Ohio has already declared invalid under the Ohio Constitution.  This request directly contradicts the U.S. Supreme Court's directive that a federal court cannot compel state officials to violate state law.  *Bush*, 531 U.S. at 111.  Just as Plaintiffs would not be legally entitled to ask this Court to violate the federal constitutional rights of other citizens, Plaintiffs cannot request that this Court violate the state constitutional rights of others.  Because Plaintiffs' claims are premised on relief to which they are not entitled, those claims should be dismissed.

## V.       CONCLUSION

For the foregoing reasons, Intervenor-Defendants respectfully request that this Court dismiss Plaintiffs' claims.

Respectfully submitted,

*/s/ Freda J. Levenson*

| | |
|---|---|
| Robert D. Fram | Freda J. Levenson (0045916) |
| David Denuyl* | *Counsel of Record* |
| COVINGTON & BURLING, LLP | ACLU OF OHIO FOUNDATION, INC. |
| Salesforce Tower | 4506 Chester Avenue |
| 415 Mission Street, Suite 5400 | Cleveland, OH 44103 |
| San Francisco, CA 94105-2533 | (614) 586-1972 x125 |
| (415) 591-6000 | flevenson@acluohio.org |
| rfram@cov.com | |
| | David J. Carey (0088787) |
| James Hovard* | ACLU OF OHIO FOUNDATION, INC. |
| COVINGTON & BURLING, LLP | 1108 City Park Avenue, Suite 203 |
| 3000 El Camino Real | Columbus, OH 43206 |
| 5 Palo Alto Square, 10th Floor | (614) 586-1972 x2004 |
| Palo Alto, CA 94306-2112 | dcarey@acluohio.org |
| (650) 632-4700 | |

jhovard@cov.com

*Pro hac vice* application forthcoming

Alora Thomas*
Julie A. Ebenstein*
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street
New York, NY 10004
(212) 519-7866
athomas@aclu.org
jebenstein@aclu.org

18

**CERTIFICATE OF SERVICE**

I , Freda J. Levenson, hereby certify that on this 29th day of March, 2022, I electronically filed the foregoing with the Clerk of Court for the United States District Court for the Southern District of Ohio, Eastern Division via the ECF system, which will send notification of such filing to all counsel of record.

*/s/ Freda J. Levenson*
Freda J. Levenson (0045916)
*Counsel for Intervenor-Defendants*