## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| MICHAEL GONIDAKIS, et al., *Plaintiffs*, v. FRANK LAROSE, in his official capacity, *Defendant*, and SENATOR VERNON SYKES and HOUSE MINORITY LEADER ALLISON RUSSO, in their capacities as members of the Ohio Redistricting Commission, *Intervenors-Defendants*. | Case No. 2:22-cv-773 Chief Judge Algenon L. Marbley Circuit Judge Amul R. Thapar Judge Benjamin J. Beaton (Three-Judge District Court) |

**Motion of Intervenors-Defendants Senator Vernon Sykes and House Minority Leader Allison Russo to Dismiss the Plaintiffs' Second Claim for Relief, and to Hold the Remaining Claims in Abeyance Under *Growe v. Emison***

The process for redrawing Ohio's state legislative maps has been entrusted to the Ohio Redistricting Commission and the Ohio Supreme Court. That process is still ongoing, and short-circuiting it at this time would represent a serious federal intrusion into state sovereignty. Recent developments demonstrate that the process continues to move forward: Just last night, the Redistricting Commission passed a Fourth Plan, and the Ohio Supreme Court has set an accelerated briefing schedule to review challenges to it.

Based on these intervening developments, the plaintiffs' first and third claims for relief should be held in abeyance. Both claims are premised on allegations that there will be no district maps that account for the population changes identified in the 2020 census. The Fourth Plan, however, does at least do that. And although the Fourth Plan is subject to ongoing litigation in

1

state court, the pendency of that litigation does not provide a basis for this Court to adjudicate the plaintiffs' claims *now*. Instead, it is all the more reason for this Court to defer to the state processes—unless and until it becomes clear that Ohio's elected bodies and judiciary will fail to resolve the highly political process of redistricting in a timely fashion. Indeed, that is precisely what the Supreme Court in *Growe v. Emison* commanded federal courts to do when faced with these circumstances.

The plaintiffs' second claim is also premature, but fatally so. That claim asks this Court to intervene to facilitate a May 3 primary. But Secretary LaRose has determined that a May 3 primary for state legislative candidates is "no longer an option." ECF No. 113 at 7. So the second claim is moot. And to the extent that the plaintiffs mean to assert that no primary will *ever* be held *at any point*, that hypothetical injury is too speculative to support federal jurisdiction at all. Nothing in the supplemental amended complaint supports the plaintiffs' prediction that Ohio's elected officials will fail to fulfill their clear and unambiguous constitutional duty to hold a primary. This claim is based on the eventual realization of an unprecedented occurrence—no primary and, consequently, an unworkable general election—that is in no way "imminent." It should be dismissed.

## LEGAL STANDARD

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Unlike a facial attack, a factual attack "is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (cleaned up). This motion raises a factual attack to the plaintiffs' pleading.

2

**ARGUMENT**

  **1. *Claims one and three*.** The plaintiffs' first claim is based on an allegation that Ohio "does not currently have districts modified to fit the[] most recent changes" to Ohio's population. ECF No. 87 at ¶ 80. From that factual premise, the plaintiffs allege that "if elections are allowed to take place before the legal sufficiency of districts are resolved, votes in overpopulated districts, such as Plaintiffs['], will suffer from vote dilution." *Id.* ¶ 81. But there is now a Fourth Plan, and the undisputed evidence shows that the state-legislative primary will not take place on May 3. Instead, the primary will have to be rescheduled to a later date, and it will be based on either the Fourth Plan or some other plan approved by the Ohio Supreme Court (or by this Court, if necessary). *See* ECF No. 113 at 7–8.

  In light of these developments, there is no "actual or imminent" injury for this Court to redress. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (cleaned up). Nor is the claim ripe. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."); *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc) (explaining that a claim is unripe when it is divorced from a "concrete factual context," and that ripeness "overlap[s]" with standing).

  Rather than dismiss this claim, however, the Court should temporarily hold it in abeyance under *Growe v. Emison*, 507 U.S. 25 (1993). In *Growe*, the Court instructed "federal judges [to] defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." *Id.* at 33. That is because "reapportionment is primarily the duty and responsibility of the State through its legislature or other body, rather than of a federal court." *Chapman v. Meier*, 420 U.S. 1, 27 (1975). Accordingly, a federal court should not enjoin or otherwise impede the state reapportionment process "[a]bsent evidence that these state branches will fail timely to perform that duty." *Growe*, 507 U.S. at 34.

3

The plaintiffs have not offered any evidence that the State is "either unwilling or unable to adopt a congressional plan" in time for Ohioans to exercise their right to vote in a primary and general election this year. *Id.* at 37. In fact, all the evidence shows the opposite. As we have previously detailed (ECF No. 95 at 3–6), the Ohio Supreme Court has acted with urgency on the various redistricting-related challenges, and the Commission has moved quickly in response. The Commission has now adopted a Fourth Plan, and a briefing schedule is in place to determine the constitutionality of that plan and what further proceedings, if any, will be necessary to ensure that the voters of Ohio may vote under maps that comply with the constitutional amendments they recently adopted by an overwhelming margin.

