EXHIBIT

D

**<u>COMMENTS OF CLASS OF AFRICAN AMERICAN VOTERS IN EZELL ARMOUR CLASS 775 F.SUPP. 1044 (6th Cir 1991) FOR AUGUST 23, 2021 PRESENTATION TO JOINT COMMITTEE ON REDISTRICTING</u>**

I.      Section I

A.      <u>Federal Redistricting Process</u> – Configuring Federal Legislative District United States Constitution Article I Section 2

B.      Section 2, Voting Rights Act of 1965, as amended - The text of VRA §2 provides:

"(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(f)(2) of this title, as provided in subsection (b).

"(b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population." 52 U. S. C. §10301.

II.      Section 2, VRA Requirements

A.      Commission has a duty to undertake an intensely local appraisal of indigenous political reality. The so-called totality of circumstances test to  determine if the political process is equally open to Black voters .Requires use of a results test.

B.      Senate Report Factors:

1. The history of official discrimination in the jurisdiction that affects the right to vote;

2. The degree to which voting in the jurisdiction is racially polarized;

3. The extent of the jurisdiction's use of majority vote requirements, unusually large electoral districts, prohibitions on bullet voting, and other devices that tend to enhance the opportunity for voting discrimination;

4. Whether minority candidates are denied access to the jurisdiction's candidate slating processes, if any;

5. The extent to which the jurisdiction's minorities are discriminated against in socioeconomic areas, such as education, employment, and health;

6. Whether overt or subtle racial appeals in campaigns exist;

7. The extent to which minority candidates have won elections;

8. The degree that elected officials are unresponsive to the concerns of the minority group; and

9. Whether the policy justification for the challenged law is tenuous

C.      Thornbury v. Gingles, 478 U.S. 30 (1986)

1. The racial or language minority group "sufficiently large and geographically compact to constitute a majority in a single-member district";

2. The minority group is "politically cohesive" (meaning its members tend to vote similarly); and

3. The "majority votes sufficiently as a bloc to enable it ... usually to defeat the minority's preferred candidate."

D.      Armour v Ohio, 775 F. Supp. 1044 (6th Cir. 1044) – Recognition of Influence District.Limited application of Gingles preconditions.

1. In Armour the Sixth Circuit determined the State of Ohio had a history of intentional racial discrimination in the Mahoning Valley and as such had not merely violated the VRA but also the 15th Amendment to the United States Constitution

2. Sixth Circuit issued  a declaratory judgment and granted injunctive relief.

3. It is the position of the Armour Class now represented by successor class representative Helen Youngblood that the Commission remains subject to the Armour admonition and must rely on the historical  findings in Armour as the baseline for a current appraisal of indigenous political reality in the Mahoning Valley .

4. The need to rely on the Armour historical record is buttressed by the current lack of timely updated census data to facilitate an up to date assessment of the Senate Report factors.

III.    Brnovich, Attorney General of Arizona, et al. v. Democratic National Committee, U. S. Supreme Court, Case No. 19-1257, July 1, 2021

      A.    Concerns time, manner and place of voting

      B.    Applied only Five Factor (Judicially Created)

      C.    Does not address Vote Dilution or Redistricting Process

IV.    Mahoning Valley Redistricting 2021

      A.    Ohio Population – 11,799,448

      B.    Representative Ratio

            1.    U.S. House – 786,629

      C.    Senate Report Factors still applicable

V.    Conclusion

      A.    Black voters in Mahoning and Trumbull County must be aggregated to maximum extent possible.

      B     The inclusion of areas south of Struthers ,Ohio or north of Warren,Ohio in a US Representative District is under Armour an intentional violation of the VRA . the 15th Amendment and the Armour injunction.

      C. Placement of the cities of Youngstown and Warren into separate Ohio Senate or US House Districts is a violation as stated in subparagraph B above.

E Relevant map and population data is attached as Exhibit A. A copy of the Armour  decree is at Exhibit B.