# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL GONIDAKIS, MARY PARKER, MARGARET CONDITT, BETH VANDERKOOI, LINDA SMITH, DELBERT DUDUIT, THOMAS W. KIDD JR., DUCIA HAMM, <br><br> Plaintiffs, <br><br> BRIA BENNETT, REGINA C. ADAMS, KATHLEEN M. BRINKMAN, MARTHA CLARK, SUSANNE L. DYKE, MERYL NEIMAN, HOLLY OYSTER, CONSTANCE RUBIN, EVERETT TOTTY, <br><br> Intervenor-Plaintiffs, <br><br> v. <br><br> FRANK LAROSE, in his capacity as Ohio Secretary of State, <br><br> Defendant. | Case No. 2:22-cv-00773 <br><br> Judge Amul R. Thapar <br> Judge Algenon L. Marbley <br> Judge Benjamin J. Beaton |

## DECLARATION OF DR. JONATHAN RODDEN

I, Jonathan Rodden, hereby declare as follows:

1. I am currently a tenured Professor of Political Science at Stanford University and the founder and director of the Stanford Spatial Social Science Lab—a center for research and teaching with a focus on the analysis of geo-spatial data in the social sciences. I am engaged in a variety of research projects involving large, fine-grained geo-spatial data sets including ballots and election results at the level of polling places, individual records of registered voters, census data, and survey responses. I am also a senior fellow at the Stanford Institute for Economic Policy Research and the Hoover Institution. Prior to my employment at Stanford, I was the Ford Professor of Political Science at the Massachusetts Institute of Technology. I received my Ph.D. from Yale University and my B.A. from the University of Michigan, Ann Arbor, both in political science. A copy of my current C.V. is included as Exhibit A.

2. I have submitted expert affidavits in three redistricting cases in the Ohio Supreme Court this cycle: *Bennett v. Ohio Redistricting Commission*, Case No. 2021-1198 (state legislative redistricting); *Adams v. DeWine*, Case No. 2021-1428 (congressional

   redistricting); *Neiman v. LaRose*, Case No. 2022-0298 (congressional redistricting). My expert affidavits in *Bennett*, which are most relevant to this proceeding, are available at https://www.supremecourt.ohio.gov/Clerk/ecms/#/caseinfo/2021/1198 and attached as Exhibits B-F for convenience.

3. As part of my expert work in *Bennett*, I drew a General Assembly district plan in compliance with traditional redistricting criteria as well as substantive redistricting criteria set forth in Article XI of the Ohio Constitution and federal law. That plan (the "Rodden III Plan") was submitted to the Ohio Redistricting Commission on February 15, 2022 and is available on the Commission's website at https://redistricting.ohio.gov/assets/district-maps/district-map-773.zip. For ease of reference, images of the House map and Senate map are attached as Exhibit G. The Rodden III Plan was also submitted to the Ohio Supreme Court with the Bennett Petitioners' Objections to the Third Plan, filed on February 28.

4. As I testified on March 30 before this Court, I had submitted substantially similar versions of the same plan to the Ohio Supreme Court earlier in the *Bennett* litigation. The nature of the technical changes made to these earlier plans to create the Rodden III Plan are described in a letter to the Ohio Redistricting Commission, included in the aforementioned zip folder on the Commission's website, *see supra* ¶ 3, and attached as Exhibit H.

5. On March 28, counsel for the Bennett Petitioners sent me the block assignment files for the Independent Map Drawers' Plan, available as "Johnson McDonald Independent Plan 328 Final" on the Redistricting Commission's website at https://www.redistricting.ohio.gov/assets/district-maps/district-map-1180.zip.

6. Article XI, Section 3 of the Ohio Constitution contains a number of technical requirements governing, among other things, whether and when counties and other political subdivisions may be "split" in the course of drawing General Assembly districts. These rules are rather complex and, given the constraints of map drawing software and the ways in which Ohio political subdivisions intersect and overlap, fairly easy to violate in minor ways, particularly when drawing a map under significant time constraints.

7. On April 2, I reviewed the Independent Map Drawers' Plan for technical compliance with the substantive redistricting criteria set forth in Article XI of the Ohio Constitution. I saw that there were certain instances, similar to those in earlier versions of my own plan, where (1) a few small sets of largely unpopulated census blocks were separated from their township and municipalities, resulting in inadvertent splits and (2) certain districts were drawn to follow township boundaries instead of municipal boundaries, contrary to common Ohio redistricting practice. It took me about five hours to review and correct the Independent Map Drawers' House Map with respect to these technical errors, which I would characterize as minor—the kinds of "cleanup" issues common to resolve at the conclusion of the map drawing process.

8. After correcting the minor errors, I saw that District 68 still split two municipal corporations and/or townships (Berkshire Township and Delaware City), which is greater than the number allowed by Article XI, Section 3(D)(3) of the Ohio Constitution. Because District 68 was already quite underpopulated and deviated 4.79 percent from the ideal

> population of a House district, I could not simply "unsplit" one of the political subdivisions at issue. Instead, I spent about one hour reconfiguring the two districts so that they each included only one split of a municipal corporation or township, while also being within the 5 percent population deviation required by the Ohio Constitution and, as I understand it, federal law.

9. On April 3, I spent about two hours reviewing my work and combining the updated House districts to form a constitutionally compliant Senate Map.

10. Attached as Exhibit I are images of my corrected version of the Independent Map Drawers' Plan, for which block assignment files are available at <https://www.dropbox.com/sh/hh640uk0cfja48v/AADt65LWrnWFnqYAYu4xAoAZa?dl=0>. It only took me about eight hours to make all requisite edits to the Independent Map Drawers' Plan, which is now, with my corrections, compliant with the substantive requirements of the Ohio Constitution to the best of my knowledge. As reflected by the fact that I was able to complete this work in a matter of hours, it was not particularly difficult to finalize the Independent Map Drawers' Plan.

11. My "Corrected Independent Map Drawers' Plan" places 99.9 percent of Ohio residents in the same district as in the Independent Map Drawers' Plan that was posted to the Commission's website on March 28.

12. None of the edits that I made affect the performance of the Independent Map Drawers' Plan with respect to compactness, number of split counties or vote tabulation districts (VTDs), or expected partisan seat share—including proportionality and symmetry. Accordingly, all of the metrics for the Independent Map Drawers' House Map to which I testified on March 30 remain accurate.

13. I also reviewed the population of each district in the 2011 General Assembly Plan. Exhibit J provides a table showing the 2020 census population for each Ohio House district under the 2011 Plan. Exhibit K provides a similar table for each Ohio Senate district under the 2011 Plan. As shown in Exhibits J and K, the maximum deviation for Ohio House districts is 34.21 percent, and the maximum deviation for Ohio Senate districts is 25.26 percent.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 5th day of April, 2022.

*Jonathan Rodden*
Dr. Jonathan Rodden

3