**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL GONIDAKIS, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | **Case No. 2:22-cv-0773** |
| | : | |
| v. | : | **Chief Judge Algenon L. Marbley** |
| | : | **Judge Amul R. Thapar** |
| **OHIO REDISTRICTING** | : | **Judge Benjamin J. Beaton** |
| **COMMISSION, et al.,** | : | |
| | : | **Magistrate Judge Elizabeth P.** |
| **Defendants.** | : | **Deavers** |

---

**SECRETARY LAROSE, AUDITOR FABER AND GOVERNOR DEWINE'S
MEMORANDUM IN OPPOSITION TO SIMON PARTIES' SECOND MOTION FOR
TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND
PARTIAL SUMMARY JUDGMENT**

---

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*

JULIE M. PFEIFFER (0069762)
*Counsel of Record*
JONATHAN D. BLANTON (0070035)
Deputy Attorney General
MICHAEL A. WALTON (0092201)
ALLISON D. DANIEL (0096186)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAGO.gov
Michael.Walton@OhioAGO.gov
Jonathan.Blanton@OhioAGO.gov
Allison.Daniel@OhioAGO.gov

*Counsel for Defendants*

## TABLE OF CONTENTS

Table Of Authorities ......................................................**Error! Bookmark not defined.**

I.     Introduction....................................................................................... 1

II.    Background ........................................................................................ 2

       A.    Congressional Redistricting Under Article XIX of the Ohio
             Constitution............................................................................... 2

       B.    The May 3 Primary Election is Proceeding with the Second
             Congressional Plan passed by the Ohio Redistricting Commission
             on March 2, 2022. ..................................................................... 3

       C.    The Simon Parties Sat Out During Litigation over the
             Congressional Plan at the Ohio Supreme Court. ...................... 5

       D.    The Simon Parties Want to Deny the *Winning* Candidates their
             Certificates of Nomination Indefinitely. ................................. 6

       E.    Voting in the 2022 Primary Election is Underway. .................. 7

III.   Law And Argument ........................................................................... 7

       A.    The Simon Parties Are Not Likely to Succeed on the Merits of
             Their Voting Rights Act Claim.................................................. 9

             1.    Plaintiffs cannot satisfy the first *Gingles* precondition............................. 9

             2.    Because the Simon Parties cannot satisfy the first
                   precondition of *Gingles*, they cannot meet the totality-of-
                   the-circumstances test. ................................................ 12

       B.    The Simon Parties Cannot Establish That They Will Suffer
             Irreparable Harm Without the Injunction. .............................. 13

       C.    The Injunction Would Cause Substantial Harm to Others................... 14

             1.    The *Purcell* Principle bars relief. .............................. 14

             2.    Laches also bars injunctive relief.............................. 16

       D.    The Requested Injunction Will Not Serve the Public Interest.............. 18

IV.    Conclusion ....................................................................................... 18

Certificate Of Service ................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*ACLU Fund of Mich. v. Livingston Cnty.*,
   796 F.3d 636 (6th Cir. 2015) ...................................................................................7

*Adams et al. v. DeWine et al.*,
   2022-Ohio-871 (Ohio March 18, 2022)....................................................................4

*Adams et al. v. DeWine et al.*,
   Slip Opinion No. 2022-Ohio-89 ......................................................................2, 3, 4

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..............................................................................................8, 9

*Armour v. Ohio*,
   775 F.Supp. 1044 (6th Cir. 1991) ......................................................................12, 13

*Barron v. PGA Tour, Inc.*,
   670 F.Supp.2d 674 (W.D.Tenn.2009).......................................................................7

*Benisek v. Lamone*,
   138 S.Ct. 1942 (2018).............................................................................................18

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..................................................................................................8

*City of Pontiac Retired Emps. Ass'n v. Schimmel*,
   751 F.3d 427 (6th Cir. 2014) (en banc) ....................................................................7

*Cooper v. Harris*,
   137 S. Ct. 1455 (2017)............................................................................................10

*Country Club v. Jefferson Metropolitan*,
   5 Ohio App.3d 77, 449 N.E.2d 460 (7th Dist. 1981).............................................18

*Cousins v. Sundquist*,
   145 F.3d 818 (6th Cir. 1998) .............................................................................2, 11

*Crawford v. Marion Cnty. Election Bd.*,
   553 U.S. 181 (2008)................................................................................................18

*Daugherty v. Sajar Plastics, Inc.*,
   544 F.3d 696 (6th Cir. 2008) ...................................................................................9

*DeBaca v. Cnty. of San Diego*,
   794 F. Supp. 990 (S.D. Cal. 1992)..........................................................................13

| Cases | Page(s) |
|---|---|

*State ex rel. Demaline v. Cuyahoga County Board of Elections,*
    90 Ohio St.3d 523, 2000-Ohio-108, 740 N.E.2d 242 (Ohio 2000) ........................................17

*Dominquez v. Carr. Med. Servs.,*
    555 F.3d 543 (6th Cir. 2009) ..................................................................................................9

*Estill v. Cool,*
    295 F. App'x 25 (6th Cir. 2008) ...........................................................................................14

*Eu v. San Francisco Cnty. Democratic Cent. Comm.,*
    489 U.S. 214 (1989)...............................................................................................................18

*Gonzales v. Nat'l Bd. of Med. Examiners,*
    225 F.3d 620 (6th Cir. 2000) ..................................................................................................8

*Granny Goose Foods, Inc.* v. *Teamsters,*
    415 U.S. 423, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974)........................................................14

*Growe v. Emison,*
    507 U.S. 25, 113 S.Ct. 1075 (1993)..........................................................................2, 10, 11, 13

*Hastert v. State Bd. of Elections,*
    777 F. Supp. 634 (N.D. Ill. 1991) .........................................................................................13

*Johnson v. De Grandy,*
    512 U.S. 997, 129 L. Ed. 2d 775, 114 S. Ct. 2647 (1994)....................................................11

*Jolivette v. Husted,*
    694 F.3d 760 (6th Cir. 2012) ..................................................................................................7

*King Lincoln Bronzeville Neighborhood Ass'n v. Husted,*
    No. 2:06-cv-00745, 2012 WL 395030 (S.D.Ohio Feb. 7, 2012) ...........................................16

*League of United Latin Am. Citizens v. Perry,*
    548 U.S. 399, 126 S. Ct. 2594 (2006)...................................................................................12

*League of Women Voters of Ohio et al. v. LaRose et al.,*
    Case No. 2022-0303...........................................................................................................5, 15

*League of Women voters v. LaRose,* No. 2:20-cv-1638, 2020 U.S. Dist. LEXIS
    91631, *31 (S.D. Ohio Apr. 3, 2020)....................................................................................15

*Libertarian Party v. Davis,*
    601 F.Supp. 522 (E.D.Ken. 1985) ........................................................................................16

*McClafferty v. Portage County Board of Elections,*
    661 F.Supp.2d 826 (N.D. Ohio 2009)....................................................................................17

**Cases**                                                                                           **Page(s)**

*Moldowan v. City of Warren*,
   578 F.3d 351 (6th Cir. 2009) ................................................................8

*Neiman et al. v. LaRose et al.*,
   2022-Ohio-1016 (Ohio March 29, 2022 (Case announcements entry)) ...................5

*Neiman et al. v. LaRose et al.*,
   Case No. 2022-0298 ............................................................................5

*Nixon v. Kent Cnty.*,
   76 F.3d 1381 (6th Cir. 1996) ...............................................................11

*O'Shea* v. *Littleton*,
   414 U.S. 488, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974) ...............................14

*Ohio Democratic Party v. Husted*,
   834 F.3d 620 (6th Cir. 2016) .................................................................7

*Peeples v. City of Detroit*,
   891 F.3d 622 (6th Cir. 2018) .................................................................8

*Perry v. Judd*,
   471 Fed. App'x. 219 (4th Cir. 2012) ......................................................17

*Purcell v. Gonzalez*,
   549 U.S. 1 (2006) .......................................................................1, 14, 15

*Rodriguez v. Pataki*,
   308 F. Supp. 2d 346 (S.D.N.Y. 2004) ...............................10, 11, 12, 13

*SEIU Local 1 v. Husted*,
   698 F.3d 341 (6th Cir. 2012) ...............................................................14

*Simon et al. v. DeWine et al.*,
   Case No. 4:21-cv-02267, ECF No. 3 ......................................................5

*Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*,
   388 F.3d 547 (6th Cir. 2004) .................................................................8

*Thompson v. DeWine*,
   959 F.3d 804 (6th Cir. 2020) ...........................................................14, 15

*Thornburg v. Gingles*,
   478 U.S. 30, 106 S. Ct. 2752 (1986) ............................................ *passim*

*Voinovich v. Quilter*,
   507 U.S. 146, 122 L. Ed. 2d 500, 113 S. Ct. 1149 (1993) .................11, 12

**Cases**                                                                         **Page(s)**

*Winter v. NRDC, Inc.*,
    555 U.S. 7, 129 S.Ct. 365 (2008)........................................................................8, 13

**Statutes**                                                                        **Page(s)**

52 U.S.C. 10301(a) ...............................................................................................9

Ohio Rev. Code § 3513.22(E)................................................................................6

**Other Authorities**                                                      **Page(s)**

11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1
    (2d ed. 1995) ....................................................................................................14

Fed. R. Civ. P. 41(a) .............................................................................................5

Fed. R. Civ. P. 56(a) .............................................................................................8

Ohio Const., art. XIX, § 1(A) ...............................................................................2

Ohio Const., art. XIX, § 1(B)................................................................................3

Ohio Const., art. XIX, § 1(C)(1)...........................................................................3

Ohio Const., art. XIX, § 1(C)(2)...........................................................................3

Ohio Const., art. XIX, § 1(C)(3)...........................................................................3

Ohio Const., art. XIX, § 3(B)(1)...........................................................................3

Ohio Const., art. XIX, § 3(B)(2)........................................................................3, 4

Ohio Constitution Article XIX...............................................................................2

Ohio Constitution article XIX, § 3 ........................................................................3

U.S. Const., First Amendment ...............................................................................5

U.S. Const., Fourteenth Amendment .....................................................................5

U.S. Const, Fifteenth Amendment..........................................................................5

Voting Rights Act, S. Rep. No. 97-147 (1982)...................................................... *passim*

## I.     INTRODUCTION

Ohio passed a Congressional Plan on March 2, 2022, and implemented it in time for the May 3 primary election.  The primary election will yield winning Republican and Democratic candidates for all 15 congressional districts who will go on to compete in the November 8, 2022, general election.  In fact, voters who have taken advantage of Ohio's generous early voting opportunities, which began April 5, 2022, have already cast their votes for their favorite congressional candidates on the primary election ballots.

The Simon Parties now seek to disrupt Ohio's in-progress 2022 election of its 15 congressional representatives because they claim that the 6th Congressional District in the March 2, 2022, Congressional Plan is "constitutionally infirm" under Section 2 of the Voting Rights Act. They ask this Court to enjoin the Secretary of State from issuing certificates of nomination to the winning candidates *after* the conclusion of the May 3 primary election so they can litigate their constitutional claims, even if it means that *no* candidates will appear on the general election ballot.

To describe such an injunction as "havoc wreaking" would not be hyperbolic here. Allowing an election to occur then enjoining the winners from proceeding on to the general election would cause significant voter confusion, it would cripple Ohioans' trust and confidence in their elections, and it would be astoundingly unfair—not just to Ohio voters but to the congressional candidates who have spent effort, time and resources in campaigning for a spot on the primary ticket.  The requested injunction also lacks all clarity in scope and duration.  Even if this Court could issue the injunction, it shouldn't because the election has already begun and restraint is required under *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006).

Litigation over Ohio's congressional redistricting has been raging on for nearly six months in the Ohio Supreme Court.  The Simon Parties sat on the sidelines and never brought their claims in that forum.  Yes, they urged a federal court in the Northern District of Ohio to intervene but

their action was stayed in respect of the Ohio Supreme Court's original jurisdiction. Even with their federal court action paused, the Simon Parties still did not throw their hat in the state court ring. Because the Simon Parties failed to act diligently in litigating their claims, laches bars injunctive relief.

Nor can the Simon Parties succeed on the merits of their Voting Rights Act claim. As a voting bloc, they are not "sufficiently large and geographically compact to constitute a majority in a single-member district," which is required of all vote dilution claims under the Voting Rights Act. *Growe v. Emison*, 507 U.S. 25, 40, 113 S.Ct. 1075 (1993). The Simon Parties, by their own claim, constitute only an "influential vote in a congressional district." *See* Compl., ECF No. 92 at PageID 1524, ¶ 43. Influence claims are not viable under the Voting Rights Act. *Cousins v. Sundquist*, 145 F.3d 818, 828 (6th Cir. 1998). Thus, as a matter of law, the Simon Parties are not likely to succeed on the merits of their claim.

For all of these reasons, the Simon Parties' motion for injunctive relief and for partial summary judgment should be denied.

## II.     BACKGROUND

### A.     Congressional Redistricting Under Article XIX of the Ohio Constitution.

Article XIX of the Ohio Constitution provides the three-step framework for drawing Ohio's fifteen congressional districts. First, by September 30 of any year ending in the numeral one after the release of the federal decennial census, the General Assembly must pass a district plan in the form of a bill by a vote of at least three-fifths of the members of each of the two largest political parties. Ohio Const., art. XIX, § 1(A); *Adams et al. v. DeWine et al.*, Slip Opinion No. 2022-Ohio-89, ¶ 8. If the General Assembly passes a plan in this first step, the plan remains valid for ten years. *Id.*

Second, if the General Assembly fails to pass a plan in the first step by September 30, the Ohio Redistricting Commission must adopt a plan by October 31. Ohio Const., art. XIX, § 1(B), *Adams* at ¶ 9. The Commission must approve a plan by a majority vote, which must include at least two members from each of the two largest political parties. *Id.* If the Commission passes a plan in this second step by the required vote, the plan will also remain valid for ten years. *Id.*

Third, if the Commission does not pass a plan in the second step by October 31, the General Assembly must pass a plan as a bill by November 30. Ohio Const., art. XIX, § 1(C)(1), *Adams* at ¶ 10. If the General Assembly passes the plan by a three-fifths vote of each house, the plan is valid for ten years. Ohio Const., art. XIX, § 1(C)(2). A plan approved by a simple majority of each house is valid for four years. Ohio Const., art. XIX, § 1(C)(3).

Ohio Constitution article XIX, section 3, gives the Ohio Supreme Court exclusive, original jurisdiction over all cases involving the drafting of a congressional district plan and it sets forth the exclusive remedies should the Court invalidate a congressional plan. *See Adams* at ¶ 12. Section 3(B)(1) sets out a two-step process for remedying an invalidated plan. First, the General Assembly must pass a plan "in accordance with the provisions of this constitution that are then valid" within thirty days after the Ohio Supreme Court's invalidation order. Ohio Const., art. XIX, § 3(B)(1), *Adams* at ¶ 97. Second, if the General Assembly does not pass a plan within the thirty-day deadline, then the Ohio Redistricting Commission has thirty days to "adopt a congressional district plan in accordance with the provisions of this constitution that are then valid." Ohio Const., art. XIX, § 3(B)(2), *Adams* at ¶ 98.

**B.**  **The May 3 Primary Election is Proceeding with the Second Congressional Plan passed by the Ohio Redistricting Commission on March 2, 2022.**

"Based on the results of the 2020 census, Ohio was apportioned 15 congressional seats – one fewer than it was apportioned in 2011." *Adams* at ¶ 13. The General Assembly did not pass

a new congressional plan by the September 30, 2021, deadline and the Ohio Redistricting Commission did not pass a plan by the October 31, 2021, deadline. *Adams* at ¶¶ 13-14; *see also* Ohio Const., art. XIX, §§ 3(B)(1) and (2).   On the third step, however, the General Assembly adopted Ohio's Congressional Plan by a simple majority via S.B. No. 258 on November 16, 2021. *Adams* at ¶ 21.

Ten days later, two sets of petitioners brought lawsuits at the Ohio Supreme Court challenging the constitutionality of the November 16, 2021, Congressional Plan. *Adams* at ¶ 23. On January 14, 2022, the Ohio Supreme Court invalidated the November 16, 2021, Congressional Plan and ordered the General Assembly to pass a new congressional district plan. *Id.* at ¶ 102.

The General Assembly did not pass a new congressional plan within thirty days of the Ohio Supreme Court's January 14, 2022, invalidation order.  Thus, the Ohio Redistricting Commission was reconvened and it passed a new Congressional Plan on March 2, 2022.  *See* Congressional Plan, Ex. A.  On the same day, the Secretary of State issued Directive 2022-27 where he instructed the county boards of election to implement the March 2 Congressional Plan in time for the May 3 primary election. *See* Directive 2022-27, Ex. B.

Meanwhile, on March 4, 2022, the Petitioners filed motions with the Ohio Supreme Court seeking to have the March 2, 2022, Congressional Plan invalidated. *Adams et al. v. DeWine et al.*, 2022-Ohio-871 (Ohio March 18, 2022) (Case announcements entry).  On March 18, 2022, the Ohio Supreme Court denied the motions ruling that it "entered final judgment in this case on January 14, 2022, and did not retain jurisdiction to review any plan passed or adopted on March 2, 2022." *Id.* Despite the fact that the Ohio Supreme Court did not retain jurisdiction to review additional congressional plans passed after it invalidated the first one, on March 22, 2022, the same petitioners filed original actions before the Ohio Supreme Court challenging the March 2, 2022,

Congressional Plan.  *League of Women Voters of Ohio et al. v. LaRose et al.*, Case No. 2022-0303; *Neiman et al. v. LaRose et al.*, Case No. 2022-0298.  The Ohio Supreme Court has ordered discovery and a full briefing schedule in those new cases.  Assuming that no further delays occur and no oral arguments are allowed, the new original actions against the March 2, 2022, Congressional Plan will not be decisional until late May, 2022.  *Neiman et al. v. LaRose et al.*, 2022-Ohio-1016 (Ohio March 29, 2022 (Case announcements entry)).  Thus, there is no longer any dispute that the March 2, 2022 Congressional Plan has been fully implemented by the 88 county boards of election and will be used for the May 3 primary election and the 2022 general election.  *See* Ex. B.

### C.    The Simon Parties Sat Out During Litigation over the Congressional Plan at the Ohio Supreme Court.

The Simon Parties are a group of Black voters residing in the 6th U.S. Congressional District in the March 2, 2022, Congressional Plan, who allege violations of the Voting Rights Act, and the Fifteenth, Fourteenth and First Amendments to the U.S. Constitution.  Compl, ECF No. 92 at PageID 1513, ¶¶ 14, 19-21, 52-76.  They did not bring these claims at any time during the last six months of litigation over congressional redistricting at the Ohio Supreme Court.  Instead, the Simon Parties filed a complaint and a motion for injunctive relief in the U.S. District Court for the Northern District of Ohio in December, claiming that the first congressional plan violated Section 2 of the Voting Rights Act and the Fifteenth Amendment to the U.S. Constitution.  *Simon et al. v. DeWine et al.*, Case No. 4:21-cv-02267, ECF No. 3 at PageID 75.  The Court stayed the case pending resolution of the matter at the Ohio Supreme Court. *Id.* at ECF No. 21 at PageID 1274-1276.  On March 22, 2022, the Simon Parties voluntarily dismissed their federal action pursuant to Fed. R. Civ. P. 41(a).  *Id.* at ECF No. 24 at PageID 1283.

**D.    The Simon Parties Want to Deny the *Winning* Candidates their Certificates of Nomination Indefinitely.**

The Simon Parties moved to intervene in this case on February 21, 2022.  *See Motion to Intervene*, ECF No. 7 at PageID  446-451.   They filed a Complaint and now move this Court for a temporary restraining order, preliminary injunction and partial summary judgment based on their theory that the Defendants violated Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301 et. seq., by disregarding race in the drafting of the 6th Congressional District in the March 2, 2022, Congressional Plan.  *See Motion*, ECF No. 147 at PageID 3742.  The Simon Parties request an immediate order prohibiting the Secretary of State and "any County Board of Elections from a county within the 6th Ohio United States Congressional District….or Board of Elections within a Proposed Congressional District whose boundaries may be revised in the event the Simon Parties prevail on the merits at trial" from issuing "certificates of nomination or election to any candidate for election as Representative to the United States House of Representatives."  *See Proposed Order*, ECF No. 148-1 at PageID 4221.  In other words, the Simon Parties do not want to stop the May 3 primary election for Ohio's congressional districts—they just don't want it to count. They seek an order from this Court to prohibit the Secretary of State from issuing certificates of nomination to the winning candidates ostensibly until this Court can rule on the merits of their claims.  *Id; see also* Ohio Rev. Code § 3513.22(E).[1]

---

[1] Previously, in their Second Motion for Temporary Restraining Order Preliminary Injunction and Partial Summary Judgment, the Simon Parties requested an injunction from "administering, implementing, or conducting any election for representative for the 6th Ohio United States Congressional District proposed in the March 2, 2022 Congressional Redistricting Plan."  *See Motion*, ECF No. 147 at PageID 3739.  However, the Simon Parties subsequently filed a "revised" Proposed Order where they abandon their request to stop the May 3 primary election and instead request an injunction against the issuance of certificates of nomination only.  *See Proposed Order*, ECF No. 148-1 at PageID 4221.

E.      **Voting in the 2022 Primary Election is Underway.**

May 3rd is the date of the 2022 Primary Election in Ohio, but Ohioans have already started voting.  "Ohio is a national leader when it comes to early voting opportunities." *Ohio Democratic Party v. Husted*, 834 F.3d 620, 623 (6th Cir. 2016).  As of April 5, 2022, overseas UOCAVA ballots were sent and early in, in-person voting began across the state at each of the 88 county boards of election. Grandjean Aff., ECF No. 164-1 at PageID 5409, ¶ 3.  The county board of elections also began transmitting domestic absentee ballots to voters who requested them. *Id.* There will be a steady stream of voters going to their polling places or mailing in their absentee ballots now through May 3.  Thus, there is no question that an injunction issued now will disrupt the status quo of the election.

## III.    LAW AND ARGUMENT

**Injunctive Relief Standard** - "Temporary restraining orders and preliminary injunctions are extraordinary remedies which should be granted only if the movant carries his burden of proving that the circumstances clearly demand it." *Barron v. PGA Tour, Inc*., 670 F.Supp.2d 674, 682 (W.D.Tenn.2009) (citation omitted.).  The movant "bears the burden of justifying such relief," and it is "never awarded as of right."  *ACLU Fund of Mich. v. Livingston Cnty.,* 796 F.3d 636, 642 (6th Cir. 2015).  When determining whether to grant a party's request for such a remedy, district courts must balance four factors: "'(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.'" *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation omitted).

As to the first factor, a plaintiff must establish a "strong" likelihood of success on the merits.  *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (quotation omitted).  The mere

possibility of success does not suffice. *Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 551 (6th Cir. 2004). Also, "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). Similarly, as to the second factor, the plaintiff must show a likelihood, not just a possibility, of irreparable injury. *Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365 (2008*).* As discussed more fully below, the Simon Parties fail on all counts.

**Summary Judgment Standard** - Summary judgment is appropriate if the evidence in the record demonstrates there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Moldowan v. City of Warren*, 578 F.3d 351, 373 (6th Cir. 2009) ("Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." (quotation omitted)). The moving party bears the initial burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the non-moving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party has met its burden, "the nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'" *Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018) (quoting *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993)). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment."  *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Liberty Lobby*, 477 U.S. at 248). In other words, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Liberty Lobby*, 477 U.S. at 252; *Dominquez v. Carr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (same).

A.    **The Simon Parties Are Not Likely to Succeed on the Merits of Their Voting Rights Act Claim.**

The Simon Parties are not likely to succeed on their claim that the Ohio Redistricting Commission's March 2 Congressional Redistricting Plan violates the Voting Rights Act. Specifically, they cannot meet either step of the two-step process to prove a Section 2 "vote dilution" claim.  Plaintiffs cannot show the first precondition articulated in *Thornburg v. Gingles*, 478 U.S. 30, 106 S. Ct. 2752 (1986), to prove that the electoral structure operates to impair Black voters' ability to elect the congressional representative of their choice.  And, because the Simon Parties cannot demonstrate the first precondition under *Gingles*, they cannot satisfy the totality-of-the-circumstances test.  For these same reasons, the Simon Parties are not entitled to partial summary judgment as well.

1.    **Plaintiffs cannot satisfy the first *Gingles* precondition.**

The Simon Parties claim that the Ohio Redistricting Commission's March 2 Congressional Redistricting Plan violates Section 2 of the Voting Rights Act.  That provision prohibits voting practices that "result[] in a  denial or abridgment of the right . . . to vote on account of race or color." 52 U.S.C. 10301(a).  Under Section 2, such a denial or abridgment is only established if

9

the members "of a class of citizens . . . have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice." *Id.* 10301(b).

To decide whether that standard is met, the Supreme Court has established three "necessary preconditions" for proving that an electoral structure "operate[s] to impair minority voters' ability to elect representatives of their choice." *Thornburg v. Gingles*, 478 U.S. 30, 50, 106 S. Ct. 2752 (1986). Plaintiffs must establish by a preponderance of the evidence (1) that the minority group is "sufficiently large and geographically compact to constitute a majority in a single-member district;" (2) that [the minority group] is "politically cohesive;" and (3) that "the white majority vot[es] sufficiently as a bloc to enable it . . . usually to defeat the minority's preferred candidate." *Growe v. Emison*, 507 U.S. 25, 40, 113 S. Ct. 1075 (1993) (quoting *Gingles*, 478 U.S. at 50-51). "Unless each of the three *Gingles* prerequisites is established, there neither has been a wrong nor can be a remedy." *Cooper v. Harris*, 137 S. Ct. 1455, 1472 (2017) (quotations omitted). Thus, failure to prove any one of the preconditions is fatal on the merits, and accordingly, a failure to prove a likelihood of success on any one of the preconditions is fatal to the Simon Parties' request for a temporary restraining order and preliminary injunction.

With regard to the first *Gingles* precondition, "the reason that a minority group . . . must show, as a threshold matter, that it is sufficiently large and geographically compact to constitute a majority in a single-member district is this: Unless minority voters possess the potential to elect representatives in the absence of the challenged structure or practice, they cannot claim to have been injured by that structure or practice." *Rodriguez v. Pataki*, 308 F. Supp. 2d 346, 372 (S.D.N.Y. 2004) (quoting *Gingles* at 50 n.17). "Because the very concept of vote dilution implies—and, indeed, necessitates—the existence of an 'undiluted' practice against which the fact of dilution may be measured, a § 2 plaintiff must also postulate a reasonable alternative voting

10

practice to serve as the benchmark 'undiluted' practice." *Rodriguez*, 308 F. Supp. at 372 (quoting *Reno v. Bossier Parish Sch. Bd*., 520 U.S. 471, 480, 117 S. Ct. 1491 (1997).

Here, the Simon Parties do not even allege that Black voters of Youngstown and Warren are "sufficiently large and geographically compact to constitute a majority in a single-member district." Rather, the Simon Parties merely claim that these voters "constitute an *influential* vote in a Congressional District." *See* Compl., ECF No. 92 at PageID 1524, ¶ 43 (emphasis added). An "influence" claim, however, where the minority group would *not* be a majority of voters, is not permitted under the Voting Rights Act. *See, e.g., Cousin v. Sundquist*, 145 F.3d 818, 828 (6th Cir. 1998) (announcing that Section 2 violations cannot "consist of an impairment of the minority's ability to influence the outcome of the election rather than determine it."); *see also Nixon v. Kent Cnty*., 76 F.3d 1381, 1386 (6th Cir. 1996).

In fact, since *Gingles*, the Supreme Court has repeatedly declined to reach the issue of whether vote-dilution claims are viable when the minority group is less than a majority of voters in a proposed district. *See Johnson v. De Grandy*, 512 U.S. 997, 1008-09, 129 L. Ed. 2d 775, 114 S. Ct. 2647 (1994); *Voinovich v. Quilter*, 507 U.S. 146, 158, 122 L. Ed. 2d 500, 113 S. Ct. 1149 (1993); *Growe v. Emison*, 507 U.S. 25, 41 n. 5, 113 S. Ct. 1075 (1993). And, federal courts have nearly unanimously "adopted the literal reading of *Gingles* and have rejected claims where the minority group does not constitute a majority of voters in a single-member district." *Rodriguez*, 308 F. Supp. 2d at 376 (citing *Hall v. Virginia*, 276 F. Supp. 2d 528 (E.D. Va. 2003) (listing cases and stating that bright-line majority-in-a-district rule is well-established)). Because the Simon Parties have presented what amounts to an influence-dilution claim, they cannot satisfy the first precondition under *Gingles*, and therefore cannot satisfy the first step of the two steps to proving a Section 2 vote dilution claim.

> **2.  Because the Simon Parties cannot satisfy the first precondition of
> *Gingles*, they cannot meet the totality-of-the-circumstances test.**

In addition to the *Gingles* preconditions, a plaintiff asserting a vote dilution claim must

show "that, under the totality of the circumstances, the State's apportionment scheme has the effect

of diminishing or abridging the voting strength of the protected class." *Voinovich v. Quilter*, 507

U.S. 146, 157, 113 S. Ct. 1149 (1993).  This is the second step of the statutory test.  *See League of

United Latin Am. Citizens v. Perry*, 548 U.S. 399, 425, 126 S. Ct. 2594, 2613 (2006).  The relevant

inquiry typically includes "the list of factors set forth in the United States Senate Judiciary Report

('Senate Report') accompanying the 1982 bill amending section 2 of the Voting Rights Act, S.

Rep. No. 97-147, at 2 (1982) ('Senate Factors'), but this is neither a 'comprehensive nor exclusive'

list." *Rodriguez*, 308 F. Supp. 2d at 372 (quoting *Gingles*, 478 U.S. at 44-45).

Here, though the Simon Parties make token mentions of "totality of the circumstances,"

their Motion contains no analysis or explanation for how the Court would even consider "step two"

when the Plaintiffs could not meet "step one."  Instead, the Simon Parties point exhaustively to

testimony that Defendants gave specific instructions to disregard race in drawing the district

maps.  The Simon Parties would seemingly have this Court find that disregarding race in map-

drawing is a per se violation of Section 2 of the Voting Rights Act.  There is no authority to support

such a proposition, nor do the Simon Parties cite any.

The Simon Parties also point to "historical findings set forth by [the Northern District of

Ohio] in *Armour v. Ohio*, 775 F.Supp. 1044 (6th Cir. 1991) concerning the role of race relations

in Mahoning County."[2]  *See* Motion, ECF No. 147 at PAGEID 3741.  *Armour* is a roundly

---

[2] The Simon Parties also appear to assert a separate claim under *Armour* in their Complaint and
reference that claim in their Motion.  *See* Complaint, ECF No. 92; Motion, ECF No. 147.  To the
extent the Simon Parties rely on *Armour* to support an injunction in this case, this position is
unsupported by any facts or law.

criticized case in which the court based its decision, at least in part, on a finding that *Gingles* did

not apply to single-member-district claims.  *See, e.g., Rodriguez v. Pataki*, 308 F. Supp. 2d 346,

383 n.42 (S.D.N.Y. 2004); *DeBaca v. Cnty. of San Diego*, 794 F. Supp. 990, 996 (S.D. Cal. 1992);

*Hastert v. State Bd. of Elections*, 777 F. Supp. 634, 652 (N.D. Ill. 1991).  The case was arguably

overruled by the Supreme Court in *Growe v. Emison*, 507 U.S. 25, 113 S. Ct. 1075, which found

that the *Gingles* preconditions do indeed apply to single member districts.  Moreover, its analysis

of the race relations in Mahoning County are hardly still relevant 30 years later.  Thus, *Armour*

does nothing to support the Simon Parties' claim.

The Simon Parties' request for injunctive relief and their motion for partial summary

judgment should be denied.

> **B.**     **The Simon Parties Cannot Establish That They Will Suffer Irreparable Harm Without the Injunction.**

The Simon Parties thinly allege, without more, that the will "suffer irreparable harm if the

2022 elections are conducted using constitutionally infirm districts." *See Motion*, ECF No. 147 at

PageID 3749.  They fall short in their showing of irreparable injury because they fail to show that

the March 2, 2022, Congressional Plan is "constitutionally infirm" under Section 2 of the Voting

Rights Act, as set forth above.  Nor has the Ohio Supreme Court invalidated the Plan under the

Ohio Constitution.  The Plan is currently valid and it has been fully implemented for the 2022

primary and general elections.  Whether the Plan will be invalidated at some time in the future is

pure speculation.

Parties seeking preliminary injunctive relief must show more than the speculation of future

irreparable harm.  "Our frequently reiterated standard requires plaintiffs seeking preliminary relief

to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. NRDC,*

*Inc.*, 555 U.S. 7, 22 (2008) *citing Los Angeles* v. *Lyons*, 461 U.S. 95, 103, 103 S. Ct. 1660, 75 L.

Ed. 2d 675 (1983); *Granny Goose Foods, Inc.* v. *Teamsters*, 415 U.S. 423, 441, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974); *O'Shea* v. *Littleton*, 414 U.S. 488, 502, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974); see also 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed. 1995) (hereinafter Wright & Miller) (applicant must demonstrate that in the absence of a preliminary injunction, "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered"); *id.*, at 154-155 ("A preliminary injunction will not be issued simply to prevent the possibility of some remote future injury"). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (citing *Mazurek* v. *Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (*per curiam*)).  Because the Simon Parties cannot show the likelihood of actual irreparable harm absent an injunction, their motion for injunctive relief must be denied.

    **C.**    **The Injunction Would Cause Substantial Harm to Others.**

        **1.**    **The *Purcell* Principle bars relief.**

    The Simon Parties ask this Court to do what courts have been resoundingly unwilling to do and have cautioned against:  change an election procedure when the election is imminent.  *See e.g.*, citing *Purcell v. Gonzalez,* 549 U.S. 1, 4-5 (2006) (*per curiam*) (denying preliminary injunction because, although plaintiffs had established third parties would not be unjustifiably harmed by an injunction, "court orders affecting elections. . , can themselves result in voter confusion[,] [a]s an election draws closer, that risk increase"); *Thompson v. DeWine*, 959 F.3d 804, 813 (6th Cir. 2020) (citing *Purcell* in staying district court's preliminary injunction); *Estill v. Cool,* 295 F. App'x 25, 27 (6th Cir. 2008) (upholding denial of preliminary injunction where ballot printing and distribution was scheduled to begin the day after the Sixth Circuit issued its opinion, 19 days after the preliminary injunction motion was denied); *SEIU*

*Local 1 v. Husted,* 698 F.3d 341, 345 (6th Cir. 2012), citing *Purcell,* 549 U.S. at 4-5 ("As a general rule, last-minute injunctions changing election procedures are strongly disfavored."). "Court orders affecting elections especially conflicting court orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell,* 549 U.S. at 4-5; *see also Thompson*, 959 F.3d at 813.

Citing that risk, in *League of Women Voters v. LaRose*, the Court rejected the plaintiffs' request to preliminarily enjoin H.B. 197, the bill passed in response to the disruption to Ohio's March 2020 primary caused by COVID-19.  No. 2:20-cv-1638, 2020 U.S. Dist. LEXIS 91631, *31 (S.D. Ohio Apr. 3, 2020). The court noted that the "public has an interest in a free and fair election [and in] avoiding further voter confusion." *Id.*  Even amidst the COVID-19 outbreak, the court concluded "because further changes to the election procedure could cause significant additional voter confusion, the court finds that the public interest factor weighs against granting Plaintiffs their requested relief." *Id.*

The Simon Parties' request to stop the Secretary of State from issuing certificates of nomination to the May 3 primary election winners while they litigate their claims is, to say the least, extraordinarily ill-advised.  The May 3 Primary Election is well underway.  Overseas UOCAVA ballots have been sent.  Grandjean Aff., ECF No. 164-1 at PageID 5407, ¶ 3.  Early in-person voting and absentee voting by mail began on April 5, 2022. *Id.*  All of these voters who have or will be voting for their congressional candidates fully expect the winners to be on the November general election.  Issuing an injunction that prohibits the winners from being certified for the general election ballot destroys the status quo and wreaks havoc on election administration. What is more, allowing an election to occur then enjoining the winners from proceeding on to the general election certainly would cause significant voter confusion, it would cripple Ohioans' trust

and confidence in their elections, and it would be astoundingly unfair—not just to Ohio voters but to the congressional candidates who have spent effort, time and resources in campaigning for a spot on the primary ticket.  It is safe to assume that voters expect their votes to count and to be counted.  An injunction that would block the winners and nullify the entire election *after* all of the votes have been cast would wreak havoc on voter confidence for decades to come.  This is precisely what the Simon Parties demand and this Court should summarily deny it.

The Simon Parties also fail to explain how this Court would implement and oversee such an injunction.  First, its scope is completely undefined and it cannot be determined with any certainty.  The Simon Parties seek to enjoin the 6th District and any district that would be impacted by a change in the 6th District's boundaries.  All 15 congressional districts fit together like puzzle pieces.  Thus, it is no far stretch to see where all 15 districts would be impacted by a change in just one.  Further, even if the ill-defined scope of the injunction alone did not present insurmountable problems, the Simon Parties still offer no timely resolution to the immediate problems that their injunction would cause.  Ultimately, if the Simon Parties' requested injunction lived just a short life, it could easily cause all congressional candidates from appearing on the general election ballot, thus depriving *all* Ohioans of their right to vote and leaving Ohio with *no* representation in Congress.  The Simon Parties' requested injunction would cause significant, wide-scale irreparable harm to others and it clearly is not in the public interest.

### 2.    Laches also bars injunctive relief.

"Laches, a reflection of the maxim equity aids the vigilant" precludes the Simon Parties' motion for injunctive relief because, they have pursued their claim in a dilatory fashion.  *See Libertarian Party v. Davis*, 601 F.Supp. 522, 525 (E.D.Ken. 1985).  A failure to act diligently is fatal in the election context because "it is well established that in election-related matters, extreme diligence and promptness are required." *King Lincoln Bronzeville Neighborhood Ass'n v. Husted*,

No. 2:06-cv-00745, 2012 WL 395030, *7 (S.D.Ohio Feb. 7, 2012) (Marbley, J.) (citation omitted). A less than vigorous application of the laches defense encourages delay "until the last minute", which would, in turn, force election administrators "to halt their scheduled election processes to wait for a ruling." *Perry v. Judd*, 471 Fed. App'x. 219, 225 (4th Cir. 2012). While parties who assert a laches defense must show prejudice, in election-related litigation, the parties challenging the election must show that they acted diligently. *See McClafferty v. Portage County Board of Elections*, 661 F.Supp.2d 826, 839 (N.D. Ohio 2009); *see also State ex rel. Demaline v. Cuyahoga County Board of Elections*, 90 Ohio St.3d 523, 245, 2000-Ohio-108, 740 N.E.2d 242 (Ohio 2000) ("In extraordinary writ cases involving election matters, in order to avoid laches, relators bear the burden of establishing that they acted with the requisite diligence.") (citation omitted). Ohio and the 88 boards of elections have suffered harm by Plaintiffs' delay.

The Simon Parties failed to act diligently in litigating their claims regarding congressional redistricting. They sat on the sidelines for nearly six-months while Ohio's congressional redistricting was vigorously litigated in the Ohio Supreme Court. Rather, they took their claims to federal court and essentially asked that court to inject itself in the state court action. When the federal case was stayed pending resolution by the Ohio Supreme Court, the Simon Parties simply paused and still did nothing. They could have moved to intervene in the venue where the litigation was actually occurring, but inexplicably they did not. To issue injunctive relief now would prejudice the entire elections system and the Secretary of State's ability to administer that election. The Simon Parties' failure to find the appropriate forum and to diligently pursue their claims in the most obvious forum during nearly six months of litigation over the Congressional Plan should bar their dilatory request for relief before this Court.

17

**D.** **The Requested Injunction Will Not Serve the Public Interest.**

For all of the above reasons, Plaintiffs' requested relief would harm the public interest. Ohio has a compelling public interest in preserving the integrity of its election processes. *Eu v. San Francisco Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *cf. also Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 194-97 (2008). "[C]aution" granting injunctions is "especially" warranted "in cases affecting a public interest where the court is asked to interfere with or suspend the operation of important public works or to control the action of another department or government." *Country Club v. Jefferson Metropolitan*, 5 Ohio App.3d 77, 80, 449 N.E.2d 460, 464 (7th Dist. 1981) (quotation omitted). Such significant impact cuts against the interest of Ohio, and the public, in orderly elections. *See Benisek v. Lamone*, 138 S.Ct. 1942, 1944 (2018). The Simon Parties fail to establish any of the four requirements for injunctive relief and their motion should be denied.

## IV. CONCLUSION

For the foregoing reasons, the Simon Parties fail to establish the requirements for injunctive relief and they fail to show that they are entitled to partial summary judgment on their Voting Rights Act claim. Accordingly, the Simon Parties' omnibus motion should be denied.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Julie M. Pfeiffer*
JONATHAN D. BLANTON (0070035)
Deputy Attorney General
JULIE M. PFEIFFER (0069762)
*Counsel of Record*
MICHAEL A. WALTON (0092201)
ALLISON D. DANIEL (0096186)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor

Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAGO.gov
Michael.Walton@OhioAGO.gov
Jonathan.Blanton@OhioAGO.gov
Allison.Daniel@OhioAGO.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2022, the foregoing was filed with the Court.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance.  Parties may access this filing through the Court's system.

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
Assistant Attorney General

19