**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MICHAEL GONIDAKIS, et al.,** : | |
| : | Case No. 2:22-CV-773 |
| **Plaintiffs,** : | |
| : | Chief Judge Algenon Marbley |
| v. : | |
| : | Circuit Judge Amul R. Thapar |
| **FRANK LaROSE et al.,** : | |
| : | Judge Benjamin J. Beaton |
| **Defendants.** : | |

**OHIO SECRETARY OF STATE LAROSE'S RESPONSE BRIEF TO PLAINTIFFS'
SECOND AMENDED MOTION FOR A PRELIMINARY INJUNCTION**

I.     **INTRODUCTION**

In his Initial Brief, the Secretary of State asserted that if the state redistricting process does not yield a General Assembly district plan *and* a date on which to hold those primary elections by April 20, 2022, then this Court should order a remedy in this case; it should order the implementation of the Fourth Plan for an August 2, 2022 primary election for all General Assembly and State Central Committee candidates. That option continues to be the best option from an election administration standpoint.

On April 7, 2022, this Court posed three additional questions for the parties to answer herein. *Order*, Doc. 172. The Secretary's answers to all three questions show that the United States Constitution does not mandate that States use an elective process for the selection of state or local officeholders. That said, a primary election is one of the fundamental components of Ohio's electoral process. Ohio law does not allow for General Assembly party-affiliated candidates to run in the general election except through a primary election. Furthermore, the rules that regulate

an independent candidate's ability to run in the general election for a General Assembly seat is also directly tethered to the scheduling and holding of a primary election for those legislative offices. Under Ohio law, the only avenue for General Assembly candidates to run in a general election without a primary election is through the write-in candidacy process. Finally, a federal court has the authority to remedy violations of the United States Constitution, which, in extreme circumstances, could entail rescheduling a primary election. It appears, however, that federal courts faced with election-related dilemmas have avoided changing dates of primary elections when they have had the benefit of alternative remedies available to them.

Because Ohio's electoral process for General Assembly offices is fundamentally based on a primary election, the lack of a primary election prior to the 2022 general election will likely present significant roadblocks to a fair and orderly election of General Assembly offices. An August 2, 2022 primary election should alleviate those roadblocks and provide the county boards of elections enough time to complete all of the required tasks in administering the 2022 general election.

## II. LAW AND ANALYSIS

### A. The Primary Election for General Assembly and State Central Committee Candidates Should be Held on August 2, 2022.

This Court should issue an order scheduling the 2022 General Assembly primary elections for August 2, 2022, because the General Assembly itself has not taken any action to schedule that primary and will not do so before April 20, 2022.[1] This Court scheduling August 2 as the date of the General Assembly primary election will allow that election for these offices to be conducted

---

[1] Tebben, Susan, *Ohio House Speaker says no primary election legislation coming soon*, OHIO CAPITAL JOURNAL, Apr. 7, 2022, https://ohiocapitaljournal.com/2022/04/07/ohio-house-speaker-says-no-primary-election-legislation-coming-soon/ ("Ohio's House Speaker said Wednesday legislation is not coming to change the May primary date.").

under regular order, taking into account all the primary election statutory deadlines provided in Ohio law. *See, e.g.*, Ohio Rev. Code § 3513.05 (the deadline for candidates to file their declaration of candidacy is 90 days before the primary election). However, to guarantee that these deadlines are automatically changed, this Court must also find that August 2, 2022 is a "primary election" under Ohio Rev. Code § 3501.01(E)(1). This is because each deadline is defined as being "x" amount of days prior to "the primary election" rather than occurring on a certain date, e.g., February 5. *See, e.g.*, Ohio Rev. Code § 3513.05 (protests against partisan candidates' petitions due 74 days prior to the election). To further avoid confusion and delay, this Court should also deem that the Ohio Const. Art. XI, Sec. 9(C) "clock" began to run on March 28, the date the Fourth Plan was implemented, and ends on April 27, 2022. That constitutional provision gives affected candidates 30 days to move into a new district if a new general assembly district plan is adopted. *See* Ohio Const., Art. XI, Sec. 9(C). As the Fourth Plan was adopted on March 28, that is the date in which the 9(C) "clock" began. Finally, by intervening by April 20, the Court would be giving Ohio's 88 county boards of elections the additional 14 days they require to update their voter registration systems in time to administer an August 2 primary election for General Assembly and State Central Committee candidates. *See* PI Hrg. Tr., Doc. 150, PAGEID #4258.

        **B.**    **The Fourth Plan Should be Ordered.**

Additionally, because of the progress Ohio's 88 county boards of elections made in implementing the Third Plan, the Fourth Plan would be the simplest to implement in comparison to the other maps proposed by the parties. Even Dr. Rodden stated that the Fourth Plan is very similar to the Third Plan, with changes occurring only in two counties. PI Hrg. Tr. at PAGEID #4408-4409. Moreover, pursuant to Secretary LaRose's instructions, nearly all of Ohio's county boards of elections were successfully able to create a backup copy of the Third Plan. Therefore,

although being a "new" map, only a few counties would need to potentially reprogram their systems in order to implement the Fourth Plan. If *any* of the other proposed plans were to be implemented, then *every* county board of elections would need to *completely* reprogram their systems, which is a difficult and time-consuming task.[2] This includes the 2011 General Assembly Plan, which possesses the additional complication of likely being malapportioned. Thus, for the 88 county boards of election, using the 2011 General Assembly Plan will be just as hard and as time-consuming as using any other plan other than the Fourth Plan.

Accordingly, the Secretary requests that this Court intervene by April 20, 2022, and order that the Fourth Plan be implemented for an August 2, 2022 primary election for General Assembly and State Central Committee candidates.

    **C.**    **The Secretary's Answers to the Court's Questions of April 7, 2022.**

The Secretary answers the Court's questions of April 7, 2022 as follows:

    **1.**    **Is there a federal right to vote in a primary if *state* law requires a primary for state elections? Please provide the specific text in the Constitution or a constitutional doctrine that grounds this right?**

The United States Constitution does not mandate that States use an elective process for the selection of state or local officeholders. *See generally Fortson v. Morris*, 385 U.S. 231, 234 (1966) (holding "[t]here is no provision of the United States Constitution or any of its amendments which either expressly or impliedly dictates the method a State must use to select its Governor"); *Sailors v. Board of Educ.*, 387 U.S. 105, 108 (1967) (permitting appointment of school board members); *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 14 (1982) (permitting appointment of state legislators to fill vacancies).

---

[2] Again, the only exception to this would be the Third Plan. However, for the reasons stated in his initial brief (Doc. 164), Secretary LaRose is not advocating for the use of the Third Plan.

4

As explained in greater detail below, and with a few exceptions that are not relevant here, Ohio's constitution requires all nominations for elective state, district, county, and municipal offices to be made at direct primary elections or by petition. Ohio Const., Art. V, Sec. 7. Candidates for party nominations to state and district offices for which party nomination are required by law must, as a precondition for appearing on the general election ballot, appear on a primary election ballot. Ohio Rev. Code § 3513.04. Ohio law does not provide for nomination or selection of major party candidates, including candidates wishing to claim affiliation with the Democratic party or Republican party, for state-level offices through party convention or nominating committee. For political party affiliated candidates for General Assembly district offices, the sole avenue to the general election ballot is through winning a primary election. *Id.*

The lack of a primary election date for the 2022 General Assembly races would also foreclose another class of candidates from appearing on the general election ballot as well – those who wish to appear on the general election ballot as "Independent." *See* Ohio Rev. Code § 3513.257 ("Each person desiring to become an independent candidate for an office for which candidates may be nominated at a primary election […] shall file no later than four p.m. of the day before the day of the primary election immediately preceding the general election at which such candidacy is to be voted for by the voters, a statement of candidacy and nominating petition as provided in section 3513.261 of the Revised Code."). If there is no General Assembly primary election date in 2022, then there is no clear deadline by which independent candidates for General Assembly seats must file their petitions to be on the November ballot.

In the absence of a primary election, the only candidates eligible to stand for election to Ohio's General Assembly at the 2022 General Election will be those who choose to run either as a write-in candidate, *see* Ohio Rev. Code § 3513.041, or who seek to appear as candidates on

behalf of a yet-to-be established political party. *See* Ohio Rev. Code § 3517.012. That hardly reflects the "[r]epublican [f]orm of [g]overnment" guaranteed to the people of the states by Article IV of the United States Constitution.

Similarly, the lack of a primary election for General Assembly candidates could deprive voters, Democrat and Republican alike, of their First Amendment right of association and participation in the political process, an outcome the Secretary finds abhorrent to the principles of democracy and Ohio's republican form of government. *See Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 10 (1982) (quoting *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972) ("[W]hen a state […] has provided that its representatives be elected, 'a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction.'").

The Secretary has been clear. In matters of state elections and redistricting, the federal courts should most always stay their hand, allowing what Justice Brandeis referred to as America's "laboratories of democracy" to arrive at their own, sometimes imperfect solutions. *See New State Ice Co. v. Liebmann*, 285 U.S. 262, 311 (1932); *See also Growe v Emison*, 507 U.S. 25 (1993). That does not, however, foreclose action by the courts where, as here, the machinery of the election, and of democracy itself, is at risk.

### 2. May Ohio simply not hold a primary and have a general election? If so, how would Ohio law provide for a general election for those seats?

A primary election is an inextricably intertwined component of Ohio's electoral process for General Assembly district offices. While Chapter 35 of the Ohio Revised Code provides for the general election of some non-General Assembly district offices without a primary election, there is no such pathway for General Assembly district offices except for write-in candidacy.

Ohio Rev. Code § 3501.01(E)(1) defines a primary election as

6

an election held for the purpose of nominating persons as candidates of political parties for election to offices, and for the purpose of electing persons as members of the controlling committees of political parties and as delegates and alternates to the conventions of political parties. Primary elections shall be held on the first Tuesday after the first Monday in May of each year except in years in which a presidential primary election is held.

Ohio Rev. Code § 3513.04 states, "Candidates for party nominations to state, district, county, and municipal offices or positions, for which party nominations are provided by law, and for election as members of party controlling committees *shall* have their names printed on the official primary ballot by filing a declaration of candidacy and paying [a] fee." (emphasis added). This mandate includes General Assembly district offices.

Ohio law exempts specific offices from a primary election, but not General Assembly district offices. *See* Ohio Rev. Code § 3513.01(C) ("officers of any township, or any municipal corporation having a population of less than two thousand."); Ohio Rev. Code § 3513.02 (in odd numbered years, no primary required if no candidates seeks a political party's nomination or only one candidate files); Ohio Rev. Code § 3513.301(B)(2) (no primary election required in a special election for congressional seat when there is only one candidate for a party's nomination).

Ohio's calendar for declaring a candidacy for a party nomination at a primary election is also tethered to the date of the primary election. Ohio Rev. Code § 3513.05 provides that "each person desiring to become a candidate for a party nomination at a primary election ….shall, not later than four p.m. of the ninetieth day before the day of the primary election, file a declaration of candidacy and petition and pay the fees." With General Assembly district offices, the declaration of candidacy also must "be signed by not less than fifty qualified electors who are members of the same political party as the political party of which the candidate is a member." *Id.*

Ohio law requires all county boards of elections to begin their canvass of a primary election "not earlier than the eleventh day or later than the fifteenth day" after the election. Ohio Rev. Code

§ 3513.22(A). The boards of elections shall complete the canvass "not later than the twenty-first day after the day of the election" and must deem it as final by "eighty-one days after the day of the election." *Id*. Once the results of the primary election are declared, election officials "shall issue to each person declared nominated…an appropriate certificate of nomination or election." Ohio Rev. Code § 3513.22(E). The primary election winners who are issued certifications of nomination are then placed on the general election ballot in November of the election year. Ohio Rev. Code § 3513.01(A).

The date of a primary election is pivotal even in the case of independent candidates for General Assembly district offices. Ohio Rev. Code § 3513.257 requires those candidates to file a statement of candidacy and nominating petition "no later than four p.m. of the day before the day of the primary election immediately preceding the general election at which such candidacy is to be voted for by the voters." Thus, without a primary election, even independent candidates would have no deadline by law to submit their statement of candidacy and nominating petition. Coordinating an independent candidate's deadline for filing his or her statement of candidacy and nominating petition with the date of the primary election serves the public interest. As the General Assembly stated:

> The purpose of establishing a filing deadline for independent candidates prior to the primary election immediately preceding the general election at which the candidacy is to be voted on by the voters is to recognize that the state has a substantial and compelling interest in protecting its electoral process by encouraging political stability, ensuring that the winner of the election will represent a majority of the community, providing the electorate with an understandable ballot, and enhancing voter education, thus fostering informed and educated expressions of the popular will in a general election. The filing deadline for independent candidates required in this section prevents splintered parties and unrestrained factionalism, avoids political fragmentation, and maintains the integrity of the ballot. The deadline, one day prior to the primary election, is the least drastic or restrictive means of protecting these state interests. The general assembly finds that the filing deadline for independent candidates

8

> in primary elections required in this section is reasonably related to the state's purpose of ensuring fair and honest elections while leaving unimpaired the political, voting, and associational rights secured by the first and fourteenth amendments to the United States Constitution.

*Id.* Thus, while independent candidates do not participate in a primary election, their alternative requirements for placement on the general election ballot runs virtually concurrent with the primary election. Without a primary election, the independent candidate rules cannot be administered.

In addition to the specific exemptions set forth above, write-in candidacy is not directly impacted by a primary election. Ohio Rev. Code § 3513.041 states "a write-in space shall be provided on the ballot for every office, except in an election for which the board of elections has received no valid declarations of intent to be a write-in candidate." An individual who wishes to run for office as a write-in candidate "shall file a declaration of intent to be a write-in candidate before four p.m. of the seventy-second day preceding the election at which such candidacy is to be considered." *Id.* But Ohio law does not permit party designations in write-in candidacy. Thus, while an individual could run for a General Assembly district office as a write-in candidate without competing in a primary election, that individual would have no way to designate their party affiliation on the ballot. This is in derogation of Ohio Rev. Code § 3513.04, which specifically provides for party designation of General Assembly district offices. *Cf., Ohio Council 8 Am. Fedn. of State v. Husted*, 814 F. 3d 329, 338 (6th Cir. 2016) (citing *Rosen v. Brown*, 970 F.2d 169, 175 (6th Cir. 1992) ("a state may refuse to include party labels on ballots entirely, once it chooses to allow them, it must do so in a nondiscriminatory manner.")).

In conclusion, except for write-in candidacy, Ohio may not hold a general election for General Assembly district offices without holding a primary election first. Because Ohio's electoral process for General Assembly district offices is built around a primary election, write-in

9

candidacy would be the only limited pathway to filling General Assembly district seats without a primary election.

### 3. Does the federal court have authority to move a primary election? Where does this authority come from?

A federal court has the authority to remedy violations of the United States Constitution, which, in exceptional circumstances, could entail setting or scheduling a primary election. It appears that federal courts faced with election-related dilemmas have generally avoided changing dates of *scheduled* primary elections when they have had the benefit of alternative remedies available to them. Here though, as discussed above, there is currently no scheduled primary election date for Ohio's general assembly seats. Thus, this Court would not need to *move* a primary election, it would need to *set* a primary election. Under these circumstances, the same election-related concerns involved in moving a primary simply do not apply.

A "state's interest in a timely and orderly election is strong." *Valenti v. Mitchel*, 962 F.2d 288, 301 (3d Cir. 1992). But "[t]he Supreme Court has recognized that, 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process[].'" *Id.* (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). To that end, the Court has counseled that "[l]egislative bodies should not leave their reapportionment tasks to the federal courts; but when those with legislative responsibilities do not respond, or the imminence of a state election makes it impractical for them to do so, it becomes the 'unwelcome obligation,' of the federal court to devise and impose a reapportionment plan pending later legislative action." *Wise v. Lipscomb*, 437 U.S. 535, 540 (1978) (quoting *Connor v. Finch*, 431 U.S. 407, 415 (1977)).

When it comes to scheduling a primary election, federal courts have the discretion to apply a balancing test, typically weighing the strong state interest in holding a primary as scheduled

against some burden placed on some appellant's constitutional rights. *See, e.g.*, *Valenti*, 962 F.2d at 301; *Wise*, 437 U.S. at 540; *NAACP v. New York*, 413 U.S. 345, 367 (1973). Most often, the scales tilt towards keeping a scheduled primary election date, especially where "necessary election machinery is already in progress for an election rapidly approaching." *Cosner v. Dalton*, 522 F. Supp. 350, 364 (E.D. Va. 1981) (deciding against delaying a September primary election because of its effect of delaying a November general election).

A Texas federal court dealt with similar competing interests in its redistricting fight in *Terrazas v. Slagle*, 1992 U.S. Dist. LEXIS 3674 (W.D. Tx 1992). There, the Texas Legislature's redistricting plan was struck down by the federal court for violations of the Voting Rights Act. *Id.* at *1. The federal court implemented interim redistricting plans because Texas's primary election was fast approaching. The state defendants moved to stay the court's interim plans, which would have had the practical effect of postponing Texas's primary election. *Id*. The opposing parties argued that the court should impose the interim plans so that the primary election could proceed as planned. The federal court denied the state's motion and ordered the primary election to proceed with the court's interim plan. The court recognized, "the bedrock principle that federal courts possess considerable latitude in affording interim relief that might otherwise exceed the traditional constraints of comity and deference to the Legislature--primarily to insure that elections take place as scheduled under valid state law." *Id.* at *2-3 (citing cases).

While the *Terrazas* Court opted to preserve Texas's already scheduled primary election, it still recognized that federal courts may, when necessary, take unusual steps to ensure that elections follow state law. *See, Id.* Where there is no scheduled primary election, however, the same state interests don't apply. In this case, Ohio law mandates a primary election for General Assembly

11

races. But currently one is not scheduled. Accordingly, in balancing the factors here, this Court has the legal authority to set a primary election for August 2, 2022 using the Fourth Plan.

### III. CONCLUSION

For the foregoing reasons, Secretary LaRose requests that if this Court chooses to intervene, which it should do by April 20, 2022, then it should order the Fourth Plan to be implemented for an August 2, 2022 primary election for General Assembly and State Central Committee candidates.

Respectfully submitted,

OHIO ATTORNEY GENERAL

*/s/Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
*Counsel of Record*
JONATHAN D. BLANTON (0070035)
Deputy Attorney General
MICHAEL A. WALTON (0092201)
ALLISON D. DANIEL (0096186)
Assistant Attorneys General
Constitutional Offices Section
30 E. Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: 614-466-2872 | Fax: 614-728-7592
Julie.Pfeiffer@OhioAGO.gov
Jonathan.Blanton@OhioAGO.gov
Michael.Walton@OhioAGO.gov
Allison.Daniel@OhioAGO.gov

*Counsel for Ohio Secretary of State Frank LaRose*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2022, the foregoing was filed with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties for whom counsel has entered an appearance. Parties may access this filing through the Court's system.

*/s/ Julie M. Pfeiffer*
JULIE M. PFEIFFER (0069762)
Assistant Attorney General