# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Michael Gonidakis, *et al.*, | : | |
| | : | Case No. 2:22-cv-773 |
| Plaintiffs, | : | |
| | : | |
| v. | : | Chief Judge Algenon L. Marbley |
| | : | |
| Frank LaRose, | : | Circuit Judge Amul R. Thapar |
| | : | |
| Defendant. | : | Judge Benjamin J. Beaton |

**PLAINTIFFS' RESPONSE IN SUPPORT OF POST-HEARING BRIEF**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | ANSWERS | | 3 |
| | A. | No, Ohio cannot simply not hold a primary election and still have a general election under Ohio law. | 3 |
| | B. | Yes, there is a federal right to vote in a primary if state law requires a primary for state elections. | 5 |
| | C. | Yes, the federal court has authority to move a primary election. | 7 |
| II. | ANALYSIS | | 8 |
| III. | REMEDY | | 9 |
| | A. | This Court should adopt a plan blessed by the Redistricting Commission. | 10 |
| | | 1. Because this Court should defer to the Redistricting Commission, it should adopt the Fourth Plan. | 13 |
| | | 2. Alternatively, this Court should adopt the Third Plan. | 13 |
| | B. | Alternatively, this Court may adopt the 2011 map for the 2022 election only. | 14 |
| | C. | There is no time for a new map by April 20, 2022. | 14 |
| | D. | This Court should avoid the alternative plans unendorsed by the Redistricting Commission. | 14 |
| | | 1. The so-called "Independent Plan" has significant flaws, including previously undisclosed involvement by Mr. Glassburn. | 14 |
| | | 2. Dr. Rodden conceded that his plan should not be used. | 16 |
| IV. | CONCLUSION | | 16 |
| APPENDIX | | | 18 |

**I.     ANSWERS**

Ohio cannot hold a general election for General Assembly seats without a primary election. For this reason, and others, Plaintiffs constitutional rights were violated when the primary election for state legislative office was canceled and not rescheduled, and this Court should use its power in equity to move the primary election for General Assembly seats. to August 2, 2022. (*See* ECF No. 172).

**A. No, Ohio cannot simply not hold a primary election and still have a general election under Ohio law.**

Because Ohio law requires a primary election for General Assembly candidates, and has for more than 100 years, a general election for General Assembly candidates cannot go forward without Ohio first holding a primary election. Historically, Ohio law did not provide for a primary election for General Assembly candidates; instead, candidates were generally selected in county and state conventions. This changed following Ohio's 1912 constitutional convention.

The 1912 convention recommended the requirement of primary elections for most public officials, in addition to forty-two other amendments.[1] As explained by one proponent for primary elections, primary elections would avoid boss-controlled corruption: "The chief cause of the frequent failure of representative government [in Ohio] lies in . . . corrupt, boss-controlled, drunken, debauched, and often hysterical nominating conventions . . . The convention must go."[2] Voters approved the requirement for primary elections for General Assembly candidates in a

---

[1] Steven H. Steinglass & Gino J. Scarselli, *The Ohio State Constitution: A Reference Guide* (2004), *Scholarship Collection*, Appendix, Exhibit A, pp. at 49–50.

[2] Professor Thomas Sudde, *Thomas Suddes commentary: A debate would erode Strickland's major asset*, THE COLUMBUS DISPATCH, January 10, 2016, *available at* https://www.dispatch.com/story/opinion/cartoons/2016/01/08/thomas-suddes-commentary-debate-would/23531076007/ (last accessed April 10, 2022) (quoting delegate).

September 1912 special election as Article V, Section 7, where it was approved by more than 60% of voters.

The Ohio Constitution still requires a primary election for General Assembly seats: "All nominations for elective state, district, county and municipal offices shall be made at direct primary elections or by petition as provided by law . . . ." Ohio Constitution, Article V, Section 7 (requiring primary election for most elected offices). As summarized by one court, "The Ohio Constitution requires that parties nominate candidates through primaries. Various Ohio statutes establish the dates of primary elections and the time to file candidacy petitions." *Libertarian Party of Ohio v. Brunner*, 567 F. Supp. 2d 1006, 1009 (S.D. Ohio July 17, 2008). As a result, Ohio's entire election apparatus depends on primary elections, including primary elections for General Assembly candidates.[3] For example, state law provides that "primary elections shall be held" for nominating candidates of political parties. *See* R.C. 3513.01(A). And "[p]rimary elections shall be held on the first Tuesday after the first Monday in May of year except in years in which a presidential primary election is held." R.C. 3501.01(E)(1). The purpose of the primary election to "nominat[e] persons as candidates of political parties for election to offices to be voted for at the succeeding general election." R.C. 3513.01(A).

Because primary elections are required for most offices, including General Assembly seats, it is unclear how Ohio could hold a general election without first holding a primary election for these seats. *See* R.C. 3513.01(A). Ohio has no process for proceeding otherwise. Even determining an eligible write-in candidate for the general election requires a primary election. *See* R.C.

---

[3] Ohio's election manual, which exceeds four-hundred pages, can be found at the Secretary of State's website. *See* OHIO SECRETARY OF STATE, *Directives, Advisories, Memos & Tie Votes*, *available at* https://www.ohiosos.gov/elections/elections-officials/rules/ (last accessed April 10, 2022).

4

3515.041 (preventing candidates who filed a declaration of candidacy from being a writing-in candidate). So that is not an alternative. The undersigned is not aware of any process currently provided by state law that would allow an election for General Assembly candidates to go forward without first holding a primary election.

### B. Yes, there is a federal right to vote in a primary if state law requires a primary for state elections.

*First*, Plaintiffs have a right to vote in the primary election under the First Amendment and that right has been denied without reason. The right to participate in a primary election is "protected just as is the right to vote at the election, where the primary is by law made an integral part of the election machinery . . . ." *United States v. Classic*, 313 U.S. 299, 318 (1941). Because states and political parties have an interest in regulating primary elections, primary election regulations are analyzed using the *Anderson-Burdick* balancing test, which has three parts: (1) consideration of the magnitude of the injury; (2) the state's justification for the injury: and (3) strength of the extent to which those interest make it necessary to burden plaintiffs' rights. *See Green Party of Tenn. v. Hargett, No. 16-6299*, 2017 U.S. App. LEXIS 18270, at *10 (6th Cir. May 11, 2017) (citation omitted) (concerning primary election); *see also Balsam v. Sec'y of N.J.*, 607 F. App'x 177, 181 (3d Cir. 2015) (applying *Anderson-Burdick* test to primary election).

The "hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016) (citations omitted). And when there is a severe burden, then the regulation must be "narrowly drawn" to advance a "state interest of compelling importance." *Daunt v. Benson*, 999 F.3d 299, 310 (6th Cir. 2021) (citation and quotation omitted). *Cf. New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1282 (11th Cir. 2020).

5

Here, the primary election has been canceled, and Ohio failed to put forward any argument that this action was narrowly drawn to advance a state interest of compelling importance. There is no dispute that the primary election for General Assembly candidates has been canceled. (Tr., ECF No. 150, PageID # 4247, 13:17). The primary election has also not been rescheduled, and Secretary LaRose has no authority to rescheduled it. (*See id.*). This is the most severe burden possible. Additionally, Ohio has not articulated any state interest for not holding a primary election. As a result, Ohio has placed a severe burden on voting in the primary election and has done so without a compelling interest, so it violates the U.S. Constitution. This violation is amplified by the primary election as necessary precondition to holding a general election. *See* R.C. 3513.01.

***Second*,** Plaintiffs have a federal right to vote in the primary election under the Due Process Clause. *Bonas v. Town of N. Smithfield*, 265 F.3d 69, 75 (1st Cir. 2001). A canceled election violates the Substantive Due Process Clause's requirement for fairness—including for primary elections. *See Griffin v. Burns*, 570 F.2d 1065, 1078 (1st Cir. 1978). It is the denial of "the citizens of a state the right to vote in an election mandated by law." *Duncan v. Poythress*, 657 F.2d 691, 705 (5th Cir. 1981); *see also League of Women Voters v. Brunner*, 548 F.3d 463, 479 (6th Cir. 2008).

Here, there is a Due Process violation because state law provides for a primary election, and because denying the primary election denies the general election. First, Ohio law provides a right to vote in a primary election. *See* R.C. 3513.01(A); R.C. 3513.01(A); R.C. 3501.01(E)(1). This right to vote is mandated by law. *See* Ohio Constitution, Article V, Section 7. Therefore, Plaintiffs' Due Process voting rights have been denied because the primary election has been canceled. (Tr., ECF No. 150, PageID # 4247, 13:17). Second, Ohio's election law requires a primary election to conduct a general election. *See* R.C. 3513.01(A). Therefore, in canceling the

6

primary election, Ohio denied Plaintiffs' voting rights in the general election. The cancellation of the general election also violates the Due Process Clause. Thus, Plaintiffs' rights under the Due Process Clause have been doubly denied.

***Third,*** Plaintiffs have a federal right to vote in a primary election under the Equal Protection Clause. The Fourteenth Amendment of the U.S. Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." Courts have relied on this language to address malapportionment in state legislative districts. *See, e.g.*, *Evenwel v. Abbott*, 578 U.S. 54, 74, 136 S. Ct. 1120, 1132 (2016); *Reynolds v. Sims*, 377 U.S. 533, 561, 84 S. Ct. 1362, 1381 (1964). That is because if an individual is not receiving "equal protection of the laws," his vote could count two, five, or even 10 times less than others. *Reynolds*, 377 U.S. at 562. Non-apportionment similarly dilutes individual voting power. *See Adams v. Clinton*, 90 F. Supp. 2d 35, 66 (D.D.C. 2000). Courts have intervened in primary elections to avoid unlawful apportionment. *Watkins v. Mabus*, 771 F. Supp. 789, 798 (S.D. Miss. 1991).

Here, Plaintiffs are in non-apportioned General Assembly districts in violation of the Equal Protection Clause. There is no plan for legislative districts in place, and no direction has been given to boards of elections to begin carrying out the Fourth Plan. And even if work was being done on the Fourth Plan, it would not be possible for the primary election to take place on May 3, 2022 as scheduled. Moreover, the Secretary of State has no authority to establish districts on a different date. Because the general election for General Assembly seats cannot go forward without a primary election, the lack of legislative districts now also means non-apportionment for the general election. *See* R.C. 3513.01(A). For these reasons, the Equal Protection Clause has been violated.

### C. Yes, the federal court has authority to move a primary election.

This Court has authority to move Ohio's primary election date based on the broad equitable powers possessed by the federal courts. *See, e.g.*, *Ohio Democratic Party v. Blackwell*, No. 2:04-

7

CV-1055, 2005 U.S. Dist. LEXIS 18126, at *2, 4 (S.D. Ohio Aug. 26, 2006) (Marbley, J) (explaining that the court had previously ordered that polls be kept open for voters standing in line as of 7:30 p.m. or that voters be provided paper ballots or another mechanism to afford votes an adequate opportunity to vote because they had been waiting in lines for up to five hours); *Sixty-Seventh Minn. State Senate v. Beens,* 406 U.S. 187, 201 n.11 (1972) ("If time presses too seriously [to implement a remedial reapportionment plan], the District Court has the power appropriately to extend the [election deadline] time limitations imposed by state law."); *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) (involving school desegregation plans where the Court held that "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies."); *Larios v. Cox*, 305 F. Supp. 2d. 1335, 1342 (N.D. Ga. 2004) ("We also observe that the court has broad equitable power to delay certain aspects of the electoral process if necessary.").

## II.     ANALYSIS

The preliminary injunction hearing showed that Plaintiffs are likely to succeed on the merits of their constitutional claims, and the public interest requires state legislative districts. *See George v. Hargett*, 879 F.3d 711, 727 (6th Cir. 2018) (citing *Warf v. Bd. of Elections of Green Cty.*, 619 F.3d 553, 559 (6th Cir. 2010)); *Bonas v. Town of North Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001). This is because there is no dispute that the primary election for General Assembly candidates has been canceled, so Plaintiffs cannot vote and cannot associate. (Tr., ECF No. 150, PageID # 4348, 114). [4]

---

[4] Because the Opposing Parties no longer raise standing issues, Plaintiffs will not address them here. (*See* Bennett Petitioners, ECF No. 161, PageID # 4565, n.2) (conceding standing).

The Parties generally agree that the canceled primary election means that Plaintiffs are likely to succeed on the merits of their constitutional claims, and therefore focus on the available remedies. (*See* Bennett Petitioners, ECF No. 161, PageID # 4563; Sykes and Russo, ECF No. 162, PageID # 4925, n.1; ACLU, ECF No. 163, PageID # 4945, OOC, ECF No. 165, PageID # 5431).

Secretary LaRose is the only party that argues otherwise, claiming that the lack of legislative districts is a "factual inaccuracy" because "Ohio has legislative districts," referring to the Fourth Plan. (ECF No. 164, PageID # 5389). Secretary LaRose then immediately concedes that "[w]hen a primary election will be held remains to be seen . . . ." (*Id.*, PageID # 5390). And *that* is the basis for Plaintiffs' claims.

As this Court heard, there are no plans for a primary election and no legal capacity to hold one. (Tr., ECF No. 150, PageID # 4247, 13:17). This was confirmed by Deputy Assistant Grandjean's most recent affidavit: "[T]he May 3, 2022 Primary Election is underway without Ohio House, Ohio Senate, and State Central Committee races on the ballot." (Grandjean Aff., ECF No. 164-1, PageID # 5409, ¶ 3).

Therefore, the undisputed facts are that the primary election for General Assembly seats has been canceled. Thus, Plaintiffs are likely to succeed on the merits of their constitutional claims. Moreover, because voting and associating are fundamental rights, the remaining preliminary injunction factors favor relief.

### III. <u>REMEDY</u>

Because Plaintiffs' rights will be violated if there are no state legislative districts, this Court should adopt the Fourth Plan no later than April 20, 2022, and move the primary election to August 2, 2022.

**A. This Court should adopt a plan blessed by the Redistricting Commission.**

This Court should look no further than a plan adopted by the legislative authority: the Redistricting Commission. Courts defer to legislative bodies when deciding between available maps, and a redistricting commission is a legislative body. *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 808 (2015); *Perry v. Perez*, 565 U.S. 388, 393 (2012). In Ohio, the Redistricting Commission is the legislative body "responsible for the redistricting of this state for the general assembly," so it deserves deference. *See* Ohio Constitution, Article XI, Section 1(A).

The Opposing Parties argue that non-compliance with Ohio law prevents the adoption the Redistricting Commission-approved plans. (*See* ECF No. 163, PageID # 4948). But this argument is based on incorrect facts and law. First, the Fourth Plan, as of today, has not been found out of compliance by the Ohio Supreme Court. So this Court need not worry about any state law conflicts. Second, even if the Fourth Plan is found out of compliance, it does not alter this Court's deference.

A redistricting commission deserves deference even when a state constitution is not followed. *Navajo Nation v. Ariz. Indep. Redistricting Comm'n*, 230 F. Supp. 2d 998, 1008 (D. Ariz. 2002).[5] In *Navajo Nation*, Arizona used its Independent Redistricting Commission to draw state legislative maps, consistent with the Arizona Constitution. *Id.* at 1002. With the primary election quickly approaching, the most recent plan of the redistricting commission was tied up in state court litigation and preclearance by the Department of Justice. *Id.* at 1002. The redistricting commission then went back to the drawing board to draw a new plan. *Id.* at 1008. But in doing so, it violated the state constitution. *Id.* For example, it failed to sufficiently provide a draft map for

---

[5] *See also* Judge Roslyn Silver, *Arizona Redistricting History and Litigation*, 53 ARIZ. ST. L.J. 839, 847 (2021) (Judge Silver served on two three-judge panels concerning the redistricting commission).

the public's review and failed to follow public meeting requirements. *Id.* (violating, for example, Ariz. Const. art. IV, Pt. 2, § 1(3)–(23)).

Even though the redistricting commission violated the Arizona Constitution, the three-judge panel still gave it deference. *Navajo Nation*, 230 F. Supp. 2d at 1008. The court first noted that there is "uninterrupted Supreme Court precedent holding that state legislatures have primary jurisdiction over legislative reapportionment . . . ." (citing *White v. Weiser*, 412 U.S. 783, 795 (1973); *Upham v. Seamon*, 456 U.S. 37, 40-41 (1982)). The court then considered that the public and litigants had opportunities for input. *Id.* at 1008. Considering these factors, combined with exigent circumstances created by a quickly approaching primary election, the three-judge panel deferred to the redistricting commission's constitutionally infirm plan.[6]

This Court, as in *Navajo Nation*, should defer to the Redistricting Commission. The Redistricting Commission has complied with the Ohio Constitution adopting a redistricting plan. *See* Ohio Constitution, Article XI, Section 1(A). The Ohio Constitution vests difficult policy questions with seven individuals. *Id.* These policy makers, the majority of which are appointed by the General Assembly, are elected officials whose decisions are ultimately reviewed by the voting public. Additionally, the public and litigants had opportunities to consider the plans before the Redistricting Commission. The plan mostly created by Dr. Johnson and Dr. McDonald was explicitly rejected. (*Commission Meeting*, March 28, 2022, Transcript – Part 5 at 21:32). The plan created by Dr. Rodden was submitted—but it was not even proposed by a member of the Redistricting Commission. (Tr., ECF No. 150, 186:17–187:22). Therefore, as the uninterrupted

---

[6] And this plan, after adoption by the federal court and use in the 2002 election, was later found to violate the Arizona Constitution for other reasons. *See Ariz. Minority Coal. for Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 211 Ariz. 337, 366, 121 P.3d 843, 872 (Ct. App. 2005). So this Court need not worry about later unconstitutionally of an adopted plan.

Supreme Court precedent requires, this Court should defer to the Redistricting Commission adopted plans.

The Tenth Circuit's *Large* decision, relied on by multiple Opposing Parties, also supports deferring to the Redistricting Commission. *Large v. Fremont Cty.*, 670 F.3d 1133, 1139 (10th Cir. 2012). In *Large*, the Tenth Circuit acknowledged that a legislative body deserves deference. *Id.* So the court looked to state law to determine "whether to give deference to a legislative plan," and found that a political subdivision deserves no deference when a superior legislative body controls redistricting. *Id.* at 1147. But what we have here, with the Redistricting Commission, is the body charged with redistricting. Ohio Constitution, Article XI, Section 1(A). It is not an inferior body. *Cf. Tallahassee Branch of NAACP v. Leon Cty.*, 827 F.2d 1436, 1438 (11th Cir. 1987) (county allowed to reapportion itself without a referendum). Therefore, under *Large*, the Redistricting Commission deserves deference.

Despite the "uninterrupted Supreme Court precedent" requiring legislative deference, and that explicit command in *Large*, the Opposing Parties then argue that "Ohio government officials are subservient to the people of Ohio . . . ." (*See* ECF No. 161, PageID # 4572). There is no referendum requirement here. *See Leon Cty.*, 827 F.2d at 1438. But the people have spoken. And the people of Ohio set up the Redistricting Commission—those designated elected officials, including the leaders of General Assembly, the governor, secretary of state, and auditor, adopted plans for this Court's use. As shown by *Navajo Nation*, nothing more is required.

### 1. Because this Court should defer to the Redistricting Commission, it should adopt the Fourth Plan.

In deferring to the Redistricting Commission, this Court should adopt the most recent plan adopted by the majority of the Redistricting Commission, the Fourth Plan. The seven members of the Redistricting Commission considered the Fourth Plan, and adopted it in public session.[7]

The Opposing Parties ask this Court to second guess the policy and constitutionality of the Fourth Plan. (*See* ECF No. 162, PageID # 4946). But even their cited precedent says otherwise. In *North Carolina v. Covington*, 138 S. Ct. 2548, 2555 (2018), for example, the U.S. Supreme Court overruled a district court that altered legislative districts that "violated the North Carolina Constitution's ban on mid-decade redistricting," rather than federal law." *Id.* at 2554. The Court concluded the district court's decision to "override the legislature's remedial map on that basis was clear error." *Id.* (citing *White v. Weiser*, 412 U. S. 783, 795, 93 S. Ct. 2348, 37 L. Ed. 2d 335 (1973)). This Court should be similarly restrained.

### 2. Alternatively, this Court should adopt the Third Plan.

Alternatively, this Court should adopt the Third Plan. The Third Plan was also adopted by the Redistricting Commission, consistent with Ohio Constitution, Article XI, Section 1. (Tr. ECF No. 150, PageID # 4370, 136:5). The Parties agree that there is little difference between the Third Plan and Fourth Plan, yet the Third Plan has the advantage of prior implementation by the local boards of elections, meaning it is the least disruptive to implement. (*See id.*, PageID # 4296, 62:8). So this Court, in the alternative, should adopt the Third Plan on or before April 20, 2022 for a primary election held on August 2, 2022.

---

[7] *Commission Meeting*, OHIO REDISTRICTING COMMISSION, March 28, 2022, Transcript – Part 4 *available at* https://redistricting.ohio.gov/meetings (last accessed April 5, 2022).

### B. Alternatively, this Court may adopt the 2011 map for the 2022 election only.

This Court has authority to adopt the 2011 map for temporary use in the 2022 elections, notwithstanding the fact that it is malapportioned as of 2022. *Watkins v. Mabus*, 771 F. Supp. 789 (S.D. Miss. 1991) (three-judge panel) (per curiam), *aff'd mem. in part and vacated as moot in part*, 502 U.S. 954 (1991). However, Secretary LaRose indicated that the 2011 map cannot be found, and Plaintiffs have no evidence that the 2011 map can be recreated in less than two weeks. (Grandjean Aff., ECF No. 164-1, PageID # 5411). If the 2011 map is nonetheless adopted by this Court, Plaintiffs would ask that it be used only for the 2022 General Assembly elections.

### C. There is no time for a new map by April 20, 2022.

Now, less than two weeks away from the April 20, 2022 drop dead date, there is no time for a Special Master. No party put forward a reasonable request for doing so—with one party proposing the adoption of a Special Master on April 18, just two days before a plan must be established. (ECF No. 163, PageID # 4963). No precedent is cited for this extremely expedited proposal, and the undersigned can find none. Therefore, this Court should not use a Special Master to pick a plan.

### D. This Court should avoid the alternative plans unendorsed by the Redistricting Commission.

This Court should defer to the legislative body, the Redistricting Commission, so should it disregard the alternatives offered by the Opposing Parties. This is particularly true considering these alternatives were rejected by the Redistricting Commission.

#### 1. The so-called "Independent Plan" has significant flaws, including previously undisclosed involvement by Mr. Glassburn.

The plan mostly created by Dr. Johnson and Dr. McDonald was expressly rejected by the Redistricting Commission, the legislative body charged with redistricting. (*Commission Meeting*,

14

March 28, 2022, Transcript – Part 5 at 21:32). Because it was rejected, it cannot comply with the Ohio Constitution. *See* Ohio Constitution, Article XI, Section 1(A).

To minimize this non-compliance, the Opposing Parties reframe this precondition as a procedural rather than substantive requirement. (*See* ECF No. 163, PageID # 4955). This misses the mark. In 2012, Ohio voters rejected an amendment to the Ohio Constitution that would have put a 12-person citizen commission in charge of drawing a map instead of elected officials: "Ohio voters previously rejected a 2012 attempt to wrest the mapmaking pen from state lawmakers and empower a 12-person citizen commission to draw legislative and congressional districts instead."[8] The proposed amendment lost by a ratio of 3:1.[9] So the involvement of four General Assembly appointees as well as the governor, auditor, and secretary of state is key to any redistricting plan—and Ohioans made that clear at the ballot box. *See* Ohio Constitution, Article XI, Section 1(A).

There are also significant problems with plan mostly drafted by Dr. Johnson and Dr. McDonald. First, it is incomplete, so it cannot be used without more delay. (*See* ECF No. 163, PageID # 4955). Second, the submitted plan has sections drafted that were unapproved by Dr. Johnson and Dr. McDonald, including the involvement of the partisan Mr. Glassburn. (*See* Dr. Johnson Aff., ECF No. 160-1, ¶ 18). Finally, hired gun Dr. Rodden supposedly fixing some of these issues is secret makes the plan no more palatable. (*See* ECF No. 161, PageID # 4578; ECF No. 163, PageID # 4578).

---

[8] Jessie Balmert, *Redistricting: Would Ohio be better off with an independent commission? Would voters approve one?* THE COLUMBUS DISPATCH, November 21, 2021, *available* at https://www.dispatch.com/story/news/politics/2021/11/22/redistricting-would-ohio-better-off-independent-commission/6352377001/ (last accessed April 9, 2022).

[9] Ohio voters rejected "Issue 2," to create a state-funded commission to draw legislative and congressional districts in 2012. 3,088,042 people voted "No" while only 1,800,105 people voted "Yes." *See Statewide Issue History*, OHIO SECRETARY OF STATE, *available at* https://www.ohiosos.gov/elections/election-results-and-data/historical-election-comparisons/statewide-issue-history/ (last accessed April 9, 2022).

For these reasons, this Court should not consider the plan mostly drawn by Dr. Johnson and Dr. McDonald.

### 2. Dr. Rodden conceded that his plan should not be used.

Dr. Rodden conceded at hearing this his plan was not a violable option. (Tr. ECF No. 150, 186:17–187:22, 199:12–15; Affidavit of Jonathan Rodden, ECF No. 107-3, ¶ 30, PageID # 2614). That is because it fails proportionality. (*See id.*). As a result, the parties mostly agree that his plan should be not considered, either. (*See* ECF No. 162, PageID # 4932, n.2). This makes sense considering the Restricting Commission did not consider it, either. (*See* ECF No. 150, 186:17–187:22). The Bennett Petitioners spin this implicit rejection into the Redistricting Commission "not rais[ing] a single concern" with the Rodden III plan. (*See* ECF No. 161, PageID # 161). But a more honest review of the record is that the Rodden III plan failed to garner enough interest by even a single member of the Redistricting Commission to warrant proposal.

For these reasons, this Court should not consider the Rodden III plan as an option.

### IV. CONCLUSION

For all these reasons, Plaintiffs respectfully request that this Court adopt the most recent map adopted by the Redistricting Commission for the 2022 election for state legislative office, the Fourth Plan, on or before April 20, 2022, for a primary election on August 2, 2022.

Respectfully submitted,

**Isaac Wiles & Burkholder LLC**

*/s/ Donald C. Brey*
Donald C. Brey (0021965)
Brian M. Zets (0066544)
Matthew R. Aumann (0093612)
Ryan C. Spitzer (0093515)
Trista M. Turley (0093939)
Two Miranova Place, Suite 700
Columbus, Ohio 43215
Tel: 614-221-2121; Fax: 614-365-9516
dbrey@isaacwiles.com
bzets@isaacwiles.com
maumann@isaacwiles.com
rspitzer@isaacwiles.com
tturley@isaacwiles.com

*Attorneys for Plaintiffs Michael Gonidakis, Mary Parker, Margaret Conditt, Beth Ann Vanderkooi, Linda Smith, Delbert Duduit, Thomas W. Kidd, Jr., and Ducia Hamm*

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/Donald C. Brey*
Donald C. Brey (0021965)

## **APPENDIX**

Exhibit A: Steven H. Steinglass & Gino J. Scarselli, *The Ohio State Constitution: A Reference Guide* (2004), *Scholarship Collection*