# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GONIDAKIS,** *et al.*, | : |
| | : |
| Plaintiffs, | : Case No. 2:22-cv-0773 |
| | : |
| v. | : Chief Judge Algenon L. Marbley |
| | : Judge Amul R. Thapar |
| **OHIO REDISTRICTING** | : Judge Benjamin J. Beaton |
| **COMMISSION,** *et al.*, | : |
| | : |
| Defendants. | : |

## OPINION & ORDER

This matter is before the Court on the Simon Parties' Second Motion for a Temporary Restraining Order (ECF No. 147). The Court, sitting as a three-judge panel pursuant to 28 U.S.C. § 2284, heard arguments at a Local Rule 65.1 conference on Monday, April 11, 2022. For the reasons that follow, the Simon Parties' Motion is **DENIED**.

## I. BACKGROUND

The Gonidakis Plaintiffs filed this lawsuit on February 18, 2022, alleging that Ohio's state legislative map is unconstitutionally malapportioned and that the resulting delay and uncertainty in the state's redistricting process has deprived them of First Amendment associational freedoms. (ECF No. 1). The Simon Parties, who were litigating an older case in the Northern District of Ohio over race-based vote dilution (Case No. 4:21-cv-2267), promptly moved to intervene as Plaintiffs. (ECF No. 7). The Court granted intervention on March 4, 2022, reasoning that "[t]he Simon Parties are challenging the very map that Plaintiffs ask this court to instate," and their "ability to protect that interest almost certainly would be impaired by an unfavorable disposition of this case." (ECF No. 54 at 11). On their request, the Court made the Simon Parties' intervention conditional on the Court "not stay[ing] or dismiss[ing] this action." (*Id.* at 13). That condition was triggered on March

18, 2022, when the Court lifted its previously entered stay and initiated a three-judge panel pursuant to 28 U.S.C. § 2284. (ECF No. 82).

On March 23, 2022, the Simon Parties filed their Intervenor Complaint against the five Republican members of the Ohio Redistricting Commission (hereinafter, the "Commission"), the Commission itself, and Attorney General Yost under four causes of action related to racial discrimination. (ECF No. 92). The Intervenor Complaint alleges that all redistricting plans to date, state and congressional, intentionally have disregarded racial demographics in violation of the Voting Rights Act and the injunction in *Armour v. State of Ohio*, 775 F. Supp. 1044 (N.D. Ohio 1991). (ECF No. 92 ¶ 4). The Simon Parties specifically challenge the district lines in Mahoning and Trumbull Counties (*i.e.*, the greater Youngstown area), which they allege have diluted Black voting power and deprived Black citizens of equal opportunity to participate in the political process. (*Id.* ¶¶ 32, 39, 45, 47, 54). They seek to enjoin the use of those allegedly defective maps, state and congressional, and to appoint a special master to draft new compliant redistricting plans. (*Id.* ¶¶ 8–9).

On March 31, the Simon Parties moved for a Temporary Restraining Order "enjoining Defendants . . . from administering, implementing, or conducting any election for representative for the 6th Ohio United States Congressional District proposed in the March 2, 2022, Congressional Redistricting Plan." (ECF No. 147 at 1). Though state-court challenges to that plan are ongoing, congressional races are included in the May 3 primary, with early voting presently underway. (ECF No. 167 at 4; No. 168 at 4–5). In their reply brief and at the conference of April 11, the Simon Parties clarified that they do not intend to enjoin or disrupt the casting of ballots; rather, "they request that unless the election is determined to be fair, the results should not be certified." (ECF No. 175 at 13). The Simon Parties ask this Court to deem the election unfair

because the district lines—by admission drawn without regard to racial demographics—operate to "dilute[] [their] voting strength by splitting the cities of Youngstown and Warren into separate districts and submerging Youngstown Plaintiffs into a racially polarized voting block of voters." (ECF No. 147 at 3). "The issue underlying this motion," the Simon Parties state, "is whether Defendants violated § 2 [of the Voting Rights Act] and *Armour* by totally disregarding race when they configured the districts challenged here." (*Id.* at 4).

## II. STANDARD OF REVIEW

A Temporary Restraining Order ("TRO") is an emergency measure. *Hartman v. Acton*, 2020 WL 1932896, at *1 (S.D. Ohio Apr. 21, 2020) (Marbley, J.). It is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979) (citing Wright & Miller, Federal Practice and Procedure § 2951). Therefore, although some courts would examine all four factors required for issuance of a preliminary injunction, an absence of immediacy or irreparability is enough to terminate the inquiry. *See, e.g.*, *Miller v. Ohio Civil Rights Comm'n*, 2022 WL 220003, at *3 (S.D. Ohio Jan. 24, 2022) (Marbley, J.); *see also ACLU of Ky. v. McCreary Cty.*, 354 F.3d 438, 445 (6th Cir. 2003) ("Federal Rule of Civil Procedure 52(c) 'requires a district court to make specific findings concerning each of these four factors, *unless fewer are dispositive of the issue*.'" (emphasis added) (quoting *In re DeLorean Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985))).

## III. LAW AND ANALYSIS

The Simon Parties' Motion suffers a threshold defect: it exceeds the scope of their intervention. When this Court (then sitting as a single District Judge) permitted the Simon Parties to intervene, it made clear that their role in the case is to ensure an appropriate remedy on the

3

underlying dispute over state legislative districts. The Court reasoned that the Simon Parties' "purpose for intervention" was that "they object to Plaintiffs' requested remedy, Court-ordered implementation of the Commission's second map." (ECF No. 54 at 9). The Court found the Simon Parties "have substantial interests at stake" because "there can be only one map," and the map requested by Plaintiffs could mean the Simon Parties' "statutory and constitutional rights will be violated." (*Id.* at 10). For these reasons, the Court permitted the Simon Parties to intervene as of right under Federal Rule of Civil Procedure 24(a).

This discussion was premised on a conflict between Plaintiffs' requested adoption of the Commission's state legislative map and the Simon Parties' claims of racial discrimination in the creation of that plan. The Court did not contemplate sweeping congressional redistricting, which is a wholly distinct process, into this lawsuit. Though both varieties of redistricting involve the Commission, they are separate tasks, utilizing independent standards and resulting in different district boundaries for General Assembly members versus Congressmembers. *Compare* Ohio Const. art. XI (state redistricting), *with* Ohio Const. art. XIX (congressional redistricting). This distances the Simon Parties' congressional redistricting claims from the claims of the original Plaintiffs.

Congressional redistricting claims would not have passed this Court's intervention analysis in the first instance. Since Plaintiffs seek relief only on the state legislative map, the disposition of this case will not impair any substantial legal interests in having a valid congressional map. This alone would defeat intervention as of right. *See* Fed. R. Civ. P. 24(a)(2) (intervenor must "claim[] an interest relating to the property or transaction that is the subject of the action, and [be] so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest"); *United States v. City of Detroit*, 712 F.3d 925, 931–32 (6th Cir. 2013)

4

("Intervention may also be limited to claims raised by the original parties, subject to a bar to raising collateral issues." (internal quotation marks omitted)). In similar circumstances, where intervenors propose to bring claims "unrelated to the underlying action," intervention "ha[s] been routinely denied," including in this Court. *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 11885927, at *3 (S.D. Ohio Nov. 18, 2020) (Marbley, J.); *see also J4 Promotions, Inc. v. Splash Dogs, LLC*, 2010 WL 1839036, at *3 (S.D. Ohio May 3, 2010) (Marbley, J.) (collecting cases and denying intervention as of right). As this Court noted in *J4 Promotions*: "There is nothing preventing [the intervenor] from pursuing its claims in a separate . . . action." *Id.* Had the Court considered permissive intervention, that too would have faltered because injecting a congressional redistricting dispute into Plaintiffs' original case would cause prejudicial delay. *See* Fed. R. Civ. P. 24(b)(3) ("the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights").

Until recently, the Simon Parties had a separate action in which to pursue their congressional redistricting claims: *Simon v. DeWine* in the Northern District of Ohio. At the conference on April 11, the Simon Parties reported that they dismissed their Northern District case voluntarily because it had stalled following a lengthy stay and deferral to state-court litigation. They did so, however, lacking any affirmative indication that this Court intended to take up congressional redistricting. The proper course was to file for a TRO in the Northern District, thus alerting that court to the need for immediate action. As a last resort, the Simon Parties could have filed a writ of mandamus with the Sixth Circuit to lift the Northern District's stay and convene a three-judge panel.

The Court is receptive to the Simon Parties' desire to be heard on the merits and to their difficulty thus far in finding a receptive ear. Nonetheless, their best course at this point is to file a

5

new federal case in the Northern District specific to congressional redistricting and to move for a TRO as they see fit and panel appointment as the law requires. The Simon Parties would be able to pursue their legal interests in that other forum, without doubling the scope and complexity of this action in which they are not original parties.

Since the Court finds that congressional redistricting is not properly before it, the Court need not resolve the parties' arguments on the immediacy and irreparability factors, nor on the Simon Parties' likelihood of success on the merits. The Court defers those matters, should the Simon Parties elect to pursue them, to the Northern District. For the same reason, no preliminary injunction hearing will be scheduled. No set of facts could be adduced at such a hearing that would bring congressional redistricting into this case.

## IV. CONCLUSION

Accordingly, the Simon Parties' Second Motion for a Temporary Restraining Order (ECF No. 147) is **DENIED** because it exceeds the scope of their intervention. The Simon Parties will remain in this case, but for the purpose originally identified: addressing their constitutional challenge to the remedy or remedies sought with respect to the General Assembly redistricting.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**


*s/ Amul R. Thapar*
**AMUL R. THAPAR**
**UNITED STATES CIRCUIT JUDGE**


*s/ Benjamin J. Beaton*
**BENJAMIN J. BEATON**
**UNITED STATES DISTRICT JUDGE**


**DATED: April 12, 2022**