**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**GONIDAKIS, et al.,**
      Plaintiffs,

**BENNETT, et al.,**
      Intervenor-Plaintiffs,

**SIMON, et al.,**
      Intervenor-Plaintiffs,

and

**THE OHIO ORGANIZING COLLABORATIVE, et al.,**
      Intervenor-Plaintiffs,

**v. LAROSE,**                                 **Case No. 2:22-cv-773**
      Defendant,

**LEAGUE OF WOMEN VOTERS OF OHIO, et al.,**
      Intervenor-Defendants,

**SYKES, et al.,**
      Intervenor-Defendants,

**YOST**,
      Intervenor-Defendant,

and

**FABER, et al.,**
      Intervenor-Defendants,

_____/

**Amicus Brief on Behalf of Center for Competitive**
**Democracy in Support of No Party**

## Introduction

On April 7, 2022, the Court ordered the parties to address the following three questions:

1. Is there a federal right to vote in a primary if state law requires a primary for state elections? Please provide the specific text in the Constitution or a constitutional doctrine that grounds this right.

2. May Ohio simply not hold a primary and have a general election? If so, how would Ohio law provide for a general election for those seats?

3. Does the federal court have authority to move a primary election? Where does this authority come from?

Order, Doc. No. 172 at PageID # 5669. The parties have now answered these questions, unanimously agreeing for differing reasons that in regard to the first two questions Ohio must hold a primary for the Ohio General Assembly.

Amicus does not agree. Although Amicus agrees that Ohio must as a matter of federal constitutional law hold a general election for members of its House, its "most numerous branch," and likely must for members of it Senate, *see infra*, Amicus disagrees that Ohio must hold a primary for either. *See infra*. Neither the United States nor Ohio Constitutions require it. Further, Amicus believes Ohio could easily dispense with its primary and utilize its statutory qualifying mechanism for new political party candidates (O.R.C. § 3517.012(B)) without modification. *See infra*. Amicus takes no position on whether a federal court may change a constitutionally required primary date under the alleged facts of this case.

## **Argument**

### I. **Ohio Need Only Popularly Elect its Most Numerous House Under the Federal Constitution.**

Section 2 of Article I of the United States Constitution provides that members of Ohio's congressional delegation (like all States congressional delegations) must be selected "by the People" using the "the Qualifications requisite for Electors of the most numerous branch of the State Legislature." The Seventeenth Amendment now says effectively the same thing for United

States Senators. *See* U.S. Const., amend. XVII. Both assume that because States use "the people" to elect their "most numerous branch of the State Legislature," that same mechanism can be used for the federal House and Senate. This strongly implies that Ohio must conduct a popular, general election for its "most numerous branch of the State Legislature," i.e., the State House.

As for Ohio's Senate, in contrast, Ohio is free under the federal Constitution to forego popular elections altogether and choose some other selection mechanism, at least if it were to amend its own Constitution and statutes to allow it to do so in a timely fashion. Once a State chooses to popularly elect its State Senators (or anyone else), however, abandoning on too short notice a scheduled popular election would likely violate the First and Fourteenth Amendments to the United States Constitution. *See*, *e.g*., *Libertarian Party of Ohio v. Husted*, 2014 WL 11515569, *7 (S.D. Ohio 2014). Consequently, because Ohio has planned to popularly elect its State Senators, the popular general election that is already scheduled could not practically or constitutionally on such short notice be undone. For all practical purposes then, Ohio must popularly elect its Senate as well as its House during the 2022 election cycle.

Amicus understands that this Court is not considering what to do with the general election, of course. But whether Ohio must hold general elections under the federal Constitution bears on whether it must hold primaries beforehand. If Ohio were not required to conduct general elections as a matter of federal law, after all, it could also dispense with any primaries attached to those general elections as a matter of federal law. Because Ohio certainly cannot dispense with the House general election (because of Article I, § 2 of the United States Constitution), and likely could not dispense with the planned general election for its Senate at this time (because of practical difficulties and reliance interests under the First and Fourteenth Amendments), the question turns to whether it must use primaries.

II.    **Ohio Need Not Hold Primaries Under Federal Law and Might Not Need To Conduct Primaries Under Ohio's Constitution and Statutes.**

Even though Ohio must conduct a general election for its House under the federal Constitution, and likely cannot undo at this late date its laws requiring a general election for its Senate, it is clear that the federal Constitution does not require that Ohio hold primaries for either. The United States Constitution leaves to the States how parties choose candidates for elections. States may choose primaries for political parties, but could just as constitutionally choose petition procedures (which Ohio uses for unaffiliated candidates) or party selections (which Ohio uses for new political parties when more than two candidates qualify).

Meanwhile, Ohio's Constitution (unlike the federal Constitution) arguably requires primaries for political parties, though the matter is not without doubt. Section 7 of Article V of the Ohio Constitution states that "[a]ll nominations for elective state … offices shall be made at direct primary elections or by petition as provided by law." The Sixth Circuit relied on this provision to conclude in 2006 that Ohio's "Constitution requires that all political parties, including minor parties, nominate their candidates at primary elections." *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 582 (6th Cir. 2006). *See also State ex rel. Gottlieb v. Sulligan*, 193 N.E.2d 270 (Ohio 1963) (suggesting that primaries are constitutionally required in Ohio for political parties).

In contrast, Ohio's Tenth District Court of Appeals in *Libertarian Party of Ohio v. Husted*, 97 N.E.3d 1083 (Ohio App. 2017), more recently ruled that primaries need not be used for political parties under section 7 of Article V. In that case the Libertarian Party had challenged Ohio's 2013 law (O.R.C. § 3517.012) that requires "new" political parties (i.e., those had not maintained their ballot lines by winning 2% or 3% of the gubernatorial or presidential vote) and

their candidates to qualify by nominating petitions. No primaries are allowed under O.R.C. § 3517.012. The Tenth District concluded that because the Ohio Constitution states in section 7 of Article V that petitions "as provided by law" can also be used, primaries are not required.

Assuming the Tenth District is correct, Article V, § 7's petition alternative would allow Ohio to dispense with primaries for Ohio's two major political parties, too. Because of the Sixth Circuit's contrary conclusion, Amicus respectfully suggests that the better approach for this question might be to certify it to the Ohio Supreme Court.

**III.    The General Election Could Be Conducted Without a Primary.**

Assuming the Tenth District is correct about Ohio's Constitution, a general election for members of the General Assembly could easily be conducted without a primary using Ohio's existing statutory scheme. Section 3517.012(B) provides the needed mechanism. It has no connection with Ohio's primary system and uses its own unique deadlines that work backwards from the date of the general election. Because the two major parties have already qualified, there would be no need to use O.R.C. § 3517.012(A), which deals with how new political parties qualify. Instead, only the part providing how new party candidates qualify, which is in O.R.C. § 3517.012(B), is needed.

Section 3517.012(B)(2)(b) provides that district candidates must submit five voter signatures from party members no later than 110 days before the general election. That deadline would be on or around July 21, 2022 this election cycle. Assuming that constitutional general election maps exist by mid-July of this calendar year, then, candidates for the offices in those districts could easily collect the needed five signatures by the deadline. Should more than one party candidate qualify in a district, O.R.C. § 3517.012 provides that the political party must

choose its single nominee. Parties are given full control by Ohio law. The Libertarian Party successfully used this statutory mechanism in 2018 without a primary, proving that it works.

Applying O.R.C. 3517.012(B) requires no additional changes to Ohio law. Further, so long as maps are drawn by mid-July, they can easily be used in conjunction with O.R.C. § 3517.012(B).

## Conclusion

This Court should consider preserving the rights of Ohio's voters to participate in the 2022 general election by utilizing existing alternative mechanisms spelled out in Ohio law. Section 3517.012(B), in particular, provides the simplest solution to Ohio's political impasse. Its use does the least damage to Ohio law, and has the salutary effects of avoiding the expense of an unnecessary primary, providing the Ohio Supreme Court with more time to fashion maps that comply with Ohio law in the ongoing litigation before it, and quite possibly relieving this Court of that responsibility before it becomes absolutely necessary.

Respectfully submitted,

*s/ Mark R. Brown*

Mark R. Brown
303 E. Broad Street
Columbus, OH 43215
614.236.6590
mbrown@law.capital.edu
Counsel for Amicus