## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DISTRICT

| | | |
|---|---|---|
| MICHAEL GONIDAKIS, ET AL. | : | CASE NO. 2:22-CV-773 |
| | : | |
| PLAINTIFFS | : | CHIEF JUDGE ALGENON L. |
| | : | MARBLEY |
| | : | |
| VS. | : | |
| | : | CIRCUIT JUDGE AMUL R. |
| FRANK LAROSE, | : | THAPAR |
| | : | |
| DEFENDANTS. | : | JUDGE BENJAMIN J. BEATON |

## MOTION OF THE SIMON PARTIES TO ALTER OR AMEND APRIL 20, 2022 JUDGMENT, ECF #196 AND FOR SHORTENED RESPONSE TIME

In accordance with the provisions of Fed. R. Civ. P. 59(e), the Honorable Reverend Kenneth L. Simon, the Honorable Reverend Lewis W. Macklin, II and Helen Youngblood, ("the Simon Parties"), respectfully move to alter or amend this Court's April 20, 2022 Order granting Plaintiffs' Second Motion for Preliminary Injunction and Declaratory Relief, ECF Docket #196. Manifest injustice will occur unless the Order is altered or amended. The Court's April 20, 2022 Order approves use of an Ohio General Assembly redistricting plan that violates §2 and 3 of the Voting Rights Act of 1965, as amended, 52 U.S.C. §10301, et seq.

The April 20, 2022 Order ignored the Section 2 arguments raised by the Simon Parties in their Opposition to the Third Plan, ECF, Docket #100. As a result the Order approves a redistricting plan that is predicated on an unlawful blanket state policy to ignore racial demographics and the totality of circumstances applicable to whether the Plan diminishes the Simon Parties' ability to nominate and elect representatives of choice.

The Court's April 20, 2022 Order contains a fundamental flaw which, if uncorrected will lead to a result that is both inequitable and not in line with United States Supreme Court authority, in *Gingles v. Thornburg*, 478 U.S. 30 106 S. Ct. 2752 or *Brnovich*

*v. Democratic National Committee*, 141 S. Ct. 2321 (2021).  See, *Westfield v. United States*, 366 Fed. Appx. 614 (6ᵗʰ Cir. 2010).

Due to the expedited nature of proceedings in this election – related action, it is respectfully requested under Fed. R. Civ. P. 6(c) that the time for responding to this motion be shortened to five days and the time for Reply two days thereafter.

A memorandum in support of this motion is attached.

/s/ Percy Squire_____
Percy Squire (0022010)
Percy Squire Co., LLC
341 S. Third Street, Suite 10
Columbus, Ohio 43215
(614) 224-6528, Telephone
(614) 224-6529, Facsimile
psquire@sp-lawfirm.com
Attorney for Simon Party Plaintiffs

2

**MEMORANDUM**

A.    **INTRODUCTION**

The Simon Parties'' putative class is comprised of descendants of American slaves, persons protected by the provisions of 52 U.S.C. §10301, et seq. the Voting Rights Act ("VRA"). The putative representatives of the Simon Class, Revered Kenneth L. Simon, Reverend Lewis W. Macklin, II and Helen Youngblood, were members of the class of Black voters certified in *Armour v. Ohio*, N.D. Ohio Case No. 4-88-cv-1104. The claims asserted by the Simon Parties are based, part, on the history of racial discrimination in Ohio's Mahoning Valley, the Youngstown-Warren, Ohio area  which is dissected by the Mahoning River. This history of discrimination in voting is  documented in *Armour*.

The Simon Parties objected to approval of the redistricting plan cleared for use by the Court's April 20, 2022 Order. See, ECF #100. The Court's April 20, 22 Order does not address the Simon Parties' claim that Defendants' failure to consider racial demographics or the historical findings of racial discrimination and polarization in voting in Ohio's Mahoning Valley when drawing the plan, violates the VRA. Failure to address race and the totality of circumstances in connection with configuration of the legislative districts in the Mahoning Valley was not addressed in the April 20, 2022 Order.  Accordingly, this Motion seeks clarification.

Under the plan approved by this Court, the Senate District foisted on the Simon Parties consists of three Ohio counties, Mahoning, Columbiana and Carroll.

According to the 2020 Census PL 94-171, Carroll County, Ohio has 72 Black people. Columbiana County has 2,122.  The 2022 targeted size for an Ohio Senate District is 357,559 according to the Ohio Redistricting Commission.  The Mahoning Valley Senate District approved by the April 20, 2022 Opinion, the 33rd District contains 357,121 person.

Mahoning County is bordered on the North by Trumbull County. Mahoning County has 34,835 Blacks. Trumbull County has 17,200.00. The Black population in Mahoning and Trumbull County is sufficiently large, geographically compact and subject to a non Black voting electorate that is racially polarized.  The plan approved by this Court permits, in violation of the VRA for these two historically aligned communities Mahoning and Trumbull Counties to be fragmented into separate Ohio House and Senate districts, pursuant to a blanket policy of non consideration of racial demographics or history of racially polarized voting.  The Simon parties fundamental rights are injured if they are required to vote in these racially unfair districts. The Simon Parties raised these issues in response to the Plaintiffs Second Motion for a temporary restraining order.  The Court's April 20, 2022 Order does not address the issue of race or the VRA. Accordingly, the Simon Parties respectfully move to alter or amend the April 20, 2022 Order which permits Defendants to racially discriminate against the Parties by violating §2 and 3 of the VRA, rather than instructing Defendants to immediately craft a new plan and to engage in an intensely local appraisal of indigenous political reality in the Mahoning Valley as mandated in *Thornburg v. Gingles*, 478 U.S. 30 106 S. Ct. 2752.

There is no justification for submerging the Mahoning Valley vote protected by the VRA into a Senate district compromised of a county with a total of 72 Blacks and another with 2,122 Blacks. This is outrageous.

## B.     MOTION TO ALTER OR AMEND STANDARDS

The manifest injustice created by the Court's April 20, 2022 Order is redressable under Fed. R. Civ. P. 59(e).

Judge Marbley stated in *Intera Corp v. Henderson*, 428 F.3d 605 (6th Cir. 2005):

> A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999) citations omitted).

Likewise in *Washington v. Riverview Hotel, Inc.*, 2022 U.S. App. LEXIS 6303, a

Panel which included Judge Thapar stated:

> A district may grant a Rule 59(e) motion "if there is: (1) a clear error of law; (2) newly discovered evidence; [*14] (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera*, 428 F.3d at 620.

In this case the Court should immediately  address the Simon Parties' VRA claim

to prevent manifest injustice.

The Simon Parties have repeatedly been told to wait or go someplace else for relief.

Now they are being ordered to participate in a General Assembly election where their

voting strength has been nullified by placement into a racially polarized base. This

treatment is unfair.The Simon parties filed their claims for relief under the heralded Voting

Rights Act . The Plaintiffs filed their action after Simon ,but were accorded relief sooner

and against prior findings that the relief they sought violated both State and federal law .

This is a clear case of manifest injustice warranting Rule 59(e) relief.

It has been held that Rule 59(e) may be invoked to "support reconsideration of

matters properly encompassed in a decision on the merits." *White v. New Hampshire Dep't

of Emp't Sec*., 455 U.S. 445, 451 (1982).[1] This rule promotes judicial efficiency by letting

a district court "rectify its own mistakes in the period immediately following entry of

---

[1] Rule 59(e) does not enumerate the bases for seeking relief, but courts have traditionally granted relief on one of four grounds:  (1) "manifest errors of law or fact upon which the judgment is based"; (2) "newly discovered or previously unavailable evidence"; (3) "manifest injustice"; and (4) "an intervening change in controlling law." 11 C. *Wright, A. Miller & M. Kane, Federal Practice and Procedure* § 2810.1, pp. 158-162 (3d ed.. 2003) (Wright & Miller).

judgment," *id*. at 450, thus avoiding needless appeals to correct obvious errors. It also ensures that the "appellate court will have the benefit of the district court's plenary findings," *Osternick v. Ernst & Whitney,* 489 U.S. 169, 177 (1989), to the extent a Rule 59(e) motion prompts the district court to clarify its earlier decision.

The Simon Parties seek clarity here. Is it lawful for Defendants to ignore the historical findings in *Armour* and to adopt a blanket policy of ignoring racial demographics notwithstanding the presentation of evidence of racial discriminatory results?

Chief Judge Walker recently noted in the Northern District of Florida "The right to exercise the franchise in a free and unimparted manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized." *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964).

Judge Walker went on to say:

"This Court recognizes that the right to vote, and the VRA particularly, are under siege. *See, e.g., Ark. State Conf. NAACP v. Ark. Bd. Of Apportionment*, No. 4:21-cv-01239-LPR, 2022 WL 496908, at \*2 (E.D. Ark. Feb. 17, 2022) (dismissing a "strong merits case" that Arkansas had, to the detriment of Black voters, racially gerrymandered seats in the Arkansas House of Representatives under the theory that no private right of action is available under section 2 of the VRA); *Merrill v. Milligan*, 142 S. Ct. 879 (2022) (staying, without explanation, order enjoining racially gerrymandered congressional maps); *Brnovich v. Democratic Nat'l Comm*., 141 S. Ct. 2321, 2351 (2021) (Kagan, J., dissenting) ("Today, the Court undermines Section 2 [of the VRA] and the right it provides."); *Shelby Cnty., Ala. v. Holder,* 570 U.S. 529 (2013) (gutting the VRA's preclearance regime).

Federal courts must not lose sight of the spirit that spurred the VRA's passage. In June 1965, Martin Luther King Jr. wrote a letter to the New York Amsterdam News urging Congress to pass the VRA. In it, he wrote that "to deny a person the right to exercise his political freedom at the polls is no less a dastardly act as to deny a Christian the right to petition God in prayer." Martin Luther King Jr., Let My People Vote, The Atlantic, https://tinyurl.com/2sfx63u4 (last visited Mar. 22, 2022). Federal courts would not countenance a law denying Christians their sacred right to prayer,

and they should not countenance a law denying Floridians their sacred right to vote.

At the outset, this Court notes that the parties have vastly different views on how this Court should approach this case. To hear Plaintiffs tell it, Florida wears a constitutional straitjacket any time it revises its election code. To hear Defendants tell it, Florida holds a constitutional blank check. Neither is true.

States enjoy considerable discretion in regulating their elections. Article I of the Constitution tasks states with enacting laws governing "[t]he Times, Places and Manner of holding Elections for Senators and Representatives." U.S. Const. art. I, § 4, cl. 1. But the states' discretion is not limitless. The states must comply with acts of Congress, such as the VRA. *See id.* ("[B]ut the Congress may at any time by Law make or alter such Regulations."). They must also comply with the Constitution. For example, election regulations cannot "deny to any person . . . the equal protection of the laws." U.S. Const. amend. XIV. And states cannot deny the right to vote based on race, sex, or failure to pay a tax. U.S. Const. amend. XV, § 1; U.S. Const. amend. XIX; U.S. Const. amend. XXIV. Nor, for citizens older than 18, can states deny the right to vote based on age. U.S. Const. amend. XXVI.

Section 2 provides:

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 10303(0(2) of this title, as provided in subsection (b).

(b)A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

52 U.S.C. § 10301.

"Unlike discrimination claims brought pursuant to the Fourteenth and Fifteenth Amendments, which require proof of both discriminatory intent

and actual discriminatory effect, the language of section 2(a) of the VRA requires only proof of discriminatory 'results,' not of discriminatory intent." *GBM*, 992 F.3d at 1328-29. Further, The Supreme Court, in *Brnovich v. Democratic National Committee*, 141 S. Ct. 2321 (2021), made plain that section 2 commands "consideration of 'the totality of circumstances' that have a bearing on whether a State makes voting 'equally open' to all and gives everyone an equal 'opportunity' to vote." *Id*. at 2341.

The VRA is an extraordinary solution to an extraordinary problem. Congress passed the VRA because it "felt itself confronted by an insidious and pervasive evil which had been perpetuated in certain parts of our country through unremitting and ingenious defiance of the Constitution." *South Carolina v. Katzenbach*, 383 U.S. 301, 309 (1966). Congress also concluded that previous remedies for voting discrimination had fallen short and "would have to be replaced by sterner and more elaborate measures in order to satisfy the clear commands of the Fifteenth Amendment." *Id*.

See, *League of Women Voters v. Lee*, M.D. FL, Case No. 4:21-cv-186 (March 31, 2022).

The Court's April 20, 2022 majority opinion ignores the Simon Parties VRA claim. Accordingly, it is respectfully requested that the order be altered or amended to require Defendants to develop a plan by May 28, 2022 that comports with the VRA and considers racial demographics, rather than approving the racially discriminatory Plan adopted by the Defendants on February 28, 2022, the Third Plan.

/s/ Percy Squire_____
Percy Squire (0022010)
Percy Squire Co., LLC
341 S. Third Street, Suite 10
Columbus, Ohio 43215
(614) 224-6528, Telephone
(614) 224-6529, Facsimile
psquire@sp-lawfirm.com
Attorney for Simon Party-Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served by operation of the United States District Court, Southern District of Ohio electronic filing system, on April 25, 2022.

*s/Percy Squire, Esq.*
Percy Squire (0022010)
Attorney for Simon Party-Plaintiffs
