**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| MICHAEL GONIDAKIS, ET AL. | : | CASE NO. 2:22-CV-773 |
| | : | |
| PLAINTIFFS | : | CHIEF JUDGE ALGENON L. |
| | : | MARBLEY |
| | : | |
| VS. | : | |
| | : | CIRCUIT JUDGE AMUL R. |
| FRANK LAROSE, | : | THAPAR |
| | : | |
| DEFENDANTS. | : | JUDGE BENJAMIN J. BEATON |

**MOTION OF THE SIMON PARTIES TO ALTER OR AMEND MAY 12, 2022**
**ORDER, ECF #201 AND FOR SHORTENED RESPONSE TIME**

**A.     INTRODUCTION**

In accordance with the provisions of Fed. R. Civ. P. 59(e), the Honorable Reverend

Kenneth L. Simon, the Honorable Reverend Lewis W. Macklin, II and Helen Youngblood,

("the Simon Parties"), respectfully move to alter or amend this Court's May 12, 2022 Order

denying Plaintiffs' Second Motion for Preliminary Injunction and Declaratory Relief, ECF

Docket #147. Manifest injustice will occur unless the Order is altered or amended in

advance of its implementation of Map 3 of the current proposed  redistricting of the Ohio

General Assembly.

The Court's May 12, 2022 Order must be altered or amended for numerous reasons.

Among them, the Order states incorrectly on p. 6 ECF Docket #201 PAGE ID #6320 "First,

the *Armour* court did not conduct a *Gingles* analysis because it concluded (erroneously, we

now know) that *Gingles* did not apply to single member districts *Armour v. Ohio*, 775 F.

Supp. 1044, 1051 (N.D. Ohio 1991).  As will be explained below, *Armour* did not say the

*Gingles* preconditions do not apply to single member district claims. *Armour* held the

nature of the claim presented was not governed by *Gingles* because the claim was based

upon different theory than the claim in Gingles.. The May 12, 2022 Order also states

incorrectly in connection with whether Plaintiffs' claim is cognizable under the Voting Rights Act, that "the most Simon can muster is an influence district-which the Voting Rights Act does not require" citing *Bartlett v. Strickland*, 556 U.S. 1 (2009).

The claim asserted here by the Simon Parties is not as stated in the May 12 Order, a claim that by aggregating Black voters in Mahoning and Trumbull County, Ohio into a single Ohio Senate District that their numbers are sufficient to prevail in a general election for an Ohio Senate seat. The May 12 Order completely misses the point that the Simon claim, like the claim in *Armour.* is a claim that the 33rd Ohio Senate District as proposed in Map 3 will result in the process leading to <u>nomination</u> of a candidate of choice not being equally open to the Simon parties. This Court's May 12, 2022 Order, the analysis in *Thornburg v. Gingles*, 478 U.S. 30 (1986), *Growe v. Emison*, 507 U.S. 25 (1993), and *Bartlett v. Strickland*, 556 U.S. 1 (2009), all involve either a challenge to a multimember district scheme in a jurisdiction, with either a run-off or majority vote requirement, such as North Carolina, or involve claims that the challenged districts resulted in inability to <u>elect</u>. No case relied upon in the May 12, 2022 Order concerns ability to <u>nominate</u>.

The Simon claim here is not an "election" claim in a jurisdiction with a majority vote requirement, a run off requirement, or a limit on the number of candidates that may compete in a primary election. The Simon claim is that if Youngstown and Warren are placed into the same Senate district they can <u>nominate</u> a candidate of choice.

The recent nomination of J.D. Vance for an Ohio U.S. Senate seat with 32.2% of the vote is clear evidence of Simon's nomination argument's validity. It is illogical to suggest that in order to state a §2 claim challenging the impairment of the ability to <u>nominate</u> requires a 50% *Gingles* precondition threshold to state a claim under the VRA, when 50% of the vote is not required to prevail in an Ohio primary election. None of the

opinions cited in the May 12, 2022 Order dealt with a Section 2 "nomination" claim. The upshot of this argument is *Armour* was not incorrect and has never been reversed. *Armour* was a nomination claim. Proof of *Armour's* validity is for the first time in history following *Armour,* a Black was nominated and then elected to the 64th Ohio House District.

## B. GINGLES PRECONDITIONS

The Voting Rights Act states in Section 2:

Section 2, as amended, 96 Stat. 134, reads as follows:

"(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(t)(2), as provided in subsection (b)."

"(b) A violation of subsection (a) is established if based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population."

(Emphasis added.)

*Gingles*, despite *LULAC v. Perry*, 548 U.S. 339 (2006), *Growe* or *Strickland* remains settled law concerning the proof required for a §2 claim. *Gingles* states:

The right question…is whether "as a result of the challenged practice or structure, plaintiffs do not have an equal opportunity to participate in the political processes and to elect candidates of their choice. [Footnote 9]

The *Armour* opinion provided a thorough evaluation of past reality in the Mahoning Valley. It also devised a framework based upon a <u>functional</u> view of primary elections in

the Mahoning Valley. *Armour* did not involve a multimember district claim, a claim in a jurisdiction with a majority vote or runoff requirement, a claim based on a coalition of voters, or an influence claim. *Armour* involved a claim concerning whether the challenged districting resulted in the political process leading to nomination, which is the dispositive contest in the Mahoning Valley, not being equally open. Neither *Gingles* nor its successor opinions, cited in the May 12, 2022 Order, deal with a nomination claim. Neither Simon's claim nor *Armour* is therefore subject to the *Gingles* preconditions, even though as will be shown below, Simon can satisfy the *Gingles* test.

*Gingles* made it clear that the criteria announced were not to be applied universally or mechanistically. In point of fact, *Gingles* footnote 12 states:

> The claim we address in this opinion is one in which the plaintiffs alleged and attempted to prove that their ability to elect the representatives of their choice was impaired by the selection of a multimember electoral structure. We have no occasion to consider whether § 2 permits, and if it does, what standards should pertain to, a claim brought by a minority group that is not sufficiently large and compact to constitute a majority in a single-member district, alleging that the use of a multimember district impairs its ability to influence elections.
>
> We note also that we have no occasion to consider whether the standards we apply to respondents' claim that multimember districts operate to dilute the vote of geographically cohesive minority groups that are large enough to constitute majorities in single-member districts, and that are contained within the boundaries of the challenged multimember districts, are fully pertinent to other sorts of vote dilution claims, such as a claim alleging that the splitting of a large and geographically cohesive minority between two or more multimember or single-member districts resulted in the dilution of the minority vote.

Id.

There is no authority for the proposition that a nomination claim filed in a jurisdiction without a majority vote requirement must meet the *Gingles* precondition.

## C. SIMON CAN SATISFY GINGLES PRECONDITIONS

4

The May 12, 2022 Order states that Defendants' Rule 9, expressly prohibiting consideration of racial demographic, is a method of redistricting and the VRA does not prohibit use of any particular method of redistricting citing *Bonilla v. City Counsel of City of Chi*. 809 F. Supp. 590 (N.D. Ill 1992). That statement is wrong. The VRA prohibits the use of any redistricting method that results in the political processes leading to nomination or election by representatives of choice not being equally open. The method chosen here by Defendants does just that.

To determine if Defendants' redistricting method produces a proscribed result as alleged by Plaintiffs here, according to the procedure mandated by *Gingles*, it is necessary to engage an intensely localized and practical evaluation of the past political reality in the Mahoning Valley. Such an evaluation and the *Gingles* preconditions all involve an analysis of race to assess numerosity and polarization preconditions. How can one evaluate race's impact or results without considering race?

The May 12, 2022 Opinion not only incorrectly applies *Gingles* preconditions to a nomination claim, it also alleges that the Simon parties shift the burden of proof onto the Commission. The Opinion states it is up to Simon in the first instance to prove that each of the *Gingles* preconditions are met and then show dilution under the totality of the circumstances test. First, the May 12, 2022 Opinion does not state to whom Simon must make the initial showing, is it the Commission or the Court. The Simon parties could not present proof of satisfaction of the *Gingles* preconditions to the Commission because the *Gingles* precondition all involve racial demographic information. The Commission's Rule 9 barred consideration of racial data.

If it's the Court to whom the *Gingles* racial data must be shown in the first instance, it is unlikely a Court will consider any information that was not first presented to the

5

Commission. In point of fact, the Supreme Court stated in *Quilter v. Voinovich*, 507, U.S. 146 (1993). "Section 2(b) places at least the initial burden of proof of apportionment invalidity on Plaintiffs' shoulders." *Id.* at 147. Plaintiffs here were precluded by Defendants' Rule 9 from presenting racial data to prove invalidity. The May 12, 2022 Order's treatment of Commission Rule 9 creates a Catch 22 circumstance, a problematic situation for which the only solution is denied by a circumstance inherent in the rule, here providing proof of racially unfair results to a Commission that will not consider race. This reasoning smacks of a post reconstruction era voter registration test and is not supported by the VRA's Senate Report factors or Gingles

The Simon Parties contend separating Youngstown from Warren in connection with the 33rd Senate District results in an unlawful dilution of their ability to nominate a representative of choice. Youngstown has 34,835 Blacks, Warren 17,200. A Senate District has 357,559. The voting age population is 77.45% or 357,559. Only 46% of the VAP votes democratic according to the political index underlying Map 3. The number of Blacks geographically compact in the Youngstown-Warren area is sufficient to nominate a candidate of choice. The May 12, 2022 Opinion focuses incorrectly on the number required for election, rather than the number required to nominate. In the 2020 primary election for the 32nd Senate District, only 26,151 votes were required to nominate[1]. Black Democratic voters in the Simon proposed district would exceed that number.

The polarized nature of voting in the area can be gleaned readily by a review of the results of the 2020 Presidential election. Voting is clearly racially polarized. This conclusion is bolstered by the fact no Blacks have been elected to countywide office in

---

[1] See, March 17, 2020 Primary Election Results, Ohio Secretary of State

either county. The Court's May 12, 2022 Opinion reduces to the proposition that state officials have no affirmative duties under §2 of the VRA. This is not the law and it is a violation of the plain language of the Act and *Gingles*.

Accordingly, it is respectfully requested the May 12, 2022 Opinion be vacated , use of Map 3 be denied and independent map makers be appointed to develop lawful Ohio General Assembly maps.

/s/ Percy Squire_____
Percy Squire (0022010)
Percy Squire Co., LLC
341 S. Third Street, Suite 10
Columbus, Ohio 43215
(614) 224-6528, Telephone
(614) 224-6529, Facsimile
psquire@sp-lawfirm.com
Attorney for Simon Party Plaintiffs

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served by operation of the United States District Court, Southern District of Ohio electronic filing system, on May 24, 2022.

*s/Percy Squire, Esq.*
Percy Squire (0022010)
Attorney for Simon Party-Plaintiffs