UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL GONIDAKIS**, *et al.*, : | |
| : | |
| Plaintiffs, : | Case No. 2:22-cv-0773 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | Judge Amul R. Thapar |
| **FRANK LAROSE**, in his capacity as : | Judge Benjamin J. Beaton |
| **Ohio Secretary of State**, *et al.*, : | |
| : | |
| Defendants. : | |

# ORDER

BEFORE: THAPAR, Circuit Judge; MARBLEY, Chief District Judge; and BEATON, District Judge.

The court delivered a PER CURIAM opinion in which THAPAR and BEATON, JJ., joined. BEATON, J. (pp. 3–4), delivered a separate concurring opinion. MARBLEY, C.J. (pp. 5–8), delivered a separate dissenting opinion.

PER CURIAM. Ohio's struggle to implement a map for its state elections continues. The facts and procedural history of this case are laid out in our April 20 Memorandum Opinion and Order ("prior opinion"). *See Gonidakis v. LaRose*, No. 2:22-cv-0773, 2022 WL 1175617, at *3 (S.D. Ohio Apr. 20, 2022). This order closes that chapter.

In our prior opinion, we refrained from intervening in Ohio's state elections. Yet we said that we would intervene to guarantee a state election if the State's officials could not approve another map in time. Supreme Court precedent guided us at every turn. Two cases in particular, *Branch* and *Growe*, offered a template that we followed. *Branch v. Smith*, 538 U.S. 254, 260 (2003); *Growe v. Emison*, 507 U.S. 25 (1993).

In those cases, the Court instructed federal district courts to give states maximal flexibility to craft their own solutions. More specifically, federal district courts must wait to act until the last

1

possible moment. These instructions reflect principles of federalism and comity. We must presume state actors will work together to reach homegrown solutions. And if they fail, then it is up to the voters to punish them if they so choose.

Guided by these principles, our prior opinion announced that we would impose Map 3 on May 28 unless Ohio came up with another solution by then. We recognized from the outset that choosing a remedy would be challenging. And between the standoff among state officials and the delay in getting the case, our options were limited. So we chose the best of our bad options.

Given the factual record before us, two reasons justified our approach. First, no map had won the approval of both the Commission and the Ohio Supreme Court. And second, Map 3 gave the State the most time to fix its own problem. That broke the tie.

So far, the State has failed to act. Assuming no map is approved by midnight on Saturday, May 28, we order Secretary of State Frank LaRose to push back Ohio's state primaries to August 2, 2022, and to implement Map 3 for this year's elections *only*.

**AMUL R. THAPAR**
**UNITED STATES CIRCUIT JUDGE**

**BENJAMIN J. BEATON**
**UNITED STATES DISTRICT JUDGE**

2

**Beaton, J., concurring:**

This three-judge district court decided on April 20 that Ohio voters were likely to lose their constitutionally protected right to vote absent federal intervention. Our decision was unanimous in all but remedy. And the choice of remedies, as our per curiam majority opinion noted, was a difficult one: Given the stalemate among the state's elected officials, and the lack of any resolution in the state courts, federal intervention was by definition restricted to "a menu of unappetizing options." *Gonidakis v. LaRose*, No. 2:22-cv-0773, 2022 WL 1175617, at *2 (S.D. Ohio Apr. 20, 2022). Based on the factual record before the panel on April 20, our majority opinion explained why Map 3 was "less than ideal," but "the least bad option." *Id.* at *27.

Today's dissent describes several developments in Ohio "*following* the majority's April opinion." Dissent at 1 (emphasis added). This is a curious way to critique today's ministerial order, which instructs the Secretary of State to implement the relief described on April 20 based on the record before this court on April 20.

If any of the many well-counseled parties believed these subsequent developments justified revisiting, modifying, or reversing our ruling, they were free and perhaps even obliged to raise those issues when this panel or a higher court might reasonably have considered them. But no party cited these extra-record events, disputed our factual findings, or identified any other map that would vindicate the plaintiffs' rights without further torturing Ohio election law.[*] And not for lack of opportunity: weeks ago this panel received and acted promptly on a motion to alter or amend our April 20 ruling based on the Voting Rights Act—again agreeing unanimously in practically every respect. *See Gonidakis v. LaRose*, No. 2:22-cv-0773, 2022 WL 1503406, at *3 (S.D. Ohio

---

[*] Hours before this order issued, one intervenor filed a motion to modify (DN 204), which sought a later primary date that the panel already explained was incompatible with the record in this case and with Ohio law, *see Gonidakis*, 2022 WL 1175617, at *22.

3

May 12, 2022). Presumably it was clear by this point that the only way to afford state officials more time—as required by *Growe* and *Branch*—was by relying on Map 3.

The dissenting opinion describes this deference as "feigned" because we should have foreseen that the Commission would not enact a map the state Supreme Court would approve. Dissent at 3 (citing *League V*, 2022-Ohio-1727, ¶ 16 (O'Connor, C.J., concurring)). This is quite a charge. It sits in some tension with the Supreme Court's command, cited in our per curiam, that judges must presume good faith. *Abbott v. Perez*, 138 S. Ct. 2305, 2324–25 (2018). Our decision did just that. After waiting until April 20, the opinion necessarily explained, at some length, the factual and legal basis for staying our hand still longer: the reasons that justified both our remedial choice (*Gonidakis*, 2022 WL 1175617, at *23–27) and our rejection of a competing proposal rejected by the Commission, advanced by an intervenor, and embraced by the dissent (*Id.* at *27–28). *All* the maps before this Court on April 20 were flawed. Imposing a different map even sooner—based on speculation about what state officials might do—would've violated our duty to defer as long as possible.

The state constitutional stalemate that brought us into this dispute apparently still persists, even as the electoral calendar has advanced. Any effects our opinion had on that ongoing dispute not only post-dated our decision, but also concerned a fundamentally different issue: how state officials would utilize the time after April 20, the agreed "drop-dead" date, to resolve Ohio's constitutional crisis. That question of state governance is not before this federal court today, just as it was not before us on April 20. Rather, our opinion addressed whether and when federal law required us to intervene. For the reasons stated then, which remain undisturbed now, the remedy described in our previous opinion remains the least bad option available.

4

## **MARBLEY, C.J., DISSENTING**

The majority's order implements that which its April opinion made inevitable: for the next two years, the General Assembly will operate under a district map that is unconstitutionally gerrymandered. I recognize that today's order is a ministerial one, so I will not restate my full analysis of the Commission's flawed third map as set forth in my prior dissent. I will, however, take this occasion to address the events that flowed from the majority's April opinion, which regrettably have tracked my predictions.

Previously, I stated my "disagree[ment] with the majority's decision to couch its approval of the third map in the language of deferral." (ECF No. 196 at 78). The main reason the majority cited for choosing the third plan was that it "provides Ohio more than a month of additional time to fashion its own solution." (*Id.* at 47 (majority opinion)). Yet, I wrote that the majority opinion "ha[d] set a strong, almost immovable default," and "virtually ensure[d] that the third map will be used for an August 2 primary." (*Id.* at 78). This proved prescient.

Following the majority's April opinion, the Commission never attempted to craft a constitutionally compliant fifth plan. Two Commissioners, who had participated in all prior rounds of map-drawing, actually ceased their service and appointed substitutes. *See* Transcript of May 4, 2022 Commission Meeting, at 1.[1] The Commission finally reconvened on May 4, 2022—two days before the deadline set by the Ohio Supreme Court, and a full twenty days after the court had "order[ed] the commission to be reconstituted, to convene, and to draft and adopt an entirely new General Assembly–district plan that meets the requirements of the Ohio Constitution." *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, 2022-Ohio-1235, ¶¶ 78–79 (Ohio S. Ct.

---

[1] https://redistricting.ohio.gov/assets/organizations/redistricting-commission/events/commission-meeting-may-4-2022-296/transcript-1641.pdf (accessed May 25, 2022).

5

Apr. 14, 2022) ("*League IV*"); *see also* Previous Meetings of Ohio Redistricting Commission.[2] In its very next meeting, the Commission voted to *re*adopt the third plan—the same one already ruled unconstitutional in *League III*, which the majority forecast this panel would implement. *See* Transcript of May 5, 2022 Commission Meeting, at 8–12.[3] The Commission fully disregarded the Ohio Supreme Court's order to draft a *new* plan, in what Chief Justice O'Connor described as "a stunning rebuke of the rule of law." *League of Women Voters of Ohio v. Ohio Redistricting Comm'n*, 2022-Ohio-1727, ¶10 (Ohio S. Ct. May 25, 2022) ("*League V*") (O'Connor, C.J., concurring). Predictably, the Ohio Supreme Court found the resubmitted map to be, once again, "invalid in its entirety." *Id.* ¶ 5 (per curiam).

If there was any hope of the Commission fulfilling its constitutional duty, this federal panel quashed it. Like I predicted, "state actors [*were*] led to believe that there is no urgency to reach their own solution." (ECF No. 196 at 78). Chief Justice O'Connor recognized the same:

> [T]he federal court did not "stay [its] hand until May 28," as it stated it would, and leave the state to fix the crisis created by the commission's own actions. Instead, the federal court provided the Republican commission members not only a roadmap of how to avoid discharging their duties but also a green light to further delay these proceedings by stating its intention to implement "Map 3" . . . all the while acknowledging that this court had declared Map 3 to be invalid and unconstitutional.

*League V*, 2022-Ohio-1727, ¶ 11 (O'Connor, C.J., concurring) (quoting ECF No. 196 at 4 (majority opinion)) (internal citations omitted). The majority's April opinion assured the Commission that if it simply waited another month, the panel would enable it to circumvent the Ohio Supreme Court and realize a map with the desired partisan favoritism. The Commission took the invitation. I still harbor grave concerns about the "perverse incentives" that will hang over the

---

[2] https://redistricting.ohio.gov/meetings (accessed May 25, 2022).
[3] https://redistricting.ohio.gov/assets/organizations/redistricting-commission/events/commission-meeting-may-5-2022-316/transcript-1642.pdf (accessed May 25, 2022).

2024 redistricting cycle too, now that "the Commission has learned that it is beyond reproach." (ECF No. 196 at 81).

I write not to bolster my dissent with hindsight, but in the hope that future panels will realize this case should not be categorized in the *Growe* line of deferral jurisprudence. *Growe* embodies the principle that "a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." 507 U.S. 25, 34 (1993). Though the majority maintains today that its April opinion "refrained from intervening in Ohio's state elections," it in fact derailed any reasonable prospect of a state solution and ordained the outcome that the majority now, definitively, orders. As I said before, "this is not deferral in the sense that *Growe* contemplates." (ECF No. 196 at 79). As Chief Justice O'Connor put it, "the federal-court majority[] feigned interest in 'buy[ing] Ohio more time.'" *League V*, 2022-Ohio-1727, ¶ 16 (O'Connor, C.J., concurring) (quoting ECF No. 196 at 47 (majority opinion)). Or as State Representative Bill Seitz, a senior House leader, brashly wrote just hours after the majority's April opinion issued:

> Too bad so sad. We win again. . . . Now I know it's been a tough night for all you libs. Pour yourself a glass of warm milk and you will sleep better. The game is over and you lost. . . . Turn out the lights. The party's over. For this 2 year cycle at least.

Representative Bill Seitz (@CincySeitz), Twitter (Apr. 20, 2022), https://twitter.com/CincySeitz/with_replies (accessed May 25, 2022).[4]

For all purposes, this case was decided on April 20—which all parties agreed (and I concurred) was the "drop-dead date" for federal-court action. (*See* ECF No. 196 at 3 (majority opinion) & 61–62). Beyond that, deferral was dispositive.

---

[4] Also reported by Andrew J. Tobias, *Republicans take victory lap after federal redistricting ruling, prospects unclear for future redistricting progress*, Cleveland Plain Dealer (Apr. 21, 2022), https://www.cleveland.com/news/2022/04/republicans-take-victory-lap-after-federal-redistricting-ruling-prospects-unclear-for-future-redistricting-progress.html (accessed May 25, 2022).

When the "drop-dead date" arrived, the core issue in this case became *choice of remedies*, which is obscured by the majority's continuing overtures to deferral. I remain convinced that the best remedy, from a standpoint of federalism and comity, was the Johnson/McDonald Plan. Their legislative map was crafted per the Commission's detailed instructions, satisfied the Ohio Constitution's substantive redistricting criteria, had indicia of approval from the Ohio Supreme Court, and was abandoned chiefly for lack of time. Instead, the majority selected as its remedy the Commission's third map, which now receives a final blessing—despite the Ohio Supreme Court reiterating its unconstitutionality in *League V* this week. The consequences, as I have explained, are severe: "in so doing, the majority tables a watershed constitutional referendum, abrogates controlling decisions of the state Supreme Court, and unwittingly rewards the Commission's brinksmanship over the rights of Ohio voters." (ECF No. 196 at 59). Thus, I continue to dissent.

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: May 27, 2022**