# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DISTRICT

| | | |
|---|---|---|
| MICHAEL GONIDAKIS, ET AL. | : | CASE NO. 2:22-CV-773 |
| PLAINTIFFS | : | CHIEF JUDGE ALGENON L. MARBLEY |
| VS. | : | CIRCUIT JUDGE AMUL R. THAPAR |
| FRANK LAROSE, | : | |
| DEFENDANTS. | : | JUDGE BENJAMIN J. BEATON |

## **MOTION TO STAY PENDING APPEAL**

In accordance with the provisions of Fed. R. Civ. P. 62(d), the Honorable Reverend Kenneth L. Simon, the Honorable Reverend Lewis W. Macklin, II and Helen Youngblood (hereinafter "the Simon Parties") respectfully move, in light of the filing by the Simon Parties of an appeal as of right to the Supreme Court of the United States, to stay ECF Dockets # 201 and 205 entered May 12 and 27, 2022, respectively ordering the Ohio Secretary of State to implement for an August 2, 2022 primary election six times rejected Map 3 of the reapportionment of the Ohio General Assembly.

A memorandum in support of this motion is attached.

/s/ Percy Squire
Percy Squire (0022010)
Percy Squire Co., LLC
341 S. Third Street, Suite 10
Columbus, Ohio 43215
(614) 224-6528, Telephone
(614) 224-6529, Facsimile
psquire@sp-lawfirm.com
Attorney for Simon Party Plaintiffs

**MEMORANDUM**

In accordance with the provisions of Fed. R. Civ. P. 62(d), the Honorable Reverend Kenneth L. Simon, the Honorable Reverend Lewis W. Macklin, II and Helen Youngblood, ("the Simon Parties"), respectfully move to stay this Court's May 12, 2022 Order denying Plaintiffs' Second Motion for Preliminary Injunction and Declaratory Relief, ECF Docket #147 and its May 27, 2022 Order ECF Docket #205 ordering implementation of Map 3. Manifest injustice will occur unless both Orders are stayed in advance of implementation of Map 3 of the current proposed reapportionment of the Ohio General Assembly.

The Court's May 12, 2022 Order must be stayed for numerous reasons. Among them, the Order states incorrectly on p. 6 ECF Docket #201 PAGE ID #6320 "First, the *Armour* court did not conduct a *Gingles* analysis because it concluded (erroneously, we now know) that *Gingles* did not apply to single member districts *Armour v. Ohio*, 775 F. Supp. 1044, 1051 (N.D. Ohio 1991). As will be explained below, *Armour* did not say the *Gingles* preconditions do not apply to single member district claims. *Armour* held the nature of the claim presented there was not governed by *Gingles* because the claim was based upon different theory than the claim in Gingles.. The May 12, 2022 Order also states incorrectly in connection with whether Plaintiffs' claim is cognizable under the Voting Rights Act, that "the most Simon can muster is an influence district-which the Voting Rights Act does not require" citing *Bartlett v. Strickland*, 556 U.S. 1 (2009).

Contrary to the above statements by the Court, the Simon Parties' claim asserted here is not as stated in the May 12 Order, a claim that by aggregating Black voters in Mahoning and Trumbull County, Ohio into a single Ohio Senate District that their numbers are sufficient to prevail in a general election for an Ohio Senate seat. The May 12 Order completely misses the point that the Simon claim, like the claim in *Armour*. is a claim that

the 33rd Ohio Senate District as proposed in Map 3 will result in the process leading to <u>nomination</u> of a candidate of choice not being equally open to the Simon parties. This Court's May 12, 2022 Order, the analysis in *Thornburg v. Gingles*, 478 U.S. 30 (1986), *Growe v. Emison*, 507 U.S. 25 (1993), and *Bartlett v. Strickland*, 556 U.S. 1 (2009), all involve either a challenge to a multimember district scheme in a jurisdiction, with either a run-off or majority vote requirement, such as North Carolina, or involve claims that the challenged districts resulted in inability to <u>elect</u>.  No case relied upon in the May 12, 2022 Order concerns ability to <u>nominate</u>. The Court has not cited and the Simon Parties are unaware of any case that prescribes threshold criteria for a nomination claim and the express language of Section 2 goes not only to election but nomination.

      The Simon claim here is not an "election" claim in a jurisdiction with a majority vote requirement, a run off requirement, or a limit on the number of candidates that may compete in a primary election.  The Simon claim is that if Youngstown and Warren are placed into the same Senate district they can <u>nominate</u> a candidate of choice. The evidence will show that the primary election is the decisive election , not the general.

      The recent nomination of J.D. Vance for an Ohio U.S. Senate seat with 32.2% of the vote is clear evidence of Simon's nomination argument's validity. It is illogical to suggest that in order to state a §2 claim challenging the impairment of the ability to <u>nominate</u> requires a 50% *Gingles* precondition threshold to state a claim under the VRA, when 50% of the vote is not required to prevail in an Ohio primary election. None of the opinions cited in the May 12, 2022 Order dealt with a Section 2 "nomination" claim.  The upshot of this argument is *Armour* was not incorrect and has never been reversed. *Armour* was a nomination claim.  Proof of *Armour's* validity is for the first time in history following *Armour,* a Black was nominated and then elected to the 64th Ohio House District.

**B.    GINGLES PRECONDITIONS**

The Voting Rights Act states in Section 2:

Section 2, as amended, 96 Stat. 134, reads as follows:

"(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(t)(2), as provided in subsection (b)."

"(b) A violation of subsection (a) is established if based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population."

(Emphasis added.)

*Gingles*, despite *LULAC v. Perry*, 548 U.S. 339 (2006), *Growe* or *Strickland* remains settled law concerning the proof required for a §2 claim. *Gingles* states:

The right question…is whether "as a result of the challenged practice or structure, plaintiffs do not have an equal opportunity to participate in the political processes and to elect candidates of their choice. [Footnote 9]

The *Armour* opinion provided a very detailed and comprehensive evaluation of past political reality in the Mahoning Valley. It also devised a remedial framework based upon a <u>functional</u> view of primary elections in the Mahoning Valley. *Armour* did not involve a multimember district claim, a claim in a jurisdiction with a majority vote or runoff requirement, a claim based on a coalition of voters, or an influence claim. *Armour* involved a claim concerning whether the challenged districting resulted in the political process

4

leading to nomination, which is the dispositive contest in the Mahoning Valley, not being equally open. Neither *Gingles* nor its successor opinions, cited in the May 12, 2022 Order, deal with a nomination claim. Neither Simon's claim nor *Armour* is therefore subject to the *Gingles* preconditions, even though as will be shown below, Simon can satisfy the *Gingles* test.

*Gingles* made it clear that the criteria announced were not to be applied universally or mechanistically. In point of fact, *Gingles* footnote 12 states:

> The claim we address in this opinion is one in which the plaintiffs alleged and attempted to prove that their ability to elect the representatives of their choice was impaired by the selection of a multimember electoral structure. We have no occasion to consider whether § 2 permits, and if it does, what standards should pertain to, a claim brought by a minority group that is not sufficiently large and compact to constitute a majority in a single-member district, alleging that the use of a multimember district impairs its ability to influence elections.
>
> We note also that we have no occasion to consider whether the standards we apply to respondents' claim that multimember districts operate to dilute the vote of geographically cohesive minority groups that are large enough to constitute majorities in single-member districts, and that are contained within the boundaries of the challenged multimember districts, are fully pertinent to other sorts of vote dilution claims, such as a claim alleging that the splitting of a large and geographically cohesive minority between two or more multimember or single-member districts resulted in the dilution of the minority vote.

Id.

There is no authority for the proposition that a nomination claim filed in a jurisdiction without a majority vote requirement must meet the *Gingles* precondition.

**C.     SIMON CAN SATISFY GINGLES PRECONDITIONS**

The May 12, 2022 Order states that Defendants' Rule 9, expressly prohibiting consideration of racial demographic, is a method of redistricting and the VRA does not prohibit use of any particular method of redistricting citing *Bonilla v. City Counsel of City*

5

*of Chi*. 809 F. Supp. 590 (N.D. Ill 1992). That statement is wrong. The VRA prohibits the use of any redistricting method that results in the political processes leading to nomination or election by representatives of choice not being equally open. The method chosen here by Defendants does just that.

To determine if Defendants' redistricting method produces a proscribed result as alleged by Plaintiffs here, according to the procedure mandated by *Gingles*, it is necessary to engage an intensely localized and practical evaluation of the past political reality in the Mahoning Valley. Such an evaluation and the *Gingles* preconditions all involve an analysis of race to assess numerosity and polarization preconditions. How can one evaluate race's impact or results without considering race?

The May 12, 2022 Opinion not only incorrectly applies *Gingles* preconditions to a nomination claim, it also alleges that the Simon parties shift the burden of proof onto the Commission. The Opinion states it is up to Simon in the first instance to prove that each of the *Gingles* preconditions are met and then show dilution under the totality of the circumstances test. First, the May 12, 2022 Opinion does not state to whom Simon must make the initial showing, is it the Commission or the Court. The Simon parties could not present proof of satisfaction of the *Gingles* preconditions to the Commission because the *Gingles* precondition all involve racial demographic information. The Commission's Rule 9 barred consideration of racial data.

If it's the Court to whom the *Gingles* racial data must be shown in the first instance, it is unlikely a Court will consider any information that was not first presented to the Commission. In point of fact, the Supreme Court stated in *Quilter v. Voinovich*, 507, U.S. 146 (1993). "Section 2(b) places at least the initial burden of proof of apportionment invalidity on Plaintiffs' shoulders." *Id*. at 147. Plaintiffs here were precluded by

6

Defendants' Rule 9 from presenting racial data to prove invalidity. The May 12, 2022 Order's treatment of Commission Rule 9 creates a Catch 22 circumstance, a problematic situation for which the only solution is denied by a circumstance inherent in the rule, here providing proof of racially unfair results to a Commission that will not consider race. This reasoning smacks of a post reconstruction era voter registration test and is not supported by the VRA's Senate Report factors or Gingles

The Simon Parties contend separating Youngstown from Warren in connection with the 33rd Senate District results in an unlawful dilution of their ability to nominate a representative of choice. Youngstown has 34,835 Blacks, Warren 17,200. A Senate District has 357,559. The voting age population is 77.45% or 357,559. Only 46% of the VAP votes democratic according to the political index underlying Map 3. The number of Blacks geographically compact in the Youngstown-Warren area is sufficient to nominate a candidate of choice. The May 12, 2022 Opinion focuses incorrectly on the number required for election, rather than the number required to nominate. In the 2020 primary election for the 32nd Senate District, only 26,151 votes were required to nominate[1]. Black Democratic voters in the Simon proposed district would exceed that number.

The polarized nature of voting in the area can be gleaned readily by a review of the results of the 2020 Presidential election. Voting is clearly racially polarized. This conclusion is bolstered by the fact no Blacks have been elected to countywide office in either county. The Court's May 12, 2022 Opinion reduces to the proposition that state officials have no affirmative duties under §2 of the VRA. This is not the law and it is a violation of the plain language of the Act and *Gingles*.

---

[1] See, March 17, 2020 Primary Election Results, Ohio Secretary of State

7

**D.     LEGAL STANDARD**

Courts in the Sixth Circuit evaluate four factors when considering a motion to stay pending appeal:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Michigan State A. Philip Randolph Inst. v. Johnson*, 833 F.3d 656, 661 (6th Cir. 2016) (Moore, J.) (citation omitted); see also *Nken v. Holder*, 556 U.S. 418, 434 (2009) (Roberts, C.J.) (articulating the traditional stay standard as "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies" (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The moving party has the burden of showing that the stay is warranted. *Michigan State A. Philip Randolph Inst*., 833 F.3d at 662.

**1.     SUCCESS ON THE MERITS**

As pointed out above, the claim of the Simon Parties here is a "nomination claim." Neither the Court nor any party to this action has cited any authority to support the proposition that the *Gingles* preconditions apply to a nomination claim in a jurisdiction without a majority vote or run off requirement. Accordingly for the reasons discussed above and under the plain language of §2 of the VRA, the Simon Parties are likely to succeed on the merits.

8

### 2. IRREPARABLE HARM

The May 12, Order requires the Simon parties' to vote in an election utilizing an electoral mapping structure that violates the VRA. This is classic irreparable harm. No citizen should be required to participate in an unlawful election system, much less one that has been rejected six times by the State Supreme Court.

### 3. HARM TO OTHERS

Time remains in this case for the state Defendants to modify the election schedule and to devise a lawful map. No harm will accrue to others by requiring the State to obey the VRA and its duties under the Ohio Constitution

### 4. PUBLIC INTEREST

The public interest is served by requiring the State to devise maps that do not dilute the voting strength of the Simon Parties and Ohio's Black voters. The public interest is harmed where state officials intentionally ignore their duties to comply with the VRA. Support for this assertion is found ad nauseum in the *Gingles* Opinion and its progeny.

Due to the expedited nature of proceedings in this election – related action, it is respectfully requested under Fed. R. Civ. P. 6(c) that the time for responding to this motion be shortened to five days and the time for reply two days thereafter.

### CONCLUSION

For the reasons stated above a stay is respectfully requested.

.

9

/s/ Percy Squire  
Percy Squire (0022010)  
Percy Squire Co., LLC  
341 S. Third Street, Suite 10  
Columbus, Ohio 43215  
(614) 224-6528, Telephone  
(614) 224-6529, Facsimile  
psquire@sp-lawfirm.com  
Attorney for Simon Party Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served by operation of the United States District Court, Southern District of Ohio electronic filing system, on June 6, 2022.

s/Percy Squire, Esq.  
Percy Squire (0022010)  
Attorney for Simon Party-Plaintiffs