IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DISTRICT

| | |
|---|---|
| MICHAEL GONIDAKIS, ET AL., <br><br> PLAINTIFFS, <br><br> AND <br><br> THE HONORABLE REVEREND KENNETH L. SIMON, ET AL., <br><br> INTERVENOR-PLAINTIFFS, <br><br> VS. <br><br> GOVERNOR MIKE DEWINE, GOVERNOR AND MEMBER OF THE OHIO REDISTRICTING COMMISSION, ET AL., <br><br> DEFENDANTS. | **CASE NO. 2:22-CV-00773** <br><br> CHIEF JUDGE ALGENON L. MARBLEY <br><br> JUDGE AMUL R. THAPAR <br><br> JUDGE BENJAMIN J. BEATON |

### INTERVENOR-DEFENDANTS HUFFMAN AND CUPP'S MEMORANDUM IN OPPOSITION TO SIMON INTERVENOR-PLAINTIFFS' MOTION TO STAY PENDING APPEAL

Intervenor-Defendants Senate President Matt Huffman and Speaker Robert R. Cupp ("Legislative Defendants") file this Memorandum in Opposition to Intervenor-Plaintiffs' Kenneth L. Simon, Lewis Macklin, and Helen Youngblood's (collectively, "Simon Intervenors") Motion to Stay Pending Appeal the Court's orders at D.E. 201 and 205 and for Shortened Response Time (D.E. 207 ("Motion to Stay" or "Motion")). For the reasons stated below, the Simon Intervenors' Motion should be denied.

## PROCEDURAL BACKGROUND

On February 18, 2022, Plaintiffs initiated this action seeking relief under the Fourteenth Amendment of the United States Constitution and requesting that the Court adopt an interim general assembly redistricting plan for the State of Ohio to be used solely for elections in 2022. Plaintiffs filed this action because the Ohio Redistricting Commission ("Commission") was unable to adopt a general assembly plan that would receive the approval of a majority of the members of the Ohio Supreme Court.

On March 29, 2022, the Simon Intervenors filed their Motions for Temporary Restraining Order, Preliminary Injunction, Partial Summary Judgment and for Immediate Appointment of Special Master (D.E. 141).[1] Subsequently, on April 1, 2022, the Simon Intervenors filed a Second Motion for Temporary Restraining Order, Preliminary Injunction, and Partial Summary Judgment (D.E. 147).

On April 12, 2022, the Court entered an Order (D.E. 185) denying the Simon Intervenors' Second Motion for a Temporary Restraining order (D.E. 147).

On April 20, 2022, the Court entered an Order (D.E. 196), granting Plaintiffs' Second Motion for Preliminary Injunction and Declaratory Relief. In its Order of April 20, 2022, the Court held that it would order Ohio's primary election for general assembly districts be moved to August 2 under a plan that had been previously adopted by the Commission ("Plan 3"), only for the 2022 election cycle. The Court conditioned its Order by holding that Plan 3 would only be used if the Commission was unable to pass a new general assembly plan on or before May 28, 2022.

---

[1] In a hearing the next day on March 30, 2022, counsel for Simon Intervenors effectively admitted that this motion was mooted by the Court that day when he stated that the "emergency and the immediacy and imminence of any harm doesn't exist" (D.E.150; 241:13-21).

On April 25, 2022, the Simon Intervenors filed their Motion to Alter Judgment or Motion to Amend/Correct the Court's Order of April 20, 2022. (D.E. 197).

On May 12, 2022, the Court entered an Order (D.E. 201) denying the Simon Intervenors' Motion for Temporary Restraining Order, Preliminary Injunction and Summary Judgment (141) as well as the Simon Intervenors' Motion to Alter or Amend the Court's Order of April 20, 2022 (D.E. 197).

On May 24, 2022, the Simon Intervenors filed a pending Motion to Alter the Court's Order of May 12, 2022 (D.E. 201 and 202). The Simon Intervenors contended that their Motion to Alter has been filed pursuant to Rule 59(e), Fed. R. Civ. P. (D.E. 202). Legislative Defendants filed a response opposing this motion on June 14, 2022 (D.E. 210).

On May 27, 2022, the Court entered an Order (D.E. 205), directing the Secretary of State to conduct the 2022 primary elections for the Ohio general assembly pursuant to Plan 3, as had been previously directed by the Court's Order of April 20, 2022 (D.E. 196), assuming that no new general assembly plan was adopted by the Commission on or before midnight on Saturday, May 28, 2022.

Subsequently, no new general assembly plan was adopted by the Commission and the State of Ohio, through the direction of the Secretary of State, is now conducting general assembly primary elections under Plan 3 as ordered by this Court on both April 20, 2022, and May 27, 2022. On June 6, 2022, Simon Intervenors filed a Notice of Appeal, appealing from the Court's May 12, 2022 Order (D.E. 201) denying their Motion for Preliminary Injunction, and to alter or amend the Court's April 20, 2022 Order. (D.E. 206). Later that same day, Simon Intervenors filed the instant Motion to Stay Pending Appeal. (D.E. 207). The Motion and accompanying Memorandum seeks a stay pending appeal of both the court's May 12, and May 27, 2022 Orders (D.E. 201 and D.E.

205). At the outset, Simon Intervenors Notice of Appeal did not appeal the Court's May 27, 2022 Order, and as such there is no "pending appeal" of that order. Because there is no pending appeal of that order, the motion to stay that order is not properly before the Court.

## STANDARD OF REVIEW

Under the "traditional" standard for a stay pending appeal, a court considers four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009).

However, in instances such as these where the *Purcell* doctrine is at play, Justice Kavanaugh opined in his concurrence in *Merrill v. Milligan* that the *Purcell* doctrine "might" be overcome if the Plaintiff establishes "at least" that:

> (i) the underlying merits are entirely clear-cut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship. *Merrill,* 142 S.Ct. at 881.

Under either standard of review, Simon Intervenor's fail to meet their burden.

## ARGUMENT

**1. Simon Intervenors are Unlikely to Succeed.**

Far from being able to show that the underlying merits are "entirely clear-cut" in their favor, Simon Intervenors fail to even meet the lessor burden articulated in *Nken* of making a "strong showing" that they are likely to succeed on the merits. In fact, it is doubtful that Simon Intervenors even have a *viable* claim, much less a successful one. Simon Intervenors first argue that binding Supreme Court precedent in *Thornburg v. Gingles* does not apply to their claim, but

then argue that if *Gingles* does apply that they "can" satisfy *Gingles,* not that they *do* satisfy *Gingles,* 106 S. Ct. 2752 (1986). This entirely ignores that, by Simon Intervenors own admission, the burden of proof of "apportionment invalidity" rests on their shoulders. Motion at p. 6 *quoting Quilter v. Voinovich,* 507 US. 146 (1993). In fact, Simon Intervenors cite to only one case in support of the idea that they are bringing a nomination claim, and that their underlying claim is successful: *Armour v. Ohio*, 775 F. Supp. 1044 (N.D. Ohio 1991). But, it is exceedingly unlikely that the majority opinion in *Armour* is even good law.

In *Armour* the Plaintiffs brought claims under the VRA and the Fifteenth Amendment challenging two Ohio house districts drawn after the 1980 census. *Id.* at 1047-48. The *Armour* defendants urged the court to apply the *Gingles* pre-conditions to the challenge to these single member districts. But, in relevant part, the *Armour* court declined to apply the *Gingles* pre-conditions because they could "not conclude that the [Supreme] Court intended the *Gingles* pre-conditions for challenges to multi-member districting schemes to apply to all Section 2 challenges." *Id.* at 1052. The *Armour* majority also held that plaintiffs did not need to constitute a majority of a reconfigured district thereby effectively holding "that there is a cause of action under Section 2 when political boundaries are drawn so that they fail to maximize a minority group's ability to influence the outcome of elections" *Id.* at 1079 (Batchelder, J. dissenting.)

Therefore it is clear that *Armour* does not accurately reflect today's law on either dispositive point. In the 30 years since the *Armour* majority issued its opinion, the Supreme Court has definitively held that (1) the *Gingles* pre-conditions apply to single member districts; and (2) failure to maximize is not a viable claim, nor are citizens entitled to crossover districts. *See Growe v. Emison,* 113 S. Ct. 1075 (recognizing that the *Gingles* preconditions apply to single member districts); *LULAC v. Perry,* 126 S. Ct. 2594 (2006) (applying *Gingles* preconditions to single

member district challenge); *Abbott v. Perez,* 138 S. Ct. 2305 (2018) (same); *Brnovich v. Democratic National Committee,* 141 S. Ct. 2321 n. 5 (collecting cases). *See also Shaw v. Hunt,* 116 S. Ct. 1894 1898 (1996) (rejecting the maximization theory); *Wis. Legis. v. Wis. Elections Comm'n,* 142 S. Ct. 1245, 1249 (2022) (noting that the Supreme Court has "expressly rejected" the majority-minority district maximization theory); *Johnson v. De Grandy*, 114 S. Ct. 2647, 2660 (1994) ("failure to maximize cannot be the measure of § 2"); *Bartlett v. Strickland,* 556 U.S. 2, 14-18 (2009).

Therefore, in order to show that they are likely to succeed Simon Intervenors must meet the three threshold *Gingles* conditions that:

> (1) A minority group must be sufficiently large and geographically compact to constitute a majority in some reasonably configured legislative district, (2) the minority group must be politically cohesive and (3) a district's white majority must vote[ ] sufficiently as a bloc to usually defeat the minority's preferred candidate.

*Cooper v. Harris,* 137 S. Ct. 1455, 1460 (2017) *citing Gingles,* 106 S.Ct. at 2766. (internal quotations omitted).

Simon Intervenors have offered no evidence to satisfy *any* of these conditions. This is despite Simon Intervenors' admission in their motion that "the procedure mandated by *Gingles*" requires them to "engage [sic] an intensely localized and practical evaluation of the past political reality in the Mahoning Valley" and that such an evaluation involves an "analysis of race to assess numerosity and polarization preconditions." (Motion at 6). Yet, Simon Intervenors offer no such analysis.[2] This fact alone dooms Simon Intervenors ability to succeed.

---

[2] Simon Intervenors' claim that somehow the Ohio Redistricting Commission's rules prevent them from complying with *Gingles* is nonsensical. For starters, Simon Intervenors cite to a "Rule 9" but the Rule 9 of the Ohio Redistricting Commission Rules does not govern racial data (Exhibit 1; https://redistricting.ohio.gov/assets/organizations/redistricting-commission/events/commission-meeting-august-31-2021-16/ohio-redistricting-commission-rules.pdf ).

### 2. Simon Intervenors Are Not Irreparably Harmed.

Simon Intervenors offer a mere three sentences to explain their alleged irreparable harm, claiming simply that Simon Intervenors should not be forced to vote in an election utilizing districts that violate the VRA (Motion at p. 8). Apart from the fact that there is no evidence whatsoever that any Ohio legislative district is in violation of the VRA, Simon Intervenors argument is over simplified and incorrect given that Ohio is deep into administering the 2022 elections. In instances where the election has already begun and the primary is mere weeks away the Supreme Court has instructed courts that harm is calculated differently:

> Under certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles.

*Reynolds v. Sims*, 377 U.S. 533, 541 (1964). Therefore, even if Simon Intervenors had shown a likelihood of success on the merits (which they have not) considerations such as those articulated in *Reynolds* would bar a court from issuing the relief sought by Simon Intervenors. *See, e.g.*, *Covington v. North Carolina*, 316 F.R.D. 117, 177 (M.D.N.C. 2016), *aff'd* 137 S. Ct. 2211 (2017) (declining to order immediate injunctive relief despite finding that districts were racial

---

The rules adopted by the Commission on March 23, 2022, governing the map drawing of Dr. Johnson and Dr. McDonald contain a rule preventing those mapdrawers from using racial data (Exhibit 2; https://redistricting.ohio.gov/assets/organizations/redistricting-commission/events/commission-meeting-march-24-2022-277/ground-rules-for-map-drawers.pdf ), but there is no rule preventing Simon Intervenors from submitting a map that includes racial data through the Commission's web portal or preventing them from submitting it to this Court.

gerrymanders and in violation of section 2 and allowed the elections "to proceed as scheduled under the challenged plans[.]").

Indeed, the Supreme Court has frequently cautioned federal courts against overreaching injunctive relief in cases involving state election laws, including redistricting plans. *See, e.g.*, *Upham v. Seamon,* 456 U.S. 37, 44 (1982) ("It is true that we have authorized District Courts to order or to permit elections to be held pursuant to apportionment plans that do not in all respects measure up to the legal requirements, even constitutional requirements . . . Necessity has been the motivating factor in those situations.") (internal citations omitted); *Growe*, 507 U.S. at 35 (noting that elections must often be held under a legislatively enacted plan in deference to state court action). Moreover, where, as here, there is no alternative districting plan, courts find that neither the balance of the equities nor the public interest are in favor of injunctive relief. *See, e.g.*, *Vera v. Richards*, 861 F. Supp. 1304, 1351 (S.D. Tex. 1994), *aff'd Bush v. Vera*, 517 U.S. 952 (1996) (denying a stay of 1994 and 1996 elections after finding a redistricting plan unconstitutional on September 2, 1994).

Furthermore, Simon Intervenors' arguments regarding their alleged harm—i.e., that their right to vote will be irreparably harmed—are the same as those made by every VRA plaintiff. If Simon Intervenors' arguments regarding the equities were effective, then it would "appear to justify" this extraordinary relief "in *every* racial-gerrymandering case" or every VRA case—something the Supreme Court has found to be insufficient to support extraordinary injunctive relief like that sought by the Simon Intervenors here. *North Carolina v. Covington*, 137 S.Ct. 1624, 1626 (2017).

    **3. The Other Parties Will Be Substantially Injured by a Stay, Nor is a Stay in the Public Interest**

When the government is the opposing party, the third and fourth stay factors merge. *Nken*, 129 S. Ct. at 1762. Here it is undisputed that one of the opposing parties is the State's chief election official: Secretary of State LaRose. Simon Intervenors seek a stay of this Court's order, effectively enjoining the election that is set to occur on August 2, 2022, just over a month away. In support of their argument that there is no harm to others and that the public interest is served by the stay, Simon Intervenors offer five conclusory sentences all alleging that no harm can accrue because of the alleged VRA violations, of which they have presented no evidence. Perhaps the reason that Simon Intervenors offer no real arguments on these points, is because the public harm, and harm to other parties in this case is incalculable.

If Simon Intervenors requested relief were granted, voter confusion would be immense, to say the least. And the Court's record is replete with unrebutted testimony that May 28 was the "drop dead" date by which the Secretary of State had to have a plan to administer the constitutionally required election. No one, least of all Simon Intervenors, have provided any contradictory testimony. Much less any evidence that the harm to the people of Ohio in not having this scheduled election is somehow outweighed by Simon Intervenors alleged harm. Furthermore, while election day itself is just over a month away, the election has already begun with the mailing of overseas ballots pursuant to the federal UOCAVA deadline on June 17, 2022.[3] And in-person early voting for the August election begins on July 6, 2022, just 9 days from today.[4] It is simply too late for the Simon Intervenors stay.

---

[3] *See* Exhibit 3- Official Press Release of Secretary of State LaRose
https://www.ohiosos.gov/media-center/press-releases/2022/2022-06-17/

[4] *See* Exhibit 4- 2022 Elections Calendar
https://www.ohiosos.gov/globalassets/publications/election/2022electionscalendar_11x17.pdf

The United States Supreme Court held in *Purcell v. Gonzalez*, 594 U.S. 1, 4–5 (2006) (*per curiam*), that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." In a normal election cycle, "[r]unning elections state-wide is extraordinarily complicated and difficult." *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring in grant of applications for stays). Elections officials must navigate "significant logistical challenges" that require "enormous advance preparations." *Id.* The Supreme Court has consistently admonished courts not to alter state election laws and processes in the period close to an election. *Andino v. Middleton*, 141 S. Ct. 9, 10 (2020) (Kavanaugh, J., concurring in grant of stay application) see *also Milligan*, 142 S. Ct. at 879; *Merrill v. People First of Ala.*, 141 S. Ct. 25 (2020); *Merrill v. People First of Ala.*, 141 S. Ct. 190 (2020); *Clarno v. People Not Politicians*, 141 S. Ct. 206 (2020); *Little v. Reclaim Idaho*, 140 S. Ct. 2616 (2020); *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020) (per curiam); *Democratic Nat'l Comm. v. Wisc. State Legislature*, 141 S. Ct. 28 (2020) (declining to vacate stay); *Benisek v. Lamone*, 138 S. Ct. 1942 (2018) (per curiam); *Veasey v. Perry*, 574 U.S. 951 (2014).

Here, where the election is just over a month away, early voting begins in days, and overseas ballots were mailed 10 days ago, the *Purcell* doctrine clearly counsels against issuing any order that would impact Ohio's impending August election, including the Motion for Stay.

## **CONCLUSION**

The Simon Intervenors' have utterly failed to demonstrate any likelihood of success on the merits, and have failed to show any harm that could outweigh the immense harm to the public and the parties in this matter if their motion for stay were granted. For the foregoing reasons, Simon Intervenors' Motion to Stay should be denied.

Respectfully submitted this the 27th day of June, 2022.

/s/ *Phillip J. Strach*
Phillip J. Strach, *pro hac vice*
phillip.strach@nelsonmullins.com
Thomas A. Farr, *pro hac vice*
tom.farr@nelsonmullins.com
John E. Branch, III, *pro hac vice*
john.branch@nelsonmullins.com
Alyssa M. Riggins, *pro hac vice*
alyssa.riggins@nelsonmullins.com
Cassie A. Holt, *pro hac vice*
cassie.holt@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
Telephone: 919-329-3800

W. Stuart Dornette (0002955)
dornette@taftlaw.com
Beth A. Bryan (0082076)
bryan@taftlaw.com
Philip D. Williamson (0097174)
pwilliamson@taftlaw.com
**TAFT STETTINUS & HOLLISTER LLP**
425 Walnut St., Suite 1800
Cincinnati, OH 45202-3957
Telephone: 513-381-2838

*Counsel for Intervenor-Defendants Huffman and Cupp*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th of June 2022 the foregoing document was filed via the Court's CM/ECF system which sent notice of the same to all counsel of record in this matter.

/s/ *Phillip J. Strach*
Phillip J. Strach, *pro hac vice*
phillip.strach@nelsonmullins.com
Thomas A. Farr, *pro hac vice*
tom.farr@nelsonmullins.com
John E. Branch, III, *pro hac vice*
john.branch@nelsonmullins.com
Alyssa M. Riggins, *pro hac vice*
alyssa.riggins@nelsonmullins.com
Cassie A. Holt, *pro hac vice*
cassie.holt@nelsonmullins.com
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
4140 Parklake Avenue, Suite 200
Raleigh, NC 27612
Telephone: 919-329-3800

W. Stuart Dornette (0002955)
dornette@taftlaw.com
Beth A. Bryan (0082076)
bryan@taftlaw.com
Philip D. Williamson (0097174)
pwilliamson@taftlaw.com
**TAFT STETTINUS & HOLLISTER LLP**
425 Walnut St., Suite 1800
Cincinnati, OH 45202-3957
Telephone: 513-381-2838

*Counsel for Intervenor-Defendants Huffman and Cupp*

4888-7265-3350 v.1