**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| MICHAEL GONIDAKIS, ET AL. | : | CASE NO. 2:22-CV-773 |
| | : | |
| PLAINTIFFS | : | |
| | : | CHIEF JUDGE ALGENON L. |
| | : | MARBLEY |
| VS. | : | |
| | : | CIRCUIT JUDGE AMUL R. |
| FRANK LAROSE, | : | THAPAR |
| | : | |
| DEFENDANTS. | : | |
| | : | JUDGE BENJAMIN J. BEATON |

**CONSOLIDATED REPLY OF SIMON PARTIES TO PLAINTIFFS' OPPOSITION TO THE SIMON PARTIES MOTION TO STAY PENDING APPEAL (ECF DOCKET #211), SECRETARY LAROSE, AUDITOR FABER AND GOVERNOR DEWINE'S RESPONSE IN OPPOSITION TO SIMON PARTIES' MOTION TO STAY PENDING APPEAL (ECF DOCKETS #207 AND #212) AND INTERVENOR-DEFENDANTS HUFFMAN AND CUPP'S MEMORANDUM IN OPPOSITION TO SIMON INTERVENOR-PLAINTIFFS' MOTION TO STAY PENDING APPEAL (ECF DOCKET #213)**

**I.    INTRODUCTION**

The Honorable Reverend Kenneth L. Simon, the Honorable Reverend Lewis W. Macklin, II and Helen Youngblood (hereinafter "the Simon Parties") hereby Reply to the Opposition of Plaintiffs (ECF #211), Secretary LaRose, Auditor Faber, Governor DeWine (ECF #212), and Defendants Huffman and Cupp (ECF #213), to the Simon Parties' Motion to Stay Pending Appeal to the United States Supreme Court (ECF #206).

Defendants LaRose, Faber and DeWine have alleged that the Simon Parties Notice of Appeal (ECF #206) was filed prematurely. All filers of opposition to the Simon Parties' motion to stay pending appeal have alleged that a stay is inappropriate for the reason the Simon Parties are unlikely to succeed on the merits of their appeal due to the failure to produce evidence that Simon can satisfy the *Gingles* preconditions. Defendants Huffman and Cupp, deny that its Redistricting Commission Rule 9 that proscribes consideration of racial data.

All of the opposition arguments concerning the *Gingles* preconditions are circular therefore fallacious and due for rejection. Support for this assertion is below. The timeliness and Rule 9 arguments are also addressed below.

## II. ARGUMENT

### A. TIMELINESS

The Simon Parties do not dispute the argument that the Court's May 12, 2022 Order (ECF #201), is not final until the Motion to Alter or Amend (ECF #202), is resolved. The pendency of the Motion to Alter or Amend renders the Notice of Appeal premature. The Simon Parties will defer further action to perfect an appeal to the United States Supreme Court until the Motion to Alter of Amend is resolved. However, the Simon parties' request for a stay is still being asserted whether pending resolution of the motion to alter a or amend or appeal to the United States Supreme Court. The request is for a stay of certification of the August 2, 2022 election not the election itself. The public interest is served if a remedy is preserved to correct the outcome of an election conducted under unlawfully configured legislative districts such as those currently approved for the August election.

### B. RULE 9

Defendants Huffman and Cupp allege that Rule 9 of the Ohio Redistricting Commission (ORC) does not deal with race. Attached at Exhibit A hereto are transcript excerpts from the March 23, 2022 meeting of the ORC, where Defendants Cupp and Huffman both make reference to "Point 9" as the ORC policy against consideration of racial demographics. Whether its called "Point 9" or "Rule 9" the gravamen of the Simon Parties' request for relief is that the preemptive blanket prohibition against presentation and consideration of racial demographics in connection with the redistricting process is violative of §2 of the Voting Rights Act.

### C. *GINGLES* PRECONDITIONS

Each opposition memorandum states that the Simon Parties can not meet the *Gingles* preconditions, but no opposition memo cites any caselaw or other authority that has held the *Gingles* preconditions apply to a "nomination" claim in a jurisdiction without a majority vote or a runoff requirement. The reason they can not cite such a case is because there is none. The VRA makes a clear textual reference to the unlawfulness under the VRA of electoral mechanisms that impair the processes leading to nomination or election.. All of the Opposition authority arises from cases where election was the issue. Here the Simon parties have asserted a nomination claim.

Most importantly however each opposition memorandum states that in order to establish a right to relief under the VRA, a claimant must prove that certain minimum race-based numerical thresholds are met, like a majority in a single member district. The fallacy in the opposition argument is how do you demonstrate whether the complaining Black voters constitute a majority in a single member district without considering race? The ORC has a rule prohibiting any consideration whatsoever of racial demographics. The covert aim of Rule 9 of the ORC, whether you call it Point 9 or Rule 9, is just as inimical to the policies underlying the VRA as the overt means utilized fifty years ago that led to enactment of the VRA. This Court should not accept the Opposition's circular reasoning.

### III. CONCLUSION

For the above reasons each Memorandum in Opposition should be rejected and a Stay should be granted that will delay certification of the August 2, 2022 election results until the novel issue of whether the Gingles preconditions apply to a nomination claim is decided conclusively.

/s/ Percy Squire  
Percy Squire (0022010)  
Percy Squire Co., LLC  
341 S. Third Street, Suite 10  
Columbus, Ohio 43215  
(614) 224-6528, Telephone  
(614) 224-6529, Facsimile  
psquire@sp-lawfirm.com  
Attorney for Simon Party Plaintiffs  

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was served by operation of the United States District Court, Southern District of Ohio electronic filing system, on July 12, 2022.

*s/Percy Squire, Esq.*  
Percy Squire (0022010)  
Attorney for Simon Party-Plaintiffs

**EXHIBIT A**

1. The map drawers shall include the two independent map drawers hired by the Redistricting Commission and the seven staff/contractor map drawers.

2. The independent map drawers shall draft any General Assembly district plan at the direction of the Redistricting Commission.

3. The independent map drawers shall answer to each of the Redistricting Commission members. However, any conflicting direction from the Redistricting Commission members shall be resolved via the mediation process described below. (See Rules 12-16)

4. The independent map drawers shall produce an entirely new general assembly district plan that has not been previously submitted to the Redistricting Commission. The independent map drawers shall not include or consider any general assembly plan proposals or work product produced prior to Wednesday, March 23, 2022 when drafting the entirely new general assembly district plan.

5. The map drawers shall utilize statewide election results and geography from 2016, 2018, and 2020 for the purpose of measuring the partisan lean of individual districts.

6. When considering the election results, Republican votes cast plus Democratic vote casts shall equal 100% of the total vote.

7. The map drawers shall utilize Maptitude when drawing any general assembly district plan.

8. The map drawers shall utilize one computer purchased by the Redistricting Commission to draft any general assembly district plan.


9. Racial data will neither be loaded onto the computer nor shall it be utilized by the map drawers in any way.

10. The map drawers shall draw a general assembly district plan that conforms with the Ohio Constitution including Article 11, Sections 1, 2, 3, 4, 5, 6, and 7, the Constitution of the United States and applicable federal laws.

11. The map drawers shall draw a general assembly district plan that conforms with the opinions of the Ohio Supreme Court and the United States Supreme Court.

**Speaker Cupp** [01:17:41] Maybe we'll have to see how the screen stuff works as we get into the process. I mean, I'm advised, however, that when you do prepratory, we'll have to see how the public records law applies to your preparatory work and whether or not we're going to end up with three maps anyway. So which is a concerning development so but let's let's do number eight, we have to kind of move along. So as I understand 8 would now read the map drawers shall utilize one computer purchased by the registering commission to draft any General Assembly district plan. Two additional computers for preparation. Two additional... Um.

**President Huffman** [01:18:33] Computers may be used for preparation purposes, .

**Speaker Cupp** [01:18:40] For preparation purposes, independent map makers.

**President Huffman** [01:18:43] on site, on site. Right.

**Co Chair Sykes** [01:18:45] And independent, the independent. The word independent,

**Speaker Cupp** [01:18:51] I would I don't have any objections, either, although I think we already said the map makers are independents, but we'll add that. OK. All right, is there any objection to eight as amended on Proposal A? There is no objection. Eight as amended, on proposal A will be accepted.



**President Huffman** [01:19:25] Mr. Chairman, propose and move that point number nine be adopted by the commission. This is racial data will neither be loaded onto the computer nor shall it be utilized by the map drawers in any way. Commissioners may recall, but perhaps not Leader Russo she wasn't on the commission in September that this was a point of discussion by the commission when the two maps-- both see the map for the General Assembly on September and then actually also the congressional map that was eventually adopted by the General Assembly at the end of November did not use racial data. So none of the three maps so far the commission has adopted... Either for the General Assembly or the two for congressional, have used that. As I argued in September, these the use of the stat is illegal under federal law, unless there are a whole variety of requirements that require that, that be used. There in the various lawsuits that were filed with the Supreme Court and have sent this issue back to them, all three of the opinions the court has no instructions or otherwise has not opined that this data should be used, nor have any of the parties who have brought the appeals to these brought this as an issue to the Supreme Court. So I don't think that we since we've argued this issue, it hasn't been used three times. None of the opponents who brought these lawsuits have asked for it, nor has the Supreme Court ordered or otherwise suggested that we use it. So I think we should adopt number nine, as is.

**Speaker Cupp** [01:21:26] I'll second that.

**Co Chair Sykes** [01:21:27] Mr. Chairman, even though is not a required requirement. It's not inappropriate. It's allowable, particularly as secondary information. And I don't see why we would not want to avail the map drawers to all of the information that could be helpful and useful in in map drawing for informational purposes and to be used only in accordance with the federal law. So our language here stipulates that that it would only utilized in accordance with the federal law. So we're not trying to violate the law. We just want to have access.

**President Huffman** [01:22:13] Mr Co Chair, I think it is a violation of federal law and it also is I think that if the level or the determining factor is inappropriateness, not only is it in violation of federal law and therefore inappropriate, it adds another layer of complexity and discussion. And again, we've we've determined this issue a number of times. The opponents of this have not brought this up as an issue. The court has not instructed or opined on it.

**Leader Russo** [01:22:51] Mr. Chair,

**Speaker Cupp** [01:22:53] Leader Russo.

**Leader Russo** [01:22:54] Can I ask the Senate president Huffman, because I wasn't here in September, how is it a violation of federal law? I mean, in what way? Having the information accessible, my understanding is that it shouldn't be the primarily used or considered that is the violation of federal law. So I'm somewhat perplexed. And how you're saying having it accessible as additional information available is a violation of federal law.

**President Huffman** [01:23:25] Well, I'm not. I'm not sure what you mean by accessible as additional information, either. It is used in the mapping process or it's not. It's not. If this is the information we're using, the census data, the precincts and all of that, and that's being used to draw the map than it is. But another set of data over here that's accessible, either it's being used or it's not. And we have not used that. And the reason we haven't used it is because federal law prohibits the drawing of maps and districts based on race, unless there has been some presentation of evidence and a court determines that it's appropriate in a particular case. So we're kind of around the edges about inappropriate, accessible. It's here. Those aren't the standards. Either the standards are that it's legally required or it's not legally required. We have a lot of requirements in our constitution. I daresay more than any other state in terms of how we draw maps. But not only is this not a requirement, it's illegal to do, and that's what we have determined several times in this commission. And again, none of the opponents have brought that up as an issue in the Supreme Court has ordered us to do that to sort of insert this complex issue at the last moment here. I think the standard is inappropriate would also be inappropriate.

**Co Chair Sykes** [01:25:12] Co Chair, I'd like to ask the mapmakers, do they have your opinion on this?

**Doug Johnson** [01:25:20] Well, ask a question, and I don't speak for Dr. McDonald so he can weigh in on it too, but I think to a degree, you're both right. The the door to using this data in redistricting is typically a racially polarized voting study. And I don't know. I don't believe that's been done, but I would like to ask and confirm whether or not that's been done, because without

**Speaker Cupp** [01:25:45] no information like that has been submitted to the commission.

**Michael McDonald** [01:25:54] I would say at this stage in the process, we would need a primary election data and none of that is available. So in the limited amount of time that we have to do our work, I would defer to President Huffman and no, I would rather not look at racial data.

**Speaker Cupp** [01:26:23] Is there an objection to number nine, although I would say now we have three computers instead of the computer, so I would guess that any onto any of the three computers.

**President Huffman** [01:26:39] So I add the letter s on the end of computer

**Speaker Cupp** [01:26:43] onto the computers, yes, I think that would solve that problem. Is there objection to number nine with with the addition that computer is now computers? Hearing no objection, number nine from Proposal A is adopted,

**President Huffman** [01:27:08] Mr. Co-Chair, I move that number 10 be adopted with the proposed amendment, added the word independent before map in the first line of number 10, as suggested by Senator Sykes.

**Speaker Cupp** [01:27:30] All right, is there any objection to number 10 from Proposal A adding independent before the word maps in the independent maps drawer? Without objection number 10 from Proposal A as amended will be accepted

**President Huffman** [01:27:51] as to number 11. Mr. Chairman, I think it's the first I move number 11. And again, I think the only assertion is Senator Sykes requested the word independent before the word map in the first line on number 11. And that's acceptable, and I would move with that change for the acceptance of number 11.

**Speaker Cupp** [01:28:12] All right. Number 11 be amended to add the term independent before map drawers

**Doug Johnson** [01:28:21] co chair, if I might. Just (yes), a clarifying question. The reference to the United States Supreme Court just like in general, I am not aware of any specific U.S. Supreme Court rulings in this proceeding. Correct?

**Speaker Cupp** [01:28:33] that we're not aware of any either. But anything could happen in this (audience laughter)  All right. Any objection to a number 11 as amended, in proposal A? Hearing none that will be accepted.

**President Huffman** [01:28:49] Mr. Co-Chair, then I'd move number 12 and again, the same, the same insertion. That suggestion of Senator Sykes would put in the word independent before map. And the other suggestion is that we change the word amongst to between. And I am not --I guess I'm not a -- that's fine with me. I can't think of good words to say about that.

**Speaker Cupp** [01:29:21] OK number 12 as amended independent before mapmakers -- drawers. I guess drawers. And change amongst to between. Any objection to number 12 from Proposal A as amended? Hearing none, it will be adopted, accepted.

**President Huffman** [01:29:52] And then, Mr. Chairman, number 13, I would move that and again with the same insertion requested by Senator Sykes with the word independent before mapmakers -- or mapdrawers.

**Speaker Cupp** [01:30:03] Mapdrawers. all right, any objection to number 13 from Proposal A? And right on this side proposal. As amended, hearing none number 13 is accepted.