In light of the ongoing state process, this Court should "stay its hand" and allow the State of Ohio to continue addressing the "highly political" task of deciding a state legislative map and rescheduling the primary election "itself." *Growe*, 507 U.S. at 32–33 (cleaned up). Nevertheless, the Court can and should retain jurisdiction to intervene in the event that the State "fail[s] timely to perform that duty." *Id.* at 34. As the Bennett petitioners have explained, this Court has the power to set a new primary date and to order the adoption of a redistricting plan that complies with the federal and state constitutions. ECF No. 107 at 22–26 (citing cases); *see Sixty-Seventh Minn. State Senate v. Beens*, 406 U.S. 187, 201 n.11 (1972). At the same time, this power should be used cautiously, for "federal judicial review represents a 'serious intrusion' on" the State's responsibility for reapportionment. *Nixon v. Kent Cty.*, 76 F.3d 1381, 1393 (6th Cir. 1996). Thus, at the very least, this Court should let the state redistricting process continue to play out until it is readily apparent that it will fail to provide Ohioans with an opportunity to vote in a state legislative primary with constitutionally compliant maps. And this would allow the Ohio legislature to take the opportunity to move the primary date even for the races that are *not* at issue in this case (which this Court may

4

not do) and therefore avoid the costs of having two primary elections. Anything less would fundamentally transgress "principles of federalism and comity." *Growe*, 504 U.S. at 32.

The Court should follow the same course for the third claim, which alleges a violation of the freedom of association based on there being "malapportioned districts" or "tentative districts." ECF No. 86 at ¶ 92. Again, the plaintiffs make no allegation that would support a malapportionment claim at this juncture. And the districts are only "tentative" insofar as they may be subject to litigation. That does not equal a violation of federal constitutional right. Otherwise, every lawsuit under the Voting Rights Act would constitute a violation of voters' association rights under the First Amendment. There is simply no support for the idea that a state-court process for producing a map is itself unconstitutional based on the mere fact that any districts are "tentative" until finally approved and upheld as valid under state law. To the contrary, *Growe* stands for the opposite proposition: The state process is the very reason for why federal courts should "stay [their] hands." *Growe*, 504 U.S. at 32.

**3. *Claim two.*** Claim two is different. That claim alleges a constitutional violation based on an allegation that "there will be no state legislative districts" for the May 3 primary. ECF No. 86 at ¶ 87. But there is no relief that can redress that injury because it is "too late" for the May 3 primary to include *any* state legislative races. ECF No. 113 at 17. To the extent that the claim is based on there being a May 3 primary, it is therefore moot.

And to the extent that the claim is based on there being no primary at all, it is much too speculative to support jurisdiction in federal court. As Senator Sykes and Leader Russo explained in their opposition to the preliminary-injunction motion, it is implausible that the State will fail to follow its own constitution and refuse to hold a primary *at all*. ECF No. 110 at 2–3; *see also* ECF No. 95 at 2. "Absent clear evidence to the contrary," this Court "must presume that public officials [will] properly discharge[] their official duties" in compliance with state and federal law. *See EMW*

5

*Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 442 (6th Cir. 2020) (cleaned up) (citing cases and applying presumption to state officials); *Alden v. Maine*, 527 U.S. 706, 755 (1999) ("We are unwilling to assume the States will refuse to honor the Constitution."). Far from there being any "clear evidence to the contrary," *EMW*, 978 F.3d at 442, there is *no* evidence that a violation of the requirement that Ohio have a primary is likely to happen—or, indeed, that it has ever happened in Ohio in the past.

This renders claim two fatally speculative. Unlike claims one and three, which are premised on malapportionment—an occurrence for which there is some precedent—claim two depends on Ohio's elected officials violating their state constitutional duty to hold a primary for the first time ever and throwing the general election into chaos in the process. That is not "concrete," "certainly impending," or anything close. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013); *see also Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 386–87 (6th Cir. 2020). This Court should therefore dismiss claim two for lack of subject-matter jurisdiction.

Respectfully submitted,

*/s/ Jonathan E. Taylor*
JONATHAN E. TAYLOR (*pro hac vice*)
MATTHEW W.H. WESSLER (*pro hac vice*)
GUPTA WESSLER PLLC
2001 K Street NW, Suite 850 North
Washington, DC 20006
Phone: (202) 888-1741 / Fax: (202) 888-7792
*jon@guptawessler.com*
*matt@guptawessler.com*

6

                        C. BENJAMIN COOPER
                        CHARLES H. COOPER, JR.
                        CHELSEA C. WEAVER
                        COOPER ELLIOTT
                        305 West Nationwide Boulevard
                        Columbus, OH 43215
                        Phone: (614) 481-6000 / Fax: (614) 481-6001
                        *benc@cooperelliott.com*
                        *chipc@cooperelliott.com*
                        *chelseaw@cooperelliott.com*

March 29, 2022               *Attorneys for Intervenors-Defendants*

**CERTIFICATE OF SERVICE**

I certify that on March 29, 2022, I filed this motion through this Court's CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